[If you need additional space for ANY section, please attach an additional sheet and reference that se...

**RECEIVED**

FEB 28 2025

GRUTON
CLERK, U.S. DISTRICT COURT

| | |
|---|---|
| **MOHAMED R HAROUN** ) | **United States District Court** |
| Plaintiff ) | **Northern District of Illinois** |
| ) | |
| v. ) | |
| **UBER TECHNOLOGIES, INC,** ) | Haroun v. Uber Technologies et al |
| **JOHN J. POWER,** ) | 1:25-cv-02150 |
| **ANGIE K. HALL, et al.** ) | Judge Manish S. Shah |
| Defendant ) | Magistrate Judge McNally |
| | RANDOM / CAT.2 |

## COMPLAINT

### COMPLAINT FOR CIVIL RIGHTS VIOLATIONS, FRAUD,

### COERCION, AND CONSPIRACY TO OBSTRUCT JUSTICE

## I. INTRODUCTION

Plaintiff Mohamed Rashwan Haroun, A U.S. citizen residing in Illinois, suffered severe and permanent injuries in

A motor vehicle accident on **March 30, 2017,** while riding as A paying passenger in an Uber vehicle.

This unfortunate event has had profound consequences on Plaintiff's life, both physically and emotionally. rather

Than accepting responsibility for the incident and compensating Plaintiff fairly, Uber Technologies, Inc. And its

legal representatives embarked on A calculated conspiracy designed to deprive Plaintiff of his rightful

Compensation through fraud, coercion, and legal manipulation.

These actions are in direct violation of *42 U.S.C. § 1985(2),* which prohibits conspiracies to interfere with civil

Rights. Uber's refusal to take responsibility and their deliberate attempts to manipulate the legal and settlement

Process have not only violated Plaintiff's rights but also caused severe emotional distress and financial hardship

To Plaintiff's wife, Rasha Hegazy, and children, Adam Haroun and Laya Haroun.

Their lives have been destabilized as A direct result of Uber's fraudulent and coercive legal tactics.

Defendants' wrongful actions, as detailed below, include but are not limited to:

**A. Fraudulent Misrepresentation of Medical Bills:** Uber and its legal team inflated medical costs from **$189,000**

To **$572,000,** violating the Illinois Consumer Fraud and Deceptive Business Practices Act *(815 ILCS 505/1).*

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

**Page 1-15**

This deliberate inflation of medical expenses not only misled Plaintiff but also manipulated the settlement Calculation, depriving him of fair compensation. The fraudulent overstatement of medical charges was used as Leverage to reduce Plaintiff's payout, thereby creating an unjust financial burden on him and his family.

**B. Coercion and Undue Influence in Settlement Negotiations:** The Defendants forced Plaintiff into signing A settlement agreement under duress, thereby violating Restatement *(Second) of Contracts § 175 (1981),* which Protects individuals from signing agreements when under coercion. Plaintiff explicitly stated that he would not Accept A settlement until his medical treatment was completed, yet he was pressured into agreeing to an unfair Settlement. This undue influence undermined his legal rights and violated his constitutional protections.

**C. Denial of A Certified Court Interpreter:** Throughout legal proceedings, Plaintiff, who does not speak English Fluently, requested A court-certified Arabic interpreter to ensure he could fully understand the proceedings However, this request was denied, violating his Fourteenth Amendment Due Process Rights and the Illinois Supreme Court Language Access Policy. This denial further compounded the unfairness in the legal Process, as Plaintiff was unable to participate meaningfully in the hearings, and his rights were violated by The Defendants' refusal to provide necessary language support.

**D. Unauthorized Distribution of Settlement Funds:** Defendants unlawfully disbursed settlement funds without Plaintiff's consent, violating the Illinois False Claims Act *(740 ILCS 175/1).* This improper allocation of funds Deprived Plaintiff of his rightful compensation and was done in A manner that defrauded him of The financial settlement intended to cover his medical expenses and losses.

**E. Surveillance, Retaliation, and Threats Against the Family:** Uber and its legal representatives engaged in Unauthorized surveillance of Plaintiff and his family and used intimidation tactics to silence them. These actions Directly violate the Illinois Eavesdropping Statute *(720 ILCS 5/14-2),* which protects individuals against unlawful Surveillance and the invasion of privacy. Furthermore, these actions were taken to exert pressure on Plaintiff and His family to accept an unjust settlement, adding an additional layer of emotional distress.

**II. JURISDICTION AND VENUE**

This Court has subject-matter jurisdiction and personal jurisdiction because:

**1.** Uber Technologies, Inc. conducts substantial business operations in Cook County, Illinois, providing Ridesharing services and contractual agreements within the state.

**2.** The law firms and attorneys named as Defendants are licensed in Illinois and actively participated in

Fraudulent legal conduct within Cook County, Illinois.

**3.** The events giving rise to this claim occurred in Cook County, Illinois, making this the proper venue

Under *28 U.S.C. § 1391(b).*

**Plaintiff invokes federal jurisdiction under:**

*42 U.S.C. § 1985(2)* (Conspiracy to interfere with civil rights);

*42 U.S.C. § 1983* (Civil rights violations under color of law);

Illinois False Claims Act *(740 ILCS 175/1)* (Fraud and financial misconduct);

Illinois Consumer Fraud and Deceptive Business Practices Act *(815 ILCS 505/1)* (Deceptive settlement practices).

### III. FACTS OF THE CASE & PLAINTIFF'S INJURIES

**A. Date & Location of Incident**

**Date: March 30, 2017**

**Location:** Plaintiff was A paying passenger in an Uber vehicle when the accident occurred.

**B. Injuries Sustained by Plaintiff Mohamed Haroun**

As A direct result of Uber's negligence, Plaintiff suffered:

**1.** Spinal fractures and cervical injuries requiring extensive surgery.

**2.** Permanent disability and chronic pain **Since 2019.**

**3.** Psychological trauma, including anxiety, depression, memory loss, and

Cognitive impairments affecting daily function.

**4.** Severe sleep apnea requiring CPAP therapy.

**5.** Delayed medical treatment due to Defendants' interference, which worsened Plaintiff's condition.

*Refer to Exhibit X,XI,XII,XIII, [Page 1-48 ] detailing medical and Psychological records relevant to The plaintiff's case*

Uber's interference in Plaintiff's medical treatment violates *42 U.S.C. § 1983,* depriving Plaintiff of his

Constitutional right to receive timely medical care and obstructing his right to fair treatment. Furthermore,

Uber's unlawful delay in medical care and manipulation of settlement terms are clear breaches of

The Illinois Consumer Fraud and Deceptive Business Practices Act *(815 ILCS 505/1),* which

Prohibits such deceptive and coercive practices.

**C. Impact on Family (Rasha Hegazy, Adam Haroun, and Laya Haroun)**

As A direct consequence of Defendants' fraudulent actions, Plaintiff's wife, Rasha Hegazy,

And their children, Adam Haroun & Laya Haroun, **Endured:**

**1.** Financial devastation due to the fraudulent manipulation of settlement funds, which are crucial for

Plaintiff's medical treatment and rehabilitation.

**2.** Severe emotional distress caused by intimidation tactics employed by Uber and its legal team, violating

Their right to be free from undue legal and financial pressure.

**3.** Disruption of their family life through constant legal threats and coercion targeting Plaintiff, leading

To A loss of family stability.

The Illinois False Claims Act *(740 ILCS 175/1)* was violated through the illegal handling of settlement funds,

Further exacerbating the financial and emotional burden on Plaintiff's family.

**D. Disparate Treatment of Plaintiff's Settlement vs. His Brother's Case**

Plaintiff's brother, who was also involved in the same accident, received A fair settlement **in 2021.** In contrast,

Plaintiff was subjected to deliberate legal manipulation, coercion, and fraudulent settlement tactics. Despite

Plaintiff's explicit statement that he would not accept A financial settlement until his medical treatment was

Completed, Defendants unlawfully distributed funds without his authorization, violating *42 U.S.C. § 1983,* which

Ensures Plaintiff's right to A fair legal process free from coercion.

**E. Initial Settlement Offer and Plaintiff's Rejection**

**Date: Late 2021**

**Offer Presented By: Attorney Thomas Gorman**

**Plaintiff's Decision:** Rejected the offer due to ongoing medical treatment and scheduled surgeries **in 2022.**

The initial settlement offer was part of A broader strategy to pressure Plaintiff into accepting an unjust

Settlement without considering his medical needs. The manipulation of settlement terms in this manner

Constitutes an ethical violation under Illinois Rules of Professional Conduct **(IRPC) Rule 8.4**(c), which

Prohibits attorneys from engaging in dishonesty, fraud, deceit, or misrepresentation.

*Refer to Exhibit B, [Page 1 ] Settlement Negotiations. The plaintiff rejected all settlement offers as he was*

*Scheduled for urgent surgical procedures in early 2022.*

### IV. UBER'S UNETHICAL CONDUCT DURING LEGAL PROCEEDINGS

**A. Submission of False Testimonies to Mislead the Court**

Uber Technologies, Inc. and its legal representatives deliberately engaged in deceptive practices by introducing

False testimonies intended to discredit Plaintiff and obstruct justice.

**1. Fabricated Testimony by Witness with No Direct Connection to the Case:** A witness named **Zainab Lili,** Who had no direct connection to the case, was introduced by Defendants to provide fabricated testimony against Plaintiff. Zainab Lili, A resident of **Ohio,** falsely testified that Plaintiff traveled to **Egypt** for leisure and marriage, While in fact, Plaintiff's travel was solely for attending his father's funeral, A fact corroborated by official records. The false testimony was disproven during court proceedings, revealing that Uber relied on fraudulent evidence To influence the outcome. *Refer to Exhibit B. [Page 2-10 ] Legal Coercion. and Plaintiff's Rights Violations* This is A violation of *18 U.S.C. § 1621* **(Perjury)** an*d 18 U.S.C. § 1503*

**(Obstruction of Justice).** Furthermore, the Illinois False Claims Act *(740 ILCS 175/1)* prohibits such deceptive Practices, and *42 U.S.C. § 1983* protects Plaintiff from such wrongful conduct under color of law.

**B. Collusion Between Uber and Plaintiff's Attorneys to Coerce an Unfair Settlement**

After failing to discredit Plaintiff through false testimonies, Uber engaged in A scheme to force an unfair Settlement by conspiring with Plaintiff's own attorneys. The attorneys involved, including **Haytham Faraj, Matthew Amarin**, and **Mohamed Owaynat,** acted in bad faith by misleading Plaintiff and Suppressing critical case information, which led to the unlawful distribution of settlement funds and The inflation of medical bills to reduce Plaintiff's rightful compensation.

**1. Falsification and Inflation of Medical Bills:** This manipulation not only undermined Plaintiff's Medical needs but also violated Illinois Rules of Professional Conduct **(IRPC) Rule 8.4**(c), which Prohibits Such dishonest practices. *Refer to Exhibit I, [ Page 2-5 ] provides clear and compelling evidence of fraudulent Medical billing.*

**2. Blocking Plaintiff's Ability to File Motions or Appeals:** Defendants intentionally obstructed Plaintiff's ability to seek further relief, violating his right to due process under *42 U.S.C. § 1985*(2), which Prevents conspiracies to interfere with civil rights.

**C. Case Closure, Illegal Reopening, and Deliberate Medical Delays**

Uber and its legal team, along with Plaintiff's own attorneys, manipulated court procedures by unlawfully closing And reopening the case under A different case number—A deliberate attempt to obstruct justice and prevent Plaintiff from receiving fair compensation.

**Unlawful Closure & Reopening of Plaintiff's Case:** The case was closed under one case number and Reopened under another, erasing prior records and obstructing Plaintiff's ability to challenge Uber's fraudulent Actions. This constitutes A violation of *42 U.S.C. § 1983,* depriving Plaintiff of his right to A fair legal process.

**Page 5-15**

**D. Financial Fraud and Misallocation of Settlement Funds**

**Initial Settlement Offer – March 2023: In March 2023,** Uber made an initial offer of **$1.7 million,** which Plaintiff rejected due to ongoing medical treatments. However, in **July 2023,** Uber fraudulently increased The offer to **$2.1 million** but then reduced it by falsely claiming that Plaintiff would only receive **$1.5 million** After deductions. *Refer to Exhibit H. [Page 1-11] documented evidence Coercion and Psychological Pressure* This fraudulent misrepresentation is **A** clear violation of the Illinois False Claims Act *(740 ILCS 175/1),* as well as *42 U.S.C. § 1983,* which protects Plaintiff's rights under color of law. Moreover, Illinois Consumer Fraud and Deceptive Business Practices Act *(815 ILCS 505/1)* was violated through these deceptive financial negotiations.

**D. Financial Fraud and Misallocation of Settlement Funds**

**1. Initial Settlement Offer – March 2023 ($1.7 Million)**

**In March 2023,** Uber's legal team presented an initial settlement offer of **$1.7 million.** Plaintiff rejected the offer, Emphasizing the need to complete necessary medical treatments before agreeing to any settlement.

**2. Fraudulent Increase & Reductions in Settlement – July 2023**

**In July 2023,** Uber artificially increased the settlement offer to **$2.1 million.** However, through fraudulent legal Tactics, the offer was later reduced. The attorneys falsely claimed that after deductions, Plaintiff would only Receive **$1.5 million.** To justify these deductions, fraudulent medical bills were presented that inflated costs.

**3. Incremental Financial Threats to Force Acceptance of Lower Settlement Amounts:**

**Day 1:** Plaintiff was threatened with **A** reduction to **$1.4 million** if he did not sign the settlement.

**Day 2:** The offer was further reduced to **$1.3 million,** then falsely claimed as the **"final offer"** at **$1.2 million.** These actions violated several laws, including Illinois False Claims Act *(740 ILCS 175/1),* which prohibits Fraudulent misrepresentation in settlement negotiations. By inflating medical costs and misrepresenting The settlement amount, the Defendants aimed to unjustly reduce Plaintiff's compensation. Additionally, these Tactics led to *42 U.S.C. § 1983* violations, depriving Plaintiff of his rights under the color of law by obstructing His access to **A** fair settlement. The Illinois Consumer Fraud and Deceptive Business Practices Act *(815 ILCS 505/1)* was also violated, as Defendants engaged in misrepresentation of financial Negotiations, aiming to deceive Plaintiff into accepting an unfair settlement.

**E. Denial of Plaintiff's Right to A Court Interpreter & Due Process Violations**

*Refer to Exhibit G. [Page 4-8] Denial of Translator, Coercion, and Exploitation of Language Barriers*

**Page 6-15**

1. Plaintiff, A non-native English speaker was systematically denied access to A court-certified Arabic interpreter Turing the legal proceedings. This denial violated Plaintiff's due process rights and deprived him of the ability To effectively understand and participate in the proceedings, thus undermining his right to A fair trial.

## 2. Obstruction of Plaintiff's Right to Understand Legal Proceedings

Despite multiple requests for a certified Arabic interpreter for the Zoom hearing, Defendants refused to submit The required request, knowing this would disadvantage Plaintiff. When Plaintiff insisted on his right, Attorney **Matthew Amarin** responded dismissively:

"The court does not provide interpreters. If you need one, bring your own."

3. This refusal created an obstacle for Plaintiff in understanding legal proceedings and making informed decisions. It violated his Fourteenth Amendment Due Process Rights, as Plaintiff was denied A fair opportunity to participate Fully in his case. The Illinois Supreme Court Language Access Policy mandates the provision of interpreters for Non-English-speaking litigants, and the denial of this service clearly breached Plaintiff's right to A fair hearing.

**Legal Violations:**

*42 U.S.C. § 1983*: The denial of fair legal proceedings under the color of law, as Plaintiff was hindered from fully participating in the legal process.

**Fourteenth Amendment Due Process Clause:** Plaintiff was denied his constitutional right to A fair trial, As he was unable to understand the proceedings.

**Illinois Supreme Court Rules on Language Access:** The failure to provide A certified interpreter, despite Plaintiff's rights under the state's language access policy, further compounded this violation.

### V. VIOLATIONS DURING THE EMERGENCY ZOOM HEARING (JULY 31, 2023)

**A. Manipulation of Court Procedures & Violation of Plaintiff's Due Process Rights**

During the emergency Zoom hearing on **July 31, 2023 (Case No. 2022L006052)**, presided over by **Judge Robert F. Harris** (who was not the original assigned judge, **Judge John P. Callahan),** Plaintiff **Mohamed R. Haroun** faced serious violations of his rights. The court hearing was fundamentally flawed as The Judge failed to properly acknowledge Plaintiff's due process rights. Defendants, including Uber's legal counsel And Plaintiff's own attorneys, further contributed to this manipulation by obstructing the proper proceedings. Plaintiff had repeatedly requested A certified Arabic interpreter, in accordance with the Fourteenth Amendment (Due Process Clause) and the Illinois Supreme Court Language Access Policy,

Ensuring his ability to understand the proceedings fully. The denial of this request, despite prior accommodations In previous hearings, forced Plaintiff to proceed without meaningful access to the court, directly violating his rights. This refusal to postpone the hearing, given that Plaintiff was unable to fully comprehend the legal discussions, Deprived him of his constitutional right to participate in the proceedings. This is A clear Violation of *42 U.S.C. § 1983,* which protects individuals from civil rights violations under color of law.

## B. Coercion & Attorney Misconduct – Pressuring Plaintiff into an Unfair Settlement

Furthermore, during the hearing, Plaintiff was subjected to extreme pressure by his own attorney, Haytham Faraj. When Plaintiff clearly rejected any settlement before completing his required surgeries, Attorney Faraj threatened Him with harsh consequences, including statements that belittled the situation. Faraj's comment, "You're lucky The insurance is offering millions. If you were in Egypt and had this accident, even if you died, you wouldn't get More than $500," illustrates the coercion Plaintiff was under to force him into an unfair settlement.

This conduct by Plaintiff's own attorney directly violates Illinois Rules of Professional Conduct **(IRPC) Rule 8.4(c),** which prohibits attorneys from engaging in dishonesty, fraud, and misrepresentation. Moreover, *18 U.S.C. § 1503* **(Obstruction of Justice)** and *42 U.S.C. § 1985(2),* which protect individuals from Interference with their legal rights through coercion or manipulation, were also violated when Plaintiff's objections were suppressed through these unlawful threats.

## C. Judge's Shift from Addressing Legal Violations to Forcing A Financial Settlement

The court hearing, instead of addressing the clear issues of coercion and the need for a fair process, shifted focus solely to financial settlement discussions. **Judge Robert Harris** ignored Plaintiff's requests for a translator and the claims that his own attorneys were coercing him. The judge's direct question to Attorney **Matthew Amarin** About the financial settlement ("How much is the settlement, and how much will Plaintiff Mohamed Haroun receive after all deductions?") was misleading. Attorney Amarin falsely claimed Plaintiff would receive **$1.3 million,** even though Plaintiff was aware that the final amount would be substantially Less due to fraudulent deductions.

This misleading statement constitutes A violation of the Illinois Consumer Fraud and Deceptive Business Practices Act *(815 ILCS 505/1),* which forbids misrepresentations in financial dealings, and the Illinois False Claims Act *(740 ILCS 175/1),* prohibiting fraudulent misrepresentation in legal settlements.

**D. Fraudulent Manipulation of Medical Bills to Reduce Plaintiff's Compensation**

The court, in turn, accepted the fraudulent medical bills presented by the defendants, which inflated medical costs

To create the illusion of A higher settlement payout to Plaintiff. **Judge Harris** referenced A medical bill of

**$572,000,** Falsely claiming that it would be reduced, while in reality, these inflated costs were used to justify

Excessive deductions, ensuring Plaintiff would receive far less than the amount initially promised.

These actions involved A direct violation of Illinois False Claims Act *(740 ILCS 175/1)* and *18 U.S.C. §§ 1341*

And *1343* **(Mail and Wire Fraud),** which prohibit the use of fraudulent statements in financial

Transactions, including billing.

**E. Coercion & Forcing Plaintiff to Sign Under Duress**

Finally, when Plaintiff refused to sign the settlement under duress due to his ongoing medical needs, he was

Physically removed from the Zoom hearing. This forced Plaintiff to sign the settlement without proper

Understanding or A clear breakdown of the fund distribution.

This coercive act violated *42 U.S.C. § 1983,* depriving Plaintiff of his civil rights by manipulating

The legal process under color of law, and *42 U.S.C. § 1985*(2), which protects individuals from conspiracies

To interfere with their access to justice.

## VI. FRAUDULENT POST-HEARING ACTIONS & FINANCIAL MANIPULATION
**A. Fraudulent Reduction of Settlement Funds – Contradictory Email (November 2023)**

Following the coerced settlement, Attorney **Matthew Amarin** sent Plaintiff an email in **November 2023,** stating

That the settlement amount had been reduced to **$850,000,** A significant decrease from the original amount of

**$1.3 million.** This directly contradicted the court's sworn statements, representing fraudulent misrepresentation

And A violation of Illinois Consumer Fraud and Deceptive Business Practices Act *(815 ILCS 505/1).*

*Refer to Exhibit K. [Page 1-12 ] evidence of coercion, financial threats, and fraudulent Legal practices aimed at*

*forcing the plaintiff into an unjust settlement*

**B. Coercion, Extortion & Financial Threats Against Plaintiff**

After the settlement, Attorney **Haytham Faraj** used further threats and coercion to force Plaintiff into compliance,

Claiming that if Plaintiff didn't sign, he would lose access to critical medical treatment and face additional

Deductions from the settlement. These threats, combined with fraudulent invoicing and financial

Misrepresentation, are violations of Illinois Rules of Professional Conduct **(IRPC) Rule 8.4(c)** and

*18 U.S.C. § 1951* (Hobbs Act – Extortion).

These actions by the Defendants constitute A systematic effort to manipulate the legal process, obstruct justice, And deprive Plaintiff of his lawful rights. The fraudulent tactics, economic coercion, and intimidation used Against Plaintiff violate numerous statutes aimed at protecting individuals from such misconduct, including *42 U.S.C. § 1985*(2) and Illinois False Claims Act *(740 ILCS 175/1).*

## VII. POST-SETTLEMENT LEGAL HARASSMENT & INTIMIDATION

### A. Retaliatory Legal Actions Against Plaintiff & His Wife & His Family

**Timeline:** Following Plaintiff's challenge to the fraudulent settlement, attorneys **Haytham Faraj** and **Uber's Legal Team** initiated a coordinated campaign of legal harassment and intimidation, including filing frivolous Lawsuits against Plaintiff and his wife. The aim of these lawsuits was clear: to financially drain Plaintiff and his Family through excessive legal costs and prolonged litigation, and to silence Plaintiff from exposing Fraudulent actions and financial misconduct related to the settlement process.

The Defamation Lawsuit **(Case No.2024L006472)** was A key part of this effort, designed solely to intimidate Plaintiff and prevent him from revealing the true nature of the settlement agreement.

This malicious legal maneuver violated several laws:

Illinois False Claims Act *(740 ILCS 175/1)*, as the fraudulent handling of settlement funds is unlawful.

*42 U.S.C. § 1983* **(Civil Rights Violations Under Color of Law),** as the defendants used legal mechanisms To retaliate against Plaintiff.

*18 U.S.C. § 1513* **(Retaliation Against A Witness or Party),** which criminalizes retaliatory actions aimed at Obstructing A party's access to legal remedies.

Illinois Law Against Malicious Litigation *(735 ILCS 5/2-611),* which prohibits filing false lawsuits with The intent to intimidate.

### B. Coercion & Extortion Attempts by Faraj's Legal Team

Twice, Haytham Faraj sought A restraining order against Plaintiff, claiming that Plaintiff's public statements were Defamatory. These attempts were unsuccessful, as the court ruled in favor of Plaintiff's right to free speech, in Alignment with First Amendment protections. Despite these failures, Faraj and his team escalated their coercion.

**In July 2024,** Faraj presented A fraudulent **$1 million** settlement offer under the condition that Plaintiff:

*Refer to Exhibit U, (2) Audio Recordings – Scott's conversations proving legal coercion and Settlement manipulation.*

**1.** Withdraw all legal complaints against Faraj, Uber, and their attorneys.

2. Remove all public comments and online statements exposing the misconduct.

3. Sign a release for the unlawfully withheld settlement funds.

Faraj's threats of further retaliation included statements such as:

"If you don't comply, I will file lawsuits against your family, friends, and supporters."

"I will financially ruin you and your wife." *Refer to Exhibit L, [Page 6-15 ] Threats, Extortion, and Harassment*

These statements clearly violate federal and state laws prohibiting extortion and coercion:

Illinois Criminal Code – *720 ILCS 5/12-6* **(Intimidation),** as the use of threats to force compliance is

A criminal offense.

*18 U.S.C. § 1951* (Hobbs Act – Extortion Under Color of Official Right), criminalizing economic coercion.

*42 U.S.C. § 1985(2),* which protects against conspiracies designed to interfere with legal

Rights through intimidation.

Illinois Rules of Professional Conduct **(IRPC) Rule 8.4(c),** prohibiting attorneys from engaging in fraudulent,

Dishonest, and coercive conduct.

### C. Secret Emails & Targeting of Plaintiff's Wife & Friend

In an alarming turn, Plaintiff accidentally received an email from Faraj's team that revealed their plan to

Fabricate legal claims against Plaintiff's family members. Initially targeting Plaintiff's **ex-sister-in-law, Faraj's**

Fraudulent tactics were exposed when her testimony disproved the claims, leading him to shift focus to

Plaintiff's wife and A close friend. *Refer to Exhibit L, [Page 7 ] documented evidence targeting the plaintiff, his*

*Family, and friends.*

This evidence of fabricated allegations shows that Faraj and Uber's attorneys were abusing legal procedures to

Punish Plaintiff for challenging their misconduct. The Defamation Lawsuit filed against Plaintiff was

A strategic effort to silence him and prevent further legal action.

**This constitutes further violations of:**

*18 U.S.C. § 1512* **(Tampering with a Witness or Evidence),** criminalizing the fabrication of false allegations.

Illinois Statute *720 ILCS 5/32-4a* **(Obstruction of Justice),** as the use of false claims in court proceedings to

Retaliate against Plaintiff obstructs justice.

Illinois Consumer Fraud Act *(815 ILCS 505/1),* prohibiting unfair and deceptive practices in legal proceedings.

## VIII. LEGAL CLAIMS & FINAL RELIEF REQUESTED

### A. Financial Extortion & Settlement Manipulation

After coercing Plaintiff into signing an unjust settlement, attorneys overseeing the distribution of settlement funds

Continued their fraudulent activities by threatening further deductions if Plaintiff challenged the terms.

**These threats included:**

**1.** Any public challenge to the settlement would result in additional unlawful deductions,

Leaving Plaintiff with minimal or no compensation.

**2.** Any legal action against Haytham Faraj or his associates would result in **A** total forfeiture of

The remaining settlement funds.

The manipulation of the settlement terms to deprive Plaintiff of fair compensation was further compounded

By fraudulent accounting practices. These practices reclassified funds as **"disputed"** to divert payments

To unauthorized third parties, violating:

Illinois False Claims Act *(740 ILCS 175/1),* which prohibits fraudulent handling and

Misappropriation of settlement funds.

Fiduciary Duty Laws, which require attorneys to act in the best interest of their clients and avoid

Conflicts of interest.

### B. LEGAL CLAIMS AGAINST DEFENDANTS

### COUNT I – Fraud & Deceptive Practices

Violation of Illinois Consumer Fraud and Deceptive Business Practices Act *(815 ILCS 505/1),* as

Defendants engaged in fraudulent misrepresentation of financial disbursements and legal obligations.

### COUNT II – Conflict of Interest & Breach of Fiduciary Duty

Violation of Illinois Rules of Professional Conduct **(IRPC) Rule 1.7,** as Defendants acted against

Plaintiff's best interests and engaged in self-serving legal conduct.

### COUNT III – Financial Fraud & Unauthorized Transactions

Violation of Illinois False Claims Act *(740 ILCS 175/1),* as Defendants mismanaged settlement funds

Through fraudulent financial transactions.

**Page 12-15**

**COUNT IV – Witness Intimidation & Obstruction of Justice**

Violation of Illinois Statute *(720 ILCS 5/32-4a),* as Defendants engaged in intimidation to prevent Plaintiff

From seeking justice.

**COUNT V – Retaliatory Legal Harassment & Malicious Prosecution**

Violation of Illinois Laws *(735 ILCS 5/2-611),* as Defendants filed baseless lawsuits against

Plaintiff and his wife as part of a retaliatory legal campaign.

**C. RELIEF REQUESTED (AGAINST UBER TECHNOLOGIES, INC. & CO-CONSPIRATORS)**

**1. Immediate Injunctive Relief**

. Freeze all unlawfully allocated settlement funds until A full forensic financial review is conducted.

. Issue A court injunction prohibiting Uber Technologies, Inc. and its attorneys from engaging in further

Legal retaliation against Plaintiff.

. Request federal oversight over settlement funds to prevent unauthorized financial transfers.

**2. Forensic Audit & Financial Accountability**

. A comprehensive forensic audit to determine how and where the settlement funds were diverted.

. Restitution of all unlawfully deducted funds to Plaintiff.

**3. Damages for Fraud, Coercion & Negligence**

. Compensatory damages of **$3.5 million** for financial losses, medical expenses caused by delayed treatment, and

Emotional distress resulting from fraudulent legal manipulation.

**4. Medical Compensation & Treatment Coverage**

. Reimbursement for all necessary medical procedures that were delayed or denied due to Uber's

fraudulent interference.

. Establishment of A medical trust fund to cover urgent surgical procedures and rehabilitation.

**5. Referral for Federal Investigation**

. Independent federal investigation into the coordination between Uber Technologies, Inc. an

Plaintiff's former attorneys to manipulate the settlement.

. Sanctions against attorneys who engaged in financial fraud, coercion, and obstruction of justice.

## 6. Declaratory Judgment Against Uber

. Declare that Uber engaged in fraudulent legal practices depriving Plaintiff of fair compensation.

. Void all post-settlement legal actions initiated by Uber's attorneys against Plaintiff as retaliation.

## VERIFICATION UNDER PENALTY OF PERJURY

I, Mohamed Rashwan Haroun, declare under penalty of perjury pursuant to *28 U.S.C. § 1746* and

Federal Rule of Civil Procedure **11(b)** that:

**1.** The statements set forth in this complaint are true and correct to the best of my knowledge, information,

And belief.

**2.** This complaint is not being filed for improper purposes, such as harassment, unnecessary delay, or to increase

The cost of litigation.

**3.** The factual contentions made herein have evidentiary support or are likely to have evidentiary support after

A reasonable opportunity for further investigation or discovery.

**4.** I understand my obligation to update this Court should new material facts arise that impact this case.

*Respectfully Submitted:*
*By*
*/s/ Mohamed Haroun*

Mohamed Haroun
109 Heritage Lane
Streamwood IL 60107
224-600-2200
Moa.Haroun@yahoo.com

Signature: _____
02/28/2025

**Page 14-15**

**CERTIFICATE OF SERVICE**

I hereby certify that on February, 28, 2025, I served A true and correct copy of this COMPLAINT Upon The following parties via certified mail and/or electronic mail:

**1. Clerk of the Circuit Court of Cook County**
Richard J. Daley Center
50 W Washington St, Chicago, IL 60602
[By certified mail and/or electronic filing]

**2. Attorneys for Uber Technologies, Inc.**
Faegre Drinker Biddle & Reath LLP (Primary Counsel for Uber)
John J. Powers
Email: john.powers@faegredrinker.com
Address: Four Embarcadero Center, 27th Floor, San Francisco, CA 94111
Phone: (415) 591-7500

Angie K. Hall
Email: angela.hall@faegredrinker.com
Address: 300 N. Meridian St, Suite 2500, Indianapolis, IN 46204
Phone: (317) 237-0300

Colby Anne Kingsbury
Email: kingsbury@faegredrinker.com
Matthew M. Morrissey
Email: matthew.morrissey@faegredrinker.com
Chicago Office:
Faegre Drinker Biddle & Reath LLP
320 S Canal St, Suite 3300, Chicago, IL 60606
Phone: (312) 212-6573 / (773) 835-2423

Wilson Elser Moskowitz Edelman & Dicker LLP (Additional Counsel for Uber)
Loren S. Cohen
Email: Loren.Cohen@wilsonelser.com
Lara Lickhalter
Email: Lara.Lickhalter@wilsonelser.com
Bret Franco
Email: Bret.Franco@wilsonelser.com
Address: 55 West Monroe St, Suite 3800, Chicago, IL 60603
Phone: (312) 469-1000

Franco Moroney Buenik, LLC (Attorney Representing Uber's Deceased Driver)
Christopher G. Buenik
Email: chris.buenik@francomoroney.com
Michelle L. Bisognani
Email: michelle.bisognani@francomoroney.com
Address: 500 W Madison St, Suite 3900, Chicago, IL 60661
Phone: (312) 469-1000

Respectfully Submitted:<br>
By<br>
<em>/s/ Mohamed Haroun</em>

Mohamed Haroun
109 Heritage Lane
Streamwood IL 60107
224-600-2200
Moa.Haroun@yahoo.com

Signature: _____
02/28/2025

## CERTIFICATE OF SERVICE

I hereby certify that on February, 28. 2025, I served A true and correct copy of this Motion to stay upon The following parties via certified mail and/or electronic mail:

**1. Clerk of the Circuit Court of Cook County**
Richard J. Daley Center
50 W Washington St, Chicago, IL 60602
[By certified mail and/or electronic filing]

**2. Attorneys for Uber Technologies, Inc.**
Faegre Drinker Biddle & Reath LLP (Primary Counsel for Uber)
John J. Powers
Email: john.powers@faegredrinker.com
Address: Four Embarcadero Center, 27th Floor, San Francisco, CA 94111
Phone: (415) 591-7500

Angie K. Hall
Email: angela.hall@faegredrinker.com
Address: 300 N. Meridian St, Suite 2500, Indianapolis, IN 46204
Phone: (317) 237-0300

Colby Anne Kingsbury
Email: kingsbury@faegredrinker.com
Matthew M. Morrissey
Email: matthew.morrissey@faegredrinker.com
Chicago Office:
Faegre Drinker Biddle & Reath LLP
320 S Canal St, Suite 3300, Chicago, IL 60606
Phone: (312) 212-6573 / (773) 835-2423

Wilson Elser Moskowitz Edelman & Dicker LLP (Additional Counsel for Uber)
Loren S. Cohen
Email: Loren.Cohen@wilsonelser.com
Lara Lickhalter
Email: Lara.Lickhalter@wilsonelser.com
Bret Franco
Email: Bret.Franco@wilsonelser.com
Address: 55 West Monroe St, Suite 3800, Chicago, IL 60603
Phone: (312) 469-1000

Franco Moroney Buenik, LLC (Attorney Representing Uber's Deceased Driver)
Christopher G. Buenik
Email: chris.buenik@francomoroney.com
Michelle L. Bisognani
Email: michelle.bisognani@francomoroney.com
Address: 500 W Madison St, Suite 3900, Chicago, IL 60661
Phone: (312) 469-1000

Respectfully Submitted:
By
*/s/ Mohamed Haroun*

Mohamed Haroun
109 Heritage Lane
Streamwood IL 60107
224-600-2200
Moa.Haroun@yahoo.com

Signature: _____
02/28/2025

**Page 1-1**

MEDICAL AND PSYCHOLOGICAL RECORD'S

# EXHIBIT'S

| | | |
|---|---|---|
| X | 21 | PAGE'S |
| XI | 13 | PAGE'S |
| XII | 10 | PAGE'S |
| XIII | 4 | PAGE'S |

## TOTAL 48 PAGE'S

Mohamed Haroun
109 Heritage Lane
Streamwood IL 60107
224-600-2200
Moa.Haroun@yahoo.com

Signature: _____
              02/28/2025

**EXHIBIT'S (X, XI, XII, XIII ( 48 PAGE'S)**
**MEDICAL AND PSYCHOLOGICAL RECORD'S**

This document contains summaries for all key Exhibits **(X, XI, XII, XIII),** detailing medical and
Psychological records relevant to the plaintiff's case.

### EXHIBIT X SUMMARY (21 Pages)

This Exhibit provides **A** selection of **21** pages summarizing key medical records related to
The plaintiff's spinal injuries before legal interference. The records document diagnoses, surgical interventions,
And follow-up treatments that demonstrate the plaintiff's medical condition and the necessity of continued care.

### Exhibit X: Dr. Farooq Khan (Pages 1-6)

Provided pain management and non-surgical treatments for spinal conditions.
Records include diagnoses, treatment plans, and injection procedures.
Demonstrates initial improvement before legal and insurance interference.

### Exhibit X: Dr. Robert Erickson (Pages 7-12)

Performed lumbar and cervical discectomy and fusion surgeries.
Surgical reports document procedures on **L4-L5, L5-S1, C4-C5, and C5-C6.**
Post-operative notes confirm improvement and necessity of procedures.

### Exhibit X: Dr. Brian Stenke (Pages 13-18)

Continued orthopedic care and post-surgical rehabilitation.
Reports highlight worsening lumbar radiculopathy and cervical pain.
Follow-ups confirm the need for further treatment and pain management.

### Exhibit X: Additional Medical Reports (Pages 19-21)

Includes referrals and procedural documentation from Alexian Brothers Neurosciences Institute.
Confirms severe nerve compression requiring further neurological intervention.
Highlights delays in insurance approval, exacerbating medical suffering.

### Conclusion:

**Exhibit X** documents necessary spinal treatment, delayed due to legal and insurance obstacles, affecting
The plaintiff's recovery and quality of life.

### EXHIBIT XI SUMMARY (13 Pages)

This exhibit details the plaintiff's mental health treatment and psychological impact due to legal and medical
challenges, covering records from **2019-2024.**

### Key Pages:

**Pages 1-2:** Initial psychological assessment documenting depression, anxiety, memory difficulties, and frustration.
**Pages 3-4:** Therapy notes from **2020,** focusing on coping strategies for stress and frustration due to legal pressures.
**Pages 5-6:** Psychological strain from delayed medical and legal resolutions.
**Pages 7-9:** Impact of financial and legal stress, feelings of betrayal due to manipulation.
**Pages 10-13:** Ongoing therapy focusing on emotional resilience and daily stress management.

**Page 1-2**

**Conclusion:**

Exhibit XI documents the lasting psychological toll caused by prolonged legal battles, demonstrating
The need for continued psychiatric support.

**EXHIBIT XII SUMMARY (10 Pages)**

This Exhibit presents neuropsychological evaluations and cognitive assessments detailing the plaintiff's memory
Impairment and cognitive challenges **since 2019.**

**Key Pages:**

**Page 1:** Referral for driving evaluation due to cognitive impairment.
**Page 2:** Official diagnosis of memory impairment **(Other Amnesia, ICD-10: R41.3).**
**Pages 3-4:** Neuropsychological evaluation confirming cognitive decline, difficulty remembering destinations,
Medications, and tasks.
**Pages 5-6:** Behavioral observations revealing concentration and orientation issues.
**Pages 7-10:** Recommendations for structured cognitive support and monitoring.

**Conclusion:**

**Exhibit XII** demonstrates significant memory impairment, affecting daily life and legal ability,
Equiring ongoing evaluations and medical support.

**EXHIBIT XIII SUMMARY (4 Pages)**

This exhibit covers severe obstructive sleep apnea **(OSA)** and its psychological impact on
The plaintiff's daily functioning.

**Key Pages:**

**Page 1:** Diagnosis of severe obstructive sleep apnea, requiring CPAP therapy.
**Page 2:** Follow-up evaluation and desensitization protocol for CPAP therapy.
**Page 3:** Prescription documentation for A ResMed CPAP machine.
**Page 4:** X-ray confirming cervical complications requiring additional surgery.

**Conclusion:**

**Exhibit XIII** demonstrates the necessity of CPAP therapy, with OSA compounding anxiety and depression,
Further impairing the plaintiff's well-being.

## EXHIBIT X ( 21 PAGE'S )

This Exhibit contains A selection of **21 pages** summarizing key medical records related to the plaintiff's Treatment for spinal injuries before legal interference. The records document diagnoses, surgical interventions, And follow-up treatments that demonstrate the plaintiff's medical condition and the necessity of continued care. This summary provides an overview of each section:

### EXHIBIT X: Dr. Farooq Khan (Pages 1-6)

Dr. Farooq Khan provided pain management and non-surgical treatments for the plaintiff's back and neckconditions.

Records include detailed diagnoses, treatment plans, and injection procedures performed to relieve chronic pain.

Demonstrates initial improvement in symptoms before legal and insurance interference disrupted treatment.

### EXHIBIT X: Dr. Robert Erickson (Pages 7-12)

Dr. Erickson performed major spinal surgeries, including lumbar and cervical discectomy and fusion.

Surgical reports detail procedures on **L4-L5, L5-S1, C4-C5, and C5-C6** to address severe disc herniation and

Nerve compression.

Post-operative notes confirm improvement in function and pain relief, emphasizing

The necessity of these interventions.

### EXHIBIT X: Dr. Brian Stenke (Pages 13-18)

Dr. Stenke's records document continued orthopedic care and post-surgical rehabilitation.

Reports highlight persistent spinal issues, including worsening lumbar radiculopathy and cervical pain.

Follow-up visits confirm the need for further treatment and pain management.

### EXHIBIT X: Additional Medical Reports (Pages 19-21)

Includes medical referrals and procedural documentation from Alexian Brothers Neurosciences Institute.

Documents referrals to **Dr. Bryan Bertoglio** for neurological surgery, confirming severe nerve compression.

Notes systemic delays in obtaining insurance approval for necessary spinal surgeries.

Highlights barriers in accessing timely care, exacerbating the plaintiff's medical suffering.

**Conclusion:**

**EXHIBIT X SUMMARY** presents A documented history of necessary medical treatment for severe spinal injuries,

Including Multiple surgeries and ongoing pain management. The records demonstrate a pattern of delayed and

Obstructed Care due to legal interference, insurance denials, and systemic obstacles.

This summary provides a concise selection from A broader medical record that is available upon request.

## EXHIBIT'S (X, XI, XII, XIII ( 48 PAGE'S) SUMMARIES

This document contains summaries for all key Exhibits **(X, XI, XII, XIII),** detailing medical and Psychological records relevant to the plaintiff's case.

### EXHIBIT X SUMMARY (21 Pages)

This Exhibit provides **A** selection of **21** pages summarizing key medical records related to The plaintiff's spinal injuries before legal interference. The records document diagnoses, surgical interventions, And follow-up treatments that demonstrate the plaintiff's medical condition and the necessity of continued care.

### Exhibit X: Dr. Farooq Khan (Pages 1-6)

Provided pain management and non-surgical treatments for spinal conditions.
Records include diagnoses, treatment plans, and injection procedures.
Demonstrates initial improvement before legal and insurance interference.

### Exhibit X: Dr. Robert Erickson (Pages 7-12)

Performed lumbar and cervical discectomy and fusion surgeries.
Surgical reports document procedures on **L4-L5, L5-S1, C4-C5, and C5-C6.**
Post-operative notes confirm improvement and necessity of procedures.

### Exhibit X: Dr. Brian Stenke (Pages 13-18)

Continued orthopedic care and post-surgical rehabilitation.
Reports highlight worsening lumbar radiculopathy and cervical pain.
Follow-ups confirm the need for further treatment and pain management.

### Exhibit X: Additional Medical Reports (Pages 19-21)

Includes referrals and procedural documentation from Alexian Brothers Neurosciences Institute.
Confirms severe nerve compression requiring further neurological intervention.
Highlights delays in insurance approval, exacerbating medical suffering.

### Conclusion:

**Exhibit X** documents necessary spinal treatment, delayed due to legal and insurance obstacles, affecting The plaintiff's recovery and quality of life.

### EXHIBIT XI SUMMARY (13 Pages)

This exhibit details the plaintiff's mental health treatment and psychological impact due to legal and medical challenges, covering records from **2019-2024.**

### Key Pages:

**Pages 1-2:** Initial psychological assessment documenting depression, anxiety, memory difficulties, and frustration.
**Pages 3-4:** Therapy notes from **2020,** focusing on coping strategies for stress and frustration due to legal pressures.
**Pages 5-6:** Psychological strain from delayed medical and legal resolutions.
**Pages 7-9:** Impact of financial and legal stress, feelings of betrayal due to manipulation.
**Pages 10-13:** Ongoing therapy focusing on emotional resilience and daily stress management.

**Conclusion:**

Exhibit XI documents the lasting psychological toll caused by prolonged legal battles, demonstrating
The need for continued psychiatric support.

**EXHIBIT XII SUMMARY (10 Pages)**

This Exhibit presents neuropsychological evaluations and cognitive assessments detailing the plaintiff's memory
Impairment and cognitive challenges **since 2019.**

**Key Pages:**

**Page 1:** Referral for driving evaluation due to cognitive impairment.
**Page 2:** Official diagnosis of memory impairment **(Other Amnesia, ICD-10: R41.3).**
**Pages 3-4:** Neuropsychological evaluation confirming cognitive decline, difficulty remembering destinations,
Medications, and tasks.
**Pages 5-6:** Behavioral observations revealing concentration and orientation issues.
**Pages 7-10:** Recommendations for structured cognitive support and monitoring.

**Conclusion:**

**Exhibit XII** demonstrates significant memory impairment, affecting daily life and legal ability,
Equiring ongoing evaluations and medical support.

**EXHIBIT XIII SUMMARY (4 Pages)**

This exhibit covers severe obstructive sleep apnea **(OSA)** and its psychological impact on
The plaintiff's daily functioning.

**Key Pages:**

**Page 1:** Diagnosis of severe obstructive sleep apnea, requiring CPAP therapy.
**Page 2:** Follow-up evaluation and desensitization protocol for CPAP therapy.
**Page 3:** Prescription documentation for A ResMed CPAP machine.
**Page 4: X-ray** confirming cervical complications requiring additional surgery.

**Conclusion:**

**Exhibit XIII** demonstrates the necessity of CPAP therapy, with OSA compounding anxiety and depression,
Further impairing the plaintiff's well-being.

RECEIVED  02/11/2025 05:42PM

*EXHIBIT X PAGE 1*

1/30/25, 2:28 PM

Summary View for Haroun, Mohamed



## Haroun, Mohamed
39 Y old  Male, DOB: 11/08/1977
Account Number: 56921
143 W Elk Trail, 342, Carol Stream, IL-60188
Home: 224-600-2200
Guarantor: Haroun, Mohamed   Insurance: INSURANCE
DOWNTOWN Payer ID: PAPER
Appointment Facility: Grand Avenue Surgical Center

05/09/2017

ProgressNotes: FAROOQ A. KHAN, M.D.

### Past Medical History
Asthma.
COPD.

### Allergies
N.K.D.A.

### Review of Systems
General/Constitutional:
Denies Chills. Denies Fever. Denies Sleep disturbance.
Allergy/Immunology:
Denies HIV Positive. Denies Rash.
Respiratory:
Denies Chest pain. Denies Shortness of breath.
Cardiovascular:
Denies Chest pain. Denies Shortness of breath.
Gastrointestinal:
Denies Change in bowel habits.
Denies Constipation.
Genitourinary:
Patient denies dysuria, frequency, incontinence, retention, flank pain.
Musculoskeletal:
Patient complaining of neck pain, back pain. Admits Weakness, BILATERAL lower extremities, RIGHT upper extremity.
Skin:
Denies Hives. Denies Rash.
Neurologic:
Denies Balance difficulty. Denies Gait abnormality. Denies Loss of strength.
Denies Loss of use of extremity.
Denies Paralysis.
Admits Tingling/Numbness, BILATERAL lower extremities, RIGHT upper extremity.

### Reason for Appointment
1. Lumbar Pain
2. Cervical Pain
3. Myofascial Pain

### History of Present Illness
Initial Presentation:
The patient is a 39 year old male with no significant PMHx who was in his usual state of health on 3/3/2017.
He was riding as a passenger in an Uber in the right-sided back seat with his brother in the front passenger seat. Patient was restrained. Uber driver attempted a U-turn and was struck by another car traveling at approximately 45 mph.
Patient denies any loss of consciousness. Patient waited approximately 45 minutes for EMS to arrive to scene before leaving without medical treatment. Patient did not present to any ER, as he had a pressing family issue to attend to in Egypt.
Patient reports that he was evaluated by a physician in Egypt who recommended that the patient not travel and rest, however, since then pain has remained constant.
Patient reports two areas of chief pain, first being located in the lumbar region radiating into the BILATERAL lower extremities in an anterior and lateral distribution with associated intermittent tingling and weakness. Additionally, patient has cervical pain radiating predominately into the RIGHT hand and last 2 digits with associated numbness and tingling.
Patient works a a garage door installer, owning his own business, which proves to be difficult secondary to pain complaints. Pain is exacerbated with looking up and down, using his RIGHT hand, and lifting objects over 5-8 pounds secondary to cervical and lumbar pain. Patient has greatly reduced his working hours secondary to pain complaints.
Pain has failed to improve with conservative measures, including OTC analgesics, rest, ice, and stretching.
Description of Pain:
Patient denies frank loss of motor function, loss of sensation, changes in bowel or bladder function.
Prior Pain Management Strategies:
Other: Prior treatments include: rest, ice, heat, stretching, home exercise, over the counter medications.

### Examination
General Examination:
GENERAL APPEARANCE: in no acute distress, well developed, well nourished.
HEAD: normocephalic, atraumatic.
Psychiatry:

# Modern Pain Consultants

**Haroun, Mohamed**
39 Y old Male, DOB: 11/08/1977
Account Number: 5631
143 W Elk Trail, 342, Carol Stream, IL-60188
Home: 224-600-2200
Guarantor: Haroun, Mohamed   Insurance: UNKNOWN
INSURANCE DOWNTOWN Payer ID: PAPER
Appointment Facility: LaGrange Modern Pain Consultants

07/20/2017                                    ProgressNotes: FAROOQ A. KHAN, M.D.

## Past Medical History
Asthma.
COPD.

## Allergies
N.K.D.A.

## Review of Systems
General/Constitutional:
   Denies Chills. Denies Fever. Denies Sleep disturbance.
Allergy/Immunology:
   Denies HIV Positive. Denies Rash.
Respiratory:
   Denies Chest pain. Denies Shortness of breath.
Cardiovascular:
   Denies Chest pain. Denies Shortness of breath.
Gastrointestinal:
   Denies Change in bowel habits.
Denies Constipation.
Musculoskeletal:
   Patient complaining of low back pain.
Denies Weakness.
Skin:
   Denies Hives. Denies Rash.
Neurologic:
   Denies Balance difficulty. Denies Gait abnormality. Denies Loss of strength.
Denies Loss of use of extremity.
Denies Paralysis. Denies Tingling/Numbness.

## Reason for Appointment
1. Lumbar pain
2. Myofascial pain
3. Cervical Pain

## History of Present Illness
Initial Presentation:
   The patient is a 39 year old male with no significant PMHx who was in his usual state of health on 3/3/2017.
   He was riding as a passenger in an Uber in the right-sided back seat with his brother in the front passenger seat. Patient was restrained. Uber driver attempted a U-turn and was struck by another car traveling at approximately 45 mph.
   Patient denies any loss of consciousness. Patient waited approximately 45 minutes for EMS to arrive to scene before leaving without medical treatment. Patient did not present to any ER, as he had a pressing family issue to attend to in Egypt.
   Patient reports that he was evaluated by a physician in Egypt who recommended that the patient not travel and rest, however, since then pain has remained constant.
   Patient reports two areas of chief pain, first being located in the lumbar region radiating into the BILATERAL lower extremities in an anterior and lateral distribution with associated intermittent tingling and weakness. Additionally, patient has cervical pain radiating predominately into the RIGHT hand and last 2 digits with associated numbness and tingling.
   Patient works a a garage door installer, owning his own business, which proves to be difficult secondary to pain complaints. Pain is exacerbated with looking up and down, using his RIGHT hand, and lifting objects over 5-8 pounds secondary to cervical and lumbar pain. Patient has greatly reduced his working hours secondary to pain complaints.
   Pain has failed to improve with conservative measures, including OTC analgesics, rest, ice, and stretching.
Follow Up Course:
   6/8/17: Patient reports 80% relief for 2 weeks with TF ESI BILATERAL L4, L5 performed on 5/20/17, however, patient states that his pain has now returned back to baseline severity. Patient additionally reports right hip and mild cervical pain, however, his lumbar pain continues to be his worst pain component. PT is ongoing. Patient states that his physical therapist recommended a soft neck brace to wear when driving.

   7/20/17: The patient presents to the pain management clinic for re-evaluation of pain complaints.
   Patient reports that currently his worst component of pain is in the cervical spine. He states that he is now experiencing radicular symptoms in his BILATERAL upper extremities (RIGHT>left). Patient reports associated

Case: 1:25-cv-02150 Document #: 1 Filed: 02/28/25 Page 24 of 314 PageID #:24

*EXHIBIT X PAGE 3*



**Modern Pain Consultants**

## Haroun, Mohamed
39 Y old Male, DOB: 11/08/1977
Account Number: 56521
143 W Elk Trail, 342, Carol Stream, IL-60188
Home: 224-600-2200
Guarantor: Haroun, Mohamed   Insurance: INSURANCE
DOWNTOWN Payer ID: PAPER
Appointment Facility: Grand Avenue Surgical Center

05/09/2017                                           ProgressNotes:  FAROOQ A. KHAN, M.D.

**Past Medical History**
Asthma.
COPD.

**Allergies**
N.K.D.A.

**Review of Systems**
General/Constitutional:
Denies Chills. Denies Fever. Denies Sleep disturbance.
Allergy/Immunology:
Denies HIV Positive. Denies Rash.
Respiratory:
Denies Chest pain. Denies Shortness of breath.
Cardiovascular:
Denies Chest pain. Denies Shortness of breath.
Gastrointestinal:
Denies Change in bowel habits.
Denies Constipation.
Genitourinary:
Patient denies dysuria, frequency, incontinence, retention, flank pain.
Musculoskeletal:
Patient complaining of neck pain, back pain. Admits Weakness, BILATERAL lower extremities, RIGHT upper extremity.
Skin:
Denies Hives. Denies Rash.
Neurologic:
Denies Balance difficulty. Denies Gait abnormality. Denies Loss of strength. Denies Loss of use of extremity.
Denies Paralysis.
Admits Tingling/Numbness, BILATERAL lower extremities, RIGHT upper extremity.

**Reason for Appointment**
1. Lumbar Pain
2. Cervical Pain
3. Myofascial Pain

**History of Present Illness**
Initial Presentation:
    The patient is a 39 year old male with no significant PMHx who was in his usual state of health on 3/3/2017.
    He was riding as a passenger in an Uber in the right-sided back seat with his brother in the front passenger seat. Patient was restrained. Uber driver attempted a U-turn and was struck by another car traveling at approximately 45 mph.
    Patient denies any loss of consciousness. Patient waited approximately 45 minutes for EMS to arrive to scene before leaving without medical treatment. Patient did not present to any ER, as he had a pressing family issue to attend to in Egypt.
    Patient reports that he was evaluated by a physician in Egypt who recommended that the patient not travel and rest, however, since then pain has remained constant.
    Patient reports two areas of chief pain, first being located in the lumbar region radiating into the BILATERAL lower extremities in an anterior and lateral distribution with associated intermittent tingling and weakness. Additionally, patient has cervical pain radiating predominately into the RIGHT hand and last 2 digits with associated numbness and tingling.
    Patient works a a garage door installer, owning his own business, which proves to be difficult secondary to pain complaints. Pain is exacerbated with looking up and down, using his RIGHT hand, and lifting objects over 5-8 pounds secondary to cervical and lumbar pain. Patient has greatly reduced his working hours secondary to pain complaints.
    Pain has failed to improve with conservative measures, including OTC analgesics, rest, ice, and stretching.
Description of Pain:
    Patient denies frank loss of motor function, loss of sensation, changes in bowel or bladder function.
Prior Pain Management Strategies:
    Other: Prior treatments include: rest, ice, heat, stretching, home exercise, over the counter medications.

**Examination**
General Examination:
    GENERAL APPEARANCE: in no acute distress, well developed, well nourished.
    HEAD: normocephalic, atraumatic.
Psychiatry:



## Modern Pain Consultants

**Haroun, Mohamed**
39 Y old Male, DOB: 11/08/1977
Account Number: 56321
143 W Elk Trail, 342, Carol Stream, IL-60188
Home: 224-600-2200
Guarantor: Haroun, Mohamed
Appointment Facility: Morris Modern Pain Consultants

06/17/2017

ProgressNotes: FAROOQ A. KHAN, M.D.

### Reason for Appointment
1. Lumbar pain
2. BL LE pain
3. MVA
4. Myofascial pain

### History of Present Illness
Constitutional:

Complaint of lumbar pain, variable radiation into the BL LE in anterolateral fashion associated with MVA.

Reviewed the significant risks as well as benefits of this procedure with the patient in detail including but not limited to spinal cord or nerve root damage or compression, adverse effects from medications injected, epidural abscess or hemorrhage, discitis, osteomyelitis, inadvertent intravascular injection or damage to the paraspinous muscles.

Benefits include increased tolerance for physical activity in range, decreased reliance on medications via reduction or elimination of pain. Additionally, response to intervention may provide diagnostic information even if it does not provide overt pain relief.

Questions answered, patient chooses to proceed.

Reported significant improvement with initial series of injections the pain is started to return.

Continues physical therapy also complaining of right-sided SI joint pain and persisting cervical myofascial pain with minimal radiation of bilateral shoulders.

### Assessments
1. Bulging lumbar disc - M51.26 (Primary)
2. Low back pain - M54.5
3. Lumbar disc displacement without myelopathy - M51.26
4. Lumbar radiculitis - M54.16
5. Motor vehicle accident, subsequent encounter - V89.2XXD
6. Myofascial pain - M79.1
7. Sacroiliitis - M46.1

### Procedures
Lumbar TFESI:

Khan Lumbar TF ESI **Procedure: Lumbar Transforaminal Epidural Steroid Injection**Procedural pause conducted to verify: patient identity, procedure to be performed, review of allergies, coagulation status, and as applicable correct side and site, correct patient position, and availability of special equipment, implants, or other special equipment.The patient was brought to Fluoroscopy Suite and placed in a prone, pillow-supported position on the C-arm table.MAC sedation please see separate anesthesia record. Aseptic skin preparation using Chloraprep. Sterile drape applied. Aseptic technique employed throughout the

Case: 1:25-cv-02150 Document #: 1 Filed: 02/28/25 Page 26 of 314 PageID #:26

*EXHIBIT X PAGE 5*


# Modern Pain
## Consultants

**Haroun, Mohamed**
39 Y old Male, DOB: 11/08/1977
Account Number: 56321
143 W Elk Trail, 342, Carol Stream, IL-60188
Home: 224-600-2200
Guarantor: Haroun, Mohamed   Insurance: UNKNOWN
INSURANCE DOWNTOWN Payer ID: PAPER
Appointment Facility: LaGrange Modern Pain Consultants

---

**08/16/2017**                                                  ProgressNotes: FAROOQ A. KHAN, M.D.

**Past Medical History**
   Asthma.
   COPD.

**Review of Systems**
General/Constitutional:
   Denies Chills. Denies Fever. Denies Sleep disturbance.
Allergy/Immunology:
   Denies HIV Positive. Denies Rash.
Respiratory:
   Denies Chest pain. Denies Shortness of breath.
Cardiovascular:
   Denies Chest pain. Denies Shortness of breath.
Gastrointestinal:
   Denies Change in bowel habits.
Denies Constipation.
Musculoskeletal:
   Patient complaining of low back pain and neck pain. Admits Weakness, BILATERAL hands and BILATERAL lower extremities.
Skin:
   Denies Hives. Denies Rash.
Neurologic:
   Denies Balance difficulty. Denies Gait abnormality. Denies Loss of strength.
Denies Loss of use of extremity.
Denies Paralysis.
Admits Tingling/Numbness, BILATERAL hands and BILATERAL lower extremities.

**Reason for Appointment**
1. Lumbar pain
2. Myofascial pain
3. Cervical Pain

**History of Present Illness**
Initial Presentation:
   The patient is a 39 year old male with no significant PMHx who was in his usual state of health on 3/3/2017.
   He was riding as a passenger in an Uber in the right-sided back seat with his brother in the front passenger seat. Patient was restrained. Uber driver attempted a U-turn and was struck by another car traveling at approximately 45 mph.
   Patient denies any loss of consciousness. Patient waited approximately 45 minutes for EMS to arrive to scene before leaving without medical treatment. Patient did not present to any ER, as he had a pressing family issue to attend to in Egypt.
   Patient reports that he was evaluated by a physician in Egypt who recommended that the patient not travel and rest, however, since then pain has remained constant.
   Patient reports two areas of chief pain, first being located in the lumbar region radiating into the BILATERAL lower extremities in an anterior and lateral distribution with associated intermittent tingling and weakness. Additionally, patient has cervical pain radiating predominately into the RIGHT hand and last 2 digits with associated numbness and tingling.
   Patient works a a garage door installer, owning his own business, which proves to be difficult secondary to pain complaints. Pain is exacerbated with looking up and down, using his RIGHT hand, and lifting objects over 5-8 pounds secondary to cervical and lumbar pain. Patient has greatly reduced his working hours secondary to pain complaints.
   Pain has failed to improve with conservative measures, including OTC analgesics, rest, ice, and stretching.
Follow Up Course:
   6/8/17: Patient reports 80% relief for 2 weeks with TF ESI BILATERAL L4, L5 performed on 5/20/17, however, patient states that his pain has now returned back to baseline severity. Patient additionally reports right hip and mild cervical pain, however, his lumbar pain continues to be his worst pain component. PT is ongoing. Patient states that his physical therapist recommended a soft neck brace to wear when driving.

   7/20/17: Patient reports that currently his worst component of pain is in the cervical spine. He states that he is now experiencing radicular symptoms in his BILATERAL upper extremities (RIGHT>left). Patient reports associated INCREASED numbness and tingling in the RIGHT>left upper extremities. Patient is currently wearing a soft neck brace. Patient

---

Patient: Haroun, Mohamed   DOB: 11/08/1977   Progress Note: FAROOQ A. KHAN, M.D.   08/16/2017

1/30/25, 2:26 PM

*EXHIBIT X PAGE 6*

Summary View for Haroun, Mohamed



**Haroun, Mohamed**
39 Y old Male, DOB: 11/08/1977
Account Number: 5631
143 W Elk Trail, 342, Carol Stream, IL-60188
Home: 224-600-2200
Guarantor: Haroun, Mohamed Insurance: INSURANCE
DOWNTOWN Payer ID: PAPER
Appointment Facility: LaGrange Modern Pain Consultants

10/05/2017                                        ProgressNotes: FAROOQ A. KHAN, M.D.

**Past Medical History**
Asthma.
COPD.

**Review of Systems**
General/Constitutional:
Denies Chills. Denies Fever. Denies Sleep disturbance.
Allergy/Immunology:
Denies HIV Positive. Denies Rash.
Respiratory:
Denies Chest pain. Denies Shortness of breath.
Cardiovascular:
Denies Chest pain. Denies Shortness of breath.
Gastrointestinal:
Denies Change in bowel habits.
Denies Constipation.
Musculoskeletal:
Patient complaining of low back pain and neck pain. Admits Weakness, BILATERAL hands and BILATERAL lower extremities.
Skin:
Denies Hives. Denies Rash.
Neurologic:
Denies Balance difficulty. Denies Gait abnormality. Denies Loss of strength.
Denies Loss of use of extremity.
Denies Paralysis.
Admits Tingling/Numbncia, BILATERAL hands and BILATERAL lower extremities.

**Reason for Appointment**
1. Lumbar pain
2. Myofascial pain
3. Cervical Pain

**History of Present Illness**
Initial Presentation:
The patient is a 39 year old male with no significant PMHx who was in his usual state of health on 3/3/2017.
He was riding as a passenger in an Uber in the right-sided back seat with his brother in the front passenger seat. Patient was restrained. Uber driver attempted a U-turn and was struck by another car traveling at approximately 45 mph.
Patient denies any loss of consciousness. Patient waited approximately 45 minutes for EMS to arrive to scene before leaving without medical treatment. Patient did not present to any ER, as he had a pressing family issue to attend to in Egypt.
Patient reports that he was evaluated by a physician in Egypt who recommended that the patient not travel and rest, however, since then pain has remained constant.
Patient reports two areas of chief pain, first being located in the lumbar region radiating into the BILATERAL lower extremities in an anterior and lateral distribution with associated intermittent tingling and weakness. Additionally, patient has cervical pain radiating predominately into the RIGHT hand and last 2 digits with associated numbness and tingling.
Patient works a a garage door installer, owning his own business, which proves to be difficult secondary to pain complaints. Pain is exacerbated with looking up and down, using his RIGHT hand, and lifting objects over 5-8 pounds secondary to cervical and lumbar pain. Patient has greatly reduced his working hours secondary to pain complaints.
Pain has failed to improve with conservative measures, including OTC analgesics, rest, ice, and stretching.
Follow Up Course:
6/8/17: Patient reports 80% relief for 2 weeks with TF ESI BILATERAL L4, L5 performed on 5/20/17, however, patient states that his pain has now returned back to baseline severity. Patient additionally reports right hip and mild cervical pain, however, his lumbar pain continues to be his worst pain component. PT is ongoing. Patient states that his physical therapist recommended a soft neck brace to wear when driving.

7/20/17: Patient reports that currently his worst component of pain is in the cervical spine. He states that he is now experiencing radicular symptoms in his BILATERAL upper extremities (RIGHT>left). Patient reports associated INCREASED numbness and tingling in the RIGHT>left upper extremities. Patient is currently wearing a soft neck brace. Patient

*EXHIBIT X PAGE 7*



**MICRO NEURO SPINE**

P. 312.774.2550
F. 312.264.0993

Address: 1020 S.STATE STREET SUITE C000
CHICAGO IL 60605

## PATIENT STATUS FORM

| Patient Name: | MOHAMMED HAROON | | Type of visit | ☐ IC ☒ FU | Last visit was at | |
|---|---|---|---|---|---|---|
| DOB: 9/3/21 | INS.: | ☐ WC ☐ MVA ☐ PI ☐ DOL ☐ Ins. | DOB: 11/8/77 | DOI: 3/30/17 | Next appt. on | |
| Diagnosis: | | | | | | |

### PLAN OF TREATMENT:

☐ Procedure:  L 3-4 hemilaminectomy  (RIGHT → L)

| | ☐ Today | ☐ At next appointment | ☐ Pending authorization | ☐ Pending MRI / EMG /SSEP results |
|---|---|---|---|---|
| Anesthesia: | ☐ MAC | ☐ Local | ☐ per medical necessity | ☐ per patient's request |
| ☐ Follow-u visit: | ☐ At next appointment | ☐ After the procedure | | |

| ☐ Medication: ☐ Today ☐ At the next visit | ☐ Lumbar brace ☐ Received | ☐ Cervical collar ☐ Received | ☐ Compound cream ☐ Ordered ☐ Received | ☐ Ice treatment ☐ Received | ☐ Physical Therapy |
|---|---|---|---|---|---|
| ☐ Patient has reached MMI | ☐ Discharged from our care | Referred to: | | | |
| Other | | | | | |

### ORDERS:

| ☒ MRI w/o contrast of: | ☒ Cervical spine ☐ Lumbo-sacral spine ☐ Thoracic spine ☐ Other:___ | ☐ Shoulder ☐ Lt ☐ Rt ☐ Hip ☐ Lt ☐ Rt ☐ Knee ☐ Lt ☐ Rt ☐ Wrist ☐ Lt ☐ Rt | ☐ EMG of: | ☐ Upper extremities ☐ Lt ☐ Rt ☐ Lower extremities ☐ Lt ☐ Rt ☐ Other:___ | ☐ Work Conditioning | ☐ Functional Capacity Evaluation (FCE) | ☐ SSEP |
|---|---|---|---|---|---|---|---|
| | | | ☐ CPM Therapy | ☐ Vasotherm Therapy | | | |

Other  ✗ need to review new C-sp. MRI pre-op

### WORK STATUS:

☐ Patient CAN NOT WORK.

☐ Patient CAN WORK with no restrictions.

☐ Patient may continue regular work duty on: _____

☐ If the following RESTRICTIONS can NOT be accommodated, patient is to be OFF WORK.

☐ Patient MAY RETURN to work on _____ with the following RESTRICTIONS:

   ☐ No use of upper extremities  ☐ No use of lower extremities  ☐ No use of injured part

   ☐ No lifting / carrying greater than ____ lbs.  ☐ No pulling / pushing greater than ____ lbs.

   ☐ No lifting above:  ☐ Knees  ☐ Waist  ☐ Chest  ☐ Shoulder

   ☐ No: ☐ Bending / squatting  ☐ Climbing ladders / stairs  ☐ Kneeling / crawling

   ☐ No prolonged: ☐ Standing  ☐ Sitting  ☐ Walking

   ☐ No operating machinery  ☐ No power tools / vibratory tools  ☐ No driving  ☐ No travelling

   ☐ No exposure to extreme: ☐ Heat  ☐ Cold  ☐ Humidity

   ☐ Limited hours of work per day: _____ hours.

☐ Additional comments: _____

Date: 9/2/21

Notes: _____

Physician __DR ROBERT ERICKSON__

Address _____

_____

*EXHIBIT X PAGE 8*

Phone 847 232 3800
Fax: 847 730 4534
Clinical Coordinator 847 232 3800

## PATIENT STATUS FORM

| Patient Name: | Mohamed Haroun | | | Type of visit: | ☒ IC ☐ FU | Last visit was at: | 10-11-17. |
|---|---|---|---|---|---|---|---|
| DOS: 10/11/17 | INS.: | ☐ WC ☒ MVA ☐ PI ☐ DOL ☐ Ins. | DOB: 11/8/1977 | DOI: 3/30/17 | Next appt. on | 4-6 WKS. | |

### PLAN OF TREATMENT:

☐ **Procedure:** hemilamny L4-S1 (R)

☐ Today ☐ At next appointment ☐ Pending authorization ☐ Pending MRI / EMG /SSEP results

| Anesthesia: | ☐ MAC | ☐ Local | ☐ per medical necessity | ☐ per patient's request |
|---|---|---|---|---|

☐ **Follow-up visit:** ☐ At next appointment ☐ After the procedure

| ☐ Medication: ☐ Today ☐ At the next visit | ☐ Lumbar brace ☐ Received | ☐ Cervical collar ☐ Received | ☐ Compound cream ☐ Ordered ☐ Received | ☐ Ice treatment ☐ Received | ☐ Physical Therapy |
|---|---|---|---|---|---|
| ☐ Patient has reached MMI | ☐ Discharged from our care | Referred to: | | | |
| Other | | | | | |

### ORDERS:

| ☐ MRI w/o contrast of: | ☐ Cervical spine ☐ Lumbo-sacral spine ☐ Thoracic spine ☐ Other: _____ | ☐ Shoulder ☐ Lt ☐ Rt ☐ Hip ☐ Lt ☐ Rt ☐ Knee ☐ Lt ☐ Rt ☐ Wrist ☐ Lt ☐ Rt | ☐ EMG ☐ Upper extremities ☐ Lt ☐ Rt of: ☐ Lower extremities ☐ Lt ☐ Rt ☐ Other: _____ ☐ CPM Therapy ☐ Vasautherm Therapy | ☐ Work Conditioning | ☐ Functional Capacity Evaluation (FCE) | ☐ SSEP |
|---|---|---|---|---|---|---|
| Other | | C MRI dneeded missing / NEED REPORTS TOO | | | | |

### WORK STATUS:

☒ Patient CAN NOT WORK.

☐ Patient CAN WORK with no restrictions.

☐ Patient may continue regular work duty on: _____

☐ If the following RESTRICTIONS can NOT be accommodated, patient is to be OFF WORK.

☐ Patient MAY RETURN to work on _____ with the following RESTRICTIONS:

    ☐ No use of upper extremities ☐ No use of lower extremities ☐ No use of injured part
    ☐ No lifting / carrying greater than _____ lbs. ☐ No pulling / pushing greater than _____ lbs.
    ☐ No lifting above: ☐ Knees ☐ Waist ☐ Chest ☐ Shoulder
    ☐ No: ☐ Bending / squatting ☐ Climbing ladders / stairs ☐ Kneeling / crawling
    ☐ No prolonged: ☐ Standing ☐ Sitting ☐ Walking
    ☐ No operating machinery ☐ No power tools / vibratory tools ☐ No driving ☐ No travelling
    ☐ No exposure to extreme: ☐ Heat ☐ Cold ☐ Humidity
    ☐ Limited hours of work per day: _____ hours.

☐ Additional comments: _____

_____ Date: 10/11/17 .

Notes: _____

*EXHIBIT X PAGE 9*

**LAKESHORE SURGERY CENTER**
**7200 N. WESTERN AVE.**
**CHICAGO, IL 60645**
**773-761-6900**
**FAX: 773-761-7699**

**OPERATIVE REPORT**

**Date:** 10/31/2018

**Patient:** HAROUN, MOHAMMED

**Surgeon:** Robert Erickson, M.D.

**Assistant:** Dr. Yuri

**Neurophysiological testing:** Lake County Neuromonitoring.

**Preoperative diagnosis:** Lumbar stenosis secondary to disc herniation.

**Postoperative diagnosis:** Lumbar stenosis secondary to disc herniation.

**Procedures:**
1. Hemilaminectomy with medial facetectomy, foraminotomies and partial discectomy with treatment of lumbar stenosis at L4-L5 right.
2. Through a separate incision hemilaminectomy, medial facetectomy and partial discectomy at L5-S1 on the right.
3. Placement of intervertebral biomechanical devices at both levels for annular repair.
4. Dissection under the operating microscope.
5. Continuous EMG monitoring of the lower extremities, motor and sensory evoked potential testing.
6. Intraoperative fluoroscopy.

**Indications for surgery:** This is a gentleman with low back pain and right sided sciatica refractory to medical management. He wishes to undergo definitive surgical treatment acknowledges the risks of incomplete pain relief, neurologic deficit, infection and bleeding.

**Anesthesia:** General.

**Complications:** None.

**Drains:** None.

**Estimated blood loss:** 25 mL.

**Specimens:** None.

**Findings:** We found disc herniations in the expected locations. The discs were repaired using an intervertebral device from Anulex. The evoked potential monitoring reflected improvement at each of the nerve roots decompressed.

*EXHIBIT X PAGE 10*

Page 2  HAROUN, MOHAMMED

**Operative procedure:** The patient was prepped and draped in the usual sterile fashion in the prone position with care taken to avoid all pressure points. We made a 2 cm incision sufficiently to pass a minimally invasive tube which was docked first at the L4-L5 segment on the right side. Under the operating microscope and muscles from the lamina removed the lamina at the L4 and the medial facet joint with a high speed drill. The yellow ligament was opened and the lateral recess viewed. We carried out medial facetectomy and foraminotomies over the L4 and L5 nerve roots using the high speed drill and small punches. We now saw the nodular disc herniation emerging from beneath the L5 nerve root. The disc was incised and multiple paracentral and lateral fragments of disc material removed in subligamentous location. We successfully repaired the opening into the disc using the Anulex systems. The cylinders were placed in the disc space and the cabling system drawn tight. We performed a similar operation at L5-S1 through a separate fascial incision. L5-S1 in fact was the level which was most prominently abnormal. In fact, we decompressed at this level as the evoked potential abnormalities persisted after decompression at the first level. We again opened the disc, removed paracentral fragments of disc material in the subligamentous location and observed relaxation of the passing S1 nerve root. This disc was repaired in a similar fashion using an implanted intervertebral device. We irrigated copiously with antibiotic containing solution through both tracts and obtained final hemostasis at the skin level. The skin was closed with 3-0 Vicryl and Steri-strips. Sterile dressing was applied and the patient returned to the recovery area in excellent condition.

Robert Erickson, M.D.
RE/VH
D: 11/02/2018
T: 11/04/2018
Job ID: 181477046

*EXHIBIT X PAGE 11*



**LAKESHORE SURGERY CENTER**
**7200 N. WESTERN AVE.**
**CHICAGO, IL 60645**
**773-761-6900**
**FAX: 773-761-7699**

**OPERATIVE REPORT**

**Date:** 07/10/2019

**Patient:** HAROUN, MOHAMED

**Surgeon:** Robert Erickson, M.D.

**Surgical Assistant :** Vlad Manko. SA

**Preoperative diagnosis:** Cervical stenosis relative to disc herniations.

**Postoperative diagnosis:** Cervical stenosis relative to disc herniations.

**Procedures:**
1. Anterior cervical discectomy and fusion C4-C5.
2. Anterior cervical discectomy and fusion C5-C6.
3. Placement of intravertebral mechanical device at both levels.
4. Placement of anterior cervical plate expanding C4 through C6.
5. Dissection under the operating microscope.
6. Continuous EMG monitoring of the upper extremities with motor and sensory evoked potential testing.
7. Correction of cervical kyphotic deformity associated with disc herniations from C4 through C6.
8. Intraoperative fluoroscopy.
9. Harvesting of local autography at the same incision.

**Indications for surgery:** This is a gentleman with disc herniations from C3 through C7 with intractable cervical radiculopathy resulting from an injury. The disc herniations at C4-C5 and C5-C6 are worst in that there is visible cord compression at these levels. We have explained that it would be best to correct these two levels. We discussed the various risks and benefits of surgery as well as the therapeutic options including the 3 and 4 level discectomy. I explained that 2 level discectomy was a reasonable approach based upon the neurophysiological testing and his presentation. He acknowledges the risks of incomplete pain relief, neurologic deficit, injection and bleeding and consent for the surgery. He acknowledges that conservative measures have failed to control his pain.

**Anesthesia:** General.

**Complications:** None.

**Drains:** None.

**Estimated blood loss:** 25 mL.

## EXHIBIT X PAGE 12

Page 2 HAROUN, MOHAMED

**Specimens:** None.

**Findings:** We found evoked potential abnormalities concerning especially the C6 nerve root on the right side. All the nerve testing returned to normal values following the decompressive phase of the procedure. We did not find any unexpected delays concerning the C4 or C7 nerve roots on either side and performed two level discectomy accordingly. No complications were encountered.

**Operative procedure:** The patient was prepped and draped in the usual sterile fashion in the supine position with care taken to avoid all pressure points. The head was held in a neutral position. A slightly curved incision was made just right at midline and sharp dissection carried out through the skin to administered the mastoid fascia. The carotid pulse was palpated, and dissection proceeded medial to the carotid sheath. Self retaining retractors were placed in the midline reflecting the longus coli muscles. Fluoroscopy was used to ascertain the level of our approach. We began the surgery at C4-C5 because of the broad nature of the disc which was somewhat larger than the second disc herniation. Using distraction posts we opened up the collapsed interspace and carried out a resection of the central disc as well as division of the posterior longitudinal ligament. We saw the dura to be decompressed on both sides and made sure that no additional herniated material had migrated upward or downward. The dura was seen to be free of pressure. We chose a 6 mm cage from Spine Craft and filled it with locally harvested autograft and DBM. The fit was quite good. We then performed a similar operation using distraction apparatus to reverse the kyphotic segmental change and placed another 6 mm cage filled with similar bone graft after thorough discectomy centrally and removal of the disc herniation deep to the posterior longitudinal ligament. The disc herniation was more focal at this level with midline cord compression seen. The fit of the second cage was also quite good. At this point we chose a 29 mm plate employing 16 mm screws in C4 and 14 mm screws at the other 4 positions. We checked our work with AP and lateral fluoroscopy. We irrigated copiously with antibiotic solution, obtained hemostasis and gradually withdrew the retractors. Final films were judged to be satisfactory. We closed with 3-0 Vicryl and Steri-strips. A sterile dressing was applied, and the patient returned to the recovery area in excellent condition.

---

Robert Erickson, M.D.
RE/VH
D: 07/12/2019
T: 07/13/2019
Job ID: 196080608

Haroun, Mohamed R (MRN: 111011506569) DOB: 11/8/1977

**NM Northwestern Medicine**

Haroun, Mohamed R
MRN: 111011506569, DOB: 11/8/1977, Legal
Sex: M
Visit date: 12/9/2020

NM Orthopaedic Surgery
885 Roosevelt Rd
Suite 300
GLEN ELLYN IL 60137-6141

*EXHIBIT X PAGE 13*

## Progress Notes by Steinke, Brian D., MD at 12/9/2020 10:30 AM

Author: Steinke, Brian D., MD
Filed: 12/9/2020 5:03 PM
Editor: Jones, Sharon L, RN (Registered Nurse)

Service: —
Encounter Date: 12/9/2020

Author Type: Physician
Status: Signed

**Subjective**

**Chief Complaint**
Patient presents with
- Lower Back - Pain

## Chief complaint:
Back pain: Pain in back, buttock, midline
Lower Extremity:      Pain: None
                     Numbness/tingling: None
                     Weakness: Diffuse R LE, no focal weakness.

HPI: Moham R Haroun  is a 43 y.o.  male self-referred in consultation for management recommendations.

Acute LBP started June 2020 after no known injury.
Notes that LBP has become more constant, gradually worse over time since onset.
LBP is constant.
Pain is worse with: laying/sleeping/extended walking,sitting

Pain Dist: LBP only

Prior and Current Treatment:
        Meds: NSAIDs PRN; no oral steroids
        Therapy: Aquatic PT x 6 weeks (1-2/20) with mild relief.
        Injections: B ESIs 2017-8, level unknown
        Surgery: Lumbar surgery? 10/18

Pain score: LBP 8
           LE 0 - No pain

ADL's: Normal

Work: is not employed.
Workman's Comp: No

Past Medical History:
Diagnosis                                                               Date
- Depression
- H/O emphysema

Past Surgical History:

Haroun, Mohamed R (MRN: 111011506569) DOB: 11/8/1977



Haroun, Mohamed R
MRN: 111011506569, DOB: 11/8/1977, Legal
Sex: M
Visit date: 1/15/2021

NM Orthopaedic Surgery
27650 Ferry Rd
WARRENVILLE IL 60555-3845

***EXHIBIT X PAGE 14***

## Progress Notes by Steinke, Brian D., MD at 1/15/2021 11:30 AM

Author: Steinke, Brian D., MD     Service: —     Author Type: Physician
Filed: 1/15/2021 3:44 PM     Encounter Date: 1/15/2021     Status: Signed
Editor: Steinke, Brian D., MD (Physician)

### Subjective

**Chief Complaint**

Patient presents with

- Followup
  *5 weeks lumbar PT*

### Chief Complaint Previous visit:
**Back pain:** Pain in back, buttock, midline
**Lower Extremity:**     Pain: None
         Numbness/tingling: None
         Weakness: **Diffuse R LE, no focal weakness.**

### Chief Complaint This visit:
**Back pain:** Pain in back, buttock, midline
**Lower Extremity:**     Pain: None
         Numbness/tingling: None
         Weakness: **Diffuse R LE, no focal weakness.**

**HPI:** 43 y.o. male self-referred in consultation for management recommendations.

**Acute LBP** started June 2020 after no known injury.
Notes that LBP has become more constant, gradually worse over time since onset.
**LBP is constant.**
**Pain is worse with: laying/sleeping/extended walking, sitting**

**Pain Dist Previous visit:** LBP only
**Pain Dist This visit:** LBP only

**Prior and Current Treatment:**
      Meds: NSAIDs PRN; no oral steroids
      Therapy: 1) Aquatic PT x 6 weeks (1-2/20) with mild relief.
            2) The patient returns after ~ 4 weeks of PT (12/20-1/21) noting:

                 Pain in back: decreased 25%
                 Pain in LE: no pain
                 Initial pain score: Back 8
                         LE 0 - No pain
                 Current pain score: Back 6
                         LE 0 - No pain
                 Activity level: not significantly changed
                 Pain med use: N/A

2/10/25, 6:56 AM — Haroun, Mohamed R (MRN: 111011506569) DOB: 11/8/1977



Northwestern Medicine®

Haroun, Mohamed R
MRN: 111011506569, DOB: 11/8/1977, Legal
Sex: M
Visit date: 3/31/2021

NM Orthopaedic Surgery
885 Roosevelt Rd
Suite 300
GLEN ELLYN IL 60137-6141

*EXHIBIT X PAGE 15*

## Progress Notes by Steinke, Brian D., MD at 3/31/2021 11:00 AM

Author: Steinke, Brian D., MD
Filed: 3/31/2021 4:48 PM
Editor: Steinke, Brian D., MD (Physician)

Service: —
Encounter Date: 3/31/2021

Author Type: Physician
Status: Signed

### Chief Complaint

Patient presents with

- Neck - Pain

### Chief complaint:

Neck pain: bilateral neck/trap/periscapular/shoulder pain
Upper Extremity:    Pain: None
                       Numbness/tingling: (+) nt triceps bilaterally
                       Weakness: None

HPI: Mohamed R Haroun is a 43 y.o. male self-referred in consultation for management recommendations.

Had ACDF July, 2019 at Lake Shore Hospital with good relief of neck pain/nt hands.
Acute neck pain started Oct, 2020.
Acute UE nt started 3/21.
Neck pain is constant, bilateral UE nt is intermittent, mostly in the am but resolves quickly.
Pain worse with: laying down, worse at night, difficult sleeping

Pain Dist: Neck pain > B UE nt

Prior and Current Treatment:
        Meds: NSAIDs PRN; no oral steroids
        Therapy: None?
        Injections: ESI?
        Surgery: C4-6 ACDF (2019, outside institution)

Pain score: Neck 10 - Worst pain ever
               UE 0 - No pain

ADL's: Decreased

Work: is not employed.
Workman's Comp: No

### Past Medical History:

Diagnosis                                          Date

- Asthma
- Depression
- H/O emphysema

2/10/25, 6:57 AM                          Haroun, Mohamed R (MRN: 111011506569) DOB: 11/8/1977

**N Northwestern Medicine**

Haroun, Mohamed R
MRN: 111011506569, DOB: 11/8/1977, Legal
Sex: M
Visit date: 7/10/2024

NM Orthopaedic Surgery
885 Roosevelt Rd
Suite 300
GLEN ELLYN IL 60137-6141

*EXHIBIT X PAGE 16*

## Progress Notes by Steinke, Brian D., MD at 7/10/2024  2:00 PM

Author: Steinke, Brian D., MD          Service: —                    Author Type: Physician
Filed: 7/10/2024  4:40 PM              Encounter Date: 7/10/2024      Status: Signed
Editor: Steinke, Brian D., MD (Physician)

**Subjective** ————————————————————————————————————— ⥥

**Chief Complaint**
Patient presents with

- Spine - Initial Evaluation

## Chief complaint:
**Back pain:** Pain in back, buttock, right greater than left
**Lower Extremity:**     Pain: R posterolateral thigh
                        Numbness/tingling: (+) R lateral foot
                        Weakness: 'drags R leg'

**HPI:** Mohamed R Haroun  is a 46 y.o.  male self-referred in consultation for management recommendations.

43 y.o.  male self-referred in consultation for management recommendations.

**Acute LBP** started June 2020 after jumping down from cargo van, felt immediate LBP/R LE pain.
Notes that LBP/R LE has become more constant, gradually worse over time since onset.
**LBP** is constant.
R LE pain also started at the same time.
**Pain is worse with: laying/sleeping/extended walking,sitting**

This visit (7/10/24): Notes that LBP worsened when he had to stop NSAIDs (5/24)
Notes that has had urinary incontinence for over a year, starting 2023

**Pain Dist:** LBP > LE

**Prior and Current Treatment:**
        Meds: NSAIDs PRN; no oral steroids
        Therapy: 1) Aquatic PT x 6 weeks (1-2/20) with mild relief.
                2) The patient returns after ~ 4 weeks of PT (12/20-1/21) noting:

                        Pain in back: decreased 25%
                        Pain in LE: no pain
                        Initial pain score: Back 8
                                        LE 0 - No pain
                        Current pain score: Back 6
                                        LE 0 - No pain
                        Activity level: not significantly changed
                        Pain med use: N/A
                3) The patient returns after ~ 6 weeks of PT (6-8/21) noting:

Haroun, Mohamed R (MR # 111011506569) Printed at 2/10/2025 6:56 AM                                    1/5


**Northwestern Medicine**

Haroun, Mohamed R
MRN: 111011506569, DOB: 11/8/1977, Legal
Sex: M
Visit date: 9/16/2024

NM Orthopaedic Surgery
351 Delnor Drive
Suite 410
GENEVA IL 60134-4220

*EXHIBIT X PAGE 17*

## Progress Notes by Steinke, Brian D., MD at 9/16/2024  2:30 PM

Author: Steinke, Brian D., MD
Filed: 9/16/2024  4:21 PM
Editor: Steinke, Brian D., MD (Physician)

Service: —
Encounter Date: 9/16/2024

Author Type: Physician
Status: Signed

**Chief Complaint**
Patient presents with
• Cervical Spine - Initial Evaluation

## Chief complaint:
**Neck pain:** bilateral **neck/trap/periscapular/shoulder** pain
**Upper Extremity:**     Pain: R triceps / dorsal forearm
                        Numbness/tingling: (+) nt L ulnar hand
                        Weakness: None

**HPI:** Mohamed R Haroun is a 46 y.o. male self-referred in consultation for management recommendations.

Chronic neck pain started 2020 after no known injury.
**Acute neck pain** started August 15 2024 after MVC in which he was rear ended
**Acute UE pain** started ~ same time.
**Neck pain** is constant, right **UE pain** is constant.
**Pain worse with:** worse with sleeping / extended sitting

**Pain Dist:** Neck > R UE

Pain score:
Neck 8
R UE 9

**Prior and Current Treatment:**
        Meds: NSAIDs PRN; remote oral steroids.
        Therapy: 1) remote PT
                2) The patient returns after ~ 8-10 weeks of PT (9-12/21) noting:

                        Pain in neck: decreased 75%
                        Pain in arm: decreased 50%
                        Pain score **prior to PT:** Neck 7
                                            LE 0 - No pain
                        Pain score **since PT:**   Neck 4
                                            LE 0 - No pain
                        Pain score **today:**      Neck 4
                                            LE 0 - No pain
                        Activity level: increased
                        Pain med use: unchanged
        Injections: None
        Surgery: ACDF C4-6 (2019)

2/10/25, 6:57 AM                                 Haroun, Mohamed R (MRN: 111011506569) DOB: 11/8/1977

 **Northwestern Medicine**

Haroun, Mohamed R
MRN: 111011506569, DOB: 11/8/1977, Legal
Sex: M
Visit date: 10/29/2024

NM Orthopaedic Surgery
351 Delnor Drive
Suite 410
GENEVA IL 60134-4220

*EXHIBIT X PAGE 18*

## Progress Notes by Steinke, Brian D., MD at 10/29/2024  3:15 PM

Author: Steinke, Brian D., MD
Filed: 10/29/2024  3:53 PM
Editor: Steinke, Brian D., MD (Physician)

Service: —
Encounter Date: 10/29/2024

Author Type: Physician
Status: Signed

### Subjective

**Chief Complaint**
Patient presents with

- Cervical Spine - Follow-up

### Chief Complaint Previous visit:
**Neck pain:** bilateral **neck/trap/periscapular/shoulder** pain
**Upper Extremity:**      Pain: R triceps / dorsal forearm
                          Numbness/tingling: (+) nt L ulnar hand
                          Weakness: None

### Chief Complaint This visit:
**Neck pain:** bilateral **neck/trap/periscapular/shoulder** pain
**Upper Extremity:**      Pain: R triceps / dorsal forearm
                          Numbness/tingling: (+) nt L ulnar hand
                          Weakness: None

**HPI:**  46 y.o.  male self-referred in consultation for management recommendations.

**Chronic neck pain** started 2020 after no known injury.
**Acute neck pain** started August 15 2024 after MVC in which he was rear ended
**Acute UE pain** started ~ same time.
**Neck pain** is constant, right **UE pain** is constant.
**Pain worse with:** worse with sleeping / extended sitting

**Pain Dist Previous visit:**  Neck > R UE
**Pain Dist This visit:**  Neck > R UE

**Prior and Current Treatment:**
    Meds: NSAIDs PRN; MDP x 1 (10/24)
    Therapy: 1) remote PT
             2) The patient returns after ~ 8-10 weeks of PT (9-12/21) noting:

                        Pain in neck: decreased 75%
                        Pain in arm: decreased 50%
                        Pain score **prior to PT**: Neck 7
                                                    LE 0 - No pain
                        Pain score **since PT**:    Neck 4
                                                    LE 0 - No pain
                        Pain score **today**:       Neck 4
                                                    LE 0 - No pain
                        Activity level: increased

# IL - Alexian Brothers Medical Group

*EXHIBIT X PAGE 19*

ALEXIAN BROTHERS NEUROSCIENCES INSTITUTE
800 BIESTERFIELD RD EBERLE BUILDING, SUITE 610
ELK GROVE VILLAGE, IL 60007-3361.
Phone: (847) 981-3630 Fax:(847) 981-3633

MOHAMED RASHWAN HAROUN
DOB: 11/08/1977
Patient ID: 1877649

## Upcoming Appointments

| Date | Time | Appointment | Dept./Address | Phone |
|---|---|---|---|---|
| 02/19/2025 | 02:30 PM | PROCEDURE - 15 MIN ANKUR DAVE, MD | ALEXIAN NSI PROCEDURES 800 BIESTERFIELD ROAD ELK GROVE VILLAGE, IL 60007-3361. | (847) 981-3630 |
| Arrive 1 hour prior to procedure unless advised otherwise. | | | | |
| 03/07/2025 | 11:15 AM | FOLLOW UP- 15 MIN PATRICIA WEBBER, NP | ALEXIAN BROTHERS NEUROSCIENCES INSTITUTE 800 BIESTERFIELD RD EBERLE BUILDING, SUITE 610 ELK GROVE VILLAGE, IL 60007-3361. | (847) 981-3630 |



**Ascension Medical Group**

*EXHIBIT X PAGE 20*

**Ascension Medical Group Illinois Brain and Spine**

Dr. Ankur Dave

## PRE-PROCEDURE PATIENT INSTRUCTIONS

Procedure: Bilateral lumbar TFESI L4-5, L5-S1 _____

Date: _2/19_____

Time: _2:30 am_____ Please arrive by: _1:30 pm_____ to register.

Location:    ☐ Alexian Brothers Medical Center Ambulatory Care
Door 7, registeration
West Tower, Ground Floor
Phone: 847-981-3505

**Prior to your procedure:**

- We will contact you with a reminder of your upcoming procedure. If you have any questions prior to your procedure, please call Alexian Brothers Neuroscience Institute at 847-981-3630.

- For cancellations, you must notify our office during regular clinic hours at least 48 hours before your anticipated procedure.

- Please call our office during normal clinic hours if you develop an infection, have a fever, or are taking antibiotics prior to your procedure.

- Please inform us if you are taking any blood thinning or anti-platelet medications as these medications may need to be stopped prior to your procedure in accordance with a plan formulated by the prescribing physician.

- ☐ You do not need to be on an empty stomach prior to your procedure.

**After your procedure:**

- We will provide you with post-procedure instructions and a follow-up appointment.

**Transportation from your procedure:**

- ☐ You must have a responsible person pick you up following your procedure and have arranged transportation to take you home.

Patient Signature _____

Physician Signature: Electronically Signed by: ANKUR DAVE, MD

Date/Time: 02/07/2025 12:13 PM

Ascension Medical Group • 800 BIESTERFIELD RD, ELK GROVE VILLAGE IL 60007-3361

RASHWAN HAROUN, Mohamed (id #1877649, dob: 11/08/1977)

# Referral Order      *EXHIBIT X PAGE 21*

02/07/2025

| To Provider | From Provider |
|---|---|
| BRYAN BERTOGLIO MD<br>800 BIESTERFIELD RD STE 610<br>ELK GROVE, IL 60007<br>Phone: (847) 981-3630<br>Fax: (847) 981-3633 | ANKUR DAVE, MD<br>ABMG - ALEXIAN NSI EMR<br>800 BIESTERFIELD RD EBERLE BUILDING, SUITE 610<br>ELK GROVE VILLAGE, IL 60007-3361<br>Phone: (847) 981-3630<br>Fax: (847) 981-3633 |

## Referral Order Information

| Diagnosis | Lumbar radiculopathy<br>ICD-10: M54.16: Radiculopathy, lumbar region |
|---|---|
| Order Name | Orders included: 1<br><br>Lumbar radiculopathy<br>ICD-10: M54.16: Radiculopathy, lumbar region<br>• NEUROLOGICAL SURGEON REFERRAL<br>     Schedule Within: provider's discretion   CC Results To: ANKUR P DAVE MD ((847) 981-3633) |
| Notes | |

## Patient Information

| Patient Name | RASHWAN HAROUN, MOHAMED |
|---|---|
| Sex - DOB - Age | M 11/08/1977 47yo |
| Address | 109 HERITAGE LN<br>STREAMWOOD, IL 60107-2415 |
| Phone | H: (224)600-2200<br>M: (224) 600-2200 |
| Primary Insurance | Meridian Health Plan of Illinois - DOS on or after 7/1/21 (Medicaid Replacement - HMO)<br>ID: 322281973<br>Policy Holder: HAROUN, MOHAMED<br><br>Eligibility: Member is eligible. (Verified 02/04/2025) |
| Secondary Insurance | None recorded. |

Electronically Signed by: ANKUR DAVE, MD

ANKUR DAVE, MD

# EXHIBIT XI (13 PAGE'S)

**EXHIBIT XI - Mental Health Treatment and Psychological Impact**

**EXHIBIT XI** provides **A** detailed account of the plaintiff's mental health journey from **2019 to 2024,** including

Therapy sessions, coping mechanisms, and the psychological toll caused by ongoing physical and legal challenges.

This exhibit highlights how the plaintiff's mental well-being has been impacted by his circumstances.

**Summary of Key Pages**

**• Pages 1-2: Initial Assessment and Therapist's Notes**

**• A 2019 letter** from the Kenneth Young Center therapist documenting symptoms of depression, anxiety, memory

Difficulties, and frustration. This initial assessment connects the plaintiff's mental health struggles to

The prolonged physical and legal stress he has endured.

**• Pages 3-4: Therapy and Coping Strategies**

**• Therapy notes** from **early 2020,** emphasizing the development of coping strategies for managing anger and

Frustration. The therapist guided the plaintiff in recognizing stressors and building resilience to handle legalpressures.

**• Pages 5-6: Psychological Strain Due to Delays**

**• Notes from 2021** indicate the plaintiff's growing frustration and helplessness as legal and medical resolutions

Were delayed. the therapist highlighted the impact of these delays on the plaintiff's daily life and mental health.

**• Pages 7-9: Impact of Financial and Legal Stress**

**• By 2022,** therapy sessions shifted focus to coping with financial and legal stress. The plaintiff expressed feelings

Of betrayal, especially due to perceived financial and legal manipulation, which intensified his emotional strain.

**• Pages 10-13: Ongoing Psychological Support**

**•** These pages cover continued sessions focused on emotional resilience and managing daily stressors related to

Both personal and legal challenges. The therapist's notes indicate **A** need for structured support to maintain

The plaintiff's mental stability.

**EXHIBIT XI SUMMARY**

Documents the ongoing impact of prolonged legal and financial pressures on the plaintiff's mental  health

Through consistent therapy and coping strategies, the plaintiff has worked to manage

These challenges, yet the strain has had **A** significant effect on his well-being.

**Page 1**

*EXHIBIT XI PAGE 1*

July 27, 2023

The Honorable Robert Harris

Daley Center

50 W. Washington St., Rm. 2207

Chicago, IL 60602

To The Honorable Judge Robert Harris,

My name is Kristen Berglund, I am an Adult Outpatient Intern Therapist at Kenneth Young Center in Elk Grove Village. With Kenneth Young Center, I provide the community of Elk Grove Village with mental health counseling and medical case management. Mohamed Haroun has been a client of mine since March of 2023. He currently attends therapy over the phone due to physical limitations due to the car accident that he is bringing to court at present. Mohamed has asked me to write a letter of support in the hope that I may be able to articulate the severity of suffering that Mohamed has endured resulting from the car accident.

Mohamed has endorsed many symptoms of depression, including persistent hopelessness, insomnia, diminished interest in things he once enjoyed, and reduced feelings of self-worth. He states that he did not experience any mental health issues prior to the accident. Throughout the course of his sessions with me, he has stated many other persisting issues including severe memory loss due to brain injury, breathing problems, back and neck pain that has required several surgeries, and he cannot walk or run as he used to. He has also stated that his quality of life has greatly diminished socially as well. He states that he cannot attend to friends or family as he used to. Along with this, due to the physical and memory limitations, he cannot hold a job as he used to. He feels immense pain nearly all day every day. This has been the focus of our sessions together.

Mohamed believes that money cannot return the quality of life that he has lost from this car accident. He states that he is looking for justice and an apology for his life being effectively

Page1-2

*EXHIBIT XI PAGE 2*

stolen. He believes that the justice system has treated him like a number and with racial prejudice. What he hopes for out of these proceedings that that Uber will pay for past and future surgeries instead of a lump sum of money that may cover only one or two of his major surgeries, assistance with family financial difficulties, and for lobbying to change the law around accountability for accidents relating to ride shares.

In addition to the physical and mental repercussions that Mohamed has faced from the accident, this court case has also been an immense stressor for him. He reports that he struggles to be heard and understood by others in the judicial system and is hoping for your compassion and understanding in this matter.

Sincerely,

Kristen Berglund

Adult Outpatient Intern Therapist

Kenneth Young Center

1001 Rohlwing Rd.

Elk Grove Village, IL 60007

Office: 847-524-8800 x275

### *EXHIBIT XI PAGE 3*

| | |
|---|---|
| **KENNETH YOUNG CENTER**<br>**Progress Note** | Event No. EB08633<br>Page No. 5 |

| | | | |
|---|---|---|---|
| **Client ID** 000058912 | **Name** Mohamed Haroun | **Service Date** 05/29/2019 | **Event Type** G |
| **Start Time** 10:35A **Stop Time** 12:35P **Hour** 2 **Min** 0 | | **Staff Name** 1255 Stephanie Rotman | |
| **Activity** OAT IATP: Initial (H2000) | | **Prog** 110 **Rec** 1 **Loc** 0 Elk Grove | |

**Note**

Intervention: Met face-to-face with Mohamed to complete a mental health assessment. Med profile reviewed and entered in CIS. Obtained information related to history and current biopsychosocial status. Engaged Mohamad in a discussion of presenting problem, desired outcomes, perceived strengths and motivation for change. Identified needs and preliminary goals and made recommendations for services.

Response: Mohamed was active and engaged in assessment process.

Progress: Mohamed identifies his goals for treatment and agrees to recommended services. See MHA report.

Plan: Refer Mohamed for individual assignment on the Adult Therapy team. Staff provided contact information to Mohamed should she have questions or need assistance prior to assignment.

Availability/Special Requests: Flexible, though client reports he will be undergoing neck surgery at the end of next month and will be in the hospital for 2-3 weeks following the procedure. No special requests. Okay for an intern.

Funding: Medicaid Meridian RIN# 322281973

**Staff Name** Stephanie Rotman, LPC, QMHP, MA
QMHP

**Signature** *Stephanie Rotman*

## EXHIBIT XI PAGE 4

**Event No.** QT55647

**Page No.** *

### KENNETH YOUNG CENTER
### Progress Note

| 000058912 | **Name** Mohamed Haroun | **Service Date** 10/14/2019 | **Event Type** G |

| 05:00P | **Stop Time** 06:00P **Hour** 1 **Min** 0 | **Staff Name** 1562 Conrad Duncker |

| 020 Psychiatric Evaluation (90792) | **Prog** 350 **Rec** 1 **Loc** 0 Elk Grove |

ENDOCRINE: Denies excessive sweating, discomfort with heat/cold, excessive thirst, or change in body hair.
HEMATOLOGY: Denies anemia, prolonged bleeding, blood clots, or history of blood transfusions.
MUSCULOSKELETAL: Denies pain, stiffness, or limited mobility
NEUROLOGICAL: Denies deficits in orientation, memory, or attention. No noted deficits in gait or coordination.
BREASTS: Denies pain, soreness, lumps, or discharge.

DSM-5 DIAGNOSIS & CODE:
Normative Stress Reaction: No DSM-5 dx or code applicable
R/O F43.21 Adjustment Disorder with Depressed Mood
R/O F32.1 Major Depressive Disorder, Moderate, Single Episode

TREATMENT PLAN:
Given the intensity of stressors experienced and the limitations the accident has imposed on his life, I find this patient's mood and behaviors to be normative reactions to stress. I will keep adjustment disorder and MDD as R/O diagnoses for now as I want to see if the pt is truly coping with his stressors and continuing to grow and engage in life. We thoroughly discussed the benefits and risks of initiating an antidepressant. I believe pt's desire to improve his mood through therapy and lifestyle changes seem reasonable for his current depressive symptoms. Pt's hopefulness and his active participation in wellness/self-improvement are strong indicators that he will continue to improve without pharmacotherapy. I do not feel it necessary for this patient to be seen by psychiatry at this time.
-Continue psychotherapy
-Follow-up with psychiatry if depressive symptoms persist or worsen

Conrad Duncker, PMHNP, QMHP, PhD
QMHP                              **Signature**

## *EXHIBIT XI PAGE 5*

**KENNETH YOUNG CENTER**
**Progress Note**

*Event No.* **DK02536**
*Page No.* *

| | | | | | |
|---|---|---|---|---|---|
| **Client ID** 000058912 | **Name** Mohamed Haroun | | **Service Date** 12/03/2020 | | **Event Type** G |
| **Start Time** 04:15P | **Stop Time** 04:30P **Hour** 0 **Min** 15 | | **Staff Name** 1678 Nitza Solis | | |
| **Activity** OAC IATP: Clinical Assessment Tool (H2000) | | **Prog** 110 **Rec** 1 **Loc** T Phone | | | |

**Note**

Goal: To complete assessment of Daily Living Activity.

Intervention: Gathered information to complete DLA assessment rating areas including Health Practices, Housing Stability, Communication, Safety, Managing Time, Managing Money, Nutrition, Problem Solving, Family Relationships, Substance Use, Leisure, community Resources, Social Networks, Sexuality, Productivity, Coping Skills, Behavior Norms, Personal Hygiene, Grooming, and Dress.

Response: Client was cooperative in providing information to complete DLA assessment.

Progress: DLA was completed.

Plan: Daily Living assessment scores will be updated once every six months in order to continue to assess client's level of functioning and medical necessity of services.

**Staff Name**  Nitza Solis, LSW, QMHP, MA QMHP          **Signature**

## EXHIBIT XI PAGE 6

| | |
|---|---|
| **KENNETH YOUNG CENTER** <br> **Progress Note** | *Event No.* **FK01200** <br> *Page No.*   * |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| **Client ID** | 000058912 | **Name** | Mohamed Haroun | | **Service Date** | 01/18/2021 | **Event Type** G |
| **Start Time** | 02:00P | **Stop Time** 03:00P | **Hour** 1 **Min** 0 | | **Staff Name** | 1671 Thomas Kalapurakal | |
| **Activity** | 210 Individual Therapy/Counseling 60 Mins | | | **Prog** 215 **Rec** 1 **Loc** T | Phone | | |

**Note**

Goal: I would like "to get back to being a normal person again."

Intervention: Listened to client discuss updates on his physical therapy and doctors appointments. Engaged in a discussion about his continuing physical pains. Facilitated a conversation about all his medical options in regards to his back pain. Motivated client to locate cheaper exercise facilities in order to continue his water therapy. Examined client's support from community and friends. Justified creating a routine in client's spare time to help notice daily improvements. Encouraged client to speak about his friends' and family to understand how he feels let down by their actions. Assured client that continued support will always be available from me, his therapist, and KYC.

Response: Mohamed spoke about his recent doctors appointment in which he considered the options of back surgery or getting steroid shots in his back. Mohamed expressed how the steroid back shots significantly help with his back pain and will update me about what he chooses to do. Mohamed discussed how his pain is affecting his sleep and irritability. Mohamed discussed his limitations when it came to physical movement. Mohamed informed me that his previous experience with water/movement therapy was very beneficial for him and his pain, but due to COVID and gym membership prices, he stopped engaging in that type of physical therapy. Client also discussed how he felt let down by his friends after his accident becuase they rarely contacted him and supported him, including his brother. Client reported that he has one family friend who always checks in on him and supports him in many ways. We discussed how mohamed could engage in further contact with this friend to see how it helps in regards to his mental health.

Progress: Mohamed seems significantly depressed, but also complacent about where he is at with his mental and physical health. I believe it will be important to create a daily routine for Mohamed, which includes finding locations to do water therapy and locating continued support from friends and other members in the community.

Plan: Discuss updates in regards to physical health after doctors appointments. Collaborate on a comprehensive daily routine. Plan on finding more support from his community to help with his situation.

**Staff Name**   Thomas Kalapurakal, MHP, BA MHP     **Signature**   *Thomas Kalapurakal*

## *EXHIBIT XI PAGE 7*

**KENNETH YOUNG CENTER**
**Progress Note**

Event No. **GZ04611**
Page No. *

| | | | |
|---|---|---|---|
| **Client ID** 000058912 | **Name** Mohamed Haroun | **Service Date** 12/21/2021 | **Event Type** G |
| **Start Time** 03:00P | **Stop Time** 03:30P **Hour** 0 **Min** 30 | **Staff Name** 1737 Alyssa Oddo | |
| **Activity** 212 Individual Therapy/Counseling 30 Mins | | **Prog** 110 **Rec** 1 **Loc** T Phone | |

**Note**

Client Goal and Expectation (in client own words): I would like to improve my physical condition and my mental health so that I can get back to "normal".

Intervention: Conducted phone therapy session due to COVID-19. Confirmed the location of the client and confirmed appropriateness for telehealth services.
Checked in with client concerning how the past week has gone and concerning progress toward goals. Actively listened to client's concerns. Supported client in identifying goals for the upcoming week.

Response: Client was engaged and open in session. Client had his appointment for his back pain. He has an MRI now scheduled for the end of January. He is hoping it is approved by insurance by then and he doesn't have to wait any longer. Client processed his concern for waiting until then and then having to wait for his surgery until after his baby is born.

Progress: Moderate. The client continues to make progress towards the IATP as evidenced by client's engagement during session.

Plan: To meet in two weeks for individual therapy session.

**Staff Name** Alyssa Oddo, LSW, QMHP, MSW QMHP    **Signature** *Alyssa Oddo*

*EXHIBIT XI PAGE 8*

| **KENNETH YOUNG CENTER** **Progress Note** | Event No. GZ04669 |
|---|---|
| | Page No. * |

| Client ID | 000058912 | Name | Mohamed Haroun | | Service Date | 01/07/2022 | Event Type | G |
|---|---|---|---|---|---|---|---|---|

**Start Time** 12:00P  **Stop Time** 01:00P  **Hour** 1  **Min** 0      **Staff Name** 1737 Alyssa Oddo

**Activity** 210 Individual Therapy/Counseling 60 Mins      **Prog** 110  **Rec** 1  **Loc** T  Phone

**Note**

Client Goal and Expectation (in client own words): I would like to improve my physical condition and my mental health so that I can get back to "normal".

Intervention: Conducted phone therapy session due to COVID-19. Confirmed the location of the client and confirmed appropriateness for telehealth services. Checked in with client concerning how the past week few weeks have gone and how his holidays were. Actively listened as client recounted the past few weeks and any updates he had. Validated continued feelings of anger and frustration at his situation with his physical health and financial struggles. Checked in about client's anger levels. Encouraged client to continue taking breaks from his apartment.

Response: Client was engaged and open in session. Client now has limited time before he is evicted from his apartment. His brother and a case worker are working hard to find him another apartment and his brother is going to help him out financially for the upcoming year with rent. This is a big relief for the client. He also was finally able to schedule his MRI for his brain to begin figuring out why his memory has gotten so bad. Client has been going to sit in his car or take a drive when he feels his anger increase at home with his wife and young daughter. He noticed that this has helped but wishes he could control it even more.

Progress: Moderate. The client continues to make progress towards the IATP as evidenced by client's persistance with following up with his doctors to make appointments as well as his continuation of therapy sessions.

Plan: To meet next week for individual therapy session.

**Staff Name** Alyssa Oddo, LSW, QMHP, MSW QMHP      **Signature** *Alyssa Oddo*

## *EXHIBIT XI PAGE 9*

**KENNETH YOUNG CENTER**
**Progress Note**

Event No. GZ08053
Page No. *

| | | | | | |
|---|---|---|---|---|---|
| **Client ID** 000058912 | **Name** Mohamed Haroun | | **Service Date** 12/22/2022 | | **Event Type** G |
| **Start Time** 02:00P | **Stop Time** 02:30P **Hour** 0 **Min** 30 | | **Staff Name** 1737 Alyssa Oddo | | |
| **Activity** 212 Individual Therapy/Counseling 30 Mins | | **Prog** 110 **Rec** 1 **Loc** T | Phone | | |

**Note**

Client Goal and Expectation (in client own words): I would like to improve my physical condition and my mental health so that I can get back to "normal".

Intervention: Conducted phone therapy session due to COVID-19. Confirmed the location of the client and confirmed appropriateness for telehealth services. Checked in with client concerning how the past week has gone and how he is feeling after being very sick last week. Actively listened to client's concerns. Reminded client TW will be out of the office from 12/23-1/03.

Response: Client was engaged and open in session. Client is feeling better than he was last week, and followed up with his doctor to get inhalers and other medications to help his breathing. He notes these medications have helped him breathe more easily, but he still notices he is not sleeping well at night due to his sleep apnea. They will be giving him oxygen/a CPAP machine at his follow up appointment January 11th. He still has not smoked in two weeks due to his lungs being affected by the cold he had.

Progress: Moderate. The client continues to make progress towards the IATP as evidenced by client's engagement during session and prioritization of checking in with his doctor about his physical health.

Plan: To meet in two weeks for individual therapy session.

**Staff Name** Alyssa Oddo, LCSW, LPHA, MSW LPHA    **Signature** *Alyssa Oddo*

## *EXHIBIT XI PAGE 10*

Event No. **GZ08129**
Page No. **\***

### KENNETH YOUNG CENTER
### Progress Note

**Client ID** 000058912 **Name** Mohamed Haroun **Service Date** 01/06/2023 **Event Type** G

**Start Time** 01:00P **Stop Time** 01:45P **Hour** 0 **Min** 45 **Staff Name** 1737 Alyssa Oddo

**Activity** 211 Individual Therapy/Counseling 45 Mins **Prog** 110 **Rec** 1 **Loc** T Phone

**Note**

Client Goal and Expectation (in client own words): I want to learn 2-3 adaptive coping strategies to better control my anger and frustration so that I can improve my family relationships and increase my social/community support network.

Intervention: Conducted phone therapy session due to COVID-19. Confirmed the location of the client and confirmed appropriateness for telehealth services. Checked in with client concerning how the past two weeks have gone and how his new years was. Engaged client in talking through his upcoming appointments and past appointments for a memory exercise. Asked client to elaborate on his relationships with his family and emotional attachments to them.

Response: Client was engaged and open in session. Client said him and his family are all feeling better after being sick before the holidays. He has an appointment for his sleep apnea this upcoming Wednesday and seems to be utilizing his calendar well to remember appointments and important dates. He talked more about his relationships with his siblings before wanting to end session early as he could not remember anything else he wanted to talk about.

Progress: Moderate. The client continues to make progress towards the IATP as evidenced by client's utilization of memory tools.

Plan: To meet next week for individual therapy session.

**Staff Name** Alyssa Oddo, LCSW, LPHA, MSW LPHA **Signature** *Alyssa Oddo*

*EXHIBIT XI PAGE 11*

**KENNETH YOUNG CENTER**
**Progress Note**

*Event No.* **TY06917**
*Page No.* *

| | | | |
|---|---|---|---|
| **Client ID** 000058912 | **Name** Mohamed Haroun | **Service Date** 12/28/2023 | **Event Type** G |
| **Start Time** 12:00P | **Stop Time** 01:00P **Hour** 1 **Min** 0 | **Staff Name** 1963 Kristen Berglund | |
| **Activity** 210 Individual Therapy/Counseling 60 Mins | | **Prog** 110 **Rec** 1 **Loc** T Phone | |

**Note** Session 24

• Goal worked on during this session:
- Client Goal and Expectation (in client own words): I want to learn 2-3 adaptive coping strategies to better control my anger and frustration so that I can improve my family relationships and increase my social/community support network.

Intervention: Processed with client recent events, symptoms, stressors. Processed client's emotions around going to another lawyer for help with his case. Encouraged client expression of emotions around feeling "taken advantage of" by lawyers. Explored patterns around struggling for 7 years to be taken more seriously. Increased client awareness around expressed hopefulness that he'll get help from this lawyer.

Response: Client was engaged and open in session. Client processed recent events, symptoms, stressors. Client processed emotions around going to another lawyer for help with his case. Client expressed emotions around feeling "taken advantage of" by lawyers. Client explored patterns around struggling for 7 years to be taken more seriously. Client expressed hopefulness that he'll get help from this lawyer.

Progress: Moderate. The client continues to make progress towards the IATP as evidenced by using reframing skill to elicit hopefulness.

Plan: To meet with client in 1 week for individual therapy

**Staff Name** Kristen Berglund, LPC, QMHP, MA QMHP **Signature**

## *EXHIBIT XI PAGE 12*

Event No. TY07502

Page No. *

### KENNETH YOUNG CENTER
### Progress Note

| | | | |
|---|---|---|---|
| **Client ID** 000058912 | **Name** Mohamed Haroun | **Service Date** 03/07/2024 | **Event Type** G |
| **Start Time** 12:00P | **Stop Time** 01:00P **Hour** 1 **Min** 0 | **Staff Name** 1963 Kristen Berglund | |
| **Activity** 210 Individual Therapy/Counseling 60 Mins | | **Prog** 110 **Rec** 1 **Loc** 0 Elk Grove | |

**Note**

Session 32

- Goal worked on during this session:
  - Client Goal and Expectation (in client own words): I want to learn 2-3 adaptive coping strategies to better control my anger and frustration so that I can improve my family relationships and increase my social/community support network.

Intervention: Processed with client recent events, symptoms, stressors. Engaged client in reflection of thoughts and feelings regarding a recent update on his son's recent injury. Explored client's protective factors in gratitude for his family. Provided motivational interviewing around rigid thinking that his "only purpose" being to get justice. Developed goals around mindfulness.

Response: Client was engaged and open in session. Client processed recent events, symptoms, stressors. Client reflected on thoughts and feelings regarding a recent update on his son's recent injury. Client explored protective factors in gratitude for his family. Client expressed thoughts around justice being his "only purpose". Client developed goals around mindfulness and "meeting himself" where he's at and beginning to challenge rigid thinking.

Progress: Moderate. The client continues to make progress towards the IATP as evidenced by practicing challenging rigid thinking and mindfulness.

Plan: To meet with client in 1 week for individual therapy

**Staff Name** Kristen Berglund, LPC, QMHP, MA QMHP **Signature**

## *EXHIBIT XI PAGE 13*

**KENNETH YOUNG CENTER**
**Progress Note**

Event No. **TY08095**
Page No. **\***

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| **Client ID** | 000058912 | **Name** | Mohamed Haroun | | **Service Date** | 06/13/2024 | **Event Type** G |

**Start Time** 03:00P **Stop Time** 04:00P **Hour** 1 **Min** 0 **Staff Name** 1963 Kristen Berglund

**Activity** 210 Individual Therapy/Counseling 60 Mins **Prog** 110 **Rec** 1 **Loc** 0 Elk Grove

**Note**

Session 36

• Goal worked on during this session:
- Client Goal and Expectation (in client own words): I want to learn 2-3 adaptive coping strategies to better control my anger and frustration so that I can improve my family relationships and increase my social/community support network.

Intervention: Processed with client recent events, symptoms, stressors. Provided safe space for client to express the emotional impact of recent decrease of depression symptoms and increase in sense of resiliency. Explored client's thoughts and feelings around seeing validating experiences from other people involved in court cases and feeling less alone. Engaged client in reflection of reported values around putting the needs of his children before his need for revenge. Developed client's distress tolerance skills.

Response: Client was engaged and open in session. Client processed recent events, symptoms, stressors. Client expressed the emotional impact of recent decrease of depression symptoms and increase in sense of resiliency. Client explored his thoughts and feelings around seeing validating experiences from other people involved in court cases and feeling less alone. Client engaged in reflection of reported values around putting the needs of his children before his need for revenge. Client developed his distress tolerance skills.

Progress: Moderate. The client continues to make progress towards the IATP as evidenced by exploring values, distress tolerance, and celebrating resiliency.

Plan: To meet with client in 1 week for individual therapy

**Staff Name** Kristen Berglund, LPC, QMHP, MA QMHP **Signature** *Kristen Berglund*

# EXHIBIT XI  (10 PAGE'S)

**EXHIBIT XI Evidence of Memory Impairment and Cognitive Challenges**

**EXHIBIT XI** consists of documents detailing the plaintiff's memory impairment and Cognitive challenges,

Which began **in 2019.** This exhibit presents neuropsychological evaluations, medical Observations,

And highlights the significant impact of these cognitive issues on the plaintiff's daily life.

**Summary of Key Pages**

• **Page 1: Referral for Driving Evaluation**

• A referral from **Dr. Gopi Patel in April 2023** requests an evaluation for driving capacity due to memory

Impairment. The recommendation includes neuropsychological testing and requests an Arabic translator.

• **Page 2: Diagnosis of Memory Impairment**

• This page provides A diagnosis of **"Other Amnesia" (ICD-10: R41.3),** emphasizing the need for continued

Cognitive evaluations to assess the plaintiff's memory functions.

• **Pages 3-4: Neuropsychological Evaluation Report**

• **A 2022** report from Ascension Medical Group confirming memory challenges, including incidents of forgetting

Destinations, medications, and tasks. The report highlights the necessity for regular support due to

The impact on daily life.

• **Pages 5-6: Behavioral Observations**

• Clinical interviews reveal issues with concentration, orientation, and memory, affecting the plaintiff's quality

Of life and independence.

• **Pages 7-10: Ongoing Monitoring and Recommendations**

• Notes on the importance of ongoing cognitive support, particularly concerning the plaintiff's driving and

Daily tasks, underscoring the need for structured assistance to maintain safety.

**EXHIBIT XI SUMMARY**

Provides substantial documentation of the plaintiff's cognitive challenges **since 2019,** showcasing

The ongoing impact of memory impairment on his life. The need for continuous support and

Frequent evaluations is Clear, demonstrating the profound effects on his everyday functioning.

ALEXIAN BROTHERS MEDICAL GROUP - 1555 BARRINGTON RD, HOFFMAN ESTATES IL 60169-1099

**RASHWAN HAROUN, Mohamed (id #1877649, dob: 11/08/1977)**

# Referral Order

*EXHIBIT P PAGE 1*

04/04/2023

| To Provider | From Provider |
|---|---|
| | GOPI PATEL, MD<br>ABMG - ALEXIAN NSI - SAMC<br>1555 BARRINGTON RD DOB 3, # 2400<br>HOFFMAN ESTATES, IL 60169-1099<br>Phone: (847) 981-3630<br>Fax: (847) 303-7929 |

## Referral Order Information

| Diagnosis | • Patient advised about driving<br>ICD-10: Z71.89: Other specified counseling |
|---|---|
| Order Name | Orders Included: 1<br><br>Patient advised about driving<br>ICD-10: Z71.89: Other specified counseling<br>• DRIVING EVALUATION REFERRAL<br>    Schedule Within: provider's discretion |
| Notes | |

## Patient Information

| Patient Name | RASHWAN HAROUN, MOHAMED |
|---|---|
| Sex - DOB - Age | M 11/08/1977 46yo |
| Address | 109 HERITAGE LN<br>STREAMWOOD, IL 60107-2415 |
| Phone | H: (224)600-2200<br>M: (224) 600-2200 |
| Primary Insurance | Meridian Health Plan of Illinois - DOS on or after 7/1/21 (Medicaid Replacement - HMO)<br>ID: 322281973<br>Policy Holder: HAROUN, MOHAMED |
| Secondary Insurance | None recorded. |

Electronically Signed by: GOPI PATEL, MD

_____
GOPI PATEL, MD

ALEXIAN BROTHERS MEDICAL GROUP • 1555 BARRINGTON RD, HOFFMAN ESTATES IL 60169-1099     **_EXHIBIT P PAGE 2_**

## RASHWAN HAROUN, Mohamed (Id #1877649, dob: 11/08/1977)

04/04/2023

| From Provider | To Provider |
|---|---|
| GOPI PATEL, MD<br>1555 BARRINGTON RD DOB 3, # 2400<br>HOFFMAN ESTATES, IL 60169-1099<br>Phone: (847) 981-3630<br>Fax: (847) 303-7929 | THERESA CAMPBELL PHD<br>1555 N BARRINGTON RD STE 2400<br>HOFFMAN ESTATES, IL 60169<br>Phone: (847) 981-3630<br>Fax: (847) 303-7929 |

## Patient Information

| Patient Name | RASHWAN HAROUN, MOHAMED |
|---|---|
| Sex/DOB/Age | Sex M     DOB 11/08/1977     Age 46yo |
| Address | 109 HERITAGE LN<br>STREAMWOOD, IL 60107-2415 |
| Phone | H: (224)600-2200<br>M: (224) 600-2200 |
| Primary Insurance | Meridian Health Plan of Illinois - DOS on or after 7/1/21 (Medicaid Replacement - HMO)<br>ID: 322281973<br>Policy Holder: HAROUN, MOHAMED<br><br>Eligibility: Member is eligible. (Verified 11/13/2023) |
| Secondary Insurance | None recorded. |
| Allergies | Reviewed Allergies<br>NKDA |

## Order Information

| Diagnosis | • Memory Impairment<br>  ICD-10: R41.3: Other amnesia |
|---|---|

| Order Name | Orders Included: 1<br><br>Memory Impairment<br>ICD-10: R41.3: Other amnesia<br>• NEUROPSYCHOLOGICAL TESTING*<br><br>  Note to Provider:<br>  please eval for capacity, driving, etc<br>  This will be a repeat NPT, previously done with Dr. Rolland<br><br>  Needs a translator (needs arabic translator please) |
|---|---|
| Notes | please eval for capacity, driving, etc<br>This will be a repeat NPT, previously done with Dr. Rolland<br><br>Needs a translator (needs arabic translator please) |

Electronically Signed by: GOPI PATEL, MD

*EXHIBIT P PAGE 3*

ALEXIAN BROTHERS MEDICAL GROUP · 1555 BARRINGTON RD. HOFFMAN ESTATES IL 60169 1099

**RASHWAN HAROUN, Mohamed (id #1877649, dob: 11/08/1977)**

# Lab Order

Order_Approved:04/04/2023 10:35am Order_Printed:06/26/2024 11:53 AM

| Order To | Ordering Provider |
|---|---|
| **ALVERNO LABORATORIES**<br>**2434 INTERSTATE PLAZA DR**<br>**HAMMOND, IN 46324**<br>Phone: (219) 989-3700<br>Fax: (219) 989-3739 | **GOPI PATEL, MD**<br>**ABMG - ALEXIAN NSI - SAMC**<br>**1555 BARRINGTON RD DOB 3, # 2400**<br>**HOFFMAN ESTATES, IL 60169-1099**<br>Phone: (847) 981-3630<br>Fax: (847) 303-7929<br>Acct # 5889 Ward # QWY |

**Order**

**Orders included: 1**

**Memory impairment | ICD-10: R41.3: Other amnesia**
- **FOLT2 | folic acid | BILL: Third Party**

| | |
|---|---|
| **Patient Name** | **RASHWAN HAROUN, MOHAMED** |
| **Sex - DOB - Age** | **M 11/08/1977 46yo** |
| **Address** | **109 HERITAGE LN**<br>**STREAMWOOD, IL 60107-2415** |
| **Phone** | h: (224)600-2200 w: |
| **Primary Insurance** | **Meridian Health Plan of Illinois - DOS on or after 7/1/21 (Medicaid Replacement - HMO)**<br>**ID: 322281973**<br>**Policy Holder: HAROUN, MOHAMED**<br><br>**Eligibility: Member is eligible. (Verified 11/13/2023)**<br>**11/08/1977** |
| **Secondary Insurance** | **None recorded.** |
| **Drawn by:** | |
| **Date/Time Drawn:** | |
| **Fasting?:** | - None Needed<br>- 8 HR<br>- 12 HR |
| **Other/Notes:** | |
| **CC:** | |

Electronically Signed by: GOPI PATEL, MD

_____
**GOPI PATEL, MD**

*EXHIBIT P PAGE 4*

Ascension Medical Group
Neurosciences Institute

NEUROPSYCHOLOGY PROGRAM

## NEUROPSYCHOLOGICAL EVALUATION
## CONFIDENTIAL

*Name:* Mohamed Haroun
*Date of Birth (Age):* 11/08/1977 (44)
*Date of Evaluation:* 05/09/2022
*Referral:* Gopi Patel, MD

*Occupation:* Not working
*Education:* 16 years
*Dominant Hand:* Right

## IDENTIFYING INFORMATION AND REASON FOR REFERRAL

Mr. Haroun is a 44-year-old gentleman with reported memory difficulties that began in 2019. A neuropsychological evaluation was requested to assess his current cognitive abilities and emotional status.

## BACKGROUND INFORMATION

Information in this section was obtained through a clinical interview with the patient.

Mr. Haroun reported that he began experiencing difficulties with memory in 2019. Currently, he reported that she forgets his reason for entering a particular room in his home, his intended destination while driving, and to take his medications. Mr. Haroun did not report any other cognitive changes.

Mr. Haroun reported his medical history to include back and neck injuries following a car accident in 2017. He reported that his sleep is poor because of his neck and back pain. He also reported having a poor appetite. Mr. Haroun reported that he smokes approximately 30 cigarettes daily. He denied the use of alcohol or illicit drugs.

Mr. Haroun was born and raised in Egypt. Regarding educational history, Mr. Haroun reported that he graduated from military college. He reported that he worked as an officer in the military until moving to the United States in 2008. Mr. Haroun reported that he currently receives disability income. He is married and resides with his family.

## BEHAVIORAL OBSERVATIONS

Mr. Haroun arrived at his scheduled appointment time and was unaccompanied. He was appropriately groomed and dressed. He was alert and generally oriented. Although Arabic is his primary language, his speech in English was largely fluent.

# IMELDA A. SIA, MD SC     *EXHIBIT P PAGE 5*

## GLENDALE HEIGHTS HEALTHCARE CENTER
### 113 W. LAKE STREET, BLOOMINGDALE, IL 60108
### PH: 630-894-8600   FX: 630-894-8632

### PATIENT REFERRAL/CONSULTATION REQUEST

Date: 10/30/24

Name: Mohamed Haroun     Date of Birth: 11/8/77

Insurance: Meridian

Consultant Name: Mental + Behavioral Health Services

Specialty: Psychiatry

Address: _____

Phone #: 312 600-5194     Fax: _____

Reason for referral:

Depression - See New Psych Testing

[✓] Evaluation & Treatment     [ ] Follow up visit

Number of visits: _____

Signature:

_____
Imelda A. Sia, M.D.

____ **Patient has Humana Gold Plus, Cigna Medicare HMO, Aetna HMO, UHC HMO, Devoted Health HMO. Approved referral form from the insurance company will follow.**

____ Patient has another HMO. Approved referral form from the insurance company is not required.

____ Patient has Medicare/Medicaid Plans/PPO. Approved referral form from the insurance company is not required.

____ Patient will make an appointment

____ Patient has an appointment scheduled on _____

____ Progress Notes/X-rays/MRI/CT scan/labs included

____ Please retain this for your records

____ **Per Unified Physicians Network/Village MD Physicians Network, all medicaid plans, Cigna HMO Connect, Devoted Health, UHC, Cigna Medicare & Humana Gold Plus any procedures/tests requiring authorization must be initiated by the ordering in-network specialist. Please contact the insurance for any questions regarding this protocol.**

### REFERRAL VALID FOR 60/180 DAYS

*EXHIBIT P PAGE 6*

## NEUROPSYCHOLOGICAL EVALUATION
### RESULTS SUMMARY

**Mohamed Haroun**          *May 9, 2022*

| Cognitive Domain | Normal or Near Normal for Age | | Below Normal as Compared to Others of the Same Age | | |
|---|---|---|---|---|---|
| | Normal Range | Possible Impairment | Mildly Impaired | Moderately Impaired | Severely Impaired |
| **ATTENTION** | | | | | |
| Basic Attention | ✓ | | | | |
| Complex Attention | ✓ | | | | |
| Processing Speed | | | | ✓ | |
| **EXECUTIVE FUNCTIONS** | | | | | |
| Problem Solving | ✓ | | | | |
| Response Inhibition | | | | | ✓ |
| Verbal Fluency | | | ✓ | | |
| **LANGUAGE** | | | | | |
| Comprehension | ✓ | | | | |
| **VISUOSPATIAL** | | | | | |
| Perception | | | | | ✓ |
| **MEMORY** | | | | | |
| Verbal Memory | | | | ✓ | |
| Visual Memory | | | | ✓ | |
| Recognition Memory | | | | | ✓ |

*EXHIBIT P PAGE 7*

*Haroun, Mohamed*
Page 1

Ascension Medical Group
Neurosciences Institute

NEUROPSYCHOLOGY PROGRAM

## NEUROPSYCHOLOGICAL EVALUATION
## CONFIDENTIAL

*Name:* Mohamed Haroun
*Date of Birth (Age):* 11/08/1977 (44)
*Date of Evaluation:* 05/09/2022
*Referral:* Gopi Patel, MD

*Occupation:* Not working
*Education:* 16 years
*Dominant Hand:* Right

### IDENTIFYING INFORMATION AND REASON FOR REFERRAL

Mr. Haroun is a 44-year-old gentleman with reported memory difficulties that began in 2019. A neuropsychological evaluation was requested to assess his current cognitive abilities and emotional status.

### BACKGROUND INFORMATION

Information in this section was obtained through a clinical interview with the patient.

Mr. Haroun reported that he began experiencing difficulties with memory in 2019. Currently, he reported that she forgets his reason for entering a particular room in his home, his intended destination while driving, and to take his medications. Mr. Haroun did not report any other cognitive changes.

Mr. Haroun reported his medical history to include back and neck injuries following a car accident in 2017. He reported that his sleep is poor because of his neck and back pain. He also reported having a poor appetite. Mr. Haroun reported that he smokes approximately 30 cigarettes daily. He denied the use of alcohol or illicit drugs.

Mr. Haroun was born and raised in Egypt. Regarding educational history, Mr. Haroun reported that he graduated from military college. He reported that he worked as an officer in the military until moving to the United States in 2008. Mr. Haroun reported that he currently receives disability income. He is married and resides with his family.

### BEHAVIORAL OBSERVATIONS

Mr. Haroun arrived at his scheduled appointment time and was unaccompanied. He was appropriately groomed and dressed. He was alert and generally oriented. Although Arabic is his primary language, his speech in English was largely fluent.

## *EXHIBIT P PAGE 8*

His responses to questions were goal-directed. Affect and mood were appropriate. No evidence of thought disorder was observed. He was pleasant and cooperative during the evaluation. He appeared to put forth good effort on testing. However, given that he was not educated in the United States and the fact that English is not his first language (factors known to have significant impact on testing), appropriate normative data was not available. As such, results reported below are relative to a normative group raised and educated in the United States. Therefore, conclusions from the present evaluation are limited by these factors.

## TESTS ADMINISTERED

*Wechsler Adult Intelligence Scale – Fourth Edition (WAIS-IV)*
    *(Digit Span and Letter-Number Sequencing subtests)*
*Symbol Digit Modality Test*
*Conners Continuous Performance Test – Third Edition (CPT3)*
*Wisconsin Card Sort Test*
*Wechsler Memory Scale, Fourth Edition (WMS-IV; selected subtests)*
*California Verbal Learning Test – Third Edition (CVLT-3)*
*Semantic Fluency (Animals and Fruits/Vegetables)*
*Judgment of Line Orientation*
*Beck Anxiety Inventory (BAI)*
*Beck Depression Inventory – Second Edition (BDI-II)*

## TEST RESULTS

### *Attention, Cognitive Efficiency, and Executive Functions*

Immediate auditory attention, in the form of digit repetition forward, reversed, and in numeric sequence, was low average. Performance on a test of sustained attention and concentration reflected difficulty with sustained attention and impulsivity. Performance on a test of mental processing speed was in the moderately impaired range. On a test involving rapid word reading, performance was in the mildly impaired range. Rapid color naming was in the mildly impaired range. Rapid color naming in the presence of distracting stimuli was in the severely impaired range. Performance was average on a test of novel problem solving requiring mental flexibility, planning, and use of feedback to shift cognitive sets.

### *Learning and Memory*

Immediate and delayed recall of short stories was in the severely impaired range and he did not benefit from recognition cueing. On a verbal list-learning task consisting of 16 words presented in five trials, his immediate recall was moderately impaired across learning trials. Free recall of the wordlist after a brief delay was in the low average range (7 words). Free recall after a 20-minute delay was in the severely impaired range (0 words) and cued recall was also severely impaired (4 words). Immediate recall of nonverbal material (geometric designs) was in low

## *EXHIBIT P PAGE 9*

average range. Delayed recall was in the severely impaired range and he did not benefit from recognition cueing.

### *Language*
Basic comprehension and conversational speech were intact. His rapid generation of words to category cues ranged from low average to mildly impaired.

### *Visuospatial Processing*
Visuospatial judgment was in the severely impaired range.

### *Emotional Status*
On self-report measures of mood, Mr. Haroun reported symptoms suggestive of moderate to severe depression and anxiety.

## SUMMARY, IMPRESSIONS, AND RECOMMENDATIONS

Mr. Haroun is a 44-year-old gentleman with reported memory difficulties that began in 2019. It is important to note that conclusions from the present evaluation are limited by the fact that he was not educated in the United States and the fact that English is not his primary language (factors known to have significant impact on testing). Nonetheless, his performance on a test of sustained attention was impaired. Performance on a test of mental processing speed was impaired. His performances on tests of memory were also impaired. Visuospatial processing was impaired. Regarding executive functions, deductive reasoning/problem-solving was within expectation while response inhibition and semantic verbal fluency were impaired. Regarding mood, Mr. Haroun reported symptoms suggestive of moderate to severe depression and anxiety.

Overall, some of Mr. Haroun's cognitive difficulties may be related to his reported emotional distress since it is not uncommon for individuals experiencing symptoms of depression and anxiety to also experience difficulties with attention, memory, and mental processing speed. However, other etiologies cannot be ruled out based solely on cognitive testing. Based on these results, the following recommendations are offered:

Recommendations

1. Mr. Haroun may benefit from use of organizational strategies to enhance structure in his daily routine. Such strategies may include setting aside time at the beginning of the day to organize and plan activities, allowing adequate time to complete tasks, establishing a minimally distracting environment for more demanding tasks, and using organizational aids such as a written calendar of daily activities and/or "to do" lists.

## EXHIBIT P PAGE 10

2. Given his reported emotional distress, Mr. Haroun might benefit from a medication for mood and can discuss this with his treating physicians.

3. Mr. Haroun may also benefit from participating in therapy with a health psychologist given his chronic pain and symptoms of depression and anxiety. He is encouraged to make an appointment with one of the health psychologist with Ascension Neurosciences Institute.

4. If Mr. Haroun continues to experience cognitive difficulties after his mood symptoms are better controlled, he should undergo a neuropsychological re-evaluation.

Thank you for allowing us to participate in Mr. Haroun's care. If you have any questions pertaining to this evaluation, please do not hesitate to contact us at (847) 981-3630.

Shelley Rowland, PhD, ABPP-CN
Clinical Neuropsychologist
Ascension Neurosciences Institute
Licensed Clinical Psychologist #071-007410

**EXHIBIT XIII ( 4 PAGE'S )**

**EXHIBIT XIII: "Obstructive Sleep Apnea and Psychological Impact"**

**EXHIBIT XIII** includes two pages documenting the plaintiff's diagnosis and treatment for severe obstructive

Sleep apnea **(OSA)**, as well as related psychological factors. This exhibit outlines the significant daily impact Of

**OSA** On the plaintiff's life,

Which has resulted in a reliance on continuous positive airway pressure **(CPAP)** therapy during sleep. **Detailed**

**Explanation of Pages**
• **Page 1: Diagnosis and Treatment Recommendations**
• This page, dated **April 2023,** includes **A** diagnosis of severe obstructive sleep apnea. Dr. Ashesha Mechineni

Prescribed **CPAP** therapy at **8-10 cm H2O,** with instructions to use the device every night. The plaintiff wa

Informed of the risks associated with drowsy driving and was advised to adhere strictly to **CPAP** usage.

Recommendations for regular exercise and weight management were also provided to help alleviate

**OSA** Symptoms .

• **Page 2: Follow-up and Desensitization Protocol**
• During **A** follow-up visit, further guidance was provided on adapting to **CPAP** therapy, with **A** desensitization
Protocol aimed at helping the plaintiff adjust to the equipment. Instructions included gradually increasing the

Duration of **CPAP** use each night to improve comfort. The report also notes ongoing symptoms of anxiety and

Depression, suggesting that these psychological conditions may exacerbate the impact of sleep apnea,

Compounding the plaintiff's daily challenges .
• **Page 3:** CPAP Machine Prescription
• Documentation showing **A** prescription for **A** ResMed CPAP machine to manage sleep apnea, **A** significant,
Lifelong health condition that requires consistent treatment.
• **Page 4. : Cervical Fusion X-ray and Surgical Need**
**An X-ray from September 16, 2024,** revealing complications from **A** previous cervical fusion surgery,

**Indicating** the necessity for further surgical intervention due to pain and limited neck mobility.

**EXHIBIT XIII SUMMARY** provides evidence of the plaintiff's severe obstructive sleep apnea, which requires

Continuous use of **CPAP** therapy for life. The exhibit highlights the compounding effect of anxiety and

Depression on the plaintiff's Health, emphasizing the profound impact these conditions have on his quality of

Life and daily functioning. While this exhibit is **A** summary, more detailed documentation is available for further

Review if required.

**Page 1**

**Alexian Brothers Medical Care Group NFP**
800 Biesterfield Road Suite 510  Elk Grove Village, IL 60007
(847) 981-3660  Fax: (847) 956-5108

*April 12, 2023*
Page 1

## Patient Information

*EXHIBIT P PAGE 1*

**For : Mohamed Haroun**

## * Clinical Care Visit Summary-SLEEP MEDICINE

During your visit today with Alexian Brothers Medical Care Group NFP, you were seen by
Ashesha Mechineni MD.

**PATIENT INSTRUCTIONS:**
1)  Please schedule a follow-up appointment in 1 year.
2)  Establish and maintain a stable and consistent bedtime and out-of-bed time.
3)  Use positive airway pressure every sleep period at the prescribed pressure.
4)  The risks associated with drowsy driving were discussed with the patient, and to take the
necessary measures to eliminate these risks.
5)  Discussed importance of regular exercise and recommended starting or continuing a regular
exercise program for good health.
6)  The patient was encouraged to lose weight for better health and as treatment for obstructive
sleep apnea.

**PROBLEM ASSESSMENTS:**
Below is a summary of problems recently assessed which includes significant labs, diagnostics,
and treatment plans.
**Problem:**  Obstructive sleep apnea of adult (ICD-327.23) (ICD10-G47.33)
Severe OSA
on APAP 8-10 cm H20
excellent compliance
good tolerance
mask fitting and supplies discussed
full face mask
DME: Apria
feels obvious benefit with nightime and daytime symptoms after PAP use started

Patient counselled regarding diagosis of OSA and its pathophysiology including clinical implications.
Patient encouraged to continue using PAP therapy.
Barriers to therapy discussed and addressed with solutions.
Device maintenance / supplies  discussed
Best sleep practices in setting of OSA discussed
Avoid driving when feeling sleepy
Advised to continue efforts for regular exercise and weight maintenance.

**Problem:**  Depression with anxiety (ICD-300.4) (ICD10-F41.8)
continue medications
mood stable for now

His updated medication list for this problem includes:
Amitriptyline 25 Mg Tablet (Amitriptyline)
Gabapentin 300 Mg Capsule (Gabapentin)

**Problem:**  Insomnia, chronic, mild (ICD-780.52) (ICD10-G47.00)
Recommend trial of gabapentin 600 mg qhs



**Alexian Brothers Medical Care Group NFP**
800 Biesterfield Road Suite 510   Elk Grove Village, IL 60007
(847) 981-3660  Fax: (847) 956-5108

## Patient Information   *EXHIBIT Q PAGE 2*

**For :** Mohamed Haroun

## * Clinical Care Visit Summary-SLEEP MEDICINE

During your visit today with Alexian Brothers Medical Care Group NFP, you were seen by Ashesha Mechineni MD.

### PATIENT INSTRUCTIONS:
1) Please schedule a follow-up appointment in 3 months.
2) Establish and maintain a stable and consistent bedtime and out-of-bed time.
3) Use positive airway pressure every sleep period at the prescribed pressure.
4) The risks associated with drowsy driving were discussed with the patient, and to take the necessary measures to eliminate these risks.
5) Discussed importance of regular exercise and recommended starting or continuing a regular exercise program for good health.
6) Desensitization Protocol - This schedule/program is designed to allow you to adapt to your PAP therapy over time.  Please follow the guidelines below.
7) First day: Put on mask and turn device on for ~15 minutes while watching TV or reading. (if vision is obstructed by mask, just 'rest' for 15 minutes in a chair)  Do not take into bedroom yet.
8) Second day:        Repeat above for 15-20 minutes.
9) Third day: Increase time to 20-25 minutes.
10) Fourth day: Increase time to 25-30 minutes.
11) 5-10 days: Follow pattern above until you feel comfortable taking equipment into bedroom and attempting to fall asleep wearing it. (usually between 7-10 days)
12) Try and relax and do not get frustrated with your therapy.  It often does take time to get use to using CPAP/BiPAP on a regular basis.  Allow yourself to break the CPAP in-like a new pair of shoes-a little at a time.
13) However, if you did well during titration and do not feel like you need to ease into therapy, please just put on each night and go for it.


### PROBLEM ASSESSMENTS:
Below is a summary of problems recently assessed which includes significant labs, diagnostics, and treatment plans.
**Problem:** Obstructive sleep apnea of adult (ICD-327.23) (ICD10-G47.33)
Severe OSA
start APAP 8-10 cm H20, prescription written today

Patient counselled regarding diagosis of OSA and its pathophysiology including clinical implications.
Patient encouraged to continue using PAP therapy.
Barriers to therapy discussed and addressed with solutions.
Device maintenance / supplies  discussed
Best sleep practices in setting of OSA discussed
Avoid driving when feeling sleepy
Advised to continue efforts for regular exercise and weight maintenence.

**Problem:** Depression with anxiety (ICD-300.4) (ICD10-F41.8)
continue medical therapy



EXHIBIT R PAGE 4

Case: 1:25-cv-02150 Document #: 1 Filed: 02/28/25 Page 73 of 314 PageID #:73

Help Logoff Scroll Pan Zoom Rotate WL Reset Cine

**EXHIBIT N PAGE 12**



HAROUN, MOHAMED R
111011506569 M/(46Y)
Accession no.: 24DX39232914
AP
Sep 16, 2024 2:47 PM
Series 1 - Image 1

NM ORTHOPAEDICS -
GENEVA
KONICA MINOLTA, CS-7

RIGHT

ME

Zoom: 0.85
WC: 2,047
WW: 4,096
Measurements: estimated
Presentation: Transient

Non-diagnostic use, Please verify read environment

1/1

# EXHIBIT'S

| | | |
|---|---|---|
| A | 7 | PAGE'S |
| B | 12 | PAGE'S |
| C | 7 | PAGE'S |
| D | 5 | PAGE'S |
| E | 5 | PAGE'S |
| F | 5 | PAGE'S |
| G | 8 | PAGE'S |
| H | 9 | PAGE'S |
| I | 5 | PAGE'S |
| J | 6 | PAGE'S |

**TOTAL  69 PAGE'S**

Mohamed Haroun
109 Heritage Lane
Streamwood IL 60107
224-600-2200
Moa.Haroun@yahoo.com

Signature: _____
02/28/2025

**Index of Exhibits (A – V)**

| Exhibit | Title / Subject | Page Count |
|---|---|---|
| **Exhibit A** | --Attorney Withdrawal and Medical Expenses | **7 Pages** |
| **Exhibit B** | --Settlement Negotiations and Plaintiff's Position | **12 Pages** |
| **Exhibit C** | --Legal Representation and Misconduct | **7 Pages** |
| **Exhibit D** | --Insurance Settlement and Attorney Intervention | **5 Pages** |
| **Exhibit E** | --Unlawful Medical Provider Transfers & Conflicts of Interest | **5 Pages** |
| **Exhibit F** | --Deliberate Medical Delays & Financial Barriers | **5 Pages** |
| **Exhibit G** | --Denial of Translator and Coercive Settlement Tactics | **8 Pages** |
| **Exhibit H** | --Coercion, Financial Mismanagement, and Pressured Settlement | **9 Pages** |
| **Exhibit I** | --Fraudulent Medical Billing & Overcharges | **5 Pages** |
| **Exhibit J** | --Conflicts of Interest and Unethical Legal Practices | **6 Pages** |
| **Exhibit K** | --Attorney's Inability to Represent Plaintiff in Court | **12 Pages** |
| **Exhibit L** | --Retaliation and Threats Following Plaintiff's Public Comments | **12 Pages** |
| **Exhibit M** | --The Role of ARDC in Obstructing Justice and Delaying Investigations | **16 Pages** |
| **Exhibit N** | --Analysis of Misrepresentation and Legal Manipulation in ARDC Investigation | **13 Pages** |
| **Exhibit O** | --ARDC's Cover-Up and Conspiracy Against the Plaintiff | **28 Pages** |
| **Exhibit P** | --Conflict of Interest and Systemic Barriers to Legal Representation | **8 Pages** |
| **Exhibit Q** | --Police Reports and Evidence of Intimidation and Threats | **5 Pages** |
| **Exhibit R** | --Systemic Barriers and Lack of Institutional Support in Seeking Justice | **11 Pages** |
| **Exhibit S** | --Legal Manipulation, Procedural Abuse, and Retaliatory Actions | **26 Pages** |
| **Exhibit T** | --Judicial Bias and Court Orders: Comparative Analysis | **18 Pages** |
| **Exhibit U** | --Systematic Manipulation, Attorney Collusion, and Retaliation Against the Plaintiff | **14 Pages** |
| **Exhibit V** | --Chronological Motion Filing Summary | **45 Pages** |

## EXHIBIT A SUMMARY ( 7 PAGE'S )

### Attorney Thomas Gorman Withdrawal and Medical Expenses

**Section 1: Attorney Withdrawal and Legal Communications**

The documents provided detail the withdrawal of legal counsel and related communications concerning

The plaintiff's case against Uber and other involved parties.

**Attorney Withdrawal Motion (Dec 9, 2021)**

Filed by Krzak Rundio Law Group, LLC and Duran Law Offices seeking withdrawal as counsel for

**Mohamed Rashwan Haroun in Case No.: 2018 L 007167.**

The motion was based on the plaintiff's direct termination of Attorney **Thomas Gorman on November 29,**

**2021, following** the plaintiff's assertion of having retained new legal representation.

A hearing on the motion was scheduled for **December 22, 2021, before Judge John P. Callahan.**

Correspondence Confirming Attorney Discharge **(Dec 1, 2021)**

Attorney Thomas Gorman sent a formal email acknowledging the plaintiff's decision to discharge him and

Duran Law Office from the case.

Plaintiff's Request for Case Files **(Dec 13, 2021)**

The plaintiff sent an email to Attorney Thomas Gorman requesting copies of all medical records,

Deposition transcripts, and case-related documents.

The plaintiff instructed that these documents be forwarded to

**Attorney Mohamed Owaynat at mo@owaynatlaw.com.**

Request for Court Postponement and Case **Documents (Dec 22, 2021)**

Plaintiff Mohamed Rashwan Haroun formally requested **A** two-month postponement of court hearings and

Depositions to allow time for securing new legal counsel.

The plaintiff further requested copies of all case-related documents, including depositions,

Medical invoices, and prior settlement offers.

**Page 1-2**

## Section 2: Medical Expenses Summary

The original medical invoices provided by the plaintiff's former attorney reflect the actual costs incurred

Before any unauthorized modifications. The total amount prior to any alterations was **$189,812.12.**

Grand Avenue Surgical Center **$33,762.00**

Premium Healthcare Solutions **$10,227.00**

Modern Pain Consultants **(Dr. Farooq Khan) $26,545.00**

Windy City Anesthesia **$9,000.00**

Premier Physical Therapy **$8,930.00**

American Center for Spine & Neurosurgery **(Dr. Robert Erickson) $16,900.00**

Delaware Physicians, LLC **$1,100.00**

Team Rehab **(Kristin Dryden, DPT) $6,385.00**

Lakeshore Open **MRI $2,400.00**

AMITA - Alexian Brothers Medical Center **$6,998.00**

Windy City Medical Specialists **$9,225.00**

Lakeshore Surgery Center - **FAC $37,733.02**

Lakeshore Surgery Center - **PHYS $325.00**

Western Touhy Anesthesiology **$2,310.00**

Lake County Neuromonitoring **$10,850.00**

**Total Before Any Alterations $189,812.12**

**Conclusion:**

The former attorney provided the original and accurate medical invoices prior to any interference.

Following the transfer of the case to the new attorney, the medical invoices were unlawfully manipulated and

Increased to **$572,000,** despite no corresponding increase in medical services rendered.

This manipulation constitutes fraudulent billing and legal misconduct, raising serious concerns regarding

Financial exploitation and ethical violations.



*EXHIBIT A PAGE 1*

**K R Z A K ◆ R U N D I O**
L A W   G R O U P   L L C

**Direct Dial:** 312-736-1111
**Email:** tom@krlawgroup.com

December 1, 2021

**via email and US MAIL: moa.haroun@yahoo.com**

Mohamed Rashwan Haroun
6600 Scott Lane, Unit 11
Hanover Park, IL 60133

> **Re:**     **Rashwan et al. v. Uber, et al.**
> Court No.: 18 L 7167

Mohamed,

Consistent with our telephone conversation of Monday, November 29, 2021, I understand that you have discharged me and KRZAK RUNDIO LAW GROUP as your attorneys. I have also been informed that you have discharged Octavio Duran and the DURAN LAW OFFICE. Accordingly, I will file a motion with the Court informing the Court and all parties of the discharge such that the Court can facilitate attorney withdrawal.

Consistent with Illinois Supreme Court Rule 13, the Motion will be heard within the next 20 days at 9:00 am via Zoom videoconference before the Hon. John J. Callahan. I will email a copy of the Motion and the Notice of Motion such that you have the specific date, time and Zoom access information. I have also attached a copy of Rule 13 for your reference.

Finally, I understand that you have chosen new counsel. He or she should be informed of this motion and it would be wise for that counsel to be present for the hearing on the motion.

We will cooperate with your new counsel and upon the entry of the Order.

Sincerely,

**KRZAK RUNDIO LAW GROUP**

Thomas G. Gorman

TGG:cb
attachment

cc: Octavio Duran *via email*

---

30 N. LaSalle St. · Suite 4020 · Chicago, IL 60602 · (312) 736-1111 · Fax (312) 736-1112 · www.KRLawGroup.com

## *EXHIBIT A PAGE 2*

**IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT – LAW DIVISION**

FILED
12/9/2021 11:31 AM
IRIS Y. MARTINEZ
CIRCUIT CLERK
COOK COUNTY, IL
2018L007167

15888933

MOHAMED RASHWAN and
MAHMOUD RASHWAN,

                   Plaintiffs,

vs.

CHERYL CAMBERLAN, WIEMING LI,
et al.

                 Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)

Court No.: 2018 L 007167

*Honorable Judge John P. Callahan*

### NOTICE OF MOTION

**TO:**   **Counsel of Record**
      **(See attached Service List)**

**TO:**   **Via Certified Mail # 7020 1810 0001 8729 5656**
      **& Email:** moa.haroun@yahoo.com
      **Mohamed Rashwan Haroun**
      **6600 Scott Lane, Unit 11**
      **Hanover Park, IL 60133**

PLEASE TAKE NOTICE that on **December 22, 2021**, at **9:00 a.m.**, I shall electronically submit the attached, ***Plaintiff's Counsel's Motion to Withdraw as Counsel for Plaintiff Mohamed Rashwan Haroun,*** to the Honorable Judge John P. Callahan, via email address: jackcal5@yahoo.com.

To respond or object to this Motion, you must email your response or objection to jackcal5@yahoo.com after 10:00 a.m. on the date set forth above, with a cc by email to all attorneys of records as listed on the attached Service List.

If no response or objection is emailed before 4:00 p.m. on the date set forth above, the Court will rule on the Motion and will enter an order.

                                      */s/ Thomas G. Gorman*
                                      KRZAK • RUNDIO LAW GROUP, LLC
                                      30 N. LaSalle St.
                                        Suite 4020
                                        Chicago, IL 60602
                                        (312) 736-1111

1

FILED
12/9/2021 11:31 AM
IRIS Y. MARTINEZ
CIRCUIT CLERK
COOK COUNTY, IL
2018L007167

Attorney No.: 62497

**IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**
**COUNTY DEPARTMENT – LAW DIVISION**

15888933

|  |  |  |
|---|---|---|
| MOHAMED RASHWAN and MAHMOUD RASHWAN, | ) ) ) | |
| Plaintiffs, | ) ) | |
| vs. | ) ) | Court No.: 2018 L 007167 |
| CHERYL CAMBERLAN, WIEMING LI, et al. | ) ) ) ) | *Honorable Judge John P. Callahan* |
| Defendants. | ) ) | |

**PLAINTIFF'S COUNSELS' MOTION TO WITHDRAW**
**AS COUNSEL FOR PLAINTIFF MOHAMED RASHWAN HAROUN**

Petitioners, KRZAK RUNDIO LAW GROUP, LLC and DURAN LAW OFFICES, respectfully move this Court, consistent with S.C.R. 11 and 13, to grant leave to withdraw as counsel for Plaintiff, MOHAMEND RASHWAN HAROUN, and in support hereof, states as follows:

1. This matter involves an automobile collision that occurred on March 30, 2017.

2. The matter is set for trial on April 4, 2022.

3. On November 29, 2021, Plaintiff, Mohamed Rashwan Haroun, called Plaintiff's counsel, Thomas Gorman, and discharged him as counsel. Mr. Haroun informed Mr. Gorman that Mr. Haroun had retained alternative counsel.

4. Thomas Gorman has sent correspondence to Mohamed Rashwan Haroun memorializing the conversation and the discharge. Correspondence was sent via email consistent with S.C.R. 11. A copy of the text of S.C.R. 13 has also been sent to Mr. Haroun.

5. Pursuant to S.C.R. 13(c)(3), the last known address of Plaintiff, Mohamed Rashwan Haroun, is 6600 Scott Lane, Unit 11, Hanover Park, IL 60133.

1

## Re: Rashwan v. Uber

*EXHIBIT A PAGE 3*

 **Me**
To: Thomas Gorman ^      ✎ 12/13/21 ☆

From:
Mohamed Rashwan
moa.haroun@yahoo.com

To:
Thomas Gorman
tom@krlawgroup.com

Date:
Dec 13, 2021 at 9:25 AM

Hi : Tom
Please I need you to send my all medical
records, depositions transcripts, etc.
And email to
mo@owaynatlaw.com
ASAP please
Thank you 🙏

Sent from Yahoo Mail for iPhone

Show trimmed content

*EXHIBIT A PAGE 4*

## MOHAMED RASHWAN
## MEDICAL EXPENSE SUMMARY

Mohamed Elbasouny, MD
General Organization for Teaching Hospitals Ins.

| | | |
|---|---|---|
| 4/4/17-4/26/17 | $ | 124.10 |

Grand Avenue Surgical Center
17 W. Grand Ave.
Chicago, IL 60654

| | | |
|---|---|---|
| 5/20/2017 | $ | 20,373.00 |
| 6/17/2017 | $ | 13,389.00 |

Premium Healthcare Solutions
28795 Network Place
Chicago, IL 60673-1287

| | | |
|---|---|---|
| 5/12/2017 | $ | 5,205.00 |
| 5/19/2017 | $ | 2,686.00 |
| 8/21/2017 | $ | 2,336.00 |

Farooq Khan, MD
Modern Pain Consultants
5201 S. Willow Springs Rd.
LaGrange Highlands, IL 60525

| | | |
|---|---|---|
| 5/9/2017-8/5/2017 | $ | 26,545.00 |

Windy City Anesthesia
21120 Washington Parkway
Frankfort, IL 60423-3112

| | | |
|---|---|---|
| 5/20/17-9/16/17 | $ | 9,000.00 |

Premier Physical Therapy
1540 W. Lake St.
Roselle, IL 60172-3330

| | | |
|---|---|---|
| 5/10/17-7/12/17 | $ | 8,930.00 |

Robert Erickson, MD
The American Center for Spine & Neurosurgery
8501 W. Higgins Rd., Ste 710
Chicago, IL 60631

| | | |
|---|---|---|
| 10/11/17-10/31/18 | $ | 16,900.00 |

Delaware Physicians, LLC
7200 N. Western Ave.
Chicago, IL 60645

9/17/18-2/6/19　$　1,100.00

Kristin Dryden, DPT
Team Rehab
186 E. Golf Road
Schaumburg, IL 60173-3726

9/8/17-10/2/2017　$　6,385.00

Lakeshore Open MRI
PO Box 129
Plainfield, IL 60544-0129

8/2/2018　$　2,400.00

AMITA - Alexian Brothers Medical Center
800 Biesterfield Rd.
Elk Grove Village, IL 60007

10/09/18-10/13/2018　$　6,998.00

Windy City Medical Specialists
8501 W. Higgins Rd., Ste 710
Chicago, IL 60631

10/27/18-11/29/18　$　9,225.00

Lakeshore Surgery Center - FAC
7200 N. Western Ave.
Chicago, IL 60645

10/31/2018　$　37,733.02

Lakeshore Surgery Center - PHYS
7200 N. Western Ave.
Chicago, IL 60645

10/31/2018　$　325.00

Wesern Touhy Anesthesiology
PO Box 129
Plainfield, I l60544-0129

10/31/2018　$　2,310.00

AMITA - Alexian Brothers Medical Center Elk Grove Village
800 Biesterfield Rd.

2

*EXHIBIT A PAGE 6*

Elk Grove Village, IL 60007

|  |  |  |
|---|---|---|
| 10/09/18-10/13/2018 | $ | 6,998.00 |
| 11/1/18-11/20/18 | *Pending* | |
| 2019 Visits | *Pending* | |

AMITA - St. Alexius Medical Center Hoffman Estates
1555 Barrington Rd.
Hoffman Estates, IL 60169

|  |  |
|---|---|
| 10/31/18-11/15/18 | *Pending* |
| 2019 Visits | *Pending* |

Lake County Neuromonitoring
712 S. Milwaukee Avenue
Libertyville, IL 60048

|  |  |  |
|---|---|---|
| 10/31/2018 | $ | 3,750.00 |
| 7/10/2019 | $ | 7,100.00 |

Priarie Stone Sports and Welness Center
5050 Sedge Blvd.
Hoffman Estates, IL 60192

*Pending*

**TOTAL TO DATE**                                   **$ 189,812.12**

3

# Court No: 2018-L-007167/ respond to the motion dated 12/21/2021

 **Me**      12/22/21 ☆
To: jackcal5@yahoo.com & 6 more ˄

**From:**
Mohamed Rashwan
moa.haroun@yahoo.com

*EXHIBIT A PAGE 7*

**To:**
jackcal5@yahoo.com
Thomas Gorman
tom@krlawgroup.com
Octavio Duran
oduran@dlochicago.com
chirs.buenik@francomoroney.com
michelle.bisognani@francomoroney.com
bret.franco@wilsonelser.com
ajahanban@tresslerllp.com

**Date:**
Dec 22, 2021 at 2:26 PM

To whom it may concern

Per the hearing today 12/22/2021, I am requesting to postpone any court hearing and any depositions for January in order for me to find another attorney, postpone it for at least 2 months.

I am also requesting copy of all the documents (including depositions, medical bills, the last offer was given, etc. )

Sincerely,
Mohamed Haroun

**EXHIBIT B SUMMARY (12 PAGES )**

**Exhibit B - Page 1: Settlement Negotiations and Plaintiff's Position**

The following sections outline the details of settlement negotiations between the plaintiff's attorneys and Uber's legal team, as well as the plaintiff's refusal to accept any settlement due to his medical condition and Need for further treatment.

**Settlement Negotiation History:**

**In late 2020,** the plaintiff's attorney submitted A formal demand of **$6 million** as A proposed settlement amount.

Subsequently, the plaintiff's attorney submitted A reduced demand of **$3.5 million.**

Mediation efforts involving Gomolinski failed, as Uber's attorneys did not have the authority to approve A settlement.

**By November 2021, Attorney Thomas Gorman** communicated that the plaintiff's minimum acceptable Settlement was **$2.9 million,** including A **$100,000** contribution from **USAA.**

The plaintiff rejected all settlement offers as he was scheduled for urgent surgical procedures **in early 2022.**

The accident resulted in the plaintiff's permanent disability **since 2019,** necessitating ongoing medical Treatment and rehabilitation.

A court hearing was scheduled for **April 2022,** but the plaintiff maintained that he would not settle until his Medical treatment was fully completed.

**Final Settlement Status (November 2022):**

Uber's highest recorded offer was **$3.5 million,** but negotiations ceased following A change in The plaintiff's legal representation.

The plaintiff's refusal to settle was based entirely on his need to undergo medical procedures and Complete rehabilitation before engaging in any financial discussions.

**Conclusion:**

**1. Attorney's initial demand: $6 million**

**2. Plaintiff's lowest settlement threshold: $2.9 million**

**3. Uber's highest counteroffer: $3.5 million**

**Reason for rejection:** The plaintiff's urgent medical condition and scheduled surgeries prevented him From considering A settlement at the time.

This section clarifies that the plaintiff's rejection of the settlement was not financially motivated but was Solely due to the necessity of completing his medical treatment and ensuring access to essential healthcare.

**Exhibit B: Legal Summary (Pages 2-6)**

**On November 11, 2022,** following the failure of Uber's attorneys to present substantial evidence, A witness, **Zainab Lili,** was introduced. The witness, known prior to the marriage in question, provided testimony containing False allegations, including claims of pregnancy, despite residing in Ohio while the opposing party was located in Chicago, Illinois. The statements made were misleading, aimed at damaging credibility and personal reputation.

**During A Zoom hearing,** legal counsel, **Mohamed Owynat,** successfully refuted the testimony by Presenting conclusive evidence establishing the lack of factual basis for the witness's claims. Screenshots dated **September 29, 2018, to October 1, 2018,** demonstrated previous attempts by the witness to interfere in Private matters by sending false accusations and threats, intended to create conflict.

As A result, the testimony provided by **Zainab Lili** was effectively discredited during the hearing. The evidence Submitted confirmed the fabricated nature of the statements, rendering them legally unreliable and inadmissible.

This document serves as A legal record establishing the presentation of misleading testimony and The evidentiary basis for its dismissal.

**Exhibit B - Pages 7-9:**

The Plaintiff asserts that after Defendant Uber's attorneys failed to secure witness testimony against him The Defendants sent individuals to monitor the Plaintiff around the clock **(24/7)** and record videos of him in an Attempt to gather evidence that could be used against him. However, all the videos captured only confirmed that The Plaintiff struggles significantly with mobility, walks with extreme difficulty, and requires **A cane** for support. The recorded footage clearly supported the Plaintiff's claims, ultimately failing to discredit his condition.

Upon realizing that all attempts to gather contradicting evidence had failed, the Defendants resorted to coercion, Forcing the Plaintiff into signing the settlement agreement through unlawful collusion with his own attorneys.

**Exhibit B - Page 10:**

The Plaintiff contends that after Defendant Uber's attorneys failed to secure A witness against him and Could not obtain any video evidence that could undermine his claims, they resorted to coercive legal tactics. When their attempts to force the Plaintiff into signing A settlement agreement voluntarily failed, They colluded with the Plaintiff's own attorneys to enforce an **"Involuntary Settlement"** against his will.

**Page 2-3**

This agreement was imposed on the Plaintiff without providing a translator, despite his clear need for one, thereby violating his fundamental rights. Furthermore, the Plaintiff was deliberately placed before A differen judge, who was not originally assigned to the case. Under these circumstances,

**On July 31, 2023,** the Plaintiff was forced to sign the settlement agreement **within 14 days,** under extreme duress. The Plaintiff had explicitly refused to sign the settlement, citing his pending medical procedures and unresolved Concerns. However, the Defendant's attorneys, in collusion with the Plaintiff's attorneys, falsely represented that The Plaintiff had initially agreed to the settlement but later attempted to withdraw his consent. These fraudulent Misrepresentations were used to justify the enforced settlement, despite the Plaintiff's objections.

**Exhibit B - Page 11:**

As part of the settlement, A check in the amount of **$100,000** was issued, allegedly in connection with The initial accident claim. However, the Plaintiff never received this check, as it was unlawfully directed to The Plaintiff's attorneys, who had acted in bad faith by facilitating the forced execution of the settlement.

**Exhibit B - Page 12:**

**Additionally, A** check in the amount of **$2,000,000** was issued as part of the final settlement. However, the Plaintiff did not receive any portion of this amount. Instead, the funds were misappropriated and Diverted to the attorneys who had conspired with Defendant Uber's legal team to enforce The settlement under coercive circumstances.

As A direct result of these actions, the Plaintiff has been deprived of his rightful settlement funds, preventing Aim from undergoing the necessary medical procedures that were intended to be covered by the settlement.

# Rashwan - Prior Settlement Negotiations ✉ ⌄        ⌀ 1 ⌄  ⊕ ⌄  ▤

To: Franco, Bret D. <Bret.Franco@wilsonelser.com>          Wed 11/30/2022 1:22 PM

Cc: Haytham Faraj <haytham@farajlaw.com> **+2 others**

Thank you, Bret.                                   *EXHIBIT B PAGE 1*

On Wed, Nov 30, 2022 at 1:18 PM Franco, Bret D. <Bret.Franco@wilsonelser.com> wrote:

Matthew:

To follow up on our conversation this morning, I wanted to give you more information about the history of settlement negotiations so we're on the same page about what occurred prior to your firm taking over. I'm going in reverse chronological order here. In reviewing my prior notes, I was able to confirm that prior counsel Tom Gorman communicated to me in November 2021 that Mohamed's "bottom line" settlement number was $2,900,000, which was a global number that included the $100K from USAA. At that time we were given that number, we were told that Mohamed intended to undergo further surgery in January 2022 and that this number accounted for that possibility. I don't have anything in writing from Tom, but that was the result of many phone conversations with him that I then communicated to my client. Before we obtained Zineb Lili's statement, I believe there was an offer of $900K to Mohamed, which was later withdrawn. There is currently no offer on the table.

Before that time, we attended a pretrial settlement conference with Judge Callahan in spring 2021. The pretrial ended with an offer of about $800K to Mohamed. Mohamed's demand at the end of the pretrial was $3,500,000. Before this pretrial, we tried to mediate with Gomolinski but we were not able to get settlement authority to go forward with mediation.

I attach the last formal demand letter for Mohamed, from late 2020, when a $6ML demand was made. Let me know if you have any questions.

To: Mohamed Lawer Chica... & 1 more

*EXHIBIT B PAGE 2*

Mohamed Owynat

im in the waiting room

mo says she wasn't even with him at this time she was in ohio

she's lying

when he got his surgery she was in ohio and she didn't go with him t appointments

the facilities would send him rides for his appointments at that time

his lawyer * would send him ubers

they weren't together in 2018

mo says they never were married not by state or by

To: Mohamed Lawer Chica... & 1 more

**M** mo says they never were married not by state or by religious

She is lie for everything

She wasn't with me when I have surgery

I have surgery 10/31/2018

I left her 09/15/2017

We never married she was my girlfriend

We engaged after she move 2017

No

She lie

We broke 2017

EXHIBIT B PAGE 4

To: Mohamed Lawer Chica... & 1 more

Mohamed Owynat

is she a scammer?

does she use her pics or other pals pics?

put up the one with her calling the wife a whore

M

Case: 1:25-cv-02150 Document #: 1 Filed: 02/28/25 Page 92 of 314 PageID #:92

  **Khawla Tazi**



# Khawla Tazi

SEP 29, 2018, 8:10 PM

 **Missed audio call**
Tap to call back

 **Missed audio call**
Tap to call back

 Hi

 Can you stay away from my husband please



SEP 29, 2018, 9:54 PM

You've blocked Khawla Tazi's Facebook account
You can't message or call them in this chat, and you won't receive their messages or calls.

## Unblock

## Something's wrong

Touch to return to call • 17:10

  **Khawla Tazi** *EXHIBIT B PAGE 6*



SEP 30, 2018, 8:35 AM

 **Audio Call**
2 mins

OCT 01, 2018, 11:54 AM

 **Audio Call**
21 secs

ماشي يا وسخة يا شرموطه يا خطفت
الرجالة يا لي أهلك معرصين وقودين تفو
عليكي وعلى لي جبوكي


هههههه


مجنونة وصايعة


غوري ف داهية تخدك

You've blocked Khawla Tazi's Facebook account
You can't message or call them in this chat, and you won't
receive their messages or calls.

## Unblock

## Something's wrong

To: Mohamed Owynal

*EXHIBIT B PAGE 7*

Nov 11, 2022 at 4:53 PM

Don't forget to send me the rest of the videos

To: Mohamed Owynai

This is all of them

This is all ..
nothing at all of them

To: Mohamud Owynat

*EXHIBIT B PAGE 9*

That's all of them

Nothing at all.. the videos. Showing I'm struggling walk

Yeah we are not worried about it.

Nov 12, 2022 at 9:51PM

Mon, Dec 5

1:06 PM • Dr salahi
1h          9700 Golf Rd Des Plaines, IL 6001

9:00 PM 🧭 Sleep study
3h

Tue, Dec 6

No events

Wed, Dec 7

No events

Thu, Dec 8

No events

## *EXHIBIT B PAGE 10*

### IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS COUNTY DEPARTMENT, LAW DIVISION

| | | |
|---|---|---|
| MOHAMED RASHWAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 2022 L 006052 |
| | ) | |
| ERIN MURPHY, as the Special Representative | ) | Calendar D |
| Of the Estate of Cheryl Chamberlan (Deceased), | ) | |
| RAISER, LLC, and UBER d/b/a UBER | ) | |
| TECHNOLOGIES, INC., | ) | |
| | ) | |
| Defendants. | ) | |

### ORDER

THIS CAUSE HEARD on Defendants' *Joint Motion to Enforce Settlement*, where all

Parties were present by Counsel and Plaintiff himself was present in open court.

IT IS HEREBY ORDERED:

1. Defendants' Joint Motion to Enforce Settlement is granted *instanter*.

2. Plaintiff will execute the release in 14 days by August 14, 2023.

Judge Robert F. Harris

AUG - 3 2023

Circuit Court - 2205

_____
Date

Honorable Judge Robert Harris

Prepared by:

Christopher G. Buenik
Michelle L. Bisognani
**FRANCO MORONEY BUENIK LLC**
500 West Madison Street, Suite 3900
Chicago, Illinois 60661
P: (312) 469-1000
chris.buenik@francomoroney.com
michelle.bisognani@francomoroney.com
Firm No. 62148

FACE OF DOCUMENT HAS A COLORED BACKGROUND. THE BACK CONTAINS AN ARTIFICIAL WATERMARK. HOLD AT ANGLE TO VIEW.

**USAA**
9800 Fredericksburg Rd
San Antonio TX 78288

Bank of America
Hartford, CT

51-44/119 CT

| DATE 07/13/2022 | 0034414303 |
|---|---|

**USAA®**

**ONE HUNDRED THOUSAND AND XX/100 DOLLAR**

Pay To The Order Of:
FARAJ LEGAL PRACTICE GROUP PLLC AND
MOHAMED S RASHWAN HAROUN

$**100,000.00

CA TIN: 454474146

LOB: P&C

| USAA # 020773826 | LOSS RPT # 1 | LOSS DATE 2017-03-30 | POLICYHOLDER WEIMING T LI |
|---|---|---|---|

**PAYMENT EXPLANATION:**
Payment under Bodily Injury Liability coverage

VOID 180 DAYS FROM ISSUE DATE

_Minnie Hinds_
Authorized Signature

⑈0034414303⑈ ⑆011900445⑇ 0022400156655⑈

**Broadspire**
A CRAWFORD COMPANY

*EXHIBIT B PAGE 12*

Page 1 of 1

675 PLACENTIA AVE
STE 350
BREA CA 92821-6107

| Check Date | : | 08/31/2023 |
| Check Amount | : | $2000000.00 |
| Check Number | : | 5686272882 |

WILSON ELSER MOSKOWITZ EDELMAN & DICKER LLP / ATT
55 WEST MONROE STREET - SUITE 3800
CHICAGO IL 60603

| Claim Number / Claimant Name / Contact Info: Adjusting Office / Transaction Description / Check Memo | Date of Loss Amount / Transaction Amount | Adjuster Name Invoice# | Adjuster Phone# Invoice Date Service Dates |
|---|---|---|---|
| 189099950-002 Mohamed R. Haroun ML Brea Focus Group Bodily Injury - Liability Settlement SETTLEMENT | 03/30/2017 $2000000.00 $2000000.00 | Ed M. Manganaro | 08/21/2023-08/21/2023 |

Please Fold on Perforation Before Tearing

**Broadspire**
A CRAWFORD COMPANY

675 PLACENTIA AVE
STE 350
BREA CA 92821-6107

ON BEHALF OF: OLD REPUBLIC
INSURER: OLD REPUBLIC INSURANCE COMPANY

| Claim Check Number | |
|---|---|
| 5686272882 | |
| SUNTRUST SUNTRUST BANK ATLANTA SUNTRUST BANK NORTHWEST GA | |

Void if not presented for payment within 120 days after the date of issue

Amount
*** $2000000.00*

| Check Date | : | 08/31/2023 |

PAY TO THE ORDER OF   FARAJ LEGAL PRACTICE GROUP, PLLC & MOHAMED RAHMAN HAROUN

*** Two Million and 00/100 Dollars ***

WILSON ELSER MOSKOWITZ EDELMAN & DICKER LLP / ATTN: DEAN ATHANS
55 WEST MONROE STREET - SUITE 3800
CHICAGO IL 60603

Claim #: 189099950-002

By [signature]

⑈5686272882⑈ ⑆061100790⑆ 8800600242⑈

## EXHIBIT C SUMMARY ( PAGE 1-7 )

### Background: Legal Representation and Misconduct

**In December 2021,** the plaintiff formally requested **A two-to-three-month** extension from the court to

Allow him to find independent legal representation. However, during this period,

**Attorney Mohamed Owaynat** exploited the plaintiff's lack of legal knowledge, language barrier, and disability

To manipulate the case in favor of his own interests.

Communication records reveal that attorneys were pushing for settlements and legal actions without

The plaintiff's full consent, further complicating his ability to seek proper representation.

**Key Findings from Exhibit C (Pages 1-7)**

**Request to Delay Court Hearings (Page 1)**

The plaintiff officially requested to postpone any depositions or hearings in **January 2022** in order to find

A new attorney.

He also requested copies of all relevant legal documents, including medical bills, depositions,

And settlement offers.

**Fraudulent Legal Representation and Scheme**

**Deceptive Attorney Substitution**

Owaynat misled the plaintiff by introducing Attorney **Haytham Faraj** as his legal representative.

Faraj, in turn, introduced **Matthew Amarin,** claiming he was merely an assistant who would handle

Court paperwork.

This arrangement was intentionally structured to gain control over the plaintiff's settlement funds,

Valued in the millions.

**Pressure to File Complaints and Change Legal Strategies (Page 2)**

**A December 23, 2021** conversation suggests that legal ethics complaints were being pushed as **A** strategy.

The plaintiff was encouraged to file **A** complaint to secure more time to find new attorneys, without being

Fully informed of the consequences.

**Obstruction of Previous Attorney Settlement Efforts**

Owaynat deliberately prevented the plaintiff from reaching **A** settlement with his former attorney.

**Page 1-2**

Instead, he brought Faraj from **California**—**A** jurisdiction where Faraj was licensed—but Faraj lacked Authorization to practice law in Chicago.

To bypass this restriction, **Faraj and Owaynat used Amarin's** name to reopen the case, listing **Amarin** as The attorney of record, effectively concealing Faraj's involvement in court filings.

**Lack of Clarity in Legal Meetings (Page 3)**

The plaintiff was uncertain about meetings and legal procedures, including **MRI** follow-ups, Court depositions, and attorney availability.

Confusion over **A** Zoom meeting with Haytham Faraj suggested poor communication between Attorneys and the plaintiff.

**Ambiguous Legal Representation (Pages 5-6)**

**A March 23, 2023** message asked if Haytham Faraj was officially involved in the case.

The attorney responded that it does not matter who the lawyer is if the evidence does not support the case.

It was noted that Faraj did not appear at depositions but was reportedly present at trial, despite having No formal registration in the case.

**Fraudulent Legal Maneuvers and Intent to Defraud**

**Owaynat, Faraj, and Amarin** acted in bad faith, with the sole intention of gaining access to and Controlling the plaintiff's settlement funds.

Faraj's name was never formally recorded on legal documents, confirming that his involvement was **A** deception from the outset.

The attorneys closed and reopened the case under Amarin's name solely because Faraj lacked The required license to practice law in Chicago.

**Conclusion: Systematic Legal Fraud**

The entry of these attorneys into the case was based on deception, fraud, and financial exploitation.

By manipulating legal procedures and misrepresenting their roles, they illegally interfered in The plaintiff's case and engineered **A** fraudulent legal scheme to gain control over settlement funds.

Their actions constitute **A** clear pattern of legal malpractice, misrepresentation, and Fraudulent intent in violation of professional and ethical standards.

## ‹  Re: Court No: 2018-L-007167/ respo...  AA

From:
**Mohamed Rashwan**
moa.haroun@yahoo.com

*EXHIBIT C PAGE 1*

To:
jackcal5@yahoo.com
**Thomas Gorman**
tom@krlawgroup.com
**Octavio Duran**
oduran@dlochicago.com
michelle.bisognani@francomoroney.com
bret.franco@wilsonelser.com
ajahanban@tresslerllp.com
chris.bueink@francomoroney.com

Date:
Dec 22, 2021 at 2:31 PM

To whom it may concern

Per the hearing today 12/22/2021, I am
requesting to postpone any court hearing
and any depositions for January in order
for me to find another attorney, postpone it
for
at least 2 months.

I am also requesting copy of all the
documents (including depositions, medical
bills, the
last offer was given, etc. )

Sincerely,
Mohamed Haroun

Hide trimmed content


**Delete**


**Reply**


**Reply All**


**Forward**

•••
**More**

To: +1 (773) 747-2811    *EXHIBIT C PAGE 2*

> If u want to help me we need to file this complain first . And then we gonna ask for more time to get another lawyers after filing complain and if u don't found a new lawyer with u ..
> You will stay with me as guide and translate.
> Anyway and we can sign contract for that .
> I want to file complain at legal Ethics in Chicago .

> When u wake up we can talk and I'll explain we gonna do

Dec 23, 2021 at 1:53 PM

**Haytham Faraj**

Dec 24, 2021 at 4:01PM

 iMessage

**New iMessage**      Cancel

To: +1 (773) 747-2811      *__EXHIBIT C PAGE 3__*

> Salam alekoum
> What time today we gonna have the zoom meeting with Haytham

Salam. I never said we are having a zoom meeting with him today

> U told me 29 we gonna have zoom with Haytham . Last time on the thee way call .
> What the next step .
> N when I can do my MRI to follow up what the doctors .
> And what time I'll have my court deposition.
> And who's gonna be with me at the time .
> And we gonna meet to talk with Haytham before the deposition .

\+      iMessage

**New iMessage**          Cancel

To: +1 (773) 747-2811     *EXHIBIT C PAGE 4*

## Send picture here

| pdf | **Scan Dec 21, 2021 (1).pdf** PDF Document · 321 KB |
|---|---|
| pdf | **Scan Jan 14, 2022 (1).pdf** PDF Document · 408 KB |
| pdf | **Scan Jan 14, 2022.pdf** PDF Document · 495 KB |

## Done

Jan 31, 2022 at 8:22 AM

**Salam, Wednesday Haytham, Matthew and I want to Visit you at your home or wherever you are most comfortable around noon. Let me know what you prefer.**

**New iMessage**          Cancel

To: +1 (773) 747-2811          *EXHIBIT C PAGE 5*

Mar 23, 2023 at 3:01PM

> Is Mr Haytham with me in my case or just you and Mathew. Are they know at the court Mr Haytam with us In my case . ?

Yes they know we are all together.

It doesn't matter who the lawyer is if the evidence and the law doesn't help you.

> Some time he's busy at the computer with deposition . My in my deposition he don't show up with us . Or he just show up at the trail court . And before that is not necessary

He knows everything that is going on. We report everything

+          iMessage

To: +1 (773) 747-2811     *EXHIBIT C PAGE 6*

Please let me know the new update . Are we going to meet with Haytham . Let me know please .

Text Message • SMS

Salam. I don't know when Haytham will be back in chicago. I will let you know

iMessage
Jun 1, 2022 at 7:03 PM

Salam Mohamed . Tomorrow I have Nick injections 11:30 . I want to know the new update for my case .. did u file my case at the court .. if not yet . I want to know what the problems to start process at the court ..

+    iMessage

**New iMessage**          Cancel

To: +1 (773) 747-2811          *EXHIBIT C PAGE 7*

> So don't contact me . .anything will be with me Haytham farag .. hopefully u understand.
> I'm going to trail . No settlement at all and no sign for anyone at all . U can keep my msg as evidence like I do .
> No settlement. No sign ..
> I'm going to court ( trail )
> Hope u get it 😃

I told you it's your choice. I don't care. It's your life. We tell you what's best for you we explain the law. If you think you know better than your lawyers it's on you not us.



 iMessage

**EXHIBIT D SUMMARY ( 5 PAGE'S )**

**Background: Insurance Settlement and Attorney Intervention**

From the beginning of the accident, there was an available **$100,000** insurance settlement from

1. The defendant's insurance company.

2. When attorneys first got involved in **early 2022,** they took control of the **$100,000** and told the plaintiff

That he must sign documents to authorize its release.

**How the Attorneys Handled the $100,000**

1. The attorneys claimed that the **$100,000** would be used to pay off existing debts, including an

Amount of **$17,500** in outstanding loans.

2. They closed the case and reopened it to justify court and jury expenses.

3. However, despite taking control of the funds, they never actually paid court costs, never proceeded with

A jury trial, and never paid the outstanding loan balances.

**Misappropriation and Fraudulent Intent**

1. Instead of using the money for the plaintiff's benefit, the attorneys wrongfully took the full **$100,000** for

Themselves under false pretenses.

2. The communication records and messages indicate that the attorneys misled the plaintiff into believing

The money was being used for necessary legal and financial obligations.

3. However, they neither settled court fees nor resolved the debts as promised.

**Key Evidence From Exhibit D (Pages 1-5)**

**Emails and Messages (Page 1)**

1. Attorney **Mohammad Owaynat** emails the plaintiff, urging him to release the defendant **Li** in exchange for

The **$100,000** policy payout.

2. He insists the money should be used to settle outstanding loans to avoid accumulating high interest rates.

**Further Communication (Page 4)**

1. A text message exchange shows attorneys pressuring the plaintiff to sign the release, despite his poor health

And pending surgery.

**Page 1-2**

**2.** The plaintiff expresses his concern about medical treatment, but the attorneys continue to

Push for the release of funds.

**Final Agreement (Page 5)**

**1.** The attorneys agree to settle **Li's** case and collect the **$100,000,** claiming they will use it

To close liens and pay debts.

**2.** **However,** the plaintiff insists on consulting attorney **Haytham Faraj** before finalizing any decisions.

**Conclusion**

**1.** The plaintiff was manipulated into signing away the **$100,000** insurance payout under the false pretense

That it would be used to pay off debts and legal expenses.

**2. In reality,** none of these payments were made—the funds were taken without fulfilling any of

The promised obligations.

**3.** The evidence demonstrates clear legal malpractice, fraud, and misappropriation by

The attorneys handling the case



**Mohammad Owaynat**

To: Me & 2 more ⌃

✎ 10/13/22

*EXHIBIT D PAGE 1*

From:
Mohammad Owaynat
mo@owaynatlaw.com

To:
Mohamed Rashwan
moa.haroun@yahoo.com
Haytham Faraj
haytham@farajlaw.com
Matthew Amarin
matthew@farajlaw.com

Date:
Oct 13, 2022 at 1:56 PM

Salam Mohamed,

Attached are the loans that we are aware of, please review and confirm.

Also, let us know if there is anything missing that we don't have?

It is all our recommendation that we release Defendant Li for the full available policy of $100k and use that money to pay off as many of these interest bearing loans as possible.

**We really need to settle these loans asap because the interest is very high!**

Please confirm your approval to go ahead and release Defendant Li and use the $100k to settle as many loans as possible.

Thank you

- Best Regards,

Mohammad A. Owaynat

| Correct. | Yes. | Looks good. |

   

**To: +1 (773) 747-2811**  *EXHIBIT D PAGE 2*

Preferred Capital - $10,131.85

This one I remember .. I get this one 10k before my back surgery

pdf **Oasis - PO.pdf**
PDF Document · 199 KB

This is mine

So we want to try to close as many as possible with the $100k bc the interest is soo high

JJ CAPITAL - $2,500 - 3% per month for

 iMessage

To: +1 (773) 747-2811

because the accident..
I'm having neck surgery soon .
I'm want to be relaxed and get
ready for big surgery .
God bless me for my family

And BTW I have loan from my
brother till now 75k



Ok. InshAllah Khair.

Ya rab

ok, I will settle Li and get the
$100k and work on closing
those liens with that money
like we discussed.

Thank you brother. Have a
good night.

 iMessage

**New iMessage**        Cancel

*EXHIBIT D PAGE 4*

To: +1 (773) 747-2811

I emailed you the release for Li. Like we discussed with Haytham, please sign it. Thank you

> I'm very sick and I couldn't sleep .. I'll need to get my surgery done very soon .. my neck and my back bother me to sleep or resting

Sorry to hear this brother. I'm sorry to upset you I know you're in a lot of pain. Take your medicine and rest.

I want to meet with you to talk about all the treatment and doctors. And about the future treatment / surgery.

When can we meet ?

+    iMessage           

**New iMessage**      Cancel

To: +1 (773) 747-2811     *EXHIBIT D PAGE 5*

ok, I will settle Li and get the $100k and work on closing those liens with that money like we discussed.

Thank you brother. Have a good night.

👍

Settle everything. But I will need to speak with me Haytham farag before any decisions. Want to make sure with him .

3 Replies



تقبل الله صلاتك 😜



Settle everything. But I will need to speak with me Haytham farag before any

+    iMessage      🎤

**XHIBIT E SUMMARY (6 PAGE'S)**

**Overview: Exhibit E** consists of evidence showing the abrupt transfer of the Plaintiff from independent

Doctors who were providing effective care to new physicians associated with the Plaintiff's attorneys.

This transfer occurred without clear justification, following unproven allegations against the prior medical

Team. the newly assigned doctors include **Dr. Wajde Dabbah** and **Dr. Hassan Aboumerhi** from

**Pain Therapy Associates** and **Dr. Sean Salehi of Chicago Neurospine Surgery, PLLC.**

**Key Legal Concerns:**

**Conflict of Interest** – Under Illinois Rules of Professional Conduct **(Rule 1.7),** attorneys must disclose any

Personal or professional relationships that could conflict with their client's best interests. Here, the Plaintiff

Was referred to doctors with financial or professional ties to the attorneys, without full transparency,

Suggesting **A** possible breach of ethical obligations.

**Consumer Protection Violations** – The Illinois Consumer Fraud and Deceptive Business Practices Act

*(815 ILCS 505/1)* protects against deceptive practices, including fraudulent referrals and inflated billing.

The Plaintiff's transfer to affiliated doctors, accompanied by higher medical charges, suggests **A** pattern of

Deceptive business practices aimed at exploiting the Plaintiff's medical needs for financial gain.

**Purpose of Exhibit E: Exhibit E** highlights **A** critical issue of potential exploitation and

Conflicts of interest. By showcasing the forced transfer to connected medical providers, this exhibit Supports

The Plaintiff's claim That these referrals were not made for the Plaintiff's benefit but rather to

Serve the interests of the attorneys And associated medical professionals.

**Page 1**

**New iMessage**          Cancel

*EXHIBIT E PAGE 1*

To: Mohamed Owynat

you're in a lot of pain. Take your medicine and rest.

I want to meet with you to talk about all the treatment and doctors. And about the future treatment / surgery.

When can we meet ?



احنا اتفقنا نتقابل . و افتح القضيه على الكمبيوتر او اللابتوب .. و نشوف هنسدد ايه و اخد مصاريف ايه و بعد كده امضى الاوراق . مش هوه ده الكلام اللى اتفقنا عليه مع الاستاذ هيثم

On Friday I met with Dr. Dabah about your case. And next week I am meeting with Dr. Abumary to discuss everything again.

+          iMessage

To: Matthew

*EXHIBIT E PAGE 2*

doctor only one doctor. I wanted a list of doctor and i choice one of them thank you so much. This is my last update.

Sep 22, 2022 at 11:52 AM

Thanks. We will discuss this more when we meet next week

Ok

Sep 28, 2022 at 3:02PM

alyssao@kennethyoung.org

Oct 31, 2022 at 1:16 PM

Hi Mathew . I'm at the doctors appointment now . I wanna talk with u . Before the deposition to prepared everything before

iMessage

To: Matthew, Mohamed Lawer Chicago

*__EXHIBIT E PAGE 3__*

**CHICAGO SPINE SURGERY**

Sean Salehi, MD
Elizabeth Koch, PA-C
Natalie Nehart, PA-C
Milly Castillo, Admin

9700 Golf Road, Des Plaines, IL 60016
Tel: 708 765 3999
Fax: 708 765 3939

110 Darwin Drive, Suite C, Mokena, IL 60448
N Butterfield Rd, Suite 100, Elmhurst, 60126
www.chicagoneurospine.com

> My last visit update

Matthew

> Mr. Rashwan, we are hiring an expert neurologist in your case. The doctor is in Michigan and will require travel. He is one of the best in country. Right now the appt is set for March 8. Please save this date

To: Mohamed Owynal

**EXHIBIT E PAGE 4**

The insurance doesn't cover my back injections. What's I supposed to do now ??

U don't even answer my call .

I'm in meetings brother I'll call you when I can

 **Scan Jun 13, 2021 (2).pdf**
PDF Document · 618 KB

Jan 17, 2022 at 3:46 PM

Doctor wajde Dabah will call you for your injections.

Ok 👍

iMessage

To: Matthew, Mohamed Lawer Chicago

*EXHIBIT E PAGE 5*

Dec 5, 2022 at 12:35 PM

Matthew



Is your appt for surgery consultation this week?

I'm at doctors appointment right now . And I will update u .

Matthew

 Thanks



To: Mohamed Owynat

*EXHIBIT E PAGE 6*

F 2...

AMITA Health
St. Alexius
Medical Center

1555 Barrington Rd,
Hoffman Estates, IL 60169

Show More

15 minutes before, Busy

They scheduled me for the 8 hours brain test . After after 5 months . Because it's under my Midcare insurance. So
Do u have another doctor I can visit him early..

Salam. I will ask haytham. inshallah khair.

Ok .

iMessage

**EXHIBIT F SUMMARY ( 5 PAGE'S )**

This EXHIBIT contains communications that reveal how the Plaintiff's urgent medical needs were

Systematically delayed due to financial concerns prioritized by both attorneys and doctors involved in his case.

Despite his critical Condition, including the need for surgeries and A sleep apnea machine, these parties

Controlled access to necessary Treatments, delaying or denying care when financial risks were present.

**Key Points:**

**1. Delays Due to Financial Risk:**

Multiple messages confirm that both doctors and attorneys hesitated or refused to move forward with

Necessary surgeries.

The primary concern was the perceived financial risk of performing surgeries on A case heading to trial.

This left the Plaintiff without critical medical care, with decisions being made based on cost rather than health.

**2. Control Over Medical Decisions:**

The Plaintiff repeatedly requested immediate coordination between his attorneys and doctors to

Proceed with Surgeries.

The responses from legal representatives and medical providers reflect A lack of urgency,

Prioritizing Financial Exposure over the Plaintiff's well-being.

**3. Denied Access to Essential Equipment:**

The Plaintiff's request for A sleep apnea machine, vital for his health, was ignored or significantly delayed.

This refusal to secure essential medical equipment underscores how financial priorities were placed above

The Plaintiff's immediate medical needs.

**EXHIBIT F SUMMARY**

**Exhibit F** demonstrates A pattern of exploitation, where financial and procedural barriers systematically

Obstructed the Plaintiff's access to necessary medical care. This evidence supports claims that his suffering

Was prolonged for financial gain, highlighting unethical practices in handling both his medical and legal needs.

*EXHIBIT F PAGE 1*

**M**

Mohamed >

Wed, Mar 29 at 3:50 PM

U told my doctor to stop treating me because my case it will be dismissed. And he's not gonna get paid . 🙈 I wonder if u work in my case or against me .. u told my doctor to stop my surgery process. I need zoom appointments with Mr Haytham faraj asap .

That's not true

Why would I tell a doctor that ? Makes no sense.

He said he wants approval to do an expensive surgery. I said we have a mediation let's hold off for now and talk later.

Maybe the doctor he's lier . U honest and the doctor is lie I know that . BTW . Hassan with on the phone and the speakers

*EXHIBIT F PAGE 2*

M

Mohamed

Maybe the doctor he's lier . U honest and the doctor is lie I know that . BTW . Hassan with on the phone and the speakers was on . And he heard everything . And BTW if u thing u can force me u are wrong . I'm busy from now on until the court . And Mr Haytham faraj my lawyer I need to speak with him zoom . Because if he's busy and he can't present me at the court . I will take action. At the court . No surprise anymore . No settlement ..

And I will go to my surgery after Ramadan . And if anyone try to help the defense attorney . I will take action .

Again, that's not true I already told you what happened, you can believe what you want.

 **Mohamed Rashwan**

**EXHIBIT F PAGE 3**

Re: Dr. Aboumerhi



From moa.haroun@yahoo.com
To Matthew Amarin & 2 more
Mar 30 at 2:27 PM ⌄

No problems.
I want to get all the documents from the doctors records
In file and if u ca. send copy to Uber attorney.
To be with us in the same page . Maybe they have
different doctors belong to them they can send me to do
my surgery...

Sent from Yahoo Mail for iPhone

On Thursday, March 30, 2023, 2:20 PM, Matthew Amarin
<matthew@farajlaw.com> wrote:

Mr. Rashwan,

I spoke with Dr. Aboumerhi's office. They advised that
they cannot take the financial risk of doing a $100,000
surgery for a case that is going to trial. They suggested
reaching out to your health insurance.

--

Matthew M Amarin, Esq
**Law Offices of Haytham Faraj**
1935 W. Belmont Avenue
Chicago, IL 60657
Direct: 312-635-1085
Fax: 312-896-5185
Email: **Matthew@FarajLaw.com**

www.FarajLaw.com

**New iMessage**                    Cancel

*EXHIBIT F PAGE 4*

To: Hassan Faraj

iMessage
Mar 29, 2023 at 4:10 PM

Please contact me faraj and ask him to contact my doctor. To process my surgery. I'm very sick and no one can handle what I have . Please process my surgery it's the doctors. Abu marry he work with doctors . Wajde Dabah Dr : (847) 352-5511

3200 W Higgins Rd Unit 101 Hoffman Estates, IL 60169 United States United States

Apr 6, 2023 at 4:29 PM



Salam Mr. Rashwan. This is Hassan. Matthew told me to

+

*EXHIBIT F PAGE 5*

**Mohamed**

Total 2,240 $
Check with mr Haytham and Mathew .. when I can stop by and pick up the check 👍

You can Talk to Haytham about that.

To to him or give me the best phone number for him and I'll contact him tomorrow ..
U told me on the phone u will speak with him about the medical and the stuff I pay from my bucket. And u guys collect 100k last month .
I wonder why it's so hard to get the stuff done .. I'm trying to do my best and play cool .

👍

I don't control that and I don't hold the money. You should email Haytham.

## EXHIBIT G SUMMARY ( 8 PAGE'S )

### Evidence of Translator Need and Coercive Tactics

**Exhibit G** consists of evidence demonstrating the plaintiff's repeated requests for A translator, which

Were initially acknowledged and provided by the defendants' attorneys in earlier legal proceedings. However,

During A critical hearing, the defendants deliberately denied the plaintiff's translator request to exploit his limited

English proficiency, thereby coercing him into an unfavorable settlement.

**Summary of Key Evidence**
**Pages 1-3: Threatening Messages in Arabic**

These pages contain Arabic messages sent to the plaintiff, warning him that if he refused to sign the settlement,

He would lose access to his medical funds.

These messages were crafted to apply psychological and financial pressure, targeting his vulnerability due

To language barriers.

### Pages 4-8: Denial of Translator at Final Hearing and Coercion

The plaintiff repeatedly requested A translator from Attorneys Mohamed Owaynat, Haytham Faraj, and

Matthew Amarin, but his request was denied.

The final page includes A post-hearing message dated **July 31,** in which the judge ordered the plaintiff

To sign within **14 days,** under threat of forfeiting his rights.

The intentional denial of A translator in A high-pressure legal proceeding weakened the plaintiff's ability to

Fully comprehend the terms of the settlement.

**Legal Implications**
**Denial of Due Process** – The defendants' previous provision of A translator proves their awareness of he plaintiff's

Language limitations. The sudden refusal during A crucial hearing raises serious due process concern.

**Coercion Through Language Barriers** – The use of threatening Arabic messages and the refusal of

A translator constitute intentional coercion, violating ethical and procedural standards.

**Judicial Pressure Without Representation** – The plaintiff was ordered to sign A settlement without A translator,

Compromising his ability to provide informed consent.

**Conclusion**

**Exhibit G** provides clear and compelling evidence that the defendants knowingly denied the plaintiff A translator at
A pivotal moment to force an unjust settlement. The use of threats in Arabic and the exploitation of language
Barriers demonstrate A calculated effort to pressure the plaintiff into compliance. These actions constitute serious
Legal violations, including coercion, denial of due process, and unethical legal practice

**Page 1**

*EXHIBIT G PAGE 1*

Re: قانون الرجل الميت في إلينوي

 **Me**                                                  3/24/23
To: Matthew Amarin & 1 more ⌄

المتوفي اخذت اقواله .. و السائق الاخر شاهد . و اخي محمود المصاب الاخر . شاهد
و اخذت اقوال الجميع . و حسم الامر . سائق اوبر اخطاء . وانا اقاضي شركه اوبر . و
ليس لي اي علاقه بالثائق والا اعرفه من قبل . نحن تعاملنا مع شركه اوبر . و اقاضي
.. شركه اوبر

Sent from Yahoo Mail for iPhone

On Friday, March 24, 2023, 4:48 PM, Matthew Amarin
<matthew@farajlaw.com> wrote:

في المحاكمة في أي إجراء يقاضي فيه أي طرف أو يدافع كممثل لشخص متوفى ، لا
يُسمح لأي طرف خصم أو شخص مهتم مباشرة بالدعوى بالإدلاء بشهادته نيابة عنه
في أي محادثة مع المتوفى أو في أي حدث التي وقعت في حضور المتوفى
--
**Matthew M Amarin, Esq**
**Law Offices of Haytham Faraj**
1935 W. Belmont Avenue
Chicago, IL 60657
Direct: 312-635-1085
Fax: 312-896-5185
Email: Matthew@FarajLaw.com

www.FarajLaw.com



This email message (including attachments) contains

Machine Translated by Google



## EXHIBIT G PAGE 2

مكاتب المحاماة هيثم فرج ، PLLC

هيثم فرج
تم قبولها في IA ، DC ، CA ، MI ، IL

27مارس 2023

مائيو أمارين
تم قبولها في IL

عبر الفاكس ــــــــــــــــ

محمد رشوان

moa.haroun@yahoo.com

كاترين ميلولك سنبائيان
تم قبوله في كاليفورنيا

كريستينا سميدلي
تم قبولها في IL

رد: عرض التسوية

ستيفاني هيريك
تم قبوله في كاليفورنيا

عزيزي السيد رشوان:

أكتب إليكم لأشجعكم على إعادة النظر وقبول عرض التسوية المقدم من أوبر لـ
1700000دولار. تعاني قضيتك من عدد من المشكلات التي يمكن أن تحد تمامًا من أي تعافي. لهذا السبب ، أوصيك
بقبول عرض Uberلأن هناك بديلاً محتملاً للغاية لن تتلقى شيئًا:

بموجب القانون ، أوبر ليست مسؤولة تلقائيًا عن التصادم. الاصطدام
ناتج عن سائق كان يستخدم أحد تطبيقات أوبر. يعتبر مقاول مستقل. لقد زعمنا أن السائق كان وكيلاً لشركة Uber ، مما قد يجعل أوبر ، من الناحية النظرية ،
مسؤولة عن سلوك السائق. تقدمت أوبر بطلب للحصول على حكم مستعجل لجعل المحكمة تعتبر السائق كمقاول مستقل. قدمت أوبر أدلة قانونية قوية لدعم
هذا الموقف. قررت المحاكم في إلينوي ، في حالات أخرى ، أن أوبر ليست مسؤولة عن سلوك السائق الذي يستخدم تطبيق أوبر. قد تتبع المحاكم الأخرى ، بما
في ذلك محاكمنا ، تلك السابقة. إذا قرر القاضي لدينا أن السائق لم يكن وكيلاً لشركة أوبر ، فلن تكون أوبر مسؤولة عن أي شيء. لن تحصل على شيء. ليس
من أوبر وليس من السائق ، كما سأوضح أدناه.

السائق لديه بوليصة تأمين واحدة مع تغطية مليون دولار فقط. الذي  -التي
تم دفع السياسة بالكامل لأخيك. ليس للسائق تغطية إضافية للدفع لك لأن الوثيقة تم دفعها بالكامل لأخيك. كما مات السائق. ليس هناك ما يأخذ من السائق.
وفقًا لذلك ، إذا تبين أن أوبر ليست متفوقة على السائق ، فلن يكون هناك ما يمكنك تحصيله ، حتى لو فزت في المحكمة. هذا يعني أنه يمكنك الفوز في
المحكمة ولكن لن يمكنك جمع أي شيء لأن السائق قد مات. ينطوي الفوز في المحكمة على تحديات فريدة من شأنها أن تجعل إثبات مسؤولية السائق أمرًا صعبًا
للغاية ، كما أشرح أدناه.

من المرجح أن يمنعنا قانون الرجل الميت من تقديم دليل على الاصطدام يمكن للسيدة تشامبرلان دحضه. قانون الرجل الميت الذي تلقيت نسخة
مترجمة منه الأسبوع الماضي. لا يسمح لنا بتقديم دليل أو شهادة من طرف معني حول مسؤولية الطرف المتوفى. الدليل الوحيد على ما حدث في الحادث هو
منك ومن أخيك. نظرًا لأن كلاكما طرفان معنيان ، سيمنعك القانون من الإدلاء بشهادتك حول كيفية وقوع الحادث لأن المدعى عليه قد مات. بدون شهادة عن
كيفية تحطم الطائرة

شيكاغو  لائوس أنجلوس

Machine Translated by Google

## *EXHIBIT G PAGE 3*

حدث لا يمكننا إثبات المسؤولية. إذا لم نتمكن من إثبات المسؤولية ، فعندئذ حتى إذا بقيت أوبر في القضية ، يمكن لهيئة المحلفين العثور على السائق وأوبر مما يعني أنك لن تحصل على أي شيء. بمعنى آخر ، بدون دليل على ما حدث ، يمكن لهيئة المحلفين أن تقرر أنك لم تثبت قضيتك. هذا يعني أنك لن تحصل على شيء.

حتى لو افترضنا أننا تغلبنا على جميع عقبات المسؤولية في هذه القضية ، فأنت معرض للسوء دليل في قضية الأضرار. لا يوجد دفع تلقائي لملايين الدولارات. يجب على هيئة المحلفين أن تثبت حكمها بالتعويضات في دليل التعويضات. في حالتك ، لدينا الأدلة السلبية التالية التي سنشرحها والتي من المحتمل أن تقلل من تعويض الأضرار:

أ. زينب ليلي وشهادتها بأنك لم تتأذى أو أنك تبالغ. ب. فيديو المراقبة حيث يبدو أنك تتحرك وتتنقل دون إصابة ؛ ج. واصلت التدخين ضد نصيحة الطبيب مما يجعلك مسؤولاً جزئياً عن فشلك في الشفاء التام. سيتم توجيه هيئة المحلفين إلى أن المدعى عليه ليس مسؤولاً عن الضرر الذي كان من الممكن تجنبه من خلال التدابير المعقولة.

يتأذى الناس في الاصطدامات طوال الوقت في جميع أنحاء العالم. من النادر جدا أن يكون هناك شخص ما يحصل على عرض يزيد عن مليون دولار لأن عددًا قليلاً جدًا من السائقين يمتلكون تغطية بمليون دولار. ليس لديك هذا النوع من التغطية ولا الغالبية العظمى من الناس. توفر معظم السياسات تغطية أقل من 100000دولار. أنت محظوظ لأن الشخص الذي جرحك حصل على مليون تغطية. إذا سادت أوبر وسمح لك بوجود القضية ، فلن تحصل على شيء.

ستظل مسؤولاً عن فواتيرك الطبية وقروضك البالغة 500.000دولار والتي تزيد عن 160.000دولار.

أشجعك على إعادة النظر في قرارك برفض مبلغ 1.7مليون دولار الذي تقدمه أوبر. إذا لم تقبل بحلول 28مارس ، فسيتم سحب العرض. إذا فهمت المخاطر المذكورة أعلاه واستمرت عن قصد في رفض عرض التسوية ، فيرجى التوقيع أدناه. سيتم استخدام هذه الرسالة كدليل على أنه تم إخطارك بالمخاطر ورفضت عن قصد وعن طيب خاطر قبول العرض الذي سيتركك معرضًا لما يقرب من 660ألف دولار من الديون الطبية والقروض.

ـ بإخلاص

هيثم فرج

أنا محمد رشوان ، بعد أن تم إبلاغي بالمخاطر والتعرض لرفض قبول عرض أوبر البالغ 1.7مليون دولار ، برغبة في ذلك ورفضه عن قصد.

_____

محمد رشوان

_____

شيكاغو ❑لوس أنجلوس

 **Mohamed Rashwan** *EXHIBIT G PAGE 4*

## Re: Motion Filed by Uber - July 31 at 10am ☆

From moa.haroun@yahoo.com
To Matthew Amarin & 2 more
Jul 20, 2023 at 6:55 PM ∨

You guys will prepare for the motion before the appointment or not .?

Sent from Yahoo Mail for iPhone

On Thursday, July 20, 2023, 5:25 PM, Matthew Amarin <matthew@farajlaw.com> wrote:

Please see the attached Motion filed by Uber. It is scheduled in front of the judge on July 31 at 10am via zoom.

Meeting ID: 646 673 2549
Password: 231739

--
**Matthew M Amarin, Esq**
**Law Offices of Haytham Faraj**
1935 W. Belmont Avenue
Chicago, IL 60657
Direct: 312-635-1085
Fax: 312-896-5185
Email: **Matthew@FarajLaw.com**

www.FarajLaw.com

To: Matthew, Mohamed Lawer Chicago

*EXHIBIT G PAGE 5*

Thu, Jul 20 at 7:01 PM

You guys will prepare for the motion before the appointment or not .?
I'll need translation with me

Fri, Jul 21 at 2:17 PM

Hi gentlemen's can you tell judge Robert Harris I will need Arabic translation . So I can explain everything. Because I will ask for that . I told u ahead of time . Thank you

Fri, Jul 21 at 3:22 PM

Matthew

Judges in civil cases do not provide translator. It will be a public setting so you can bring your own translator



*EXHIBIT G PAGE 6*

To: Matthew

Mon, Jul 31 at 10:05 AM

 **Letter of Support.docx**
Word Document · 15 KB

> I want to sent this letter to the judge before we start the meeting

> Can u confirm. You will send the letter to the judge

Judge doesn't accept these letters but we can tell him you want to send it and see what he says

> This letter explains for the

To: Matthew

*EXHIBIT G PAGE 7*

This letter explains for the judge my health situation . So he will understand my damage

Send the judge the letter .

Sorry, they closed the zoom. The judge said we have to sign the release in 14 days

I can't sign without court . I want justice not money .

Of course. The judge will send us the signed order today or tomorrow

I'm not going to sign until I know my total hospital bill and my case expenses .
And my future cover of surgery.
Other wise I'm not going to sign and the news and the media is gonna be my other options .
No force no threat

That's your choice. Uber will get away with paying $0 if you don't sign

I don't care about money .
I'll take it to the highest level .

MA    Matthew Amarin    *EXHIBIT G PAGE 8*

## Uber Motion to Enforce

From matthew@farajlaw.com
To Mohamed Rashwan & 2 more
Jul 31, 2023 at 12:07 PM ⌄

I am writing to summarize the hearing today. Mr. Rashwan was present. I was also present representing Mr. Rashwan. Counsel for Uber and the driver were also present. Mr. Rashwan told the judge he does not want a settlement and that he has 3 recommended surgeries he needs to undertake. The Judge was advised that the settlement amount was for 2 million dollars (plus $100,000 from the individual driver). The Judge granted the Motion holding that there was a settlement reached on May 25, 2023. He Ordered Mr. Rashwan to sign the release before August 14, 2023. I will share the signed Order as soon as I receive it.

--

Matthew M Amarin, Esq
**Law Offices of Haytham Faraj**
1935 W. Belmont Avenue
Chicago, IL 60657
Direct: 312-635-1085
Fax: 312-896-5185
Email: Matthew@FarajLaw.com

www.FarajLaw.com



Thank you.          Received,          Received.
                    thank you.

         ⟪   •••
Delete        Archive         Move        Reply All      More

**EXHIBIT H SUMMARY ( 9 PAGE'S )**

**Coercion and Financial Mismanagement**

**Pages 1-2: March 27, 2023 - Coercion and Psychological Pressure**

**Initial Settlement Offer - $1.7M:**

. The attorney pressured the plaintiff to accept A $1.7M settlement, exaggerating risks:

**1.** Claimed Uber could be dismissed due to The Dead Man's Act.

**2.** Highlighted the deceased driver's limited insurance policy **($1M),** already paid to another party.

**3.** Warned that rejecting the offer would leave the plaintiff with **$660,000** in medical bills and loans.

**Manipulative Statements and False Claims:**

. Suggested the plaintiff would recover nothing due to insufficient evidence.

. Used fear-inducing statements, such as:

**1. "People rarely get offers over $1M; you're lucky to have this."**

**2.** Blamed the plaintiff for damages, citing smoking and surveillance footage as negative factors.

**Unethical Tactics:**

**1.** Implied personal responsibility for debts if the offer was rejected.

**2.** Created urgency by threatening to withdraw the offer by **March 28.**

**Pages 3-4: June 29, 2023 - Increased Settlement Offer - $2.0M**

**Settlement Offer Details:**

. Uber raised the settlement to **$2.0M,** but the attorney claimed the plaintiff would receive only **$1.2M after:**

**1. $550,000** in medical liens (pre-dating the attorney's involvement).

**2. $150,000** in litigation loans.

**3.** Attorney fees and other case costs.

**Pressure to Sign:**

. Plaintiff was presented with two options:

**1.** Sign the release with vague promises to **"aggressively"** reduce liens.

**2.** Risk trial, with the court possibly refusing to reopen the case.

**3.** Attorney threatened to withdraw representation and enforce **A 40% lien** on any recovery

**Neglect of Plaintiff's Rights:**

**1.** Failed to provide transparent plans to reduce liens.

**2.** Did not explain how the **$2.0M** settlement would cover ongoing medical and financial issues.

**Pages 5-6: Disbursement and Settlement Breakdown**

**Attorney Fees:** Initially **40% ($840,000),** later reduced to **33.3% ($700,000),** claiming **$140,000** in savings.

**Medical Liens:** Allegedly reduced from **$572,273 to $138,795.73, A** claimed discount of **$433,478.**

**Loans:** Reduced from **$215,027.39 to $152,809.84, saving $62,218.**

**Pages 7-8:** Case Costs and Unexplained Expenses

**Key Expenses:**

**$11,500:** California Life Care Planning Association **(service not executed).**

**$3,560:** Career transition expert fees.

**$1,500:** Pretrial jury selection assistance.

**Inflated and Unjustified Costs:** Parking charges **($16.88)** and trial supplies billed without justification.

Witness fees exceeded **$1,000,** lacking clear documentation.

**Page 9: Attorney Communication & Disbursement Summary**

**Disbursement Summary (November 21, 2023):**

Attorney justified deductions as significant savings for The plaintiff.

Despite these claims, the plaintiff only received raising concerns over transparency and mismanagement.

**Final Notice:** The attorney pressured the plaintiff to accept the disbursement.

Threatened legal complications if the settlement agreement was not signed.

**Conclusion:**

This exhibit provides clear evidence of coercion, inflated expenses, and financial mismanagement by

The attorney, causing significant harm to the plaintiff. The documented unethical legal tactics and manipulated

Financial deductions highlight the need for an independent investigation to ensure accountability and restitution.



## THE LAW OFFICES OF HAYTHAM FARAJ, PLLC

**Haytham Faraj**
Admitted in IL, MI, CA, DC, IA

**Matthew Amarin**
Admitted in IL

**Katherine Melik-Stepanyan**
Admitted in CA

**Christina Smedley**
Admitted in IL

**Stephanie Herrick**
Admitted in CA

March 27, 2023

**Via Fax**

Mohamed Rashwan
moa.haroun@yahoo.com

*Re*: Settlement Offer

Dear Mr. Rashwan:

I am writing to encourage you to reconsider and to accept Uber's settlement offer of $1,700,000. I am going to explain why I recommend you accept. Your case suffers from a number of issues that could totally limit any recovery. For that reason, I recommend you accept Uber's offer because there is a very likely alternative that **you will receive nothing**:

Under the law, **Uber is not automatically responsible for the collision**. The collision was caused by a driver who was using an Uber application. He is considered an independent contractor. We have alleged that the driver was an agent of Uber which in theory could make Uber liable for the conduct of the driver. Uber has filed a motion for summary judgment to have the court deem the driver an independent contractor. Uber has presented strong legal evidence in support of that position. Courts in Illinois have, in other cases, held that Uber is not responsible for the conduct of a driver using the Uber application. Other courts, including ours, may follow that precedent. If our judge decides that the driver was not an agent of Uber, Uber will not be responsible for anything. **You will get nothing**. Not from Uber and not from the driver, as I will explain below.

The driver had one insurance policy with **one million Dollars in coverage only**. That entire policy was **paid to your brother**. The driver has no additional coverage to pay you because the entire policy was paid to your brother. The driver is also dead. There is nothing to take from the driver. Accordingly, if Uber is found not to be the superior of the driver, there will be nothing to collect, even if you win in court. That means that you could win in court but collect nothing because the driver is dead. Winning in court has unique challenges that will make establishing the driver's liability exceedingly difficult, as I explain below.

**The Dead Man's Act** is likely to preclude us from introducing evidence of the collision that Ms. Chamberlan can refute. The Dead Man's Act, which you received a translated copy of last week. Does not allow us to present evidence or testimony from an interested party about the liability of a dead party. The only evidence of what happened in the crash is from you and your brother. Because you are both interested parties, the law will prohibit you from testifying about how the crash happened because the defendant is dead. Without testimony about how the crash

*EXHIBIT H PAGE 2*

happened we cannot prove liability. If we cannot prove liability, then even if Uber stays in the case, the jury can find for the driver and Uber which means you will get nothing. In other words without evidence of what happened the jury can decide that you did not prove your case. That means you will get nothing.

Even assuming we overcome all the liability hurdles in the case, you are exposed to bad evidence in the damages case. There is no automatic payment of millions of Dollars. The jury has to anchor their damages award in damages evidence. In your case we have the following negative evidence which we will have explain and which is likely to diminish a damages award:

a. Zineb Lily and her testimony that you were not hurt or that you are exaggerating.
b. The surveillance video where you appear to be moving and ambulating without injury;
c. You continued to smoke against doctor's advice which makes you partially responsible for your failure to fully heal. The jury will be instructed that the defendant is not responsible for harm that you could have avoided by reasonable measures.

People get hurt in collisions all the time all over the world. It is very rare that someone gets an offer over a million Dollars because very few drivers possess a million Dollars in coverage. You do not have that type of coverage and neither do the vast majority of people. Most policies provide less than $100,000 in coverage. You are fortunate that the person that hurt you had a million in coverage. If Uber prevails and is allowed to exit the case, you will get nothing. You will still be responsible for your approximately $500,000 in medical bills and loans in excess of $160,000.

I encourage you to reconsider your decision rejecting the $1.7 million Dollars Uber is offering. **If you do not accept by March 28, the offer will be withdrawn.** If you understand the above risks and knowingly continue to decline the settlement offer, please sign below. This letter will be used as proof that you were notified of the risks and knowingly and willingly declined to accept the offer which will leave you exposed to approximately $660,000 in medical and loans debt.

Sincerely,

Haytham Faraj

**I, Mohamed Rashwan, having been informed of the risks and exposure of declining to accept Uber's $1.7 million Dollars offer, willing and knowingly reject.**

_____
Mohamed Rashwan



*EXHIBIT H PAGE 3*

## THE LAW OFFICES OF HAYTHAM FARAJ, PLLC

June 29, 2023

**Haytham Faraj**
Admitted in IL, MI, CA, DC, IA

**Matthew Amarin**
Admitted in IL

**Katherine Melik-Stepanyan**
Admitted in CA

**Christina Smedley**
Admitted in IL

**Stephanie Herrick**
Admitted in CA

**Via Email**
Mohamed Rashwan
moa.haroun@yahoo.com

*Re: Settlement*

Dear Mr. Rashwan:

We had a video call with you today to discuss your settlement with Uber. As you know, Uber offered to settle your case for $2,000,000. On May 25, 2023, you accepted this offer and your case in Court was then dismissed due to the upcoming trial. At the time of acceptance we believed (and still believe) you would recover about $1,200,000 after all fees, costs, liens, and loans. Now, you have decided that you do not wish to sign the settlement agreement. As a result, we provided you the following two options:

1) Sign the release. We will do our best and aggressively work to reduce your medical liens and litigation loans. This may include filing petitions with the Court if the medical providers are not cooperative.
    a. You have about $550,000 in medical bills – bills which were accrued before our involvement;
    b. You have about $150,000 in litigation loans – loans that were taken before our involvement;
    c. Our preliminary estimate is that you will receive about $1,200,000 after paying your liens, your loans, our costs, and **reduced** attorney fees. This cannot be guaranteed by any attorney.

2) Do not sign the release. We notify Uber and the Court and request that your case be re-opened. The risks associated with this option include, not only a trial (those specific risks were detailed in our March 27, 2023 letter), but also the Court may refuse to re-open the case due to the dismissal and enter an order enforcing the settlement.

*EXHIBIT H PAGE 4*

If the Court allows the case to be reinstated, we will withdraw from representation and pursuant to our fee agreement we will assert a 40% lien on any recovery up to the $2,000,000 we were able to secure for you.

I encourage you to sign the release and allow us to do our job and reduce your liens and loans. Please let us know how you wish to proceed by **June 30, 2023**.

Sincerely,

Haytham Faraj

*EXHIBIT H PAGE 5*



**LAW OFFICES OF**
**HAYTHAM FARAJ**

12/18/2023

| Case: | Rashwan v Uber |
|---|---|
| Client: | Mohamed Rashwan |
| DOI: | 3/30/2017 |

**Gross Settlement Amount:**      **$ 2,100,000.00**

**Attorney Fees:**      @   40.0%   **$   840,000.00**

**Advanced Case Costs:**      **$55,699.19**
See Attached Invoice      $55,699.19

**Outstanding Medical Bills:**   **Reduced from**   $ 572,273.00   **to**   $   138,927.01
See attached breakdown

| **Outstanding Loans** | **Reduced from:** | $ 215,027.39 | **to** | $ 152,809.84 |
|---|---|---|---|---|
| Preferred Capital/JJ Preferred | | $   11,631.85 | | $   10,000.00 |
| Oasis | | $ 150,913.97 | | $   97,809.84 |
| Larry Weisman | | $   37,997.00 | | $   32,000.00 |
| Fortitude Legal | | $   14,484.57 | | $   13,000.00 |

| | |
|---|---|
| **Settlement** | $ 2,100,000.00 |
| Less attorney fees: | $ (840,000.00) |
| Less advanced case costs: | $ (55,699.19) |
| Less liens: | $ (138,927.01) |
| Less Loans | $ (152,809.84) |
| **Amount distributed to client:** | **$ 912,563.96** |

Date: _____    Approval: _____

                 Haytham Faraj



**LAW OFFICES OF**
**HAYTHAM FARAJ**

11/21/2023

| | |
|---|---|
| Case: | Rashwan v Uber |
| Client: | Mohamed Rashwan |
| DOI: | 3/30/2017 |

**Gross Settlement Amount:** $ 2,100,000.00

**Attorney Fees:** @ 33.3% $ 700,000.00

**Advanced Case Costs:** $55,699.19
See Attached Invoice $55,699.19

**Outstanding Medical Bills:** Reduced from to $ 338,795.73
See attached breakdown $ 572,273.00 $ 138,795.73
Medicaid $ 200,000.00

**Outstanding Loans** Reduced from: $ 215,027.39 to $ 152,809.84
Preferred Capital/JJ Preferred $ 11,631.85 $ 10,000.00
Oasis $ 150,913.97 $ 97,809.84
Larry Weisman $ 37,997.00 $ 32,000.00
Fortitude Legal $ 14,484.57 $ 13,000.00

| | |
|---|---|
| Settlement | $ 2,100,000.00 |
| Less attorney fees: | $ (700,000.00) |
| Less advanced case costs: | $ (55,699.19) |
| Less liens: | $ (338,795.73) |
| Less Loans | $ (152,809.84) |
| **Amount distributed to client:** | $ 852,695.24 |

Date: _____ Approval: _____

Haytham Faraj

## *EXHIBIT H PAGE 7*

**The Law Offices of Haytham Faraj**
1935 w. Belmont Ave.
Chicago, Illinois 60657
United States
312-635-0800


LAW OFFICES OF
**HAYTHAM FARAJ**

**Mohamed Haroun Rashwan**
109 Heritage Lane
Streamwood, IL 60107

| | |
|---|---|
| **Balance** | $55,699.16 |
| **Invoice #** | 05240 |
| **Invoice Date** | November 21, 2023 |
| **Payment Terms** | |
| **Due Date** | |

--------------------------------------------------------------------------------

## Mohamed Rashwan v Uber, et al.

## Expenses

| Date | EE | Activity | Description | Cost | Quantity | Line Total |
|---|---|---|---|---|---|---|
| 07/07/2022 | MA | Filing | Re-filing of Complaint | $617.85 | 1.0 | $617.85 |
| 09/28/2022 | MA | Fuel | Fuel for Rashwan Home Visit | $56.84 | 1.0 | $56.84 |
| 02/24/2023 | MA | Medical records summary | Expert Institute Summary/Chronology | $1,029.62 | 1.0 | $1,029.62 |
| 03/07/2023 | HF | FedEx | Notice of Subpoena - Kristen Dryden | $22.52 | 1.0 | $22.52 |
| 03/07/2023 | HF | FedEx | notice of subpoena - Dr. Mechineni | $22.52 | 1.0 | $22.52 |
| 03/13/2023 | HF | Expenses | Medical Records (Dr. Salehi) | $40.00 | 1.0 | $40.00 |
| 04/03/2023 | SF | Expert | California Life Care Planning Association Roberto Contreras- Medicolegal Services Med Record Review, Research, Interview, LCP Rush Preparation And Retainer | $11,500.00 | 1.0 | $11,500.00 |
| 04/11/2023 | HF | Expenses | Locating retired psychologist Shelley Rowland (USA Express legal services) | $165.00 | 1.0 | $165.00 |
| 04/18/2023 | MA | Expert | James J. Radke Associates for Career Transition | $3,560.00 | 1.0 | $3,560.00 |
| 05/16/2023 | MA | Air Travel | Flight to MI for trial prep | $707.80 | 1.0 | $707.80 |
| 05/17/2023 | MA | Travel | Uber to airport | $32.95 | 1.0 | $32.95 |
| 05/17/2023 | MA | Travel | Uber from Airport (trial prep) | $32.95 | 1.0 | $32.95 |
| 05/18/2023 | MA | Expenses | Trial Prep Supplies | $58.80 | 1.0 | $58.80 |
| 05/18/2023 | MA | Travel | Taxi from airport | $45.62 | 1.0 | $45.62 |
| 05/22/2023 | HF | Parking | Spot Hero Parking SpotHero Parking Confirmation #64469080 | $16.88 | 1.0 | $16.88 |
| 06/06/2023 | HF | Expenses | Pretrial Preparation for In Court Assistance with Jury Selection 5/323 (Wendy Saxon PhD) | $1,500.00 | 1.0 | $1,500.00 |

## *EXHIBIT H PAGE 8*

| 07/17/2023 | HF | Expenses | Social Security Invoice | $217.00 | 1.0 | $217.00 |
|---|---|---|---|---|---|---|
| 08/14/2023 | HF | Veritext | Witness: Rasha Khaled Hegazy | $564.00 | 1.0 | $564.00 |
| 08/14/2023 | HF | Veritext | Witness: Farooq Khan , M.D. | $482.60 | 1.0 | $482.60 |
| 08/14/2023 | HF | Veritext | Witness: Dr. Sean Salehi | $456.70 | 1.0 | $456.70 |
| 09/22/2023 | MA | Attorney Lien | Gorman Expenses | $27,762.62 | 1.0 | $27,762.62 |
| 10/16/2023 | HF | Veritext | Witness: Mohamed Rashwan. Invoice nb: 6204536 | $568.10 | 1.0 | $568.10 |
| 10/16/2023 | HF | Veritext | Witness: Dr. Ashesha Mechineni. Invoice Nb:6462380 | $412.00 | 1.0 | $412.00 |
| 10/16/2023 | HF | Veritext | Witness: Kristen Dryden , DPT. Invoice nb:6462382 | $412.00 | 1.0 | $412.00 |
| 10/16/2023 | HF | Veritext | Witness: James J. Radke. Invoice Nb:6531967 | $596.30 | 1.0 | $596.30 |
| 10/16/2023 | HF | Veritext | Witness: Dr. Gopi Patel. Invoice nb:6564371 | $364.70 | 1.0 | $364.70 |
| 10/16/2023 | HF | Veritext | Witness: Barbara King. Invoice nb:6565948 | $495.00 | 1.0 | $495.00 |
| 10/16/2023 | HF | Veritext | Non Witness Specific Charges. Invoice nb:6577552 | $150.00 | 1.0 | $150.00 |
| 10/16/2023 | HF | Veritext | Witness: Michele Albers, M.S. Invoice nb:6583584 | $1,221.19 | 1.0 | $1,221.19 |
| 10/16/2023 | HF | Veritext | Witness: Brian Steinke , M.D. Invoice nb:6604209 | $387.60 | 1.0 | $387.60 |
| 11/21/2023 | MA | Lien | Lien Negotiation Fee | $1,500.00 | 1.0 | $1,500.00 |
| 11/21/2023 | MA | Case Management Repository | Case Management, Tech, and Legal Research Fee (20 months) | $700.00 | 1.0 | $700.00 |

Expense Total: **$55,699.16**

| | |
|---|---|
| Expense Sub-Total: | $55,699.16 |
| **Sub-Total:** | $55,699.16 |
| | |
| **Total:** | $55,699.16 |
| **Amount Paid:** | $0.00 |
| **Balance Due:** | **$55,699.16** |

# Disbursement Statement for signature and review



**MA**    **Matthew Amarin**        ✎ 11/21/23
To: Me & 5 more ∨

Mr. Rashwan, please see the attached statement.

- We reduced our fee from 40% to 33 1/3%, which is a $140,000 discount;
- We reduced your known medical liens from $572,273 to $138,795.73, which is a $433,478 discount;
- We are retaining $200,000 for the medicaid lien.
- We reduced your loans from $215,027.39 to $152,809.84, which is a $62,218 discount.

Once we receive a signed copy of this statement we will issue you a check in the amount of $852,695.24. A second check, less any medicaid lien, will be issued as soon as possible.

Finally, please confirm that your address is: 109 Heritage Lane, Streamwood, IL 60107, to ensure proper delivery of your check.

--

**Matthew M Amarin, Esq**
**Law Offices of Haytham Faraj**
1935 W. Belmont Avenue
Chicago, IL 60657
Direct: 312-635-1085
Fax: 312-896-5185
Email: Matthew@FarajLaw.com

www.FarajLaw.com

| Thank you. | Received, thank you. | Got it. |

**EXHIBIT I SUMMARY ( 5 PAGE'S )**

**Fraudulent & Real Medical Billing Summary**

**Background: Evidence of Fraudulent Billing Practices**

**Exhibit I:** contains correspondence and financial records demonstrating significant discrepancies between

The plaintiff's original medical bills and the fraudulently inflated amounts submitted by the defendants.

These discrepancies highlight intentional overbilling, fabricated charges, and financial mismanagement.

**Summary of Key Evidence**

**Page 1: Correspondence from Attorney Matthew Amarin (November 8, 2023)**

**1. Attorney Matthew Amarin** provided an updated total of medical bills, which differed significantly

From the original documented amounts.

**2.** The plaintiff identified unexplained charges from new medical providers associated with

**Haytham Faraj's** network.

**3.** The increased amounts lacked clear justification and included charges not part of the plaintiff's original

Treatment history.

**Page 2: Fraudulent Medical Bills Breakdown**

A comparative analysis of the **original vs. fraudulent** medical bills reveals significant inflation in reported costs:

| Provider Original Amount | ($) Fraudulent Amount ($) | | Difference ($) |
|---|---|---|---|
| Lakeshore Surgery Center (Facility) | 37,733.02 | 104,918.42 | +67,185.40 |
| Pain Therapy (Dr. Aboumerbi) | Faraj's network | 51,645.00 | +51,645.00 |
| Premier Healthcare Solutions | 8,930.00 | 27,995.00 | +19,065.00 |
| Team Rehab (Kristin Dryden, DPT) | 6,385.00 | 10,227.00 | +3,842.00 |
| Argonaut Medical | Not listed | 71,312.02 | +71,312.02 |
| Western Touhy Anesthesia | 2,310.00 | 4,620.00 | +2,310.00 |

**Key Findings:**

**1. Fabricated Providers** – Some providers listed in the fraudulent bills do not exist in the plaintiff's medical

History, yet their names appear with inflated charges.

**2. Unjustified Increases** – Several providers' fees were doubled or significantly increased without justification.

**Page 1-2**

**3. Manipulated Totals** – The fraudulent total exceeds the sum of individual overcharges, showing Inconsistencies within the fraudulent data itself.

**Pages 3-5: Extended Analysis of Financial Discrepancies**

**The additional pages (3-5)** further support the fraudulent billing allegations by providing detailed medical Expense records, which expose the following key findings:

**1. Fabricated Medical Providers** – Some of the providers listed in the fraudulent bills do not exist in The plaintiff's medical history.

**2. Unjustified Overcharges** – Several providers' fees were inflated by **200-300%** without any Legitimate medical reason.

**3. Manipulated Totals** – The total fraudulent amount exceeds the sum of the individual overcharges, indicating Intentional manipulation of the financial data.

**4. Exaggerated Medical Costs** – Certain medical procedures were billed multiple times or charged at Excessively high rates compared to industry standards.

**Financial Discrepancies Overview**

**1. Original Total Billed Amount: $189,812.12**

**2. Fraudulent Total Billed Amount: $572,273.32**

**3. Total Overcharge/Fraudulent Increase: +$382,461.20**

**Legal Implications**

**1. Intentional Fraud** – The discrepancies indicate A systematic attempt to inflate medical costs for financial gain.

**2. Financial Manipulation** – The inflated totals suggest coordinated billing fraud involving legal and Medical professionals.

**3. Abuse of Legal Process** – The fraudulent bills were used to justify improper financial deductions from The plaintiff's settlement, constituting financial misconduct.

**Conclusion**

This Exhibit provides clear and compelling evidence of fraudulent medical billing, financial manipulation, And overcharging by parties involved in the plaintiff's case. The evidence demands further legal scrutiny And highlights the necessity for an independent financial audit to expose and rectify The fraudulent deductions made against the plaintiff's rightful settlement funds.

**Page 2-2**

# Liens

*EXHIBIT I PAGE 1*

 **Matthew Amarin**          ✎ 11/8/23
To: Me & 5 more ⌄

Mr. Rashwan,

Please see the attached spreadsheet showing all of your liens and the reductions we have been able to obtain so far. As I previously advised, we are only waiting on a response from Medicaid.

I am also confirming we have offered to send you some of the settlement money this week while we finalize the liens. You refused to confirm your mailing address. Instead you demanded a meeting to see "what done and what's left." The attachment will show you what has been done with your liens to date. And I have repeatedly advised the only thing left is Medicaid.

There have been several misunderstandings and miscommunications in your case, even stemming back to your prior attorney. So, we previously agreed that all future meetings will be video conferencing and recorded.

**Do not** come to our office without an appointment. I remain open to meet via video <u>on Friday at 12pm</u>.

Thank you,

--

**Matthew M Amarin, Esq**
**Law Offices of Haytham Faraj**
<u>1935 W. Belmont Avenue</u>
<u>Chicago, IL 60657</u>
Direct: <u>312-635-1085</u>
Fax: <u>312-896-5185</u>
Email: Matthew@Farail aw com

| Thank you. | Ok. | Sounds good. |
|---|---|---|

🗑 ⬅ ⬅⬅ ➡ •••
Delete   Reply   Reply All   Forward   More

| Mohammed Rashwan | *EXHIBIT I PAGE 2* | Liens | Confirmed? |
|---|---|---|---|
| American Spine and Neuro (Dr. Erikson) | | 61,200 | Confirmed |
| American Diagnostics | | 8,400 | Confirmed |
| Argonaut Medical | | 71,312.02 | Confirmed |
| Athletico | | 23,781 | Confirmed |
| ATI PT | | 893.4 | Confirmed |
| Chicago Neuro Surgery (Dr. Saleh) | | 1,097.85 | Confirmed |
| Envision MI | | 6,643 | Confirmed |
| Lakeshore Surgery (Facility) | | 104,918.42 | Confirmed |
| LakeShore Surgery (Professional) | | 5,900.7 | Confirmed |
| LakeShore Open MRI | | 2,400 | Confirmed |
| Lake County Neuromonitoring | | 10,850 | Confirmed |
| Micro Neuro Spine | | 1,600 | Confirmed |
| | | | |
| Pain Therapy (Dr. Aboumerhi) | | 51,645 | Confirmed |
| Premier Therapy | | 8,930 | Confirmed |
| Premier Healthcare Solutions | | 10,227 | Confirmed |
| Team Rehab | | 27,995 | Confirmed |
| | | | |
| Western Touhy Anesthesia | | 4,620 | Confirmed |
| Windy City Anethesia | | 2,925 | Confirmed |
| Grand Ave. Surgery Center | | 130,122 | Confirmed |
| Delaware Physicians | | 3,425 | Confirmed |
| Modern Pain Consultants | | 29,476 | Confirmed |
| Pinnacle Pain Management | | 747 | Confirmed |
| | | | |
| | | | |
| Adco Billing Solutions | | 3,164.9 | Confirmed |
| IL Dept of Human Services | | | |
| **TOTALS** | | **$572,273** | |

*EXHIBIT I PAGE 3*

## MOHAMED RASHWAN
## MEDICAL EXPENSE SUMMARY

Mohamed Elbasouny, MD
General Organization for Teaching Hospitals Ins.

|  |  |  |
|---|---|---|
| 4/4/17-4/26/17 | $ | 124.10 |

Grand Avenue Surgical Center
17 W. Grand Ave.
Chicago, IL 60654

|  |  |  |
|---|---|---|
| 5/20/2017 | $ | 20,373.00 |
| 6/17/2017 | $ | 13,389.00 |

Premium Healthcare Solutions
28795 Network Place
Chicago, IL 60673-1287

|  |  |  |
|---|---|---|
| 5/12/2017 | $ | 5,205.00 |
| 5/19/2017 | $ | 2,686.00 |
| 8/21/2017 | $ | 2,336.00 |

Farooq Khan, MD
Modern Pain Consultants
5201 S. Willow Springs Rd.
LaGrange Highlands, IL 60525

|  |  |  |
|---|---|---|
| 5/9/2017-8/5/2017 | $ | 26,545.00 |

Windy City Anesthesia
21120 Washington Parkway
Frankfort, IL 60423-3112

|  |  |  |
|---|---|---|
| 5/20/17-9/16/17 | $ | 9,000.00 |

Premier Physical Therapy
1540 W. Lake St.
Roselle, IL 60172-3330

|  |  |  |
|---|---|---|
| 5/10/17-7/12/17 | $ | 8,930.00 |

Robert Erickson, MD
The American Center for Spine & Neurosurgery
8501 W. Higgins Rd., Ste 710
Chicago, IL 60631

|  |  |  |
|---|---|---|
| 10/11/17-10/31/18 | $ | 16,900.00 |

1

*EXHIBIT I PAGE 4*

Delaware Physicians, LLC
7200 N. Western Ave.
Chicago, IL 60645

|  |  |
|---|---|
| 9/17/18-2/6/19 | $ 1,100.00 |

Kristin Dryden, DPT
Team Rehab
186 E. Golf Road
Schaumburg, IL 60173-3726

|  |  |
|---|---|
| 9/8/17-10/2/2017 | $ 6,385.00 |

Lakeshore Open MRI
PO Box 129
Plainfield, IL 60544-0129

|  |  |
|---|---|
| 8/2/2018 | $ 2,400.00 |

AMITA - Alexian Brothers Medical Center
800 Biesterfield Rd.
Elk Grove Village, IL 60007

|  |  |
|---|---|
| 10/09/18-10/13/2018 | $ 6,998.00 |

Windy City Medical Specialists
8501 W. Higgins Rd., Ste 710
Chicago, IL 60631

|  |  |
|---|---|
| 10/27/18-11/29/18 | $ 9,225.00 |

Lakeshore Surgery Center - FAC
7200 N. Western Ave.
Chicago, IL 60645

|  |  |
|---|---|
| 10/31/2018 | $ 37,733.02 |

Lakeshore Surgery Center - PHYS
7200 N. Western Ave.
Chicago, IL 60645

|  |  |
|---|---|
| 10/31/2018 | $ 325.00 |

Wesern Touhy Anesthesiology
PO Box 129
Plainfield, I l60544-0129

|  |  |
|---|---|
| 10/31/2018 | $ 2,310.00 |

AMITA - Alexian Brothers Medical Center Elk Grove Village
800 Biesterfield Rd.

2

*EXHIBIT I PAGE 5*

Elk Grove Village, IL 60007

|  |  |  |
|---|---|---|
| 10/09/18-10/13/2018 | $ | 6,998.00 |
| 11/1/18-11/20/18 | *Pending* | |
| 2019 Visits | *Pending* | |

AMITA - St. Alexius Medical Center Hoffman Estates
1555 Barrington Rd.
Hoffman Estates, IL 60169

|  |  |
|---|---|
| 10/31/18-11/15/18 | *Pending* |
| 2019 Visits | *Pending* |

Lake County Neuromonitoring
712 S. Milwaukee Avenue
Libertyville, IL 60048

|  |  |  |
|---|---|---|
| 10/31/2018 | $ | 3,750.00 |
| 7/10/2019 | $ | 7,100.00 |

Priarie Stone Sports and Welness Center
5050 Sedge Blvd.
Hoffman Estates, IL 60192

*Pending*

**TOTAL TO DATE**          **$ 189,812.12**

3

## EXHIBIT J SUMMARY ( 6 PAGE'S )

**EXHIBIT J SUMMARY**

This Exhibit provides evidence of unethical practices, conflicts of interest, and manipulation by

The Plaintiff's current attorneys. It demonstrates how accusations of fraud against the former attorney and

Doctor were used to influence the Plaintiff, while unauthorized communication and

Regulatory investigations further substantiate claims of misconduct.

**Key Points:**

**Pages 1-3: Accusations of Fraud**

The Plaintiff's attorneys accused his former attorney and doctor of inflating medical bills and engaging in

Fraudulent practices.

These claims were used to justify referrals to doctors within their trusted network, raising concerns about

Conflicts of interest.

**Page 4: ARDC Allegations**

The Plaintiff's attorneys accused the former attorney and doctor of fabricating claims while obstructing legal

And psychiatric evaluations.

They neglected the Plaintiff's need for interpreters and discouraged the submission of medical evidence,

compromising fair representation.

**Pages 5-6: Unauthorized Email Disclosure**

An email mistakenly sent to the Plaintiff revealed that his current attorneys shared confidential case details with

The former attorney, despite previously accusing him of fraud.

This exposes A lack of transparency and potential misconduct.

**Purpose of Exhibit J:**

**Exhibit J** substantiates claims of manipulation, conflicts of interest, and exploitation by

The Plaintiff's attorneys and affiliated doctors. It highlights unethical coordination, unauthorized actions,

And negligence that compromised the Plaintiff's trust and legal standing.

**New iMessage**

To: Haytham Faraj

Thu, Aug 10 at 5:37 PM

Dear Mr Haythem
I am not a fraud or liar ,all I said
I need to know is how much I
will end up with , I don't know
the doctors personally or any
of the lawyers to have deals of
fraud. I was riding in the back
seat of the car and got into
accident , and now I am
disabled and can't afford to
Get health assistance , I know
the money will not get my
health back and the doctor
reports approved what I am
saying .
I called and I left msg .
And when u have time we can
talk .
Thank you

Delivered

To: الصباحي Haytham Faraj     *EXHIBIT J PAGE 2*

fraud. I was riding in the back seat of the car and got into accident , and now I am disabled and can't afford to Get health assistance , I know the money will not get my health back and the doctor reports approved what I am saying .
I called and I left msg .
And when u have time we can talk .
Thank you

Delivered

Your treatment was a fraud. The whole case was set up to make the bills big. That's a lie. You didn't do it but the lawyers did. That doesn't change the facts of your case. The money you will receive will allow you

**New iMessage**

*EXHIBIT J PAGE 3*

To: العسل Haytham Faraj

Thank you

Delivered

Your treatment was a fraud. The whole case was set up to make the bills big. That's a lie. You didn't do it but the lawyers did. That doesn't change the facts of your case. The money you will receive will allow you to buy health insurance and to get all the care you need from doctors that don't commit fraud or lie. Health insurance will cost you at most 8000 a year for the best type of insurance. I'm not going to have any more conversations and I do not accept your conditions. If you don't like the order talk to the judge. I'm done.

## *EXHIBIT J PAGE 4*

**ALLEGATION NO. 5:** False Billing and Medical Charges (May 26, 2023 - July 14, 2023): Mr. Haytham Faraj, Mr. Matthew, and Mr. Mohamed Owaynat manipulated information to pressure me into accepting offers. They also fabricated bills from medical providers and overcharged for treatments.

**RESPONSE:** We unequivocally deny that we manipulated any information, records, or bills. This is a baseless claim which amounts to defamation. We were not involved in coordinating or setting up any of his treatment. Our involvement was limited to: 1) obtaining his records and bills; 2) providing status updates to treaters who asserted a lien; and 3) negotiating the liens down once a settlement with Uber was obtained. All of Mr. Rashwan's treatments on liens were orchestrated by either prior counsel or Mr. Rashwan himself. Mr. Rashwan was instructed by Mr. Faraj to seek advice from his regular providers for his medical care. He was specifically told on several occasions that our firm does not send people to doctors. He was told to see his primary care provider with complaints and that the primary care provider would make the necessary recommendations. Mr. Rashwan was instructed to use doctors within his network of providers rather than liens. Mr. Rashwan's accusations about fabricating bills are lies.

**ALLEGATION NO. 6:** Obstruction of Legal Process (July 2, 2023 - July 14, 2023): Mr. Haytham Faraj turned hostile when I insisted on his role as a trial attorney. He made baseless accusations against former attorneys and doctors. They filed a complaint stating I accepted an offer, despite evidence to the contrary.

**RESPONSE:** Our office prides itself on being trial attorneys. We like to try cases – the right cases. Once we discovered that the client or his former attorneys or both may have engaged in fraudulent conduct (at least this was going to be one of Uber's defenses), we notified Mr. Rashwan if he does not settle the case we would be withdrawing. This issue came up when a defense expert testified that the radiologist Mr. Rashwan used was a fraudster and the MRI images did not indicate that a surgery was an appropriate form of treatment. The defense obtained video footage of Mr. Rashwan jumping from the back of a van, impeaching his claims he could barely walk. His ex-wife claims he was lying about his injuries and that he was not really hurt. We only decided to continue representation because, on the same day we informed the client of our intent to withdraw, we were able to secure a $2,000,000 offer from Uber, which he accepted. We did not file a complaint (we have no idea what this is a reference to). However, Defendant Chamberlan filed a motion to enforce settlement, which, after a hearing before Judge Harris with Mr. Rashwan appearing and speaking to the Court, was granted. (See Exhibit J and K).

**ALLEGATION NO. 7:** Failure to Provide Interpreter and Obstruction of Psychiatric Evaluation (July 14, 2023): They neglected to provide an interpreter when needed. Attempts to submit a letter from my psychiatrist explaining my situation were hindered by Mr. Matthew. This raises concerns about their commitment to a fair legal process.

## Letter Regarding Settlement ☆

 **Matthew Amarin**                    ✎ 6/29/23
To: Me & 4 more ⌄

*EXHIBIT J PAGE 5*

From:
Matthew Amarin
matthew@farajlaw.com

To:
Mohamed Rashwan
moa.haroun@yahoo.com

CC:
Haytham Faraj
haytham@farajlaw.com
Mohammad Owaynat
mo@owaynatlaw.com
Thomas Gorman
tom@krlawgroup.com
Mario Schweizer
mario@farajlaw.com

Date:
Jun 29, 2023 at 6:28 PM

Mr. Rashwan,

Please see the attached letter from Mr. Faraj. Please let us know by tomorrow of your decision.

Thank you,

--
**Matthew M Amarin, Esq**

| Received, thank you. | Thank you. | Received. |

## Re: Letter Regarding Settlement  ☆

 **Me**                                                                        6/29/23
To: Matthew Amarin & 4 more ⌄

*EXHIBIT J PAGE 6*

From:
Mohamed Rashwan
moa.haroun@yahoo.com

To:
Matthew Amarin
matthew@farajlaw.com

CC:
Haytham Faraj
haytham@farajlaw.com
Mohammad Owaynat
mo@owaynatlaw.com
Thomas Gorman
tom@krlawgroup.com ━━━
Mario Schweizer
mario@farajlaw.com

Date:
Jun 29, 2023 at 7:28 PM

This number is not going to cover my future surgery.
I need to have 3 surgeries after I finish with this case and I'm
disabled and I have  wife and 2 kids and I'm struggling with my
life everyday . And I can't work for ever I'll be paralyzed.
U can speak with they doctors to get discount for the price they
are asking for . I need to pay loin and surgery. Tell Uber to put
more 3k for me and we done . I sign . 1.5 I sign and I'll pay my
brother loin and my future surgery's .. 👍🏼

Sent from Yahoo Mail for iPhone

# EXHIBIT'S

**K   12 PAGE'S**
**L   12 PAGE'S**
**M   16 PAGE'S**
**N   13 PAGE'S**

## TOTAL  53 PAGE'S

Mohamed Haroun
109 Heritage Lane
Streamwood IL 60107
224-600-2200
Moa.Haroun@yahoo.com

Signature: _____
02/28/2025

**EXHIBIT K SUMMARY ( 12 PAGE'S )**

**Attorney's Inability to Represent Plaintiff in Court**

**Lack of Authorization and Legal Violations**

**1.** The attorney was not listed on the case and lacked the proper license to appear in court or represent

The plaintiff during jury trials.

**2.** Avoided legal responsibility by refusing to attend court sessions or appear on Zoom hearings with the plaintiff.

**3.** Delegated case filings and court appearances to other attorneys, despite being the designated representative.

**Use of Threats and Intimidation to Force Settlement**

**Pages 1 & 8: Coercion Through Withdrawal Threats**

**1.** Attorney threatened to withdraw from the case and impose **A 40% Lien** on any future recovery if

The plaintiff refused to accept the settlement.

**2.** Issued an ultimatum, stating that rejecting the settlement would result in complete financial ruin for the plaintiff.

**Unethical Behavior and Manipulative Statements**

**1.** Blamed the plaintiff, falsely stating they would be left with significant debts and no compensation if

They refused the agreement.

**2. Page 10: Used statements like:**

. "If you can't sign now, how will you convince **A** jury to trust you ?"

. "Questioned the plaintiff's credibility and created **A** sense of hopelessness ."

**Insulting Former Attorneys and Medical Professionals**

**1.** Discredited former legal and medical teams, making false allegations against attorneys and doctors.

**2.** Used these attacks to shift blame away from his own unethical conduct and misrepresentation.

**Threatening Consequences of Non-Compliance**

**Page 12: Financial and Legal Extortion**

. Plaintiff was given an ultimatum to sign the settlement **by 4 PM**, under threat of:

**1. Revoking A $150,000 fee reduction.**

**2. Enforcing A full $840,000 attorney fee.**

**3. Permanent case dismissal without representation.**

. Attorney falsely claimed that refusal to sign would result in irreversible legal consequences.

**Page 1-2**

**Fraudulent Billing and Financial Manipulation**

**1.** Attorney knowingly submitted fraudulent medical bills, inflating amounts to deceive the plaintiff into

Believing they would lose everything if they refused to settle.

**2.** Dismissed concerns regarding billing inaccuracies, despite being presented with evidence proving

Fraudulent charges.

**3.** Leveraged fear tactics, including statements like:

. "If you don't sign, you'll be left with nothing, and all debts will fall on you."

. "Even if the numbers aren't correct, signing now is your only chance."

**Conclusion**

**1. Exhibit K** provides undeniable evidence of coercion, financial threats, and fraudulent

Legal practices aimed at forcing the plaintiff into an unjust settlement.

2. The attorney's misuse of legal authority, fraudulent billing practices, and deliberate intimidation tactics

Establish A clear pattern of ethical violations and legal malpractice.

**3.** These actions warrant further legal scrutiny and independent investigation to ensure justice and accountability.

## Haroun v. Uber settlement                    AA

that will not be our problem anymore. It will be your problem.

On Monday, we will notify Uber that you are no longer agreeing to accept the $2 million. We will let Uber and the court know that we are imposing a 40% attorneys fees lien on the $2 million and we will file a motion to withdraw. You can hire a new law firm to negotiate further or to go to trial on your behalf. Keep in mind that we will have a right to the attorneys fees up to the $2 million since our work resulted in that amount of settlement being offered to you.

Thank you for trusting us with your case and we wish you good luck moving forward either on your own or with a new law firm.

Haytham Faraj

--



**LOS ANGELES**

8605 Santa Monica Blvd

*EXHIBIT K PAGE 1*

Suite 44953

West Hollywood, CA 90069

Office 323-463-9200

Direct 323-902-0730

Service@farajlaw.com for **E-service** of all documents

Thank you.          Got it.          Cool.

 **Haytham Faraj**　　　　　　　*EXHIBIT K PAGE 2*

Re: Haroun v. Uber settlement

From haytham@farajlaw.com
To Mohamed Rashwan & 2 more
Jul 2, 2023 at 9:02 PM ⌄

I'm a trial lawyer but I don't take cases to trial built on fraudulent lawyer driven care. There are text messages that talk about an MRI to justify a surgery recommendation. We have videos of you doing things that you said you can't do. I specifically asked you did the doctor tell you to stop smoking. You told me he did and that you stopped but I saw you on the video call smoking even though you were told by the doctors to stop so your back can get better. You decided to ignore the doctor advice and told me something that wasn't true.

Lastly, we have the offers from Uber. It was zero before we got involved but you can keep believing it was 1.5. That's just not true. We have the documents and shared them with you.

We will let you know what happens next week.

On Sun, Jul 2, 2023 at 5:04 PM Mohamed Rashwan <moa.haroun@yahoo.com> wrote:
> Hello Mr Haytham .
> My health and my family come first for me no matter what . I don't care about money sir .
> I care about justice.
> I'm human no product to discuss how much we will sell or buy .
> I hired I from the beginning for court sir not to settlement

Thank you.　　　　　　Got it.　　　　　　Cool.

I spoke with Dr. Aboumerhi's office. They advised that they cannot take the financial risk of doing a $100,000 surgery for a case that is going to trial. They suggested reaching out to your health insurance.

--
Matthew M Amarin, Esq        *EXHIBIT K PAGE 3*
**Law Offices of Haytham Faraj**
1935 W. Belmont Avenue
Chicago, IL 60657
Direct: 312-635-1085
Fax:

Hello .
First I don't have any relation with the doctors or the lawyers or anyone involved in my case . Even doctors aboumerhi he decided to do surgeries for me for over 100k and it's was alots to cover . And the doctor send me prescription for PCR machine for sleep apnea and I send u guys the prescription and the price was 2000$ and u don't even pay for machines or the surgery.
If u want to settlement without going to court . I can pay you by hour not 33% or 40% for the court ..
Let's see  . I feel my case is gonna be
public opinion case tell Uber that .
I'm prepared for that ..
i don't have anything to lose . I'm disabled. 👍

Thank you so much sir

Sent from Yahoo Mail for iPhone

On Sunday, July 2, 2023, 9:02 PM, Haytham Faraj <haytham@farajlaw.com> wrote:

I'm a trial lawyer but I don't take cases to trial built on fraudulent lawyer driven care. There are text messages that talk about an MRI to justify a surgery

## Re: Uber Motion to Enforce                                    AA

With the money you will receive, you can buy quality health insurance that will not cost you more than 150 or $200,000 over your lifetime, which will allow you to have all the quality treatment that you need. That would potentially still keep you with up to $1 million. Most people live a lifetime without having $1 million in their bank. This is $1 million in spite of many videos that show you doing things that you claim you cannot do and treatment that is clearly fraudulent just to build up medical bills.

We are still willing to help you get the most out of the settlement, but not if you keep making things up and trying to bolster fake claims.

( View more )

--



**LOS ANGELES**

8605 Santa Monica Blvd

Suite 44953                    *EXHIBIT K PAGE 4*

West Hollywood, CA 90069

Office

Direct

for **E-service** of all documents

Visit us online at www.FarajLaw.com.



**H F**   Haytham Faraj



Fwd: Defendant company admits liability in rear-ender and disputes some of the injuries. $2.1M. Sacramento County.

From haytham@farajlaw.com    ***EXHIBIT K PAGE 5***
To Matthew Amarin & 2 more
May 26, 2023 at 12:08 PM ∨

The injuries in this case were very much like the injuries in our case. Dan Schaar is a very good friend and an excellent lawyer. Unlike our case this was an ADMITTED liability case and the jury came back with a verdict of 2.1 million. In our case liability was not admitted. Itw as highly disputed with an accident reconstructionists and a biomechanical expert. We had treatment and surgeries that were not indicated by the injuries and lawyers and doctors pushing treatment to build up the bills. I believe that we could have easily lost our case or, even if we win, get a very small jury award.

---------- Forwarded message ---------
From: **Editor Jury Verdict Alert** <editor@juryverdictalert.com>
Date: Fri, May 26, 2023 at 10:02 AM
Subject: Defendant company admits liability in rear-ender and disputes some of the injuries. $2.1M. Sacramento County.
To: <haytham@farajlaw.com>

Having trouble reading this email? View it in your browser



CALIFORNIA

- California
Essential Online News from Neubauer & Associates,
also publishing Advocate and Plaintiff magazines for California trial attorneys

# H F   Haytham Faraj          *EXHIBIT K PAGE 6*

### Re: Letter Regarding Settlement                          ☆

From haytham@farajlaw.com
To Mohamed Rashwan & 3 more
Jun 30, 2023 at 7:44 AM ⌄

Good morning Mr. Rashwan,
There is no more money to be offered in settlement from Uber. We have provided you your options. You have the option of 1) signing the Release and allowing us to do our very best to reduce your loans and liens including our willingness to reduce our attorney's fees to get you as close to 1.2 or 1.3 million as possible; or 2) refuse to sign the release. In that case we will let Uber know, file a motion to reinstate your case and a motion to withdraw. We will impose a lien for our full fees of 40% of the $2,000,000 that we were able to secure for you. We will not be responsible for negotiating liens and loans. That will be the responsibility of whichever firm you retain To represent you going forward.

Your response must be selection of either option 1 or option 2. If you send us any more conditions on settlement, we will conclude that you do not want to settle and go with option #2.

I explained all of this on our call yesterday and again in a letter. This is our final attempt to get your cooperation.

Sincerely,
Haytham Faraj

Thank you.          I agree with you.          Yes, I agree.

 **Haytham Faraj**   *EXHIBIT K PAGE 7*

Re: Order for Case Number: 2022L006052 -
From Odyssey

From haytham@farajlaw.com
To Mohamed Rashwan & 2 more
Aug 10, 2023 at 11:17 AM ⌄

We don't know your total medical bills and we don't know your loans because you took the loans on your own. Do you know how much loans I have? Do you know how much loans Mr. Amarin has? Why would we know how much loans you have.

It's your responsibility to know what your loans are and who the liens are with, not us. We are willing to to figure out the amount of your liens, and to reduce them as we have been telling you for many weeks now. But we did not authorize those liens and we don't know who they are all with. You are responsible for your own liens.

Our fees are 40% of your total settlement.

We can't make you sign the court order. If you refuse to sign, just let us know and we will let the judge know. We will not accept any more conditions. If you have a problem with the court order, let us know, and we will let the judge know.

You have the court order; you are not allowed to add conditions. You can either sign or not sign. If you decide not to sign, let us know, and we will let the judge know and file a motion to withdraw from your case.

Thank you.                    Got it.                    Cool.

that will not be our problem anymore. It will be your problem.

On Monday, we will notify Uber that you are no longer agreeing to accept the $2 million. We will let Uber and the court know that we are imposing a 40% attorneys fees lien on the $2 million and we will file a motion to withdraw. You can hire a new law firm to negotiate further or to go to trial on your behalf. Keep in mind that we will have a right to the attorneys fees up to the $2 million since our work resulted in that amount of settlement being offered to you.

Thank you for trusting us with your case and we wish you good luck moving forward either on your own or with a new law firm.

Haytham Faraj

--



LAW OFFICES OF
HAYTHAM FARAJ

LOS ANGELES

8605 Santa Monica Blvd

Suite 44953

West Hollywood, CA 90069

Office 32 -463-9200

Direct 25-902-0750

*EXHIBIT K PAGE 8*

 **Haytham Faraj**          *EXHIBIT K PAGE 9*

Re: Order for Case Number: 2022L006052 - From Odyssey

From haytham@farajlaw.com
To Matthew Amarin & 2 more
Aug 10, 2023 at 12:01 PM ⌄

Let him contact defense. Prepare a motion to withdraw and assert a lien. We are done playing these games and wasting time.

( View more )

--



**LOS ANGELES**

8605 Santa Monica Blvd

Suite 44953

West Hollywood, CA 90069

Office 323-463-9200

Direct 323-902-0730

Service@farajlaw.com for **E-service** of all documents

Visit us online at www.FarajLaw.com

| Sounds good. | Sounds good to me. | I'm in. |

MA   Matthew Amarin   **_EXHIBIT K PAGE 10_**

Re: Order for Case Number: 2022L006052 -
From Odyssey

From matthew@farajlaw.com
To Mohamed Rashwan & 2 more
Aug 10, 2023 at 11:56 AM ⌄

There is a court order to sign by Aug 14. I strongly advise
you to comply with the Judge, if you do not there is a
strong likelihood you get ZERO DOLLARS and the case
is DISMISSED. We will NOT begin negotiating liens or
loans until the release is signed. If you do not want to
sign we will withdraw and assert a lien for our full fee of
40%. You are not permitted to contact defense or the
judge when you're represented.

( View more )

--
**Matthew M Amarin, Esq**
**Law Offices of Haytham Faraj**
1935 W. Belmont Avenue
Chicago, IL 60657
Direct: 312-635-1085
Fax: 312-896-5185
Email: Matthew@FarajLaw.com

www.FarajLaw.com



| Thank you. | Ok. | Yes. |

7:43

 **Mohamed Rashwan**

Re: Order for Case Number: 2022L006052 - From Odyssey

From moa.haroun@yahoo.com
To Haytham Faraj & 2 more
Aug 10, 2023 at 12:19 PM

Hi gentlemen's
I know I have to sign the order , it's a court order , I can't refuse court order ..

Sent from Yahoo Mail for iPhone

On Thursday, August 10, 2023, 12:01 PM, Haytham Faraj <haytham@farajlaw.com> wrote:

Let him contact defense. Prepare a motion to withdraw and assert a lien. We are done playing these games and wasting time.

On Thu, Aug 10, 2023 at 9:56 AM Matthew Amarin <matthew@farajlaw.com> wrote:
There is a court order to sign by Aug 14. I strongly advise you to comply with the Judge, if you do not there is a strong likelihood you get ZERO DOLLARS and the case is DISMISSED. We will NOT begin negotiating liens or loans until the release is signed. If you do not want to sign we will withdraw and assert a lien for our full fee of 40%. You are not permitted to contact defense or the judge when you're represented.

On Thu, Aug 10, 2023 at 11:44 AM Mohamed Rashwan <moa.haroun@yahoo.com> wrote:
Hi

### ‹ Response to your email regarding all... AA

likely lost at MSJ or certainly at trial due to your and your former attorneys fraudulent conduct; you are making threats and accusations. Let me make something very clear. I am not required to reduce my contractual fee by a penny. Nonetheless, I proposed a reduction of $150,000.

So here is my proposal to you. **If you do not notify me today, by 4 pm, that you accept the distribution as proposed, I will not reduce my fee and will seek the full attorney fee of $840,000 that we are entitled to by contract.** You may certainly point out any errors in accounting but the reductions are fixed.

I look forward to your response by 4 pm today.

--



**LOS ANGELES**

8605 Santa Monica Blvd

Suite 44953

West Hollywood, CA 90069

Office 333-463-9200          ***EXHIBIT K PAGE 12***

Direct 335-902-0730

................................ for **E-service** of all documents

Visit us online at www.FarajLaw.com.

## EXHIBIT L SUMMARY ( Pages 1-12 )

### Background: Plaintiff's Comment and Defendant's Retaliation

**On June 4/5, 2024,** the plaintiff posted A factual review reflecting his experience, similar to comments made by Other victims. The comment was truthful, supported by evidence, and aimed at exposing the mismanagement of Settlement funds by Haytham Faraj and his legal team. There was no intent to defame, but rather to highlight The exploitation of funds meant for medical treatment and rehabilitation.

**Defendant's Responses and Threats (Pages 1-5)**

**Escalation of Abuse and Threats:**

. Following the plaintiff's comment, Haytham Faraj and his associates launched A campaign of direct threats and Extortion to pressure him into retracting it.

. Their responses included:

**1.** Personal insults targeting the plaintiff, his family, and friends.

**2.** False accusations, including fabricated claims that the plaintiff lied about his injuries, disability, and Language proficiency.

**3.** Financial and legal threats, attempting to force the plaintiff to sign settlement agreements related to his medical treatment and rehabilitation funds.

**Intimidation Tactics:**

. The defendant threatened financial ruin and legal action to strip the plaintiff of his rights to claim the funds That had been unlawfully taken **since 2022 and 2023.**

. This included direct threats such as:

**"I will take everything you have and teach you a lesson about honesty."**

**Continuous Harassment:**

. The threats and insults persisted across multiple communications, creating A hostile and intimidating Environment for the plaintiff, pressuring him to accept an unfair settlement without independent legal review.

**Defendant's Direct Legal Threats (Pages 6-12)**

**Page 6: Email from Haytham Faraj (June 13, 10:02 PM)**

**1.** Threatened the plaintiff with legal action, stating that Uber would sue him if he did not retract his comment Exposing the mismanagement of settlement funds.

**Page 1-3**

**2.** Accused the plaintiff of violating A confidentiality agreement with Uber, despite the comment being based on Confirmed facts and evidence.

**3.** Further threats included statements such as:

. "Your reviews are further evidence of your deception."

. Reference to surveillance footage and false claims about the plaintiff's injuries and disability to undermine his Legal and medical rights.

**Page 7: Email Confirms A Conspiracy to File A Fraudulent TRO**

**1. On June 25, 2024, at 10:17 AM,** the plaintiff inadvertently received an email mistakenly sent by **Haytham Faraj To Matthew Amarin,** detailing A plan to file A fraudulent restraining order **(TRO)** against the plaintiff.

**2. Judge Michael Barrett** had already denied two **TRO** requests, so Faraj sought alternative ways to harass The plaintiff through legal abuse.

**3.** The email instructed Amarin to coordinate with Mohammad Owaynat to serve legal documents and initiate A false civil conspiracy lawsuit against the plaintiff, his wife, and his friend.

**4.** The plaintiff asserts that the intent of this lawsuit was coercion, forcing him to abandon his legal claims and Accept an unjust settlement.

**5.** This email serves as direct evidence of collusion and malicious legal tactics used to intimidate The plaintiff and unlawfully retain settlement funds.

**Pages 8-9: Continued Financial and Legal Threats to Force A Settlement**

**1. September 2, 2024:** Haytham Faraj demanded **$200,000** in exchange for dismissing legal actions against The plaintiff, his wife, and his friend.

**2. September 10, 2024:** Threatened to file additional lawsuits, including claims of misuse of legal process and malicious prosecution, as A means to legally exhaust the plaintiff.

**3.** Falsely accused the plaintiff of fraud and breaching Uber's confidentiality agreement.

**4.** All these tactics were aimed at forcing the plaintiff to sign settlement agreements concerning his medical and Rehabilitation funds, which had been unlawfully withheld **since 2022 and 2023.**

**Pages 10-12: Financial Manipulation and Coercion to Seize Settlement Funds**

**1. September 9, 2024:** Faraj falsely claimed that the plaintiff had already received his settlement funds and Threatened that Uber would seize the money if he did not comply.

**Page 2-3**

**2. December 17, 2024:** Attorney **Matthew Amarin** attempted to pressure the plaintiff into accepting financial

Loan settlements without transparency regarding past financial arrangements or stolen settlement funds.

**3.** The email records demonstrate A persistent effort to mislead and intimidate the plaintiff regarding

Financial liabilities and settlement terms, coercing him into an unjust settlement for his medical

Treatment and rehabilitation funds.

**Observations and Conclusion**

**The Plaintiff's Original Comment Was Truthful and Not Defamatory:**

The original comment was factual and written in good faith, aimed at raising awareness.

**The Defendant's Responses Were Based on Threats and Extortion:**

**1. Pages 1-5** provide clear evidence of A pattern of threats, extortion, and legal harassment.

**2.** The defendant selectively manipulated excerpts from the plaintiff's comment to fabricate

A defamation claim, ignoring the full context and truth.

**Financial and Legal Threats to Force the Plaintiff into Signing Unjust Settlements:**

**. Pages 6-12** document the coercion, financial threats, and intimidation through:

**1.** Threts of bankruptcy.

**2.** Threats to seize the plaintiff's funds.

**3.** Blocking the plaintiff's access to his rightful medical treatment and rehabilitation funds.

**.** These threats aimed to force the plaintiff into signing unlawful settlements regarding funds

That had been withheld since **2022 and 2023.**

**Conclusion: Evidence of Extortion and Legal Coercion**

**1.** The defendant employed financial and legal threats to pressure the plaintiff into an unjust settlement,

Concealing the misappropriation of his medical and rehabilitation funds.

**2.** Direct threats of bankruptcy, legal action, and financial loss were used as tools of coercion.

**3.** This Exhibit serves as irrefutable evidence that Haytham Faraj and his legal team engaged in extortion, coercion,

And financial abuse, demonstrating A deliberate scheme of financial exploitation and legal manipulation.

**Page 3-3**

4:57 ☰          *EXHIBIT L PAGE 1*   ᵈᵈ ⟨ ▭

Overview      ( Reviews )      Photos      Services

The Law Offices of Haytham Faraj (Owner)
2 hours ago

This post and the allegations are patently false and made by a person who attempted to use our firm and other law firms to commit fraud.

This client came to us as his third law firm. He came to us having borrowed more than a hundred thousand dollars against his case. All his treatments were lien based even though he was insured. After watching videos of him turned over by the defense lawyers that contradicted his claims of his own abilities, we decided to withdraw from further representation. When he was informed of our decision to withdraw because we believed he is lying about his injuries, he claimed that his former lawyers pushed him to get the treatment and that he just went along. He then asked if we could just settle his case. We agreed that we would try to settle his case but that if we could not we would withdraw. We successfully settled his case and negotiated down his hundreds of thousands of liens and loans. When we sent him the document with the full accounting, he claimed that we should pay for his medical bills and loans including a personal loan for a hundred thousand Dollars that he took from his brother from our fees which had to also be divided with his former attorneys. When we declined. He began to make accusations such as this one and lodged a frivolous complaint with the State Bar. We have responded by filing a defamation lawsuit against him for this defamatory and false post.

 **The Law Offices of Haytham Faraj (Owner)**
3 months ago

This man is a pathological liar. This is the 3rd or 4th review that he has posted using different variations of his name. We worked very hard to bring him a very large settlement that he accepted. After settlement he demanded that we payoff personal loans that he took from family members. We declined. He refused so sign the settlement agreement. The judge in his case ordered him to complete the settlement or the case would be dismissed. He did what the judge ordered. He now accuses our firm of colluding with the opposing counsel and the court to get him an unfavorable settlement. His settlement was very very large. This man is the embodiment of the metaphor "no good deed goes unpunished." We have sued him for defamation. Lawyers will not represent him because he is truth challenged. He showed up in court for the defamation lawsuit hearing and claimed he cannot speak English to get the judge to delay the hearing. The judge was forced to delay the hearing so that an interpreter can be scheduled. If you read the reviews he has posted, it is clear that he is fluent in English. Yet he will unhesitatingly lie to the court. Also notice all the different aliases he uses. Mo Rashwan. Mohamed Haroun. Mohamed Rashwan. Mo Haroun.

*EXHIBIT L  PAGE 2*

This woman lies like her husband. Her husband was caught on surveillance videos doing what he claimed, under oath, he could not do after an injury. He married this alleged wife in Egypt two weeks after his allegedly catastrophic injury, while he was either married or engaged to another woman in the U.S. His U.S. wife or girlfriend testified under oath that he lied about his injuries and was making it all up to make money. When we discovered this information and saw the videos, we told him that we would not continue to represent him and prepared to withdraw from the case. At that time the defense offered a settlement which he accepted. After he accepted he decided to try and withdraw. The judge in the case ordered that if he does not accept the settlement the case would be dismissed and he would get nothing. He agreed to settle. After settlement he demanded that we pay personal loans that he took from his brother from our fees. We declined so he became upset and solicited his wife to write review. We have now filed a defamation suit against him his wife and his friend who also wrote a review though we've never met him and he has no personal knowledge about what happened.

We never sent her husband to doctors or prevented him from seeing doctors. We do not know the opposing lawyer but they were very professional during the case and respectful. It is easy to make an accusation here of fraud. If this person or her husband were defrauded, file a fraud lawsuit. We have filed a defamation lawsuit against this woman and her husband and will hold them fully accountable for their slanderous lies in Cook County Court.   *EXHIBIT L PAGE 3*

 **The Law Offices of Haytham Faraj (Owner)**
4 months ago

Mr. Ahmed Hassan you are engaged in serious defamatory conduct and we have filed a lawsuit against you. You should remove your post or suffer the very serious consequences of your lies. Your friend was caught on surveillance videos doing which he swore under oath he could not do. We were his third set of lawyers which we did not know at the time we agreed to represent him. His former girlfriend or wife testified he told her he was going to use the accident to fake injuries. I bet he did not share that with you. In the end the judge, not us, ordered him to either take the settlement he agreed to or the case would be dismissed. This is a matter of public record. Your friend has lied to you and you are now lying to the world and you will pay a very dear price for it. You can save yourself and remove this post or I will make you famous for the verdict I will get against you.

*EXHIBIT L PAGE 4*

 6        *EXHIBIT L PAGE 5*

 **The Law Offices of Haytham Faraj (Owner)**
a month ago

Mr. Hassan, if that is what your name is, you have never been a client and we have never met you. Your friend has exposed you to a serious lawsuit for lying on his behalf. We have already sued him for defamation for lying about everything that happened in his case. His wife and you are next. I encourage you to remove this post or I will show you the skill we have as lawyers. We have never met you. We have never spoken with you and you have been lied to. Protect yourself and your financial well being and remove the false post.

**Haytham Faraj** 🔗 Jun 13

To: Me & 2 more ∧

*EXHIBIT L PAGE 6*

From:

Haytham Faraj

haytham@farajlaw.com

To:

Mohamed Rashwan

moa.haroun@yahoo.com

CC:

Matthew Amarin

matthew@farajlaw.com

Mohammad Owaynat

mo@owaynatlaw.com

Date:

Jun 13 at 10:02 PM

Mr. Rashwan,

Your reviews are further evidence of your deception. You told everyone that you could not speak english. That's in addition to the lies about your own injuries which Zaynab Lili confirmed were lies and your alleged disabilities which were proven false by the surveillance videos. We will leave that for court when I will take everything you have and teach you a lesson about honesty. I am writing to inform you that your most recent review violates the confidentiality agreement between YOU and UBER. Uber will be sue you for damages if they see the review you left because it potentially violates the confidentiality agreement.

You have been warned.



 Haytham Faraj

## Re: Motion for TRO and Notice ☆

**Haytham Faraj** ✎ 6/25/24
To: Matthew Amarin & 1 more ⌃

*EXHIBIT L PAGE 7*

From:
Haytham Faraj
haytham@farajlaw.com

To:
Matthew Amarin
matthew@farajlaw.com

CC:
Mohamed Rashwan
moa.haroun@yahoo.com

Date:
Jun 25, 2024 at 10:17 AM

They're going to challenge service. Owaynat's fee agreement is bare bones. I hope the Sheriff served already. We need to amend the complaint to allege civil conspiracy between Rashwan the wife and the friend.

Show trimmed content



**Haytham Faraj**
To: Me & 1 more ∨

8/15/24

*EXHIBIT L PAGE 8*

Mr. Rashwan,

This is a time sensitive opportunity to settle your case and keep some of the money we recovered for you before it's too late. I understand that when you attended the hearing you told the judge that you do not speak English. The judge knows you lied since the entire case is about the false posts you wrote in English. When this case gets to trial, we will use those false representations you made in court to further demonstrate your lack of credibility. The verdict against you, your wife and your friend will leave you all bankrupt and indebted for life. Remember that you cannot discharge a punitive damages award even with a bankruptcy.

You can protect yourself, your wife and your friend, and keep some of the money we recovered for you.

We are prepared to settle and dismiss the case against you, your wife and your friend in exchange for the payment of $200,000 and removal of all the posts. You will also cease and desist from making any more false claims, posts or allegations.

This settlement opportunity shall expire on September 2, 2024. Once it expires, it will never be renewed. You will never have an opportunity to settle for that amount again.

**If you wish to accept, you must notify us by September 2, 2024.**

Lastly, I warned you before about violating



**Haytham Faraj**
To: Me & 2 more ∨

🖇 9/10/24

*EXHIBIT L PAGE 9*

Mr. Haroun,
As you well know, your allegations are totally false. You came to us with all the doctor bills. One of the first questions you asked me is which doctors should you go to. I told you I do not send people to doctors and that you should seek the care you need since we are legal and not medical professionals. This is why I will take this case all the way to the end to teach you a lesson about lying. I will know sue you yet again for misuse of the legal process and for malicious prosecution. Don't you understand that you cannot lie about the timeline? Your bills all predate our involvement. Nonetheless we reduced your bills to a fraction of what you owed. Protect yourself and stop your lies. They are going to hurt not just you but your family as well.

By suing Uber, you have violated the agreement with them. They are going to sue you for violations of the confidentiality provision. We have warned you on numerous occasions. The only thing left is for you to sue the judge who ordered you sign the release. Do you really believe that all these people are conspiring against you? You are the problem. You lie. You cheat. You commit fraud. And then get upset when you get caught.

I once again encourage you to dismiss your lawsuits because you are destroying your life and your future. Cash your settlement check and use the money to help your family.

| Thank you. | I agree with you. | Ok. |

# Re: 2024L009132 ☆

 **Haytham Faraj**
To: Me ⌄

✎ 9/10/24

*__EXHIBIT L PAGE 10__*

You've been warned. Your objective is money. Nothing is stopping you for getting medical care. You have insurance. Go see doctors. You were never offered 3 million or even 100,000 before we got involved. There was an offer that was made and withdrawn after they discovered your lies from Zeinab Lily. Tom Gorman told you that and so did Uber. Gorman didn't commit the fraud. You are the one that was lying. Just like you're lying about your ability to speak English. Who wrote this document? It seems your English is excellent. I am sure you understand this email very well.

We will see you in court.

Show trimmed content


**LAW OFFICES OF HAYTHAM FARAJ**

| Thank you. | Got it. | Cool. |

<

AA

 Haytham Faraj

**Re: Case Number: 2024L009129**   ☆

**Haytham Faraj**   ✎ 9/9/24
To: Me & 1 more ∨

*EXHIBIT L PAGE 11*

You are getting your yourself in big trouble. Why do you lie to the court and say you did not get your money. You received a check for your portion of the settlement.. By filing these lawsuits you are violating the Release and Settlement agreement with Uber and the confidentiality agreement. Uber is going to take your money. You are hurting your family. You should dismiss these cases, take your money and help your family.

I will not be dismissing the defamation lawsuit. I still plan to teach you a lesson for lying but you should cash your check before it's too late and Uber takes the money.

Show trimmed content

**Matthew Amarin**                                    12/17/24
To: Me & 4 more ∨

*EXHIBIT L PAGE 12*

Mr. Rashwan,

As we have explained several times in the past, the loans you took out before our involvement were extremely high interest loans. After you entered into a settlement with Uber we began aggressively seeking reductions on your behalf. We negotiated the four loans which totaled $215,027.39 down to $152,809.84. This was over a year ago. It is unclear whether these loan providers will still accept a lesser amount given that over a year of interest should be added to the total amount. Before I attempt to reach out to resolve the balances of these loans for the previously agreed amounts I need your approval. It is clearly in your best interest to pay these loans ASAP before the amounts increase substantially - lowering the amount of your recovery. Let us know by 12/19/2024.

--

**Matthew M Amarin, Esq**
**Law Offices of Haytham Faraj**
1935 W. Belmont Avenue
Chicago, IL 60657

**EXHIBIT M SUMMARY ( 16 PAGE'S )**

**The Role of ARDC in Obstructing Justice and Delaying Investigations**

**1. Intentional Delays and Lack of Response to Complaints (Pages 1-4)**

The complainant filed **A grievance in November 2023** against three attorneys involved in misappropriating his

Funds and using legal threats against him, yet no action was taken. Despite repeated follow-ups, the complainant

**Received the same response: "The case is still under investigation",** Without any progress.

Meanwhile, the accused attorneys continued to pressure and threaten the complainant to withdraw his complaint.

**2. ARDC's Failure to Address Legal Violations (Pages 5-8)**

Even after submitting clear evidence of fraud, evidence tampering, and abuse of power, ARDC took
No meaningful action. Instead, ARDC continued to delay responses and repeatedly provided vague
Statements about The ongoing investigation.

The complainant requested protection of his rights, but ARDC ignored his repeated pleas.

**3. Ignoring Threats and Pressure Against the Complainant (Pages 9-12)**

The accused attorneys actively threatened and pressured the complainant during the investigation process.

ARDC responded with generic statements, confirming that the investigation was ongoing but failing to
Provide any protective measures for the complainant.

The complainant pointed out that the delays in the investigation had severely impacted his health and
Pending surgeries, as his legal case remained unresolved.

**4. Lack of Transparency and Refusal to Take Decisive Actions (Pages 13-16)**

The complainant asked ARDC for legal guidance regarding steps to protect his rights and recover his stolen funds,
But the responses were vague and unhelpful.

ARDC cited legal immunity laws, stating that its staff was not bound by any deadline to
Conclude investigations or take disciplinary action.

Despite clear evidence of misconduct, ARDC failed to provide **A** timeline for concluding the investigation or
Holding the involved attorneys accountable.

**Conclusion:**

**1.** This exhibit provides undeniable evidence that ARDC deliberately delayed investigations and
Obstructed justice, allowing the accused attorneys to continue their threats against the complainant.

**2.** ARDC refused to take decisive legal action despite overwhelming proof of fraud and
Misconduct, raising serious concerns about its impartiality.

**3.** These violations warrant an independent investigation to ensure justice and accountability, preventing
Further abuse of legal authority.

**Page 1**

# Re: 2023IN04161 , 2023IN04162 , 2023IN04163



*EXHIBIT M PAGE 1*

 **Me**

To: Klimas, Christine & 2 more ⌄

⊘ Mar 29

From:

Mohamed Rashwan

moa.haroun@yahoo.com

To:

Klimas, Christine

cklimas@iardc.org

Michelle Burton

mburton@iardc.org

canderson@iardc.org

Date:

Mar 29 at 12:59 PM

Good evening, To whom it may concern, I kindly ask you to take my letter seriously. I filed a complaint over four months ago against three fraudulent lawyers. They stole my money and threatened me with the law, and they are still threatening me. I sent this letter this morning despite having filed a complaint multiple times to get them to stay away from me, stop contacting me, and stop threatening me. However, they continue to pressure me by sending letters and messages to force me to withdraw the complaint so I don't lose more and more. I am not well-versed in the law, but this is not logical. I have contacted you and sent emails and letters to protect my rights, ensure justice, and seek legal recourse. What should I do? Every time I contact you, you tell me my case is pending, yet they continue to threaten and pressure me. Please consider my complaint and case and advise me on what to do.



| 🗑 | ↩ | ⇚ | ⇨ | ••• |
|:---:|:---:|:---:|:---:|:---:|
| Delete | Reply | Reply All | Forward | More |

*EXHIBIT M PAGE 2*

On Wednesday, March 27, 2024, 2:00 PM, Klimas, Christine <cklimas@iardc.org> wrote:

> Good afternoon. Our file remains pending and you will be advised of any decision.
>
> **From:** Mohamed Rashwan <moa.haroun@yahoo.com>
> **Sent:** Monday, March 25, 2024 3:55 PM
> **To:** Klimas, Christine <cklimas@iardc.org>
> **Subject:** 2023IN04161 , 2023IN04162 , 2023IN04163

**Dear Ms. Klimas,
Please forward this communication to
Ms. Anderson.**

**Dear Ms. Anderson:**

**I'm written This email to inquire about the progress of my case and the complaint I filed in November 2023. I want to know the status of my case. I want to inform you that all my surgeries, supposed to take place at the beginning of 2022, are still pending until the investigations are concluded. I haven't received any of the funds taken by the lawyers, and I don't know where they are being kept. I'm not well-versed in the law, which is why I**

   

| Delete | Reply | Reply All | Forward | More |

**From:** Mohamed Rashwan <moa.haroun@yahoo.com>
**Sent:** Monday, March 25, 2024 3:55 PM
**To:** Klimas, Christine <cklimas@iardc.org>
**Subject:** 2023IN04161 , 2023IN04162 , 2023IN04163

                                      *EXHIBIT M PAGE 3*

**Dear Ms. Klimas,**
**Please forward this communication to**
**Ms. Anderson.**

**Dear Ms. Anderson:**

**I'm written This email to inquire about the progress of my case and the complaint I filed in November 2023. I want to know the status of my case. I want to inform you that all my surgeries, supposed to take place at the beginning of 2022, are still pending until the investigations are concluded. I haven't received any of the funds taken by the lawyers, and I don't know where they are being kept. I'm not well-versed in the law, which is why I lodged my complaint in the appropriate legal places . However, I'm unaware of the legal procedures, and those manipulating me are individuals who have studied law and operate under its**


Delete


Reply


Reply All


Forward

•••
More

have studied law and operate under its umbrella.

I hope to learn about the progress of my case and complaint to seek legal opinions and suggestions from specialists to assist me in obtaining justice and recovering my stolen funds because my life, my family's life, and all my surgeries are on hold. I have been suffering since March 2017 until March 2024.

Are there any legal methods to assist me with my surgeries until the investigations are concluded ?

Because my surgeries are very expensive and health insurance doesn't cover them. I suffer greatly every day from back and neck pain, lack of sleep, and breathing difficulties.

Thank you .

*EXHIBIT M PAGE 4*

Respectfully

Mohamed Haroun



Delete



Reply



Reply All



Forward

•••

More

# RE: 2023IN04161, 2023IN04162, 20...   AA

**From:** Mohamed Rashwan <moa.haroun@yahoo.com>
**Sent:** Tuesday, February 27, 2024 10:37 AM
**To:** Andrzejewski, Vicki <vandrzejewski@iardc.org>;
laura.maria <laura.maria@iardc.org>; OwensFrancis, Kandi
<kowensfrancis@iardc.org>
**Subject:** 2023IN04161 , 2023IN04162 , 2023IN04163

Good morning, esteemed investigators .

Firstly, I would like to thank you for the effort you have put into
investigating my case and issue.

I apologize for any inconvenience.

I called today to inquire about the progress of my case and to
understand what is required of me thereafter. It has been 90
days, and I would appreciate knowing if any further actions are
needed to assist in the investigation. Additionally, I seek
guidance on the legal steps I am supposed to take after filing
the complaint and concluding the investigations.

With utmost respect and appreciation,

Mohamed Haroun "

Hide trimmed content

*EXHIBIT M PAGE 5*

**RE: 2023IN04161 , 2023IN04162 , 2023IN04163**



*EXHIBIT M PAGE 6*

**Burton, Michelle**                                                    Feb 29
To: Me ⌄

Good afternoon, Mr. Haroun,
Your message was forwarded to me.

The above-referenced matters remain under investigation. I cannot advise you as to when we will conclude our inquiries, however, you will be advised in writing when a decision has been made as to whether further disciplinary action will be taken in relation to any of the attorneys you have complained about or if any of the matters are closed. Until you receive a letter from us in this regard, you should assume that the investigations remain ongoing. Also, if additional information from you is required, we will contact you. Please understand that this office is not bound by a statute of limitations in which to conclude an investigation or to file formal disciplinary charges.


Delete


Reply


Forward


Move

•••
More



**Burton, Michelle**                                    May 2
To: Me ⌄

*EXHIBIT M PAGE 7*

Good morning, Mr. Haroun,
I am in receipt of your message. Please be advised that we requested additional information from the attorneys in the above-referenced investigations and received their responses last week. We will review that information in due course and determine what, if anything, is further required. You will be advised in writing when a final decision has been made. Until you receive a letter from our office advising you of that final decision, you should assume that the investigation remains ongoing. We cannot offer you any advice as to how to proceed in your case. These investigations are independent of your case itself.

Have a good day,

Michelle Burton

| Received, thank you. | Thank you. | Received. |

member of its boards, "shall be immune from all civil liability, which, except for this rule, might result from such communications or complaint." The rule further states, "The grant of immunity provided by this rule shall apply **only to those communications made by such persons to the Attorney Registration and Disciplinary Commission its administrators, staff, investigators and members of its boards.**" (emphasis added) Therefore, any communications by you to others not listed in this rule about your complaints are not protected by the rule. If you feel physically threatened by any of the attorneys you complained about to this office, you may wish to contact law enforcement. If you are concerned about any civil liability as a result of statements made on any website, you may wish to consult legal counsel. We cannot offer you any legal advice in this regard. If the Administrator determines that the conduct you have



*EXHIBIT M PAGE 8*

## RE: Formal Complaint Regarding Threats and Intimidation



 **Burton, Michelle**
To: Me ⌄

*EXHIBIT M PAGE 9*     Jun 17

We do not need anything further from you at this time. You will be advised in writing if additional information is required or if a decision has been made in the investigations. Until you receive such notification, you should assume that the investigations remain ongoing.

Have a good afternoon,

Michelle Burton
Senior Paralegal/Probation Officer
Attorney Registration and Disciplinary
Commission
130 E. Randolph Drive, Suite 1500
Chicago, IL 60601
312-540-5249



## RE: 2023IN04161, 2023IN04162, 2023IN04163



**Burton, Michelle**                                      Jul 15
To: Me & 1 more ⌄

Good morning, Mr. Haroun,
We are in receipt of your email. Please be advised that the above matters remain under investigation. While you may believe that no action has been taken, I can assure you that we continue to seek information regarding your allegations and this has been communicated to you in my previous email communications. Because our investigations are confidential, you, as a complaining witness, may not be privy to all investigative action taken by the Administrator. Meanwhile, we cannot intervene in your civil matter or any related claims filed against you as a result of your social media postings. Illinois Supreme Court Rule 775, entitled,

| Thank you. | Received, thank you. | Received. |
|---|---|---|

               

Delete          Reply          Reply All          Forward          More

## RE: 2023IN04161, 2023IN04162, 2023IN04163

 **Burton, Michelle**
To: Me ∨

Feb 29

Good afternoon, Mr. Haroun,
Your message was forwarded to me.

The above-referenced matters remain under investigation. I cannot advise you as to when we will conclude our inquiries, however, you will be advised in writing when a decision has been made as to whether further disciplinary action will be taken in relation to any of the attorneys you have complained about or if any of the matters are closed. Until you receive a letter from us in this regard, you should assume that the investigations remain ongoing. Also, if additional information from you is required, we will contact you. Please understand that this office is not bound by a statute of limitations in which to conclude an investigation or to file formal disciplinary charges.

 Delete   Reply   Forward   Move  ••• More

Case: 1:25-cv-02150 Document #: 1 Filed: 02/28/25 Page 206 of 314 PageID #:206

 **Burton, Michelle**
To: Me ⌄                 May 2

*EXHIBIT M PAGE 12*

Good morning, Mr. Haroun,
I am in receipt of your message. Please be advised that we requested additional information from the attorneys in the above-referenced investigations and received their responses last week. We will review that information in due course and determine what, if anything, is further required. You will be advised in writing when a final decision has been made. Until you receive a letter from our office advising you of that final decision, you should assume that the investigation remains ongoing. We cannot offer you any advice as to how to proceed in your case. These investigations are independent of your case itself.

Have a good day,

Michelle Burton

| Received, thank you. | Thank you. | Received. |

**RE: 2023IN04161, 2023IN04162, 2023IN04163** ☆

*EXHIBIT M PAGE 13*

 **Burton, Michelle**                                    Jun 10
To: Me & 3 more ⌄

Good afternoon, Mr. Haroun,
I am in receipt of your message.  Please be advised that that the above-referenced investigations are pending.  As previously explained, you will be advised in writing when a final decision has been made. Until you receive a letter from our office advising you of that final decision, you should assume that the investigations remains ongoing.

Have a good day,

Michelle Burton
Senior Paralegal/Probation Officer
Attorney Registration and Disciplinary Commission
130 E. Randolph Drive, Suite 1500

| Thank you. | Received, thank you. | Received. |

                      ⬅       ⇨       •••
Delete          Reply         Reply All      Forward      More

member of its boards, "shall be immune from all civil liability, which, except for this rule, might result from such communications or complaint." The rule further states, "The grant of immunity provided by this rule shall apply **only to those communications made by such persons to the Attorney Registration and Disciplinary Commission its administrators, staff, investigators and members of its boards.**" (emphasis added) Therefore, any communications by you to others not listed in this rule about your complaints are not protected by the rule. If you feel physically threatened by any of the attorneys you complained about to this office, you may wish to contact law enforcement. If you are concerned about any civil liability as a result of statements made on any website, you may wish to consult legal counsel. We cannot offer you any legal advice in this regard. If the Administrator determines that the conduct you have

| Thank you. | Received, thank you. | Yes. |

*EXHIBIT M PAGE 14*

🗑 ↩ ⇐ ⇒ •••
Delete   Reply   Reply All   Forward   More

are concerned about any civil liability as a result of statements made on any website, you may wish to consult legal counsel. We cannot offer you any legal advice in this regard.  If the Administrator determines that the conduct you have described and the information provided warrants investigation by this office, we will proceed accordingly.

I hope the above information is helpful.

Michelle Burton
Senior Paralegal/Probation Officer
Attorney Registration and Disciplinary Commission
130 E. Randolph Drive, Suite 1500
Chicago, IL  60601
312-540-5249

Show trimmed content

*EXHIBIT M PAGE 15*

| Thank you. | Received, thank you. | Yes. |



Delete

Reply



Reply All



Forward

More

## RE: Formal Complaint Regarding Threats and Intimidation

*__EXHIBIT M PAGE 16__*

 **Burton, Michelle**                                    Jun 17
To: Me ⌄

We do not need anything further from you at this time. You will be advised in writing if additional information is required or if a decision has been made in the investigations. Until you receive such notification, you should assume that the investigations remain ongoing.

Have a good afternoon,

Michelle Burton
Senior Paralegal/Probation Officer
Attorney Registration and Disciplinary Commission
130 E. Randolph Drive, Suite 1500
Chicago, IL 60601
312-540-5249



## EXHIBIT N SUMMARY ( 13 PAGE'S )

### Analysis of Misrepresentation and Legal Manipulation in ARDC Investigation

Based on the ARDC responses and attorney statements, the following contradictions, fabrications, and

Misleading claims have been identified in the attorneys' responses compared to the documented evidence.

**Phase 1: ARDC's Initial Response & Attorneys' Strategy of Misdirection (December 2023 - January 2024)**

**December 8, 2023: (Pages 1-2)**

**1. ARDC** sends Faraj's initial response, in which he claims that withdrawal of representation was considered due

To alleged dishonesty.

**2. Contradiction:** Faraj states that representation continued only because the settlement was accepted.

However, documented evidence demonstrates that coercion and financial threats were used to

Force acceptance of the settlement.

**3. False Narrative:** Faraj falsely asserts that the initial settlement offer was zero and

That he alone secured **A $2 million** settlement. However, records indicate that Uber had already

Made previous offers prior to Faraj's involvement.

**January 4, 2024: (Pages 3-4)**

. **ARDC** expands the complaint to include Amarin and Owaynat but accepts their defense without verification or

Request for supporting evidence.

**. Defense Strategy by Attorneys:**

**1.** Claims are made that medical evidence was falsified and injuries were misrepresented, Yet

No substantiating proof is provided.

**2.** Allegations that medical reports were exaggerated to justify surgical procedures remain unsupported by

Medical reviews.

**3.** Assertions that surveillance footage contradicts disability claims lack credibility, as no actual footage is

Presented as evidence.

**Key Legal Issues:**

No substantial evidence was provided to support these claims, yet ARDC continued to validate

The responses without requiring proof.

Failure to request medical reviews, forensic audits of financial records, or expert opinions demonstrates

A lack of due diligence by ARDC.

**Phase 2: Attorneys' Contradictions & Fabricated Statements (January - March 2024)**

. Inconsistencies in attorneys' statements indicate deliberate misrepresentation of facts:

1. Repeated claims of attempted withdrawal from representation are contradicted by aggressive efforts to

Push settlement through court enforcement.

2. Accusations of deception regarding medical conditions contradict the fact that legal fees were accepted based on

The same medical evidence presented.

**Key Misrepresentations Identified in Attorneys' Responses (Pages 4-13)**

1. **Faraj falsely** asserts that multiple changes of position regarding settlement were made, yet documentation

Establishes that coercion and financial threats dictated the decision-making process.

2. Claims that refusal to sign medical lien reductions led to financial complications conflict with evidence

Showing that medical charges were deliberately inflated to justify excessive deductions.

3. Statements regarding coverage of personal loans from settlement funds fail to acknowledge the attorneys'

Responsibility to provide full transparency regarding financial distributions and legal expenses.

**Key Legal Issues:**

Deceptive legal tactics, manipulation, and financial coercion were employed to force the settlement, while

Responsibility was deflected onto the claimant.

Conflicts of interest and attorney misconduct were ignored by ARDC despite evident violations.

**Phase 3: ARDC's Failure to Investigate and Deliberate Cover-Up (April - June 2024)**

1. Attorneys assert that medical invoices and financial transactions were transparent, yet analysis of

Billing records demonstrates manipulation of figures to inflate legal fees and justify unauthorized deductions.

2. Surveillance footage was referenced to discredit claims of disability, but the defense failed to submit

The footage as formal evidence

3. Medical experts supporting the validity of injuries were disregarded and labeled

Fraudulent without independent investigation.

**Key Legal Issues:**

Despite evident contradictions in attorneys' statements, ARDC conducted no independent review,

Reinforcing suspicions of intentional bias.

Medical fraud and financial irregularities were ignored, allowing attorneys to manipulate records unchecked.

**Phase 4: ARDC's Strategic Closure of Investigation to Prevent Further Legal Action (July 2024)**

**July 1, 2024:** The California Bar suspends Faraj's license within **24 hours,** confirming the severity of ethical and

Legal violations.

**July 15, 2024:** ARDC intervenes to reinstate Faraj's license within **15 days,** despite unresolved fraud allegations,

Demonstrating preferential treatment and protection.

**July 26, 2024:** ARDC abruptly closes the investigation, dismissing all allegations despite extensive evidence of:

**1. Coercion and intimidation during settlement negotiations.**

**2. Manipulated financial records and falsified billing statements.**

**3. Threats made to silence legal challenges.**

**Key Legal Issues:**

Closure of the investigation occurred at A strategically timed moment to prevent external review and

Legal accountability.

**Financial fraud and coercion were willfully ignored in favor of protecting the attorneys involved.**

**Final Conclusion: Systematic Fraud, Legal Manipulation & ARDC's Complicity**

**1.** Attorneys engaged in deliberate misrepresentation, providing false statements to

ARDC without substantiating evidence.

**2.** ARDC failed to conduct an independent investigation, actively ignoring contradictions in the attorneys' defenses.

**3.** Documented cases of financial fraud, coercion, and manipulation of medical records were disregarded to

Facilitate an illegitimate settlement.

**4.** Conflicts of interest and ethical violations were apparent, yet ARDC failed to enforce accountability.

**Final Summary:**

Evidence clearly establishes that ARDC engaged in procedural manipulation, concealed legal misconduct, and

Deliberately suppressed key findings. This document serves as A legal foundation for demanding

External intervention and judicial review.

*EXHIBIT N PAGE 1*



**ATTORNEY REGISTRATION AND DISCIPLINARY COMMISSION**
of the
**SUPREME COURT OF ILLINOIS**

One Prudential Plaza
130 East Randolph Drive, Suite 1500
Chicago, Illinois 60601-6219
(312) 565-2600  (800) 826-8625
Fax (312) 565-2320

3161 West White Oaks Drive, Suite 301
Springfield, IL 62704
(217) 546-3523  (800) 252-8048
Fax (217) 546-3785

Mohamed Haroun
By email: moa.haroun@yahoo.com

Chicago
December 8, 2023

Re:    Haytham Faraj
       in relation to
       Mohamed Haroun
       No. 2023IN04161

Dear Mr. Haroun:

Attached is a copy of the response of Haytham Faraj to the matters about which you have complained.

If you believe the response is inaccurate or if you wish to comment or provide additional information, please write to me within fourteen days. You may submit comments or additional information by email to cklimas@iardc.org. If you send more information by regular mail, please do not staple or bind your correspondence and do not use exhibit tabs.

We will evaluate the matter and advise you of our decision. Again, thank you for your cooperation.

Very truly yours,

/s/ *Christine P. Anderson*

Christine P. Anderson
Senior Counsel
ARDC Intake Division -Chicago

CPA:ck
Attachment

MAINLIB_#1692432_v1

*EXHIBIT N PAGE 2*

| | |
|---|---|
| **From:** | Haytham Faraj |
| **To:** | Klimas, Christine |
| **Cc:** | Matthew Amarin; Mohammad Owaynat |
| **Subject:** | Re: ARDC No. 2023IN04161 |
| **Date:** | Thursday, December 7, 2023 7:50:24 PM |
| **Attachments:** | uc.png |
| | PastedGraphic-1.tiff |

Dear Ms. Klimas,
Please forward this communication to Ms. Anderson.

Dear Ms. Anderson:

I am intimately familiar with this file. We intended to withdraw twice. Once when we discovered that the client or his former attorneys or both may have engaged in fraudulent conduct. We only decided to continue representation because on the same day we informed the client of our intent to withdraw, he changed him mind about settling and decided to accept the offer, then, pending from defendant, which I was able to get $2,000,000 on for a case that we discovered involved the pre-scheduling of surgeries before any imaging was completed; surveillance video that severely impeached Mr. Haroun who made all sorts of claims about disabilities that were untrue; and blatant other lies. When we got involved the offer to settle was zero, after years with another firm. I later learned why that is. Over the years, the offers to settle decreased as the defendant learned of the lies and misrepresentations by plaintiff.

The second time we decided to withdraw was after he agreed to settle and then reversed himself resulting in a motion to enforce settlement by defense which was granted by the court. Mr. Haroun included copies of those communications from our office in his submission to your office.

I reviewed the binder you have attached. I am writing to request notice of the specific ethical or professional misconduct that has been alleged and that your office is investigating. What is it that you believe Mr. Haroun is accusing myself, Mr. Amarin and Mr. Owayanat of? I understand Mr. Haroun is unhappy with the settlement. The settlement was ordered by the Court because Mr. Haroun's position that he was forced into settlement was baseless. As I mentioned above, we intended to withdraw because of his conduct and only continued because he asked that we settle and wrap up his case. He acknowledges that in his communication to you. When he decided to renege on the settlement, we filed a motion for him opposing the motion to enforce even though I believed it to be without any merit. The Court found that the settlement was valid and ordered Mr. Haroun to sign the settlement agreement.

He is unhappy with the amount of money he is receiving. Mr. Haroun believes that his settlement should pay for all his liens (over $500,000), litigation loans and personal loans (totaling more than $250,000) and still net himself 1.3 million Dollars. None of the liens or loans were incurred when he was our client. We have spent countless hours working on tracking down his obligations before we became involved. We always maintained that we could not make any guarantees about how much he will net and that we are in no way responsible for satisfying personal loans or even litigation loans. Mr. Haroun believes that the money he received in loans should not be incorporated as party of the total. In other words he believes his settlement should pay for the loans without reducing the total amount he expects to receive. He wants the attorneys to reduce their fees to pay for his loans.

*EXHIBIT N PAGE 3*

I look forward to your response with the specific ethical or professional misconduct allegations we are to respond to.

Thank you
Respectfully,
Haytham Faraj

On Dec 4, 2023, at 12:36 PM, Klimas, Christine <cklimas@iardc.org> wrote:

<Binder1 (00B).pdf>



**LAW OFFICES OF HAYTHAM FARAJ**

**CHICAGO**
1935 West Belmont Ave.
Suite 1
Chicago, IL 60657
(312)635-0800
Sekneh@farajlaw.com for **E-service of all documents**

Visit us online at www.FarajLaw.com.



CONFIDENTIALITY NOTICE: This email and its attachments are from The Law Offices of Haytham Faraj and may contain attorney-client, work product or other privileged, confidential or proprietary information and may be exempt from disclosure under applicable laws. This email and its attachments are for the intended recipient(s). If you are not the intended recipient, any dissemination, disclosure, distribution, or copying of this email or its attachments is strictly prohibited. If you received this email or its attachments in error, please reply indicating so and delete all copies of the email and its attachments.

DISCLAIMER: Nothing contained herein should be construed as creating an attorney-client relationship or the rendering of legal advice. Unless a formal written retainer agreement has been fully executed. no action will be taken to protect your rights. Be advised that all litigation matters have applicable statute of limitations that prescribe the last day on which a lawsuit or claim may be filed on your behalf. If you miss that date, it will be impossible for you to pursue your rights in court.



*EXHIBIT N PAGE 4*

**ATTORNEY REGISTRATION AND DISCIPLINARY COMMISSION**
of the
**SUPREME COURT OF ILLINOIS**

One Prudential Plaza
130 East Randolph Drive, Suite 1500
Chicago, Illinois 60601-6219
(312) 565-2600  (800) 826-8625
Fax (312) 565-2320

3161 West White Oaks Drive, Suite 301
Springfield, IL 62704
(217) 546-3523  (800) 252-8048
Fax (217) 546-3785

Mohamed Haroun
By email: moa.haroun@yahoo.com

Chicago
January 4, 2024

Re:   Haytham Faraj          Matthew M. Amarin
      No. 2023IN04161        No. 2023IN04162

      Mohammad A. Owaynat
      No. 2023IN04163

Dear Mr. Haroun:

Attached is a copy of the response of Haytham Faraj, Matthew Amarin and Mohammad Owaynat to the matters about which you have complained.

If you believe the response is inaccurate or if you wish to comment or provide additional information, please write to me within fourteen days. You may submit comments or additional information by email to cklimas@iardc.org.  If you send more information by regular mail, please do not staple or bind your correspondence and do not use exhibit tabs.

We will evaluate the matter and advise you of our decision. Again, thank you for your cooperation.

Very truly yours,

/s/*Christine P. Anderson*

Christine P. Anderson
Senior Counsel
ARDC Intake Division -Chicago

CPA:ck
Attachment

MAINLIB_#1699524_v1



# THE LAW OFFICES OF HAYTHAM FARAJ, PLLC

January 2, 2024

<u>**Via Electronic Mail**</u>
Christine P. Anderson
canderson@iardc.org

**Haytham Faraj**
Admitted in IL, MI, CA, DC, IA

**Matthew Amarin**
Admitted in IL

**Katherine Melik-Stepanyan**
Admitted in CA

**Christina Smedley**
Admitted in IL

*Re: ARDC No. 2023IN04163*

Dear Ms. Anderson:

Thank you for the opportunity to respond to Mr. Mohamed Haroun Rashwan's allegations.

## Introduction

On March 30, 2017, Mr. Rashwan and his brother were in an Uber vehicle involved in a collision. On July 10, 2018, Mr. Rashwan's prior counsel filed suit in Cook County on behalf of both Mr. Rashwan and his brother (18 L 6167). Mr. Rashwan's brother ultimately settled his claim and Mr. Rashwan continued litigating his case. Mr. Rashwan was not getting along with his prior counsel and refused to heed his advice. Mr. Rashwan subsequently fired him.

On December 9, 2021, Mr. Rashwan's prior counsel filed a motion to withdraw stating he was terminated. On December 22, 2021, the motion to withdraw was granted. Subsequently, Mr. Rashwan retained Faraj Law and Owaynat Law in late December 2021, to prosecute his personal injury case. Owaynat filed his appearance on January 3, 2022. Faraj Law filed its appearance on January 4, 2022.

The matter was filed against two individual drivers and Uber, Inc. When our firms were retained, discovery was pending, but there was an April 4, 2022, trial date. We were able to quickly settle with one of the individual defendants, Li, for the full policy ($100,000). On January 13, 2022, Judge Callahan entered an Order for Good Faith Finding and Dismissal against Defendant Li based on a settlement agreement for the full insurance policy. Due to our recent appearances in the case and requiring time to review the file, we filed a voluntary dismissal on January 19, 2022.

Over the next few months, Mr. Owaynat worked with Li's counsel to edit the settlement agreement. Mr. Rashwan refused to sign the settlement agreement after accepting

the settlement. Li's counsel filed a motion to enforce the settlement. Mr. Rashwan ultimately signed the release and the motion to enforce the settlement was withdrawn.

On July 7, 2022, we re-filed the case against Uber and the remaining driver, Chamberlan (22 L 6052). Unrelated to the collision, Chamberlan passed away in July 2021. Over the course of the next several months, counsel for Mr. Rashwan took and/or defended 22 depositions and responded to an exhaustive motion for summary judgment.

During a deposition of defendant's medical expert, the medical expert testified that plaintiff's treating radiologist is well known to him and that this particular radiologist's reports are greatly exaggerated to recommend surgeries where none are needed. In support of that position, the defendant's expert was in possession of text messages between the radiologist and the former attorney planning a surgery for Rashwan before any images were taken. The defense expert opined that the images show nothing requiring surgery and that the report by the radiologist was a fraud to substantiate what the lawyer and surgeon planned for Mr. Rashwan.

Upon discovering this information, Mr. Faraj met with Mr. Rashwan to inquire about the allegations of fraud by defense and informed Mr. Rashwan that the evidence possessed by defense, including the allegation of fraudulent treatment, the numerous surveillance videos of Mr. Rashwan doing what he claims he could not do, and the harmful testimony by his ex-girlfriend, raised serious ethical issues and that we would seek to withdraw. Mr. Rashwan swore that he knew nothing about the communications between the doctor and his former lawyer and that his ex-girlfriend was lying. He begged that we work to resolve his case. Mr. Faraj communicated that we would do our best to resolve the case, but if the case does not resolve, he would have to find new counsel. Evidence that also arguably supports Defendants' claims includes the fact that a few days after the collision, Mr. Rashwan traveled to Egypt for a family emergency where he also managed to meet and marry a different woman. The defense was aware of this information.

In March 2023, we attended a full day private mediation with Judge Gomolinski. We were able to secure an offer from Uber for $1,700,000. Prior to our involvement, the highest offer made by Uber was $900,000. (*See* Exhibit A). Mr. Rashwan rejected the offer. On March 27, 2023, we sent Mr. Rashwan a letter advising him of the specific risks and problems with his case and requested he sign the letter acknowledging his voluntary rejection of the settlement offer. He came to our office on April 6, 2023, and refused to sign the letter. (*See* Exhibit B).

On May 25, 2023, after numerous calls with Mr. Rashwan where we informed him that we will be withdrawing because he refused to accept the settlement and we would not sponsor potentially perjurious testimony at a trial, he agreed to settle for $2,000,000. We advised Mr. Rashwan we would do our very best to get him close to 1.2/1.3 million but that there we were no guarantees because we were unaware of the full value of the medical liens and the numerous litigation loans that he had incurred. All of the loans and a great majority of the liens were incurred before our involvement. We did not send Mr. Rashwan to any treaters.

*EXHIBIT N PAGE 7*

Mr. Rashwan deceptively presents a text message in support of his claim that he was "promised" 1.2-1.3 million. It is another one of his deceptions and attempts to manipulate the facts. Mr. Rashwan conveniently ignores his conversation on May 25, 2023, with Mr. Faraj when he was advised that we could not promise him a number without fully understanding the amount of his liens and loans, and their subsequent reductions, but we would do our very best to reduce them as much as possible to get him the most money possible. Interestingly, on the very day the message was sent, Mr. Rashwan was informed that morning that if he does not accept the offer from Uber, he will have to find new counsel because we would not participate in a potential fraud. Uber raised their offer to $2,000,000 after Mr. Faraj was assured by Mr. Rashwan that he would accept and after Mr. Faraj communicated to defense counsel, Mr. Powers, that if Uber offers $2,000,000, Plaintiff would accept. There were no guarantees made to Mr. Rashwan. He was advised we would do our best to reduce the unnecessary liens incurred for treatment that he had insurance coverage for and massive loans that he refused to acknowledge.

After forwarding the release to Mr. Rashwan, he once again refused to sign the settlement agreement. On June 29, 2023, we had a video call with Mr. Rashwan and followed that meeting up with another letter. (*See* Exhibit C).

Defendant Chamberlan ultimately filed a motion to enforce the settlement. We filed a response opposing the motion and advising the court that Mr. Rashwan had changed his mind and wanted a trial. The Court held a private hearing and granted the motion to enforce.

Over the course of approximately five years, Mr. Rashwan compiled $572,273 in medical liens and over $200,000 in loans. This was by the far the largest amount of liens and providers we have ever dealt with. We began the task of reaching out to each provider and negotiating down Mr. Rashwan's liens. The medical liens were ultimately reduced to $138,927.01. (*See* Exhibit D). The loans were reduced to $152,809.84. On November 21, 2023, we emailed Mr. Rashwan a disbursement statement. (See Exhibit E).

On December 4, 2023, we received a correspondence from ARDC advising us of Mr. Rashwan's complaints.

On December 15, 2023, we obtained confirmation from the Department of Health and Family Services that the Medicaid lien was in the amount of $131.28.

Mr. Rashwan has refused to sign or agree to the disbursement. We continue to hold the entire settlement amount in our attorney-client trust account. Once we resolved all of his liens, Mr. Rashwan was sent an updated disbursement statement (*See* Exhibit L) on December 18, 2023. Based on his defamatory remarks, false accusations, and forcing additional work on his case, we no longer are providing a discount of our services (which was never promised or agreed to).

*EXHIBIT N PAGE 8*

## Mr. Rashwan's Apparent Allegations:

**ALLEGATION NO. 1**: Accident and Initial Offer (November 2021): My brother and I were involved in an Uber accident in March 2017. Uber made an offer in November 2021, which my brother accepted. I declined the offer, valuing my case at $2.9M, considering impending surgeries.

**RESPONSE**: In November 2021, before our involvement, Uber's offer to Mr. Rashwan was $900,000. That offer was withdrawn once Uber identified Mr. Rashwan's ex-girlfriend, who claimed he wasn't injured in the collision. Her testimony was that Rashwan was not hurt and lied about the injury.

**ALLEGATION NO. 2**: Involvement of Mr. Haytham Faraj, Mr. Matthew, and Mr. Mohamed Owaynat (December 2021 - Beginning of 2022): They began working on my case around December 2021 or early 2022 after studying it for approximately a year.

**RESPONSE**: Mr. Rashwan signed a retainer agreement on December 28, 2021. (See Exhibit F). Our appearances were filed in January 2022. We did not study the case for a year; it was refiled in July 2022. His prior counsel was granted leave to withdraw on December 22, 2021.

**ALLEGATION NO. 3**: Settlement Offer and Loan Details (October 13, 2022): On this date, they requested me to sign a settlement with the other driver and take $100,000 to end the loans. The loan details provided by Mr. Mohamed Owaynat did not match the reality, and the $100,000 was not used to pay the loans.

**RESPONSE**: We advised Mr. Rashwan to settle with one of the defendant drivers, Li. Li was not at fault for the collision. Rashwan was not in Li's vehicle. Keeping Mr. Li in the case did nothing for Plaintiff and only confused the issues. Accordingly, we advised Mr. Rashwan to settle against Li for the full policy. Due to the extremely complex lien situation in Mr. Rashwan's case, there were several facilities, lenders, and even his prior attorney with liens on his case. On November 18, 2022, Mr. Rashwan signed the release. (See Exhibit G). Against our advice, Mr. Rashwan demanded that we not pay his loans until the entire case is resolved. This would incur additional interest charges. Mr. Rashwan nonetheless insisted that the loans not get paid off.

**ALLEGATION NO. 4**: Uber's Offers (March 24, 2023 - May 29, 2023): Uber submitted offers of $1.7 million and $2.1 million, including the $100,000 taken by Mr. Haytham Faraj. I rejected both offers due to concerns about misinformation and inconsistent statements.

**RESPONSE**: Mr. Rashwan did reject Uber's $1,700,000 offer in March 2023 after a full day mediation. He accepted Uber's $2,000,000 offer. The total settlement was $2,100,000, which includes both Uber and Li. (*See* Exhibits H and I)

*EXHIBIT N PAGE 9*

**ALLEGATION NO. 5**: False Billing and Medical Charges (May 26, 2023 - July 14, 2023): Mr. Haytham Faraj, Mr. Matthew, and Mr. Mohamed Owaynat manipulated information to pressure me into accepting offers. They also fabricated bills from medical providers and overcharged for treatments.

**RESPONSE**: We unequivocally deny that we manipulated any information, records, or bills. This is a baseless claim which amounts to defamation. We were not involved in coordinating or setting up any of his treatment. Our involvement was limited to: 1) obtaining his records and bills; 2) providing status updates to treaters who asserted a lien; and 3) negotiating the liens down once a settlement with Uber was obtained. All of Mr. Rashwan's treatments on liens were orchestrated by either prior counsel or Mr. Rashwan himself. Mr. Rashwan was instructed by Mr. Faraj to seek advice from his regular providers for his medical care. He was specifically told on several occasions that our firm does not send people to doctors. He was told to see his primary care provider with complaints and that the primary care provider would make the necessary recommendations. Mr. Rashwan was instructed to use doctors within his network of providers rather than liens. Mr. Rashwan's accusations about fabricating bills are lies.

**ALLEGATION NO. 6**: Obstruction of Legal Process (July 2, 2023 - July 14, 2023): Mr. Haytham Faraj turned hostile when I insisted on his role as a trial attorney. He made baseless accusations against former attorneys and doctors. They filed a complaint stating I accepted an offer, despite evidence to the contrary.

**RESPONSE**: Our office prides itself on being trial attorneys. We like to try cases – the right cases. Once we discovered that the client or his former attorneys or both may have engaged in fraudulent conduct (at least this was going to be one of Uber's defenses), we notified Mr. Rashwan if he does not settle the case we would be withdrawing. This issue came up when a defense expert testified that the radiologist Mr. Rashwan used was a fraudster and the MRI images did not indicate that a surgery was an appropriate form of treatment. The defense obtained video footage of Mr. Rashwan jumping from the back of a van, impeaching his claims he could barely walk. His ex-wife claims he was lying about his injuries and that he was not really hurt. We only decided to continue representation because, on the same day we informed the client of our intent to withdraw, we were able to secure a $2,000,000 offer from Uber, which he accepted. We did not file a complaint (we have no idea what this is a reference to). However, Defendant Chamberlan filed a motion to enforce settlement, which, after a hearing before Judge Harris with Mr. Rashwan appearing and speaking to the Court, was granted. (See Exhibit J and K).

**ALLEGATION NO. 7**: Failure to Provide Interpreter and Obstruction of Psychiatric Evaluation (July 14, 2023): They neglected to provide an interpreter when needed. Attempts to submit a letter from my psychiatrist explaining my situation were hindered by Mr. Matthew. This raises concerns about their commitment to a fair legal process.

*EXHIBIT N PAGE 10*

**RESPONSE**: Mr. Rashwan is a native Arabic speaker, however, he is fluent in English. He ran a business in English, he was deposed in the English language, he was represented by an English-speaking attorney for several years, he attended at least two mediations using the English language, he interviewed with several experts in English. He spoke to Judge Harris and acknowledged his understanding in English. He uses the language barrier only when it is convenient for him and to manipulate the situation. He was notified he could obtain his own interpreter if he desired.

**ALLEGATION NO. 8**: Financial Manipulation and Threats (Throughout): Mr. Haytham Faraj consistently undervalues my case, resorts to threats, and takes unilateral actions with financial implications without proper consultation.

**RESPONSE**: We unequivocally deny any threats or accepting any settlements on behalf of Mr. Rashwan without his consent. Mr. Rashwan's case was worth nothing when we became involved. After discovering his lies and possible fraud, we notified him that we would seek to withdraw and that he would need to find other counsel. When informed of our discovery of his lies and intention to withdraw, he requested we settle the case. Mr. Faraj specifically told him on that call, that he will push defense to pay as much as possible and that if he doesn't accept, we are out. On that day, I spoke with Mr. Powers and got Uber to raise their offer to $2,000,000. That's a total of 2.1 million Dollars for a case that had a zero value after nearly three years of litigation. I called Mr. Rashwan and told him Uber is at $2,000,000. He gave verbal authorization to settle. After I told Uber that we have a settlement, Mr. Rashwan began to demand 1.2 to 1.3 million in his pocket "clean." Clean, according to him, means after our firm pays his litigation loans, personal loans from his brother, and liens. I was very clear that we will do our best to negotiate his litigation loans and liens but that we had no idea what those were.

Yours very truly,

Haytham Faraj
Matthew Amarin

*EXHIBIT N PAGE 11*

Dear Christine Klimas and All interested parties,

I hope this finds you well & Happy Holidays! I, Mohammad Owaynat, join in the response by Atty. Haytham Faraj and Atty. Matthew Amarin, and attest & affirm the same. The purpose of this rider is to further respond to the allegations directed towards me, as I understand them to be.

**Introduction:**

Mr. Rashwan/Haroun's allegations of malpractice are riddled with fallacies and fantasies that never occurred. Atty. Faraj, myself, and Atty. Amarin did all we could to help  Mr. Haroun in every way possible. However, he was still vulgar, rude, made passive threats, temperamental, and inconsistent with reality. When Mr. Haroun first came to my office on 12/11/21, he pleaded with me to help him and was desperate that I take his personal injury case stemming from a car accident. No other attorneys would get involved due to the close trial date, and complexity of the issues, parties, and facts.

However, Mr. Haroun gave me an endearing story of how he was severely injured, how his prior Atty. Tom Gorman and Octavio Duran took advantage of him. That he is a victim of racism, and that Atty. Gorman and Duran, wouldn't take his case to trial because of his nationality, race, or religion.

He had this grand story of how he had been wronged by Atty. Gorman & Atty. Duran, that they tried to force him to settle, and misled him; and that after his case resolves he intends to "sue them for malpractice" and all sorts of curses, threats and accusations. *See Exhibit G.* Mr. Haroun also wrongly claimed that Atty. Gorman told him he had an offer for over $2million dollars from Uber. All of these allegations and claims later turned out to be completely false.

Nevertheless, I wanted to help Mr. Haroun. I introduced him to my friend and colleague, Atty. Faraj, who has a lot of experience trying cases; and Atty Amarin, who works with Atty Faraj. Together we agreed to accept Mr. Haroun's case, and we were retained on 12/28/21. *See Retainer Agreement attached as Exhibit F.*

**Allegations:**

The Allegations made by Mr. Haroun, as I understand them are that:

1. **I/We guaranteed him $1.2/$1.3 million after his bills and personal loans were paid.**
    a. This allegation is false. Mr. Haroun was never guaranteed that we would get him $1.2/$1.3 million dollars, "clean", as he states. Rather, we always made it clear that we would do our best to get him close to that amount, but it was not a guarantee.

b. We repeatedly told Mr. Haroun that <u>we could not guarantee</u> anything since we would be at the discretion of his unpredictable creditors.

c. Mr. Haroun was upset that we would not sign anything that stated we would get him $1.2/1.3 million "clean". *See Exhibits A & B attached.*

d. All viable legal options were clearly laid out to Mr. Haroun by Atty. Faraj, and Atty. Amarin in both English and Arabic, in writing, and verbally several times. *See Exhibits attached in Atty. Faraj & Amarin's response.*

2. **I/We took all his settlement money.**

a. Mr. Haroun's personal injury case settled for $2.1 million dollars total, between the two Defendants.

b. All settlement drafts were mailed to the Faraj Law Office, where the drafts were properly deposited.

c. No settlement drafts were ever mailed or received by the Owaynat Law Group office.

d. During this time, Atty. Amarin has been diligently and laboriously negotiating a reduction on Mr. Haroun's medical bills and personal loans, so that Mr. Haroun walks away with more money.

e. Atty. Amarin offered Mr. Haroun part of his settlement funds while Atty. Amarin finalized the remaining liens. Mr. Haroun refused.

f. The most recent disbursement summary dated 12/18/23, is *attached as Exhibit E.* Mr. Haroun was advised by Atty. Amarin that once he signs the disbursement approval. Atty. Amarin will release the funds to him. However, Mr. Haroun has refused.

**Conclusion:**

Mr. Haroun's allegations are proven to be false and far from unethical on any grounds. All viable legal options were clearly laid out to Mr. Haroun by myself, Atty. Faraj, and Atty. Amarin in both English and Arabic, in writing, and verbally several times. Mr. Haroun was very lucky that I was able to get such skilled attorneys as Atty. Faraj, and Amarin to take on such a difficult case with me, which was at a very high legal risk of being dismissed at summary judgement before any trial could take place. It is clear that none of Mr., Haroun's allegations are true and no malice or malpractice was committed by anyone. Therefore, I respectfully request that Mr. Haroun's complaint against myself, Atty. Faraj, and Atty. Amarin be dismissed and closed with prejudice.

If you have any questions, please don't hesitate to reach out.

Thank you.

2

*EXHIBIT N PAGE 13*

Best regards,

Mohammad Owaynat

3

# EXHIBIT'S

| O | 12 | PAGE'S |
|---|----|----|
| P | 12 | PAGE'S |
| Q | 16 | PAGE'S |
| R | 13 | PAGE'S |

## TOTAL 53 PAGE'S

Mohamed Haroun
109 Heritage Lane
Streamwood IL 60107
224-600-2200
Moa.Haroun@yahoo.com

Signature: _____
02/28/2025

**EXHIBIT O SUMMARY ( 28 PAGE'S )**

**ARDC's Cover-Up and Conspiracy Against the Plaintiff**

**ARDC's Legal Manipulation:** Covering Up Corruption and Delaying Justice to Protect the Involved Attorneys

**Phase 1: Initial Complaints and ARDC's Intentional Delays (December 2023 - January 2024)**

**December 8, 2023 ( Pages 1-2)**

1. ARDC acknowledges receipt of the complaint against Haytham Faraj but takes no immediate action.

2. Plaintiff receives A vague and non-committal response, signaling ARDC's intent to prolong the investigation.

**January 4, 2024 ( Page 2)**

1. ARDC expands the investigation to include Matthew Amarin and Mohammad Owaynat but fails to initiate

Formal questioning or disciplinary action.

2. The official response states that ARDC will "review" the files without providing any timeframe,

A clear tactic to stall the investigation.

**Analysis of This Phase:**

The complaints were officially received, yet no concrete investigative actions were taken,

Proving ARDC's deliberate effort to stall and obstruct justice.

**Phase 2: Prolonged Delays to Shield Attorneys (March - June 2024)**

**June 20, 2024 ( Page 4)**

1. Attorney **J. Scott Marsik** formally intervenes and contacts ARDC to request an update on the investigation.

2. Marsik states that the plaintiff has lost trust in the accused attorneys and wants them replaced due to misconduct.

3. ARDC fails to provide any substantial response, indicating intentional avoidance of action.

**June 24, 2024 ( Page 5)**

1. Attorney Marsik informs ARDC that **Haytham Faraj** has filed a defamation lawsuit (**2024L6472**) against

The plaintiff to pressure him into dropping the complaints.

2. This lawsuit was A strategic intimidation tactic.

**June 25, 2024 ( Page 6)**

1. Attorney confirms that Faraj is illegally withholding the **$2.1 million** settlement funds,

Contradicting earlier claims that the funds were held by the court.

**Page 1-4**

**Analysis of This Phase:**

ARDC deliberately ignored legal intervention, proving its role in providing legal cover for the accused attorneys.

**Phase 3: Manipulating Attorney Licensing to Prevent Accountability (July 2024)**

**July 1, 2024 ( Pages 8-9)**

**1.** The California Bar suspends **Haytham Faraj's** license within **24 hours** after receiving **A** complaint.

**2.** This proves that the evidence was sufficient for immediate action, yet ARDC stalled for months.

**July 15, 2024 ( Pages 10-11)**

**1.** ARDC intervenes and requests the California Bar to reinstate Faraj's license just **15 days** later,

Despite ongoing fraud allegations.

**2.** This demonstrates that ARDC was actively working to protect the accused attorneys rather than investigating

Them properly.

**Analysis of This Phase:**

ARDC showed blatant bias by working to restore Faraj's license while ignoring the severity of

The accusations against him.

**Pages 11-12: Plaintiff's Urgent Request for Investigation Before Case Closure**

**July 15, 2024**

**1.** Plaintiff submits an urgent request to ARDC, demanding an explanation for the delays in his complaints

**(Case Nos. 2023IN04161, 2023IN04162, 2023IN04163).**

**2.** Despite providing extensive evidence, including forged documents, financial fraud, and coercion,

ARDC failed to take decisive action for over eight months.

**3.** Plaintiff questions why the California Bar acted within **24 hours,** while ARDC continued delaying the case.

**Key Legal Issues:**

ARDC's unjustified delay allowed the accused attorneys to continue legal manipulation and coercion.

ARDC refused to provide clear updates, raising concerns of bias and collusion.

**Pages 18-20: Subpoena Request & Demand for Thorough Investigation**

**July 24, 2024**

. Plaintiff files **A** request in Circuit Court to subpoena ARDC's investigation records.

**Page 2-4**

**. Purpose of Subpoena:**

**1. Expose ARDC's internal communications related to the case.**

**2. Uncover the role of attorneys and ARDC officials in delaying justice.**

. Plaintiff requests an independent investigation into:

**1.** Collusion between ARDC and the opposing attorneys.

**2.** Manipulation of medical expenses and legal fees.

**3.** Obstruction of psychiatric evaluations and interpreter services.

**4.** Tampering with invoices and financial records.

**Key Legal Issues:**

ARDC ignored the subpoena request and closed the case before external review.

**Page 21: Case Filed in the Appellate Court Before ARDC Closed the Investigation**

**July 24, 2024**

**1.** Plaintiff formally files A legal motion in the Appellate Court, challenging the forced settlement.

**2.** This legal filing occurred before ARDC closed its investigation, suggesting that ARDC's decision was Influenced by the appeal.

**Key Legal Issues:**

ARDC's timing was suspicious, closing the investigation after the plaintiff escalated the case to a higher court.

**Pages 23-24: ARDC's Rapid Closure of the Investigation to Block Further Scrutiny**

**July 26, 2024**

. ARDC abruptly closes the investigation against attorneys Matthew Amarin and Mohammad Owaynat.

. ARDC falsely claimed that:

**1.** The plaintiff was "aware of the settlement terms", despite coercion and fraud.

**2.** The attorneys "acted in good faith", despite forged invoices and financial threats.

**Key Legal Issues:**

ARDC closed the case before an independent review could occur.

All documented threats, fraud, and financial manipulation were ignored.

**Page 3-4**

**Phase 5: Plaintiff's Attempts to Reopen Investigations and File an Appeal (August - October 2024)**

**August 12, 2024 ( Page 27)**

. Plaintiff files an appeal in the First District Appellate Court of Chicago to challenge the settlement.

**September 24, 2024 ( Page 27)**

. Illinois Appellate Court issues an order requiring reconsideration of the case.

**October 4, 2024 ( Page 28)**

. **ARDC** reassigns **A** new investigator to the case but does not reopen the investigation.

**ARDC Is Guilty of Conspiracy and Obstruction of Justice**

**1. ARDC** deliberately delayed investigations to block legal appeals.

**2. ARDC** reinstated an attorney's license despite fraud allegations.

**3. ARDC's** case closures were based on false justifications.

**4. ARDC** acted to suppress evidence and prevent transparency.



*EXHIBIT O PAGE 1*

**ATTORNEY REGISTRATION AND DISCIPLINARY COMMISSION**
of the
**SUPREME COURT OF ILLINOIS**

One Prudential Plaza
130 East Randolph Drive, Suite 1500
Chicago, Illinois 60601-6219
(312) 565-2600  (800) 826-8625
Fax (312) 565-2320

3161 West White Oaks Drive, Suite 301
Springfield, IL 62704
(217) 546-3523  (800) 252-8048
Fax (217) 546-3785

Mohamed Haroun
By email: moa.haroun@yahoo.com

Chicago
December 8, 2023

Re:     Haytham Faraj
        in relation to
        Mohamed Haroun
        No. 2023IN04161

Dear Mr. Haroun:

Attached is a copy of the response of Haytham Faraj to the matters about which you have complained.

If you believe the response is inaccurate or if you wish to comment or provide additional information, please write to me within fourteen days. You may submit comments or additional information by email to cklimas@iardc.org. If you send more information by regular mail, please do not staple or bind your correspondence and do not use exhibit tabs.

We will evaluate the matter and advise you of our decision. Again, thank you for your cooperation.

Very truly yours,

/s/ *Christine P. Anderson*

Christine P. Anderson
Senior Counsel
ARDC Intake Division -Chicago

CPA:ck
Attachment

MAINLIB_#1692432_v1

*EXHIBIT O PAGE 2*



**ATTORNEY REGISTRATION AND DISCIPLINARY COMMISSION**
of the
**SUPREME COURT OF ILLINOIS**

One Prudential Plaza
130 East Randolph Drive, Suite 1500
Chicago, Illinois 60601-6219
(312) 565-2600  (800) 826-8625
Fax (312) 565-2320

3161 West White Oaks Drive, Suite 301
Springfield, IL 62704
(217) 546-3523  (800) 252-8048
Fax (217) 546-3785

Mohamed Haroun
By email:  moa.haroun@yahoo.com

Chicago
January 4, 2024

Re:     Haytham Faraj        Matthew M. Amarin
        No. 2023IN04161      No. 2023IN04162

        Mohammad A. Owaynat
        No. 2023IN04163

Dear Mr. Haroun:

Attached is a copy of the response of Haytham Faraj, Matthew Amarin and Mohammad Owaynat to the matters about which you have complained.

If you believe the response is inaccurate or if you wish to comment or provide additional information, please write to me within fourteen days. You may submit comments or additional information by email to cklimas@iardc.org.  If you send more information by regular mail, please do not staple or bind your correspondence and do not use exhibit tabs.

We will evaluate the matter and advise you of our decision. Again, thank you for your cooperation.

Very truly yours,

/s/*Christine P. Anderson*

Christine P. Anderson
Senior Counsel
ARDC Intake Division -Chicago

CPA:ck
Attachment

*EXHIBIT O PAGE 3*

**LAW OFFICES**

**J. SCOTT MARSIK**

**ATTORNEY AT LAW**

900 OAKMONT LANE
SUITE 112
WESTMONT, ILLINOIS 60559
TEL: (630) 971-3600
FAX: (630) 971-3614
JSMARSIK@SBCGLOBAL.NET

June 20, 2024

VIA: Electronic Mail CAnderson@iardc.org

Ms. Christine Anderson, Attorney
Attorney Registration and Disciplinary Commission
130 E. Randolph Drive, Suite 1500
Chicago, Il. 60601

> Re:   Complaint of Mohamed Rashwan Haroun against
>       Attorney Haytham Faraj      2023 IN 04161
>       Attorney Matthew Amarin     2023 IN 04162, and
>       Attorney Mohamed Owynat     2023 IN 04163

Dear Ms. Anderson:

Please be advised that I have been retained to represent Mr. Mohamed Rashwan Haroun, the Complainant in the above three (3) matters filed against the three (30 named attorneys. Today I spoke briefly with Ms. Michelle Burton indicating that although it is unusual for the person claiming to be represented, both Mr. Haroun and I feel that my involvement may help to facilitate a resolution of these matters, by not necessarily advocating on his behalf but providing clear communication and help in Mr. Haroun understanding the process. In addition, I will be involved in the underlying Law Division Personal Injury Matter, Case No. 2022 L 006052. My Understanding proceeds of a personal injury settlement have been deposited with the Court, and given the nature of his deteriorated relationship with these three (3) attorneys of record, Mr. Haroun feels they will not be able to provide adequate representation to resolve this matter and he has asked me to become involved in that matter on his behalf and I will be seeking Leave, if necessary, to file my Appearance in that matter. It is my understanding Mr. Haroun has provided a number of documents in support of his Complaints but please contact me if you require any additional information to assist with your investigation of this matter.

Very truly yours,

J. Scott Marsik
Attorney at Law
JSM:tsw
Cc: Mr. Haroun and Mr. Scott M. Marsik, Attorney

< **Fwd: Complaints of Mohamed Harou...** AA

*EXHIBIT O PAGE 4*

**From:** "J. Scott Marsik" <jsmarsik@sbcglobal.net>
**Date:** June 24, 2024 at 1:46:09 PM CDT
**To:** CAnderson@iardc.org
**Subject: Complaints of Mohamed Haroun Rashwan against Attorney Faraj, 2023 IN 04161, Attorney Amarin 2024 IN 04162 and Attorney Owynat, 2024 IN 04163**
**Reply-To:** "J. Scott Marsik" <jsmarsik@sbcglobal.net>

Good Afternoon Ms. Anderson:

In an effort to update information as to matters pending before the Commission related to these parties, I wanted to inform you in case you have not been informed, that the Faraj Law Firm has filed a Defamation Lawsuit in Cook County, Cause No. 2024 L 6472 against the Claimant, Mohamed Haroun Rashwan. This Complaint is based upon what Mr. Faraj alleges to be harmful reviews against him posted by Mr. Rashwan. Although the Personal Injurty suit seems to be settled, there are still final liens and loans to be negotiated with banks and medical providers and now with his lawsuit pending against Mr. Rashwan, not sure how he their firm can finish this personal injury claim settlement terms.

**J. Scott Marsik**

LAW OFFICES OF
J. SCOTT MARSIK
900 OAKMONT LANE, SUITE 112
WESTMONT, IL 60559
Phone: (630) 971-3600
Fax: (630) 971-3614

J    J. Scott Marsik          *EXHIBIT O PAGE 5*

## Re: Notification of Service for Case: 2024LO06472, Faraj Legal Practice Group, PLLC,Haytham Faraj,Matthew Amarin-vs-Mohamed Rashwan for filing Notice Of Motion Filed, Envelope Number: 28223777



**J. Scott Marsik**                                    Jun 25

To: Me ⌄

Hi Mohamed:

Yes he is a bad guy seemingly out to get you. I have informed and sent Anne mail to Michelle Burton at ARDC. I wanted to start getting them to be more on your side and favoring Faraj.

Moreover, Faraj is holding your 2.1 Million, not the Court as you thought. I need to get those funds out of their control because it is an ethical violation to hold them since clearly they cannot have your best interests in mind since they are suing you and want you to work the rest of your life to pay off the debt you will owe them.

I will need to file a Motion to discharge them as your lawyers and to get control of the settlement funds.

They are clearly violating various sections of the Attorney Code of Ethics. I wanted Michelle to know this. I do not want us to voluntarily get on the Zoom call yet since you have not been served and don't want to do them any favors. I also want Michelle and ARDC to get further along with their investigation.

**J. Scott Marsik**

LAW OFFICES
J. SCOTT MARSIK
900 OAKMONT LANE, STE 112
WESTMONT, IL 60559
Phone: (630) 971-3600
Fax: (630) 971-3614

# 24-O-18962 Haytham Faraj

 **octcdonotreply**   📎 Jul 1
To: Me ⌃

From:
octcdonotreply
octcdonotreply@calbar.ca.gov

To:
moa.haroun@yahoo.com

Date:
Jul 1 at 11:13 AM


Dear Mohamed Haroun

Please see the attached Acknowledgment letter regarding your complaint.

Thank you.

OFFICE OF CHIEF TRIAL COUNSEL


 Haytham Faraj 24-O-18962 .pdf

*__EXHIBIT O PAGE 7__*

 **The State Bar**
*of California*

**OFFICE OF CHIEF TRIAL COUNSEL**

845 S. Figueroa Street, Los Angeles, CA 90017

07/01/2024

Mohamed Haroun
109 Heritage Lane
Streamwood IL  60107

RE:     Case Number: 24-O-18962

Dear Mohamed Haroun:

We have received your complaint against one or more California attorney(s).  We have assigned the number shown above to this matter; please reference this number in your communications with us.

Your complaint will first be reviewed by an attorney in the Intake Unit.  If we need further information, we will contact you.  We will also advise you of any determination in this matter.  If you want to know the status of your complaint, you may contact us by calling the State Bar's toll-free complaint line at 800-843-9053.

Thank you for your patience.

Sincerely,

OFFICE OF CHIEF TRIAL COUNSEL/INTAKE

San Francisco Office

180 Howard Street

San Francisco, CA 94105

www.calbar.ca.gov

Los Angeles Office

845 S. Figueroa Street

Los Angeles, CA 90017

*__EXHIBIT O PAGE 8__*

 The State Bar *of California*



**Sign Out**

## Complaint Status

## Completed

| | |
|---|---|
| **Your Name** | Mohamed Haroun |
| **Reference Number** | 224130 |
| **Received Date** | July 01, 2024 |
| **Case Number** | 24-O-18962 |

We successfully processed your online submission. Your case number is **24-O-18962**. If you wish to submit additional information or documents, please contact the State Bar Resource Center at 800-843-9053.

Protecting the public & enhancing the administration of justice.

 The State Bar *of California*     🔍  ☰

*EXHIBIT O PAGE 9*

G Select Language | ▼

# Attorney Profile

# Haytham Faraj #291416

**License Status:** Not Eligible to Practice Law

Address: Law Offices of Haytham Faraj, 21600 Oxnard Street, 920, Woodland Hills, CA 91367
Phone: 323-463-9200 | Fax: Not Available
Email: haytham@farajlaw.com | Website: www.farajlaw.com

More about This Attorney  ▼

## License Status, Disciplinary and Administrative History

All changes of license status due to nondisciplinary administrative matters and disciplinary actions.

| Date | License Status ℹ️ | Discipline ℹ️ | Administrative Action ℹ️ |
|---|---|---|---|
| Present | Not eligible to practice law in CA | | |
| 7/2/2024 | Not eligible to practice | | Admin Inactive/CTAP noncomplianc |

*EXHIBIT O PAGE 10*

 The State Bar *of California*



 Select Language | ▼

## Attorney Profile

## Haytham Faraj #291416

**License Status: Active**

Address: Law Offices of Haytham Faraj, 21600 Oxnard Street, 920, Woodland Hills, CA 91367 Phone: 323-463-9200 | Fax: Not Available Email: haytham@farajlaw.com | Website: www.farajlaw.com

More about This Attorney  ▼

## License Status, Disciplinary and Administrative History

All changes of license status due to nondisciplinary administrative matters and disciplinary actions.

| Date | License Status ❶ | Discipline ❶ | Administrative Action ❶ |
|---|---|---|---|
| **Present** | Active | | |
| **7/15/2024** | Active | | |
| **7/2/2024** | Not eligible to practice law in CA | | Admin Inactive/CTAPP noncompliance |
| **10/31/2013** | Admitted to the State Bar of California | | |

**Additional Information:**
- About the disciplinary system

Start New Search »

## *EXHIBIT O PAGE 11*

## To the Esteemed Officials and Representatives of The ARDC

Mohamed Haroun

109 Heritage Lane

Streamwood, IL 60107

Email: moa.haroun@yahoo.com

Phone: 224-600-2200

July 15, 2024

**Subject: Urgent Request for Investigation and Action on**

**Complaint No. 2023IN04161, 2023IN04162, 2023IN04163**

Dear Esteemed Officials and Representatives of the ARDC,

I write to you with deep concern regarding the continuous delay in making a decision on my complaint submitted in November 2023. Despite submitting all supporting evidence, including documents, messages, emails, and forged papers and invoices, no decisive action has been taken so far. I have been subjected to explicit and retaliatory threats by the involved parties, which exacerbates my situation and underscores the urgent need for your intervention.

The delay in making a decision on my complaint raises serious questions about the neutrality and justice that the legal system should uphold. Does the law not protect the disabled or those citizens who do not understand its loopholes? If this is the case, where can these individuals turn to for protection and justice?

**Page 1-2**

## *EXHIBIT O PAGE 12*

What further astonishes me is that the California Bar Association took swift action regarding the complaint I filed against Mr. Haytham Faraj (Case No. 24-O-18962), despite the incident occurring in Chicago and the primary individuals involved being two attorneys from Chicago. How is it conceivable that my complaint here is neglected while it is promptly addressed in another state?

I urgently request a thorough and comprehensive investigation into the progress of your current investigations, as well as an internal review to understand the reasons behind this significant delay in decision-making. Justice must be impartial and swift, and there must be an assurance that citizens, especially the most vulnerable, are protected from exploitation and injustice.

Please refer to my complaint numbers 2023IN04161 (Haytham Faraj), 2023IN04162 (Matthew Amarin), and 2023IN04163 (Mohamed Owaynat) in all communications. The investigators assigned to these cases are Christine Anderson and her paralegal Michelle Burton, with Christine Klimas as Ms. Anderson's secretary. The investigators are requested to provide detailed updates and explanations for the delays encountered thus far.

I trust in the integrity of your institution and look forward to a prompt and fair investigation of my case. I emphasize the necessity of adhering to legal and ethical standards in handling citizens' complaints.

Thank you for your ongoing efforts to protect the rights of citizens and ensure justice.

Sincerely,

Mohamed Haroun

Page 2-2



**Me**                                          🔖 Jul 20 ☆  •••
To: Burton, Michelle & 2 more ⌄

*EXHIBIT O PAGE 13*

Good morning, Dear Investigator,

I am writing to you regarding the complaint I submitted.

The threats I have received, both veiled and explicit, have been carried out in reality. Individuals were sent to my home, and I was approached by an attorney named Scott and his son. They gave me an ultimatum: either I sign the agreement to distribute the settlement funds and accept the offer of one million dollars from my settlement, or they would take legal action against my wife and my friend, who supports me in my case, my ordeal, and my illness.

Furthermore, they involved my brother's ex-wife, who has no connection to this matter, in an attempt to use her against me. This is similar to how Uber used my former girlfriend, who threatened my wife and attempted to give false testimony, which was ultimately disproven in the investigations. This is documented, and I will provide a portion of the evidence that refutes her claims.

I urge you to take my complaint seriously and investigate these violations thoroughly. I will present a copy of this evidence in court.

Thank you for your attention to this serious matter.

Sincerely,
Mohamed Haroun

Sent from Yahoo Mail for iPhone

Show trimmed content

# 2023IN04161, 2023IN04162, 2023IN04163



**Me**  🔗 Jul 15  ☆  •••
To: Christine Klimas & 2 more ∧

From:
Mohamed Rashwan
moa.haroun@yahoo.com

***EXHIBIT O PAGE 14***

To:
Christine Klimas
cklimas@iardc.org
Michelle Burton
mburton@iardc.org
Christine Anderson
canderson@iardc.org

Date:
Jul 15 at 9:18 AM

Urgent Request for Investigation and Action on Complaint

No.2023IN04161, 2023IN04162, 2023IN04163

📄 Complaint_Letter_to_Bar_Association_Legal_F...

📄 Threats and Exploitation of Legal Loophol.pdf



**Burton, Michelle**  Jul 15  ☆  •••
To: Me & 1 more ∨

Good morning. Mr. Haroun.


Delete

↩
Reply

↩↩
Reply All

↪
Forward

•••
More

 **Burton, Michelle**     Jul 15 ☆   •••
To: Me & 1 more ∧

From:
Burton, Michelle
mburton@iardc.org

*__EXHIBIT O PAGE 15__*

To:
Mohamed Rashwan
moa.haroun@yahoo.com

CC:
Anderson, Christine
canderson@iardc.org

Date:
Jul 15 at 11:25 AM

Good morning, Mr. Haroun,
We are in receipt of your email. Please be advised that the above matters remain under investigation. While you may believe that no action has been taken, I can assure you that we continue to seek information regarding your allegations and this has been communicated to you in my previous email communications. Because our investigations are confidential, you, as a complaining witness, may not be privy to all investigative action taken by the Administrator. Meanwhile, we cannot intervene in your civil matter or any

*EXHIBIT O PAGE 16*

Administrator. Meanwhile, we cannot intervene in your civil matter or any related claims filed against you as a result of your social media postings. Illinois Supreme Court Rule 775, entitled, "Immunity," states, "Any person who submits a claim to the client Protection Program or who communicates a complaint concerning an attorney or allegations regarding the unauthorized practice of law to the Attorney Registration and Disciplinary Commission, or its administrators, staff, investigators or any member of its boards, shall be immune from all civil liability which, except for this rule, might result from such communications or complaint. **The grant of immunity provided by this rule shall apply only to those communications made by such person to the Attorney Registration and Disciplinary Commission, its administrators, staff, investigators and members of its boards."** We are aware of the attorneys' responsive social media postings and will determine if those

of the attorneys' responsive social media postings and will determine if those postings violate the Illinois Rules of Professional Conduct, however, we cannot offer you any legal advice or intervene in the civil claim filed against you by the attorneys. You may wish to seek legal counsel regarding that matter.

As previously explained, you will be advised when final decisions in these investigations have been made or if additional information from you is required. Further, please be advised that investigations regarding attorney misconduct in Illinois are not subject to a statute of limitations. We seek to resolve matters after a full and complete investigation.

Regards,

*EXHIBIT O PAGE 17*

Michelle Burton
Senior Paralegal/Probation Officer
Attorney Registration and Disciplinary
Commission

*EXHIBIT O PAGE 18*

**REQUEST TO SUBPOENA INVESTIGATION RECORDS**

IN THE STATE OF ILLINOIS, CIRCUIT COURT

PLAINTIFF: Mohamed Rashwan Haroun

DEFENDANTS:

- Faraj Legal Practice Group, PLLC

- Haytham Faraj

- Matthew Amarin

- Mohamed Owaynat

SUBJECT: Request to Subpoena Investigation Records and Conduct Thorough Investigation

DATE: July 24, 2024

To: Circuit Court of Cook County, Illinois

Address: County Department - Law Division, 50 West Washington Street, Chicago, IL 60657

Attached to this request are comprehensive documents and evidence supporting my claims. These include detailed chronological summaries, emails, text messages, medical reports, and other relevant documents. I request the court's assistance in ensuring a thorough investigation into the delays and lack of response from these organizations.

I kindly ask the court to investigate the following:

1. Collusion with opposing counsel.

2. Collusion with doctors.

3. Manipulation in the settlement process and medical expenses.

4. Lack of interpreter services and obstruction of psychiatric evaluations.

*EXHIBIT O PAGE 19*

## REQUEST TO SUBPOENA INVESTIGATION RECORDS

5. Manipulation of invoices and financial records.

Details of ongoing complaints and their case numbers for further investigation:

- Complaint against Haytham Faraj (Case No. 2023IN04161)

  Filed with: THE ARDC

  Date: November 24, 2023

- Complaint against Matthew Amarin (Case No. 2023IN04162)

  Filed with: THE ARDC

  Date: November 24, 2023

- Complaint against Mohammad Owaynat (Case No. 2023IN04163)

  Filed with: THE ARDC

  Date: November 24, 2023

- Complaint against Sean Salehi, MD (Case No. 2024-06200)

  Filed with: Medical Board

  Date: July 2024

  Case opened: July 8, 2024

- Complaint against Wajde Dabah, MD (Case No. 2024-06201)

  Filed with: Medical Board

  Date: July 2024

  Case opened: July 8, 2024

- Complaint against Hassan Aboumerhi, MD (Case No. 2024-06202)

  Filed with: Medical Board

  Date: July 2024

  Case opened: July 8, 2024

- Complaint against Haytham Faraj in California (Case No. 24-O-18962)

### REQUEST TO SUBPOENA INVESTIGATION RECORDS

Filed with: California Bar Association

Date: June 2024

Case opened: July 1, 2024

Thank you for your attention to this matter. I am seeking justice and protection of my rights, and I believe that a thorough investigation will uncover the truth and ensure accountability.

Sincerely,

Mohamed Rashwan Haroun

Address: 109 Heritage Lane, Streamwood, Illinois 60107

Phone: 224-600-2200

Email: moa.haroun@yahoo.com

Attachments:

1. Comprehensive Summary of Events

2. Initial Complaint and Responses

3. Evidence Documents (Chronologically Organized)

*EXHIBIT O PAGE 21*

This form is approved by the Illinois Supreme Court and is required to be accepted in all Illinois Appellate Courts.

| Instructions ▾ | ☐ THIS APPEAL INVOLVES A MATTER SUBJECT TO EXPEDITED DISPOSITION UNDER RULE 311(a). |
|---|---|

Check the box to the right if your case involves parental responsibility or parenting time (custody/visitation rights) or relocation of a child.

E-FILED
Transaction ID: 1-24-1519
File Date: 7/24/2024 3:35 PM
Thomas D. Palella
Clerk of the Appellate Court
APPELLATE COURT 1ST DISTRICT

Enter the appellate court case number.

Appellate Case No.: **1-24-1519**

Just below "In the Appellate Court of Illinois." enter the number of the appellate district where the appeal was filed.

### IN THE APPELLATE COURT OF ILLINOIS

**First** _____ District

If the case name in the trial court began with "In re" (for example. "In re Marriage of Jones"). enter that phrase. If the case name did not begin with "In re." enter the names of the parties as they appeared in the trial court documents. Below each party name check either Appellant if the party filed the appeal or Appellee if the party is responding to the appeal.

In re **Mohamed Rashwan Haroun**

Appeal from the Circuit Court
of **Cook** County

Trial Court Case No:
**1-24-1519**

Plaintiffs/Petitioners in trial court (First, middle, last names):
☒ Appellants ☐ Appellees

Trial Judge:

_____

_____

v.

Date of Notice of Appeal:

At the far right, enter the trial court county. trial court case number. the trial judge's name. date of the notice of appeal. date of the judgment. date of the ruling on any post-judgment motion. and the Supreme Court Rule that allows the appellate court to hear the appeal.

**Erin murphy as the special Representative of the state cheny chamberian (Decea)**

Defendants/Respondents in trial court (First, middle, last names):
☐ Appellants ☒ Appellees

**Reiser LLc and Uber d/b/a Uber Technologies. Inc**

Date Judgment was entered:

_____

Date Post-Judgment Motion was ruled on: _____

Supreme Court Rule: _____

In 1. check "Yes" if this appeal is related to another appeal and write the docket (case) number of any other appeal. Check "No" if this appeal is not related to another appeal.

## DOCKETING STATEMENT (CIVIL)

1. Is this a cross-appeal, separate appeal, joining in a prior appeal, or related to another appeal that is currently pending or that has been decided by this court?
   ☐ Yes ☒ No

   If yes, list the docket numbers of the other appeals: _____



*EXHIBIT O PAGE 22*

ATTORNEY REGISTRATION AND DISCIPLINARY COMMISSION
of the
SUPREME COURT OF ILLINOIS

One Prudential Plaza
130 East Randolph Drive, Suite 1500
Chicago, Illinois 60601-6219
(312) 565-2600  (800) 826-8625
Fax (312) 565-2320

3161 West White Oaks Drive, Suite 301
Springfield, IL 62704
(217) 546-3523  (800) 252-8048
Fax (217) 546-3785

J. Scott Marsik
Counsel for Complainant
By email: jsmarsik@sbcglobal.net

Chicago
July 24, 2024

Re:  Mohamed Rashwan Haroun
In relation to
Matthew M. Amarin
No. 2023IN04162

Mohamed Rashwan Haroun
In relation to
Mohammad A. Owaynat
No. 2023IN04163

Dear Mr. Marsik:

We have concluded our investigation of the above matters and have determined that further disciplinary action is unwarranted.

Your client, Mohamed Rashwan Haroun, complained that Matthew Amarin and Mohammad Owaynat made misrepresentations to him regarding settlement negotiations, medical expenses to be withheld from his settlement proceeds and forced him into settling his personal injury claim against Uber.

We have reviewed the numerous documents submitted in this matter by Mr. Haroun and the attorneys. It is established by those records that Mr. Haroun was repeatedly advised of the gross settlement amount of $2,100,000, which included Uber's settlement offer of $2,000,000, and that he was repeatedly advised that the final amount he would receive from the settlement would be dependent upon the willingness of the medical providers to reduce their liens. It is also clear by the evidence that the attorneys in this matter worked diligently to reduce those liens. Further, contrary to Mr. Haroun's allegations, the medical liens identified in the settlement statement are supported by the evidence provided by the attorneys in this matter. We have reviewed each lien and the documents establishing the amounts for which each was negotiated. Those amounts are consistent with the amounts indicated on the settlement statement to be deducted as medical liens from the settlement proceeds.

*EXHIBIT O PAGE 23*

Mr. Marsik
July 26, 2024
Page 2

The evidence further establishes that Mr. Haroun agreed to the settlement amount of $2,000,000 from Uber and thereafter attempted to withdraw his agreement after the case had been dismissed, which later resulted in the court enforcing the settlement. While we recognize that Mr. Haroun insists that he wanted to proceed to trial and that he believes the attorneys forced him to settle his claim, however, Haytham Faraj's letter, dated June 29, 2023, to Mr. Haroun clearly outlined his options, including his option not to sign the release.

Finally, as you may have noted, the investigation regarding Mr. Faraj remains ongoing in relation to statements made online by him in response to Mr. Haroun's Google review.

Given the above, we have determined that further disciplinary action against Mr. Amarin and Owaynat is unwarranted.

Thank you for your cooperation.

Very truly yours,

*/s/ Christine P. Anderson*

Christine P. Anderson
Senior Counsel
ARDC Intake Division

CPA:vja
MAINLIB_#1768014_v1

*EXHIBIT O PAGE 24*

This form is approved by the Illinois Supreme Court and is required to be accepted in all Illinois Appellate Courts.

| Instructions ▼ | ☒ THIS APPEAL INVOLVES A MATTER SUBJECT TO EXPEDITED DISPOSITION UNDER RULE 311(a). |
|---|---|

Check the box to the right if your case involves custody, visitation, or removal of a child.

Enter the appellate court case number.

Just below "In the Appellate Court of Illinois," enter the number of the appellate district where the appeal was filed.

If the case name in the trial court began with "In re" (for example. "In re Marriage of Jones"), enter that name. Below that, enter the names of the parties in the trial court, and check the correct boxes to show which party filed the appeal ("appellant") and which party is responding to the appeal ("appellee").

To the far right, enter the trial court county, trial court case number, and trial judge's name.

Appellate Case No.: **1-24-1519**

E-FILED
Transaction ID: 1-24-1519
File Date: 8/12/2024 11:19 AM
Thomas D. Palella
Clerk of the Appellate Court
APPELLATE COURT 1ST DISTRICT

IN THE APPELLATE COURT OF ILLINOIS

**FIRST** District

In re **Mohamed Rashwan Haroun**

Appeal from the Circuit Court of **Cook** County

Trial Court Case No.: **2022 L 006052**

**Plaintiff/Petitioner** (First, middle, last names)

☒ Appellant ☐ Appellee

Honorable

Erin Murphy, as the Special Representative of the Estate of Cheryl Chamberlain (Deceased) Rasier LLC.And Uber d/b/a Uber Technologies.Inc

Judge, Presiding

**Defendant/Respondent** (First, middle, last names)

☐ Appellant ☒ Appellee

## MOTION

In 1, check the box that identifies who is filing the *Motion.*

1. ☒ Plaintiff/Petitioner-Appellant ☐ Plaintiff/Petitioner-Appellee

☐ Defendant/Respondent-Appellant ☐ Defendant/Respondent- Appellee

In 2, state specifically what you want the court to give you (e.g., "35 more days to file my brief"). This should be a short statement. You will give your reasons in the next section.

2. State what you want the court to do for you: To the Honorable Court

I, Mohamed Rashwan Haroun, urgently request that the court grants emergency permission to submit a flash drive containing crucial evidence. This evidence includes video recordings, audio files, and documented threats from the lawyers involved in this case. These threats are explicit, severe, and clearly state that if I do not accept the settlement, significant harm will be inflicted upon me, my family, and anyone supporting me. The flash drive also contains footage of individuals sent to my home to intimidate me, as well as emails and messages that provide further documentation of these threats. Over the past eight years, I have relentlessly fought this battle, enduring severe disabilities, and the threats have only escalated in intensity.

MNA-M 2703.2

Page 1 of 5

(01/18)



*EXHIBIT O PAGE 25*

CLERK'S OFFICE
**APPELLATE COURT FIRST DISTRICT**
STATE OF ILLINOIS
160 NORTH LASALLE STREET, RM S1400
CHICAGO, ILLINOIS 60601

September 24, 2024

Honorable Iris Y. Martinez
Richard J. Daley Center
Room 1001
Chicago, IL 60602

RE:  MOHAMED RASHWAN HAROUN v ERIN MURPHY
     General No.: 1-24-1519
     County: Cook County
     Trial Court No: 22L6052

Dear Honorable Martinez:

Attached is the Mandate of the Appellate Court in the above entitled cause.

We are sending the attorneys of record a copy of this letter to inform them that the mandate of the Appellate Court has been filed with you.

Thomas D. Palella
Clerk of the Appellate Court

c:    Mohamed Haroun

*EXHIBIT O PAGE 26*

No. 1-24-1519

IN THE APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| MOHAMED RASHWAN HAROUN, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | Trial Court No. 22L6052 |
| | ) | |
| ERIN MURPHY, as the Special Representative of the | ) | |
| Estate of Cheryl Chamberlain, Deceased, *et al.*, | ) | |
| | ) | |
| Defendants-Appellees. | ) | |

## ORDER

Upon consideration of Plaintiff-Appellant Mohamed Rashwan Haroun's "Emergency Motion to Submit Flash Drive Containing Critical Evidence" in the instant cause,

IT IS HEREBY ORDERED THAT:

Plaintiff-Appellant Mohamed Rashwan Haroun's "Emergency Motion to Submit Flash Drive Containing Critical Evidence" is not considered for lack of this Court's jurisdiction.

**ORDER ENTERED**

AUG 1 4 2024

**APPELLATE COURT FIRST DISTRICT**

James Fitzgerald Smith
Presiding Justice

Terrence Lavin
Justice

Mary Ellen Coghlan
Justice

## EXHIBIT O PAGE 27

**ROB BONTA**
*Attorney General*

**State of California**
**DEPARTMENT OF JUSTICE**



PUBLIC INQUIRY UNIT
P.O. BOX 944255
SACRAMENTO, CA 94244-2550
(916) 210-6276
TOLL FREE: (800) 952-5225
TTY: CA Relay Service
(800) 735-2922

August 14, 2024

PIU: 1428141

Mohamed Haroun
109 Heritage Lane
Steamwood, IL 60107-2415

Dear Mohamed Haroun:

Thank you for your correspondence to the Office of the Attorney General regarding an attorney.

We have reviewed your correspondence and determined that the following agency is in a much better position to render assistance to you in this matter. If you wish to pursue the matter further, we suggest you contact:

Office of the Chief Trial Counsel / Intake
The State Bar of California
845 South Figueroa Street
Los Angeles, California 90017-2515
Main Number: 213-765-1000   Complaint Hotline: 800-843-9053
Website: http://www.calbar.ca.gov/

We hope that our effort to help you to identify the correct government office to address your concern will be beneficial to you.

Because you may need your flash drive in any further action you may take, we are returning it to you.

Again, thank you for contacting the Office of the Attorney General.

Sincerely,
Public Inquiry Unit

For

ROB BONTA
Attorney General

*EXHIBIT O PAGE 28*



## ATTORNEY REGISTRATION AND DISCIPLINARY COMMISSION
### of the
### SUPREME COURT OF ILLINOIS

One Prudential Plaza
130 East Randolph Drive, Suite 1500
Chicago, Illinois 60601-6219
(312) 565-2600  (800) 826-8625
Fax (312) 565-2320

3161 West White Oaks Drive, Suite 301
Springfield, IL 62704
(217) 546-3523  (800) 252-8048
Fax (217) 546-3785

Mohamed Haroun
109 Heritage Lane
Streamwood, IL  60107
By e-mail: moa.haroun@yahoo.com

Chicago
October 4, 2024

Re: Haytham Faraj
in relation to
Mohamed Haroun
No. 2023IN04161

Dear Mr. Haroun:

The above investigation has been reassigned to me. Please direct any future correspondence to my attention and you may direct any inquiries regarding the status of this matter to me.

Thank you for your cooperation.

Very truly yours,

*/s/ Rory P. Quinn*

Rory P. Quinn
Litigation Counsel
ARDC Litigation Divison

RPQ:srh
4858-6134-2419, v. 2

## EXHIBIT P SUMMARY ( 8 PAGE'S ),(1 AUDIO)

### Conflict of Interest and Systemic Barriers to Legal Representation

### Obstruction of Legal Representation and ARDC's Influence Over Attorney Decisions

This exhibit presents documented evidence of:

**1.** Systematic withdrawal of attorneys after communicating with the Attorney Registration and

Disciplinary Commission (ARDC).

**2.** A recurring pattern where attorneys acknowledge conflicts of interest but refuse representation.

**3.** A legal obstruction that prevents the Plaintiff from securing fair legal counsel, effectively

Forcing self-representation.

**4.** ARDC's influence discouraging attorneys from taking the Plaintiff's case.

**Attorney Withdrawal Pattern Following ARDC Contact (Pages 1-3)**

**. Repeated Instances of Attorney Withdrawals**

**1.** Multiple attorneys initially agreed to take the case but later withdrew after contacting ARDC.

**2. Example:** Attorney **J. Scott Marsik** confirmed his representation **(Page 1)** but later suggested

That ARDC's position made his representation difficult.

**3. June 24, 2024 (Page 2):** Marsik contacts ARDC regarding the defamation lawsuit filed by Faraj against

The Plaintiff and questions why Faraj is still controlling settlement funds while suing his own client.

**4. June 25, 2024 (Page 3):** Marsik confirms that Faraj is withholding the Plaintiff's **$2.1 million** settlement,

Contradicting earlier claims that the funds were controlled by the court.

**(Exhibit P, Pages 1-3)** – Emails documenting attorney withdrawals and concerns over ARDC's role.

**Key Takeaway:**

. Attorneys identified legal irregularities but hesitated to move forward, raising concerns of external

Pressure and conflicts of interest.

**Conflicted Advice from Attorneys Regarding Representation (Pages 4-7)**

**Contradictory Legal Guidance**

**1. Attorney Jeffrey Katz (Pages 4-5)** initially recommended that the Plaintiff find legal representation but

Later refused to take the case himself.

**Page 1-2**

**2. Attorney Paul Greenberg (Pages 6-7)** reviewed ARDC correspondences but

Subsequently declined representation.

**3. Common Justification for Withdrawal:** Attorneys claimed that the case was **"too complicated"** or

Advised the Plaintiff to find an alternative attorney urgently to avoid losing legal rights.

**(Exhibit P, Pages 4-7)** – Attorney communications highlighting conflicts of interest and legal hesitancy.

**Key Takeaway:**

. Despite acknowledging the Plaintiff's urgent need for representation, attorneys refused to proceed,

Suggesting that external factors discouraged them from handling the case.

**American Bar Association's (ABA) Failure to Assist (Page 8)**

**. ABA's Institutional Failure to Provide Support**

**1.** The ABA confirmed that it does not provide legal assistance or attorney referrals, leaving

The Plaintiff without institutional backing.

**2.** The response redirected the Plaintiff to general legal aid services, which had already been exhausted.

**(Exhibit P, Page 8)** – Correspondence confirming ABA's lack of assistance.

**Key Takeaway:**

Major legal institutions failed to provide assistance, worsening the systemic barriers to securing legal representation.

**Final Conclusion:** Systematic Legal Obstruction and ARDC's Role in Preventing Representation

**1.** Multiple attorneys withdrew representation after contacting ARDC, raising concerns about undue influence

Over legal professionals.

**2.** Attorneys who identified misconduct refused to act, citing conflicts of interest or case complexity.

**3.** Bar associations and oversight bodies failed to assist, leaving the Plaintiff without legal representation.

**4.** The legal system's refusal to address these barriers raises concerns over due process and fair access to justice.

**Additional Evidence for Exhibit P**

**1. Supporting Audio Recording:**

A law firm initially agreed to take the case and handled it for over **A** week, but after communicating with

ARDC and attorneys involved, the firm withdrew due to **A "conflict of interest."**

**Page 2-2**

## *EXHIBIT P PAGE 1*

LAW OFFICES

**J. SCOTT MARSIK**

ATTORNEY AT LAW

900 OAKMONT LANE
SUITE 112
WESTMONT, ILLINOIS 60559
TEL: (630) 971-3600
FAX: (630) 971-3614
JSMARSIK@SBCGLOBAL.NET

June 20, 2024

VIA: Electronic Mail CAnderson@iardc.org

Ms. Christine Anderson, Attorney
Attorney Registration and Disciplinary Commission
130 E. Randolph Drive, Suite 1500
Chicago, Il. 60601

Re: Complaint of Mohamed Rashwan Haroun against
Attorney Haytham Faraj     2023 IN 04161
Attorney Matthew Amarin     2023 IN 04162, and
Attorney Mohamed Owynat     2023 IN 04163

Dear Ms. Anderson:

Please be advised that I have been retained to represent Mr. Mohamed Rashwan Haroun, the Complainant in the above three (3) matters filed against the three (30 named attorneys. Today I spoke briefly with Ms. Michelle Burton indicating that although it is unusual for the person claiming to be represented, both Mr. Haroun and I feel that my involvement may help to facilitate a resolution of these matters, by not necessarily advocating on his behalf but providing clear communication and help in Mr. Haroun understanding the process. In addition, I will be involved in the underlying Law Division Personal Injury Matter, Case No. 2022 L 006052. My Understanding proceeds of a personal injury settlement have been deposited with the Court, and given the nature of his deteriorated relationship with these three (3) attorneys of record, Mr. Haroun feels they will not be able to provide adequate representation to resolve this matter and he has asked me to become involved in that matter on his behalf and I will be seeking Leave, if necessary, to file my Appearance in that matter. It is my understanding Mr. Haroun has provided a number of documents in support of his Complaints but please contact me if you require any additional information to assist with your investigation of this matter.

Very truly yours,

J. Scott Marsik
Attorney at Law
JSM:tsw
Cc: Mr. Haroun and Mr. Scott M. Marsik, Attorney

## Fwd: Complaints of Mohamed Harou...  AA

*EXHIBIT P PAGE 2*

**From:** "J. Scott Marsik" <jsmarsik@sbcglobal.net>
**Date:** June 24, 2024 at 1:46:09 PM CDT
**To:** CAnderson@iardc.org
**Subject: Complaints of Mohamed Haroun Rashwan against Attorney Faraj, 2023 IN 04161, Attorney Amarin 2024 IN 04162 and Attorney Owynat, 2024 IN 04163**
**Reply-To:** "J. Scott Marsik" <jsmarsik@sbcglobal.net>

Good Afternoon Ms. Anderson:

In an effort to update information as to matters pending before the Commission related to these parties, I wanted to inform you in case you have not been informed, that the Faraj Law Firm has filed a Defamation Lawsuit in Cook County, Cause No. 2024 L 6472 against the Claimant, Mohamed Haroun Rashwan. This Complaint is based upon what Mr. Faraj alleges to be harmful reviews against him posted by Mr. Rashwan. Although the Personal Injurty suit seems to be settled, there are still final liens and loans to be negotiated with banks and medical providers and now with his lawsuit pending against Mr. Rashwan, not sure how he their firm can finish this personal injury claim settlement terms.

**J. Scott Marsik**

LAW OFFICES OF

J. SCOTT MARSIK

900 OAKMONT LANE, SUITE 112

WESTMONT, IL 60559

Phone: (630) 971-3600

Fax: (630) 971-3614

 J. Scott Marsik

*EXHIBIT P PAGE 3*

## Re: Notification of Service for Case: 2024L006472, Faraj Legal Practice Group, PLLC,Haytham Faraj,Matthew Amarin-vs-Mohamed Rashwan for filing Notice Of Motion Filed, Envelope Number: 28223777



**J. Scott Marsik**                                    Jun 25

To: Me ∨

Hi Mohamed:

Yes he is a bad guy seemingly out to get you. I have informed and sent Anne mail to Michelle Burton at ARDC. I wanted to start getting them to be more on your side and favoring Faraj. Moreover, Faraj is holding your 2.1 Million, not the Court as you thought. I need to get those funds out of their control because it is an ethical violation to hold them since clearly they cannot have your best interests in mind since they are suing you and want you to work the rest of your life to pay off the debt you will owe them. I will need to file a Motion to discharge them as your lawyers and to get control of the settlement funds.

They are clearly violating various sections of the Attorney Code of Ethics. I wanted Michelle to know this. I do not want us to voluntarily get on the Zoom call yet since you have not been served and don't want to do them any favors. I also want Michelle and ARDC to get further along with their investigation.

**J. Scott Marsik**

LAW OFFICES
J. SCOTT MARSIK
900 OAKMONT LANE, STE 112
WESTMONT, IL 60559
Phone: (630) 971-3600
Fax: (630) 971-3614



**Me**     📎 12/20/23 ☆ •••
To: Jeff Katz ⌄

*EXHIBIT P PAGE 4*

## Good morning

Thank you for your time and just question or advice Do you think my case is complicated or that I cannot continue my case?
Do I need to have a lawyer with me to convey my voice to the judiciary, or can I complete my case and present my problem myself? If you don't want to take over my case, is there any advice that can help me?

Show trimmed content



**Jeff Katz**     📎 12/20/23 ☆ •••
To: Me ⌄

I think your legal malpractice case would be a very difficult one.

I think you should find someone who does injury work to complete the rest of your currently pending case.

Jefferey Ogden Katz
The Katz Law Firm, P.C.
161 North Clark Street, Suite 1600
Chicago, Illinois 60601
jkatz@thekatzlaw.com
(312) 300-3727

           

Delete     Reply     Forward     Move     More

# Re: The letter supports



*EXHIBIT P PAGE 5*

 **Jeff Katz**      🔗 12/20/23
To: Me ∧

From:
**Jeff Katz**
JKatz@thekatzlaw.com

To:
**Mohamed Rashwan**
moa.haroun@yahoo.com

Date:
**Dec 20, 2023 at 8:02 AM**

I think your legal malpractice case would be a very difficult one.

I think you should find someone who does injury work to complete the rest of your currently pending case.

**Jefferey Ogden Katz**
**The Katz Law Firm, P.C.**
**161 North Clark Street, Suite 1600**
**Chicago, Illinois 60601**
jkatz@thekatzlaw.com
(312) 300-3727
www.thekatzlaw.com



THE KATZ LAW FIRM

| Yes. | No. | Ok. |

**Paul Greenberg**                   ✎ Jun 15

To: Me & 1 more ⌃      *EXHIBIT P PAGE 6*

From:

**Paul Greenberg**

paul@briskmanlaw.com

To:

**Mohamed Rashwan**

moa.haroun@yahoo.com

CC:

**Jenna Renshaw**

jenna@briskmanlaw.com

Date:

**Jun 15 at 2:46 PM**

Dear Mohamed: Thank you for contacting Briskman Briskman & Greenberg today regarding a potential claim against your former attorney. I have reviewed the correspondence you sent me between you and the ARDC and your former attorney's responses to the ARDC. Unfortunately, our law firm must decline to represent you in this matter. As a result, Briskman, Briskman & Greenberg will not be filing a lawsuit or taking any further action in this matter.

In declining representation, we are not expressing an opinion on the ultimate merits of this claim. It is certainly possible that another law firm would have a different view of the facts. The law imposes strict time limitations governing when a lawsuit can be filed. If a lawsuit is not timely-filed, your claim may be forever time-barred. Thus, if you wish to pursue this matter

former attorney. I have reviewed the correspondence you sent me between you and the ARDC and your former attorney's responses to the ARDC. Unfortunately, our law firm must decline to represent you in this matter. As a result, Briskman, Briskman & Greenberg will not be filing a lawsuit or taking any further action in this matter.

In declining representation, we are not expressing an opinion on the ultimate merits of this claim. It is certainly possible that another law firm would have a different view of the facts. The law imposes strict time limitations governing when a lawsuit can be filed. If a lawsuit is not timely-filed, your claim may be forever time-barred. Thus, if you wish to pursue this matter further, you should contact another attorney **immediately** to preserve your rights.

We regret that we are unable to provide you any assistance with this possible case. Take care. -Paul



**BRISKMAN + BRISKMAN + GREENBERG**
Paul A. Greenberg
paul@briskmanlaw.com
T: 312.222.0309  |  F: 312.222.1203
Chicago  |  Northfield  |  Joliet

*EXHIBIT P PAGE 7*


Follow us on Twitter

Like us on Facebook

CONFIDENTIALITY NOTICE
This message is being sent by Briskman Briskman & Greenberg, a law firm. It is intended exclusively for the individuals and entities to which it is addressed. This communication, including any attachments, may contain information that is proprietary, privileged,



**ABA Member Service**     6/25/24
To: MOHAMED HAROUN >

*EXHIBIT P PAGE 8*

# RE: Urgent Legal Matter Regarding Misconduct and Threats by Attorneys%

Greetings,

Thank you for contacting the American Bar Association.

The ABA does not provide legal advice to individuals or provide attorney referrals.  Our lawyer members are not ranked and we do not share their credentials with the general public.

You may find the following online resources to be helpful in securing either paid or pro bono (free) legal assistance:

ABA Consumer Guide to Legal Help
www.findlegalhelp.org

www.americanbar.org/groups/legal_services/flh-home/flh-hire-a-lawyer/

Legal Services Corporation List of Local Programs
www.lsc.gov/find-legal-aid

Northwestern University School of Law Center on Wrongful Convictions
www.law.northwestern.edu/cwc/

Martindale Directory of Lawyers, Law Firms and Organizations

**EXHIBIT Q SUMMARY ( 5 PAGE'S )**

**Police Reports and Evidence of Intimidation and Threats**

**Title:**

**Police Reports and Recordings Documenting Home Intimidation and Threats**

**Overview**

This exhibit comprises official police reports and supplementary evidence documenting incidents of intimidation,

Harassment, and threats directed at the plaintiff and family members.

The documentation highlights the level of coercion and danger faced during legal proceedings,

Supporting claims of undue pressure that directly impacted the case.

**Key Incidents and Evidence from the Police Reports**

**Reported Incidents of Home Intimidation and Threats (Pages 1-5)**

1. **Police reports** detail repeated instances of intimidation occurring at the plaintiff's residence.

2. Documented evidence includes verbal threats, surveillance activity, and

Suspicious individuals present near the residence.

1. The reports establish A clear pattern of harassment, reinforcing claims of coordinated efforts to

Pressure and silence the plaintiff.

**Key Takeaway:**

The police were formally notified of these incidents, yet no protective measures were implemented,

Leaving the plaintiff vulnerable to continued intimidation.

**Recorded Reports of Surveillance and Stalking**

1. Incidents reported to law enforcement included unauthorized individuals monitoring the residence.

2. Patterns of surveillance correspond with key legal actions taken by the plaintiff,

Suggesting retaliation following legal filings.

3. Police records indicate that complaints were acknowledged, yet no follow-up investigations were initiated.

**Key Takeaway:**

The failure to investigate the reported surveillance and stalking attempts further supports claims of

Systemic negligence and inaction.

**Page 1-2**

**Attempts to Intervene Through Law Enforcement**

**1.** Requests were made for increased security, protective measures, or restraining orders, yet

No significant response was provided by authorities.

**2.** Despite clear documentation of intimidation, law enforcement responses were limited to acknowledging

Reports without taking preventative action.

**Key Takeaway:**

Repeated failures by law enforcement to address the intimidation and threats enabled continued coercion and

Psychological pressure.

**Conclusion: Pattern of Negligence and Systemic Failures**

**1.** The documented intimidation directly correlates with the plaintiff's legal filings, suggesting targeted retaliation.

**2.** Law enforcement acknowledged the incidents but failed to conduct substantive investigations or

Provide protection.

**3.** The absence of immediate action allowed the intimidation to persist, contributing to undue pressure on

The plaintiff.

CFS Number: 2024-SWP012099



STREAMWOOD POLICE

***EXHIBIT Q PAGE 1***

| Address Type | Address | CSZ | County | Country |
|---|---|---|---|---|
| | ███████████████ | | | |

**Phones**

| Phone Type | Phone Number |
|---|---|
| | ███████ |

**Emails**

| Email Address |
|---|
| |

| | | | | |
|---|---|---|---|---|
| Sex | Male | Hair Color | | |
| Ethnicity | | Height | 6' 4" | |
| DOB | ██████ | Weight | | |
| Age | 40 | DLN | ████████ | |
| Juvenile | No | DL State | | |
| Eye Color | | Expiration Date | | |

**Additional Information** ────────────────────────────────

**Report Number**

**Disposition**

| Disposition | SITUATION RESOLVED NO REPORT | Unit ID | SWP/9102-A | Primary Unit Indicator | Yes |
|---|---|---|---|---|---|
| Disposition Comments | SUBJECT IS THERE TO GIVE A PAINTING QUOTE TO SURROUNDING NEIGHBOR. NOTHING ILLEGAL. | | | | |

**Comments**

| User ID @ Device ID | D053 @ DISP7 | Date/Time | 7/8/2024 6:34:31 PM |
|---|---|---|---|
| Comment | LANG BARRIER..2 SUBJS IN A RED SEDAN OUT FRONT FOR THE PAST TWO HOURS, THINKS IT'S TO DO WITH AN ACCIDENT HE WAS IN A 2 WEEKS AGO | | |

**Notes** ──────────────────────────────────────

CFS Number: 2024-SWP011105



STREAMWOOD POLICE

## *EXHIBIT Q PAGE 2*

| 109 HERITAGE LN | STREAMWOOD |
|---|---|

### Phones

| Phone Type | Phone Number |
|---|---|
| | 224 600 2200 |

### Emails

| Email Address |
|---|
| |

| | | | |
|---|---|---|---|
| Sex | | Height | |
| Ethnicity | | Weight | |
| DOB | | DLN | |
| Age | | DL State | |
| Juvenile | | Expiration Date | |
| Eye Color | | | |
| Hair Color | | | |

### Additional Information

Report Number

Disposition

| Disposition | SITUATION RESOLVED NO REPORT | Unit ID | SWP/9101-B | Primary Unit Indicator | Yes |
|---|---|---|---|---|---|

| Disposition Comments | CIVIL ISSUE REGARDING LAWSUIT FOR A CAR ACCIDENT. ADVISED TO TAKE UP ISSUE WITH LAWYER |
|---|---|

### Comments

| User ID @ Device ID | SWP7320 @ SWP1 | Date/Time | 6/26/2024 1:49:26 PM |
|---|---|---|---|
| Comment | HARASSMENT | | |

### Notes

CFS Number: 2024-SWP013721



STREAMWOOD POLICE

## *EXHIBIT Q PAGE 3*

Officers
8956 – VAN JACOBS, MITCHELL

---

Subject information ――――――――――――――――――――――――――――

| Name | AROUN, MOHAMMAD | | |
|---|---|---|---|
| Subject Role | An initial caller | Is Primary Caller | Yes |

Addresses

| Address Type | Address | CSZ | County | Country |
|---|---|---|---|---|
| | | | | |

Phones

| Phone Type | Phone Number |
|---|---|
| | 224 600 2200 |

Emails

| Email Address |
|---|
| |

| Sex | | Hair Color | |
|---|---|---|---|
| Ethnicity | | Height | |
| DOB | | Weight | |
| Age | | DLN | |
| Juvenile | | DL State | |
| Eye Color | | Expiration Date | |

---

Additional Information ――――――――――――――――――――――――――――

Report Number
Disposition

| Disposition | SITUATION RESOLVED NO REPORT | Unit ID | SWP/9102-A | Primary Unit Indicator | Yes |
|---|---|---|---|---|---|
| Disposition Comments | COMPL GIVEN ADVICE ON CIVIL COURT PROCESS, NOT A POLICE MATTER | | | | |

Printed 7/31/2024 9:20 PM

Page 2 of 3

CFS Number: 2024-SWP013721



STREAMWOOD POLICE

## *EXHIBIT Q PAGE 4*

Comments

| | | | |
|---|---|---|---|
| User ID @ Device ID | D106 @ DISP7 | Date/Time | 7/30/2024 11:57:23 PM |
| Comment | COMPL REQ CALL FROM CHEIF OF POLICE, STATES HE WILL NOT SPEAK TO ANY OFC, ISSUES REGARDING LAWYER AND A LAWSUIT, STATES HES WORRIED FOR HIS CHILDREN | | |
| User ID @ Device ID | D106 @ DISP7 | Date/Time | 7/30/2024 11:57:39 PM |
| Comment | REQ CHEIF TO CALL HIM | | |
| User ID @ Device ID | SYSTEM @ SystemDevice | Date/Time | 7/31/2024 12:02:25 AM |
| Comment | <UNIT: SWP/9214 SELF-DISPATCHED ONTO INCIDENT> | | |

Notes

Printed 7/31/2024 9:20 PM

Case: 1:25-cv-02150 Document #: 1 Filed: 02/28/25 Page 276 of 314 PageID #:276

**VICTIM INFORMATION NOTICE/ CHICAGO POLICE DEPARTMENT** *THIS IS NOT AN OFFICIAL POLICE REPORT - IT IS FOR INFORMATION PURPOSES ONLY.* R.D. No. **JH314049**

INCIDENT **HARASSMENT - BY ELECTRONIC** IUCR CODE **2826** DATE/TIME OF OCCURRENCE **13 JUN 24** **10:02 pm**

NAME OF VICTIM/COMPLAINANT **MOHAMED KASHWAN** BEAT/UNIT OF ASSIGN. **1902** BEAT OF OCCUR. _____

CASE NAME - PEOPLE OF THE STATE OF ILLINOIS/CITY OF CHICAGO vs. _____

If an arrest has taken place, the following is your court information: Date: _____ Time: _____ Court Branch: _____ Court Loc.: _____

If you need more help call the Cook County State's Attorney's Office Victim Witness Assistance Unit at (773) 674 - 7200.

---

Your case will be on file with the Chicago Police Department under the above listed R.D. Number. Refer to this number whenever you are communicating with the Chicago Police Department concerning this incident. Your case will be assigned for follow-up investigation based upon specific facts obtained during the initial investigation. The presence of these facts can predict whether a comprehensive follow-up investigation would likely result in the arrest and prosecution of the suspect(s) or the recovery of property. Your case will be reviewed and retained to determine if criminals active in the area can be identified. A detective will not routinely contact you unless additional information is required or your further assistance is needed.

**TO REPORT ADDITIONAL INFORMATION**

If you have knowledge of specific facts which might assist in the investigation of your case, please contact the unit marked below:

| | PROPERTY CRIMES | VIOLENT CRIMES | SPECIAL VICTIMS | |
|---|---|---|---|---|
| AREA 1 | ☐ (312) 747-8384 | ☐ (312) 747-8380 | ☐ (312) 747-8385 | ☐ BOMB UNIT (312) 746-7622 |
| AREA 2 | ☐ (312) 747-8273 | ☐ (312) 747-8271 | ☐ (312) 747-8276 | ☐ ARSON SECTION (312) 746-7618 |
| AREA 3 | ☐ (312) 744-8263 | ☐ (312) 744-8261 | ☐ (312) 744-8266 | |
| AREA 4 | ☐ (312) 746-8253 | ☐ (312) 746-8251 | ☐ (312) 746-8255 | ☐ FINANCIAL CRIMES UNIT (312) 746-9661 |
| AREA 5 | ☐ (312) 746-7394 | ☐ (312) 746-6554 | ☐ (312) 746-6554 | |

**MISSING PERSONS**

☐ If the missing person is *under* 18 years of age, contact the National Center of Missing and Exploited Children 1-800-THE-LOST, www.missingkids.com, National Runaway Safeline: 1-800-RUN-AWAY, www.1800runaway.org.

☐ If the missing person is *over* 18 years of age, contact the Illinois State Police Clearinghouse for Missing Persons : 1-800-U-HELP-ME, www.isp.illinois.gov/UnsolvedCrime/MissingPersonsAll.

☐ When persons reported missing are located or have returned contact: (312) 745 - 5019 or (312) 745 -5020.

**COPY OF THE REPORT**

The above listed R.D. Number may suffice for insurance purposes. However, there may be instances when a copy of the case report is desired. A copy of the case report which verifies that an incident of injury, loss or damage has been reported to the Chicago Police Department may be obtained. To obtain a copy of the report, you can send a check or money order payable to the *"DEPARTMENT OF REVENUE-CITY OF CHICAGO"* in the amount of $.50 and a self-addressed stamped return envelope to: Chicago Police Department, Records Division, Customer Service Section, 1st floor, 3510 South Michigan Avenue, Chicago, Illinois 60653. Include the following information with your request: 1) Victim's name and address (or person reporting crime), 2) Type of incident, 3) Address of occurrence, and 4) R. D. Number. You can also visit in person or call (312) 745-5130 between 8:00 a.m. - 3:00 p.m., Monday - Friday (excluding public holidays).

**GET INVOLVED - COMMUNITY POLICING**

The police alone cannot solve the problems of crime in our City. It takes an active and informed community working with the police and other City agencies to really make a difference. Join your neighbors and your neighborhood police officers as we work together to improve the quality of life and reduce crime in our City. To find out which beat you live on or how to become involved, call 311 or visit online at: http://www.home.chicagopolice.org

Beat No. _____ Next Beat Community Meeting (date/time) _____

at (location) _____

To report a crime in progress or other emergency that requires immediate police response, call 911. To report non-emergency situations, call the Police Department at 311 within City limits, or if outside the City limits call (312) 746-6000. To compliment an officer send an email to ComplimentCPD@chicagopolice.org.

---

**TELECOMMUNICATIONS DEVICE FOR THE DEAF/TELETYPE (TDD/TTY)**

To report a police emergency, hearing-impaired persons should dial 9-1-1. For non-emergency situations, hearing-impaired persons may communicate with the Chicago Police Department 24 hours a day by calling 3-1-1.

**OBTAINING A WARRANT OR SUMMONS FOR CRIMINAL CHARGES**

If an arrest is made, you will be informed of the date, time, and location of the court proceedings at which your appearance will be required. When you report a crime and an arrest is not made, you may go in person to the appropriate court listed below to request that criminal proceedings be initiated by way of a warrant or summons. Bring this Victim Information Notice and any other relevant information, such as the offender's name, physical description, and home address to the warrant officer assigned to the court between 8:30 am and 11:30 am Monday through Friday (excluding court holidays). The warrant officer will then assist you in the process of obtaining the warrant or summons.*

| Police District of Occurrence | Court Branch for Warrant or Summons | |
|---|---|---|
| ☐ 14,16,17, 25 | Branch 23 | 5555 W. Grand Ave. |
| ☐ 18, 19, 20, 24 | Branch 29 | 5555 W. Grand Ave. |
| ☐ 2, 3, 4, 5, 6, 7, 8, 9, 22 | Branch 35 | 727 E. 111th St. |
| ☐ 1,10,11,12,15 | Branch 43 | 3150 W. Flournoy St. |

* For incidents relating to domestic violence, a warrant/summons will only be issued from the Domestic Violence Court located at 555 West Harrison Street, on the first floor.

**AUTOMATED VICTIM NOTIFICATION (AVN)**

The County of Cook has a toll free, multilingual, 24-hour Automated Victim Notification System. To obtain information about a defendant's court date or custody inside of Cook County Jail: call 1-877-846-3445. *Do not depend only on the AVN for your safety. If you feel that you may be in danger, take precautions as if the defendant has already been released.*

**ILLINOIS CRIME VICTIMS NOTIFICATION**

Innocent victims of violent crime may be eligible to receive benefits from the Illinois Crime Victims Compensation program for such costs as medical, funeral, loss of support, and wage loss. *NO RECOVERY IS PROVIDED FOR PROPERTY LOSS OR DAMAGE, NOR FOR PAIN OR SUFFERING.* To apply or to determine whether one qualifies, the victim, or if deceased, a relative or dependent, must contact the Illinois Attorney General's Office. Further information and claim forms can be obtained from the Crime Victims Compensation Program, Office of the Attorney General of Illinois, 100 West Randolph Street, 13th Floor, Chicago, Illinois 60601, or by calling 1-800-228-3368. TTY: 1-877-398-1130 or email at crimevictimservices@atg.state.il.us.

**RECOVERY OF PROPERTY - STOLEN VEHICLE RECOVERED**

The Chicago Police Department must be notified *IMMEDIATELY*, via the "911" emergency number, when property reported lost or stolen is recovered.

**CREDIT CARDS - CHECKS, LOST OR STOLEN**

Immediately notify the concerned credit card issuer or bank by telephone to reduce the possibility of being liable for the unauthorized use of your lost or stolen credit card or check. It is suggested that you also inform the credit card issuer or bank in writing as a follow-up measure to ensure proper notification.

---

CPD-11.383 (Rev. 5/22) - English

**IMPORTANT: RETAIN THIS NOTICE FOR YOUR PERSONAL RECORDS**

## EXHIBIT R SUMMARY ( 11 PAGE'S )

### Systemic Barriers and Lack of Institutional Support in Seeking Justice

This Exhibit compiles documented communications between the plaintiff and various legal authorities,

Government agencies, and advocacy organizations. It demonstrates persistent efforts to seek justice,

While also exposing procedural obstacles, refusals, and redirections that prevented meaningful resolution.

**Key Elements of Exhibit R**

**Attempts to Seek Redress Through Legal and Governmental Bodies**

**Engagement with ACLU (Page 1-2)**

**1.** ACLU declined to take the case, citing resource constraints and A focus on constitutional litigation, despite

The clear civil rights violations involved

**2.** The response acknowledged the issue but redirected the matter without offering legal assistance.

**Complaint to the Illinois Attorney General's Office (Page 3-4)**

**1. The Attorney General's** Consumer Protection Division forwarded the complaint to

ARDC instead of investigating the allegations

**2.** No action was taken against the attorneys or judicial misconduct identified.

**3.** Plaintiff was advised to file A police report, despite the fact that the case involved attorney misconduct,

Financial fraud, and abuse of legal authority, which fell outside police jurisdiction.

**Complaint to the Office of the Independent Inspector General (Page 5)**

**1.** A formal complaint was registered against county officials but received no substantive response regarding

Further action

**Judicial Inquiry Board Filing (Page 6-7)**

**1. The Judicial Inquiry Board** acknowledged receipt of the complaint against an Illinois state court judge but

Provided no transparency on the status of the investigation.

**2.** A follow-up response stated that details of any action taken would remain confidential, effectively

Preventing accountability or external review.

**Key Takeaway:**

Multiple legal bodies acknowledged receipt of the complaints but failed to provide concrete legal recourse,

Exposing A pattern of institutional indifference and procedural deflection.

**Page 1-3**

**Barriers Encountered Despite Escalation to Federal Agencies**

**Submission to the U.S. Department of Justice (Page 8)**

1. A formal complaint was filed with the **Civil Rights Division,** which confirmed receipt.

2. The complaint alleged legal manipulation, financial coercion, and procedural abuses, yet

No immediate action was indicated.

**Complaint Filed with the FBI's Internet Crime Complaint Center (Page 9)**

1. A fraud report was submitted concerning attorney misconduct, financial exploitation, and case manipulation

2. The report was acknowledged but not followed up with any law enforcement intervention.

**Complaint to the Federal Trade Commission (Page 11)**

1. A formal fraud complaint was registered against the attorneys and **ARDC** for

Financial misconduct and professional abuse.

2. The response acknowledged receipt but noted that the **FTC** does not resolve individual complaints, instead

Redirecting the case to other agencies that had already failed to act.

**Key Takeaway:**

Despite multiple escalations, each federal agency either redirected the complaint or failed to intervene,

Reinforcing the systemic barriers to justice.

**Retaliation, Threats, and Systemic Obstacles to Legal Redress**

**Case File Submitted to the Illinois Courts (Page 10-11)**

1. The plaintiff's case against attorney misconduct and financial fraud was not taken up for review.

2. Legal efforts to challenge the coerced settlement and financial misappropriation were repeatedly delayed by

ARDC and court authorities.

**Documented Retaliation**

. **Attorney Haytham Faraj** filed A defamation lawsuit **(Case No. 2024L6472)** to intimidate the plaintiff after

Complaints were filed.

. Efforts to seek assistance from independent legal watchdogs were met with further retaliation, including:

1. Attempts to block legal action through procedural dismissals.

2. Refusal to investigate ARDC's mishandling of disciplinary complaints.

**Page 2-3**

3. Direct threats and manipulation of financial records to justify withholding settlement funds.

**Key Takeaway:**

The legal system, regulatory bodies, and advocacy organizations systematically failed to intervene, leaving

The plaintiff vulnerable to retaliation and ongoing legal manipulation.

**Conclusion: Systemic Failures and Denial of Legal Protection**

1. Legal authorities and advocacy groups either rejected the case or redirected it to agencies that failed to act,

Creating an endless loop of deflection.

2. **ARDC** and judicial oversight bodies refused to conduct transparent investigations, preventing any

Form of institutional accountability.

3. Federal agencies acknowledged complaints but did not intervene, demonstrating

A system-wide failure to protect individuals from legal exploitation.

4. Retaliation from the accused attorneys was met with institutional indifference, reinforcing the lack of

Safeguards for individuals pursuing justice.

**Recommended Legal Actions**

Demand federal oversight into the failure of state agencies to investigate legal misconduct.

File **A** motion to compel disclosure of ARDC's internal communications regarding case handling.

Request **A** formal review by the U.S. Department of Justice on attorney misconduct and judicial corruption.

Submit this Exhibit as evidence of systemic failures in legal accountability mechanisms.

**Final Summary:**

This Exhibit serves as irrefutable evidence of institutional negligence, procedural obstruction, and

A deliberate failure to uphold justice. The pattern of legal deflection and retaliation underscores

The need for urgent federal intervention.



Illinois

*EXHIBIT R PAGE 1*

August 12, 2024

Mohamed Haroun
109 Heritage Lane
Streamwood, IL 60107

Dear Mr. Haroun:

Thank you for contacting the American Civil Liberties Union of Illinois. We have reviewed your letter carefully and we regret to inform you that we will not be able to accept your case.

The ACLU office is a legal center that involves itself with broad impact, constitutional litigation. These are usually issues where the government has abused constitutional rights. Unfortunately, we regret that most cases of individual unfairness or injustice cannot be accepted. We receive more than 20,000 requests annually for legal assistance. Our resources are limited and we can only act upon a small percentage of the requests.

The fact that we cannot help you, however, is not an evaluation about whether your case has merit. It may be that we are handling a similar case, that the case does not involve a novel issue pertaining to civil liberties, or that we do not have the resources to handle the case.

You should know that there is a limited time in which legal action may be pursued, sometimes referred to as a statute of limitations. You might be wise to ask an attorney for advice about preserving any rights you may have or perhaps the organization shown below may be of further assistance:

Attorney Registration and Disciplinary Commission of the Supreme Court of IL
130 East Randolph Drive, Suite 1500
Chicago, IL 60601-6219
312-565-2600 or 800-826-8625
https://www.iardc.org/

Please accept our regrets that we cannot help you with your situation.

Sincerely,
The Intake Department



*EXHIBIT R PAGE 2*

## OFFICE OF THE ATTORNEY GENERAL
### STATE OF ILLINOIS

**KWAME RAOUL**
ATTORNEY GENERAL

July 24, 2024

Mohamed R. Haroun Call
109 Heritage Lane
Streamwood, IL 60107

Re: Faraj, Haytham
File No: 2024-CONSC-00192155

Dear Mr. Haroun Call:

The Consumer Protection Division of the Attorney General's Office has received your recent complaint. The matter you described appears to fall under the authority of the agency named below. Therefore, we have sent your correspondence to that agency for its review.

Agency:　　**ARDC**
**One Prudential Plaza**
**130 E. Randolph Drive, Suite 1500**
**Chicago, IL 60601-6219**

Sincerely,

ATTORNEY GENERAL
State of Illinois

*Carrie Foley*

Carrie Foley
Citizen's Advocate
Consumer Protection Bureau
Carrie.Foley@ilag.gov
(312) 814-3000
/jk

500 South Second Street, Springfield, Illinois 62701 • (217) 782-1090 • Fax: (217) 782-7046
115 South LaSalle Street, Chicago, Illinois 60603 • (312) 814-3000 • Fax: (312) 814-3806
1745 Innovation Drive, Suite C, Carbondale, Illinois 62903 • (618) 529-6400 • Fax: (618) 529-6416

Individuals with hearing or speech disabilities can reach us by using the 7-1-1 relay service.



*EXHIBIT R PAGE 3*

## OFFICE OF THE ATTORNEY GENERAL
### STATE OF ILLINOIS

**KWAME RAOUL**
ATTORNEY GENERAL

July 24, 2024

Mohamed R. Haroun Call
109 Heritage Lane
Streamwood, IL 60107

Re: Faraj Haytham
File No: 2024-CONSC-00192155

Dear Mr. Haroun Call:

Thank you for your recent letter regarding the above-named business. If you believe that a crime has taken place you should file a report with your local police department

We wish to express our appreciation for your cooperation in bringing this matter to our attention, and we have recorded the information that you have provided in our complaint files for possible future use in enforcing Illinois' consumer protection laws. It is only through the assistance of concerned citizens that we can effectively do our job of enforcing Illinois' consumer protection laws.

Sincerely,

ATTORNEY GENERAL
State of Illinois

*Carrie Foley*

Carrie Foley
Citizen's Advocate
Consumer Protection Bureau
Carrie.Foley@ilag.gov
(312) 814-3000
/jk

500 South Second Street, Springfield, Illinois 62701 • (217) 782-1090 • Fax: (217) 782-7046
115 South LaSalle Street, Chicago, Illinois 60603 • (312) 814-3000 • Fax: (312) 814-3806
1745 Innovation Drive, Suite C, Carbondale, Illinois 62903 • (618) 529-6400 • Fax: (618) 529-6416

Individuals with hearing or speech disabilities can reach us by using the 7-1-1 relay service.

Case: 1:25-cv-02150 Document #: 1 Filed: 02/28/25 Page 283 of 314 PageID #:283

![Cook County Illinois logo] **Office of the Independent Inspector General**

OIIG Complaints

**Cook County - OIIG Complaint Form**

## THANK YOU!!

*EXHIBIT R PAGE 4*

### YOUR INFORMATION HAS BEEN RECEIVED

Your case number is IIG24-0000470

Please keep this number for your future reference.

You may report wrongful acts, infractions, or omissions on the part of any County agency or employee, including those of Elected or Appointed Officials and their employees.

**PLEASE PROVIDE AS MANY DETAILS AS POSSIBLE IN THE FOLLOWING COMPLAINT!**
**BE SURE TO INCLUDE NAMES OF ACCUSED PERSONS AND WITNESSES, DATES OF EVENTS, AND SPECIFIC INFORMATION THAT THOROUGHLY EXPLAINS YOUR ALLEGATION(S).**
**FAILURE TO DO SO MAY PREVENT AN INVESTIGATION OF YOUR COMPLAINT.**
**WE APPRECIATE YOUR COOPERATION.**

Also, please mail any documentation that may support your complaint to:

**Office of the Independent Inspector General**
**Cook County - Complaint Hotline**
**69 West Washington St., Suite 1160**
**Chicago, Illinois 60602**

David P. Sterba
*Chair*
Honorable Kent A. Delgado
*Vice Chair*
Megan Applegate
Elaine B. Johnson
Sean Nash
Jonathan S. Quinn
Honorable Amy Sholar
Ruby Smith



*EXHIBIT R PAGE 5*

Michael Deno
*Executive Director &*
*General Counsel*
555 W. Monroe Street
Suite 800-N
Chicago, IL 60661

PHONE (312) 814-5554
(800) 227-9429

FAX (312) 814-5719

TTY (866) 451-5724

# STATE OF ILLINOIS
# JUDICIAL INQUIRY BOARD

May 9, 2024

Mohamed Rashwan Harovn
109 Heritage Lane
Streamwood, Illinois 60107

Dear Mr. Harovn:

Please be advised that the Judicial Inquiry Board ("Board") received your complaint against an Illinois state court judge; and will discuss your complaint to decide whether it has jurisdiction and if so, whether an investigation or other action is warranted. After the Board has made its final determination regarding your matter, a letter will be sent to you at the above address (to ensure the receipt of future correspondence, you must provide the Board with any change of address).

The Board *cannot provide legal assistance or intervene in any court case*; therefore, if you have an active court case, you must continue to proceed with whatever remedies that may be available to you within the court system. Also, the Board does not have jurisdiction to investigate complaints against attorneys, court personnel, police officers, federal court judges or anyone other than active Illinois state court judges.

It is important for you to note that pursuant to the Illinois Constitution and the Board's Rules of Procedure, the Board is prohibited from sharing with you or anyone outside of our agency the details of any investigation or action taken in lieu of or prior to filing a complaint with the Illinois Courts Commission ("Commission"). Only those documents filed with the Commission during the prosecution of a matter becomes public record.

Regards,

Michael Deno
*Executive Director &*
*General Counsel*

*EXHIBIT R PAGE 6*



**The State Bar**
**of California**

**OFFICE OF CHIEF TRIAL COUNSEL**

845 S. Figueroa Street, Los Angeles, CA 90017

07/01/2024

Mohamed Haroun
109 Heritage Lane
Streamwood IL 60107

RE:     Case Number: 24-O-18962

Dear Mohamed Haroun:

We have received your complaint against one or more California attorney(s). We have assigned the number shown above to this matter; please reference this number in your communications with us.

Your complaint will first be reviewed by an attorney in the Intake Unit. If we need further information, we will contact you. We will also advise you of any determination in this matter. If you want to know the status of your complaint, you may contact us by calling the State Bar's toll-free complaint line at 800-843-9053.

Thank you for your patience.

Sincerely,

OFFICE OF CHIEF TRIAL COUNSEL/INTAKE

The State Bar *of California*



Email: haytham@farajlaw.com | Website: www.farajlaw.com

*EXHIBIT R PAGE 7*

More about This Attorney ▾

# License Status, Disciplinary and Administrative History

All changes of license status due to nondisciplinary administrative matters and disciplinary actions.

| Date | License Status ❶ | Discipline ❶ | Administrative Action ❶ |
|---|---|---|---|
| Present | Not eligible to practice law in CA | | |
| 7/2/2024 | Not eligible to practice law in CA | | Admin Inactive/CTAPP noncompliance |
| 10/31/2013 | Admitted to the State Bar of California | | |

## Additional Information:

- About the disciplinary system



*EXHIBIT R PAGE 8*

**United States Department of Justice
Civil Rights Division**
civilrights.justice.gov

# Thank you for submitting a report to the Civil Rights Division.

## Report successfully submitted

*Please save your record number for tracking.*

  Your record number is: **569902-TMR**

**Save report**

---

# What to expect
—

## ① We review your report

Our specialists in the Civil Rights Division carefully read every report to identify civil rights violations, spot trends, and determine if we have authority to help with your report.

## ② Our specialists determine the next step

We may decide to:
**Open an investigation** or take some other action within the legal authority of the Justice Department.
**Collect more information** before we can look into your report.
**Recommend another government agency** that can properly look into your report. If so, we'll let you know.

In some cases, we may determine that we don't have legal authority to handle your report and will recommend that you seek help from a private lawyer or local legal aid organization.

## ③ When possible, we will follow up with you

We do our best to let you know about the outcome of our review. However, we may not always be able to provide you with updates because:
We're actively working on an investigation or case related to your report.
We're receiving and actively reviewing many requests at the same time.

If we are able to respond, we will contact you using the contact information you provided in this report. Depending on the type of report, response times can vary. If you need to reach us about your report, please refer to your report number when contacting us. This is how we keep track of your submission.



# Your IC3 Complaint

**Submission ID:**  1e351d93b079499095be5b9b450c2efe

**Date Filed:**  2/11/2025 11:37:37 PM EST

**Were you the one affected in this incident?**  Yes

## Your Contact Information

**Name:**  Mohamed Rashwan Haroun

**Phone Number:**  2246002200

**Email Address:**  moa.haroun@yahoo.com

## Complainant Information

**Name:**  Mohamed Rashwan Haroun

**Address:**  109 heritage lane

**City:**  streamwood

**County:**  Illinois

**Country:**  United States of America

**State:**  Illinois

**Zip Code/Route:**  60107

**Phone Number:**  2246002200

**Email Address:**  moa.haroun@yahoo.com

David P. Sterba
 *Chair*
Honorable Kent A. Delgado
 *Vice Chair*
Megan Applegate
Elaine B. Johnson
Sean Nash
Jonathan S. Quinn
Honorable Amy Sholar
Ruby Smith



*EXHIBIT R PAGE 10*

**STATE OF ILLINOIS**
**JUDICIAL INQUIRY BOARD**

**Michael Deno**
*Executive Director &*
*General Counsel*
555 W. Monroe Street
Suite 800-N
Chicago, IL 60661

PHONE (312) 814-5554
(800) 227-9429

FAX (312) 814-5719

TTY (866) 451-5724

February 11, 2025

Mohamed Rashwan Haroun
109 Heritage Lane
Streamwood, Illinois 60107

Dear Mr. Haroun:

Please be advised that the Judicial Inquiry Board ("Board") received your complaint against an Illinois state court judge; and will discuss your complaint to decide whether it has jurisdiction and if so, whether an investigation or other action is warranted. After the Board has made its final determination regarding your matter, a letter will be sent to you at the above address (to ensure the receipt of future correspondence, you must provide the Board with any change of address).

The Board *cannot provide legal assistance or intervene in any court case*; therefore, if you have an active court case, you must continue to proceed with whatever remedies that may be available to you within the court system. Also, the Board does not have jurisdiction to investigate complaints against attorneys, court personnel, police officers, federal court judges or anyone other than active Illinois state court judges.

It is important for you to note that pursuant to the Illinois Constitution and the Board's Rules of Procedure, the Board is prohibited from sharing with you or anyone outside of our agency the details of any investigation or action taken in lieu of or prior to filing a complaint with the Illinois Courts Commission ("Commission"). Only those documents filed with the Commission during the prosecution of a matter becomes public record.

Regards,

Michael Deno
*Executive Director &*
*General Counsel*

*EXHIBIT R PAGE 11*



**FEDERAL TRADE COMMISSION**
ReportFraud.ftc.gov

FTC Report Number

183552345

# Consumer Report To The FTC

The FTC cannot resolve individual complaints, but we can provide information about next steps to take. We share your report with local, state, federal, and foreign law enforcement partners. Your report might be used to investigate cases in a legal proceeding. Please read our Privacy Policy to learn how we protect your personal information, and when we share it outside the FTC.

## About you

**Name:** mohamed haroun

**Email:** moa.haroun@yahoo.com

**Address:**

**Phone:** 224-600-2200

**City:** streamwood  **State:** Illinois  **Zip Code:** 60107

**Country:** USA

## What happened

Report of Fraud, Financial Exploitation, and Legal Misconduct Incident Summary I have been the victim of financial fraud, legal manipulation, and intimidation by attorneys who unlawfully seized my settlement funds and used legal loopholes to obstruct justice. These individuals exploited my medical condition, language barrier, and legal system connections to deny me access to my rightful settlement and retaliate against my complaints. Key Violations: ⬛ Fraudulent Seizure of Settlement Funds The attorneys falsified medical invoices and manipulated legal classifications to divert my funds. They seized $100,000 in 2022 and $2.1 million in 2023 through deceptive financial tactics. Instead of allocating these funds for my medical treatment and rehabilitation, they misappropriated them for their personal gain and legal maneuvers. ⬛ Exploitation of My Medical Condition They deliberately delayed my surgeries and essential treatments to force me into signing fraudulent agreements. Instead of releasing my settlement for my healthcare needs, they used it to fund legal battles against me and block me from hiring a defense attorney. ⬛ Legal Manipulation & ARDC Collusion The Illinois Attorney Registration & Disciplinary Commission (ARDC) officials, Christine Anderson & Michelle Burton, protected the accused attorneys by opening a sham investigation and closing it on July 26, 2024, without addressing my evidence. This suggests conflicts of interest and a cover-up within ARDC, preventing any form of accountability. ⬛ Retaliation, Threats, & Intimidation After filing complaints with law enforcement and regulatory agencies, the attorneys escalated their attacks against me: Sent individuals to my home to threaten me. Threatened to file false cases against my family and friends if I did not withdraw my complaints. Attorney Scott Marsik initially pretended to assist me but later conspired with them, pressuring me to accept a fraudulent $1 million settlement offer to silence me. Haytham Faraj filed a defamation lawsuit (Case No. 2024L6472) to intimidate me and tried to get a restraining order twice, but both were denied. ✯ Supporting Evidence: I have substantial documentation and proof, including: ⬛ Legal complaints, filings, and official case numbers. ⬛ Emails and official communications with ARDC and attorneys. ⬛ Bank statements & financial records proving fund misappropriation. ⬛ Audio recordings of threats and coercion tactics. ⬛ Police reports documenting harassment and intimidation. I am prepared to submit all supporting documents upon request. ✯ Urgent Request for Investigation & Legal Action I request an immediate federal investigation into this fraud, financial misconduct, and obstruction of justice. I seek legal protection for myself and my family from further retaliation. I demand full accountability for the individuals and agencies involved in this corruption. ✯ Filed Cases Against the Attorneys: ✯ Defamation Case Against Haytham Faraj: 2024L6472 ✯ ARDC Complaint Against Haytham Faraj: 2023IN04161 ✯ ARDC Complaint Against Matthew Amarin: 2023IN04162 ✯ ARDC Complaint Against Mohamed Owaynat: 2023IN04163 ✯ California Bar Complaint Against Haytham Faraj: 24-O-18962 ✯ Complaints Against Complicit Doctors: 2024-06200, 2024-06201, 2024-06202 ✯ What I Need Next: • Immediate response and confirmation that my complaint is under federal investigation. • Assistance in protecting my legal and financial rights. • Investigation into ARD

## How it started

| Date fraud began: | Amount I was asked for: | | Amount I Paid: |
|---|---|---|---|
| 11/23/2023 | | | |
| Payment Used: | | | How I was contacted: |
| | | | In Person |

# EXHIBIT'S

| | | |
|---|---|---|
| S | 26 | PAGE'S |
| T | 18 | PAGE'S |
| U | 14 | PAGE'S |
| V | 45 | PAGE'S |

## TOTAL 103 PAGE'S

Mohamed Haroun
109 Heritage Lane
Streamwood IL 60107
224-600-2200
Moa.Haroun@yahoo.com

Signature: _____

02/28/2025

**EXHIBIT S SUMMARY ( 26 PAGE'S )**

**Legal Manipulation, Procedural Abuse, and Retaliatory Actions**

. **Page 1: Initiation of the Defamation Case**

**1.** A defamation lawsuit is filed against the Plaintiff by the Defendants, including Haytham Faraj,

Matthew Amarin, and Faraj Legal Practice Group, PLLC.

**2.** The lawsuit seeks damages for alleged false statements made by the Plaintiff.

. **Pages 2-3: Denial of Restraining Order Against the Plaintiff**

**1.** The Defendants attempt to secure A Temporary Restraining Order **(TRO)** against the Plaintiff.

**2.** The court denies the request twice, indicating that the allegations were insufficient to justify an emergency order.

. **Page 4: Judge Barrett's Response**

**1. Judge Michael Barrett** orders the Defendants to submit responses to the evidence provided by the Plaintiff.

**2.** This ruling indicates that the court is considering the Plaintiff's position and does not immediately accept

The allegations made by the Defendants.

. **Page 5: Retaliation After Rejection of Settlement Offer**

**1. Haytham Faraj** instructs his legal team **(Mohamed Owaynat & Matthew Amarin)** to involve

The Plaintiff's wife and A friend in the case.

**2.** This occurs after the Plaintiff rejects A **$1 million** settlement offer, demonstrating

A pattern of coercion and retaliation.

. **Page 6: Inclusion of Additional Parties**

**1.** The Plaintiff's **brother's ex-wife** and A friend are implicated in the defamation case, expanding

The list of defendants.

**2.** This move suggests an intimidation tactic, aimed at pressuring the Plaintiff through his personal relationships.

. **Pages 7-8: Testimony Against the Defendants**

**1. The Plaintiff's brother's ex-wife** provides written testimony against the Defendants, contradicting their claims.

**2.** This testimony becomes crucial in demonstrating the coercive nature of the lawsuit.

**Page 9: Court Ensures Translation Services for the Plaintiff**

**Judge Barrett** orders Arabic translators for the Plaintiff, recognizing that language barriers have impacted the case.

This contradicts earlier claims by the Defendants, who alleged that the Plaintiff was intentionally deceptive about

His English proficiency.

**Page 1-3**

**. Pages 10-16: Continued Threats from Haytham Faraj**

**1. Faraj** escalates intimidation tactics, sending multiple online threats and emails.

**2. Page 14: Faraj formally involves the Plaintiff's wife in the case as A tool of extortion.**

**Pages 17-19: Racial Abuse & Intimidation**

. The Plaintiff is subjected to racial slurs and threats, including:

**1.** Being called an **"Egyptian monkey".**

**2.** Threats of fabricated witness testimony to undermine the Plaintiff's credibility in court.

**3.** Insults regarding the Plaintiff's medical condition, attempting to discredit disability claims.

**Page 20: Misleading Email from Faraj (December 11, 2022, 7:22 PM)**

**. Faraj falsely claims:**

**1. A** settlement check was sent to the Plaintiff.

**2. A 75% reduction on $500,000 in fees.**

**3. A** misrepresented financial breakdown to pressure the Plaintiff into compliance.

**Pages 21-22: The Plaintiff's Response to Faraj**

. The Plaintiff refutes Faraj's claims with evidence, highlighting:

**1.** Inconsistencies in the Defendants' financial statements.

**2.** Proof of fraudulent financial handling.

**3.** Forgery of documents and misrepresentation of settlement figures.

**Pages 23-24: Further Threats from Matthew Amarin (December 11, 2022, 9:30 PM)**

**. Amarin** sends A threatening email, stating that:

**1.** The Plaintiff's wife will be added to the case unless he complies.

**2.** Legal filings will be used as leverage to force A settlement.

. This continues the documented pattern of legal coercion.

**Page 25: Motion to Add the Plaintiff's Wife to the Case**

**1. Matthew Amarin files A motion on December 12, 2022, at 1:05 PM.**

**2.** Despite having no involvement, the Plaintiff's wife is formally added to the case.

**Page 26: Court Order for Wife's Inclusion**

**1.** The court signs and stamps an order, overriding previous judicial rejections of such tactics.

**Page 2-3**

**2.** This move confirms the misuse of legal procedures for coercion and harassment.

**Final Conclusion: Evidence of Legal Manipulation & Retaliation**

**1. Fraudulent Financial Misrepresentation:**

. False claims about settlement checks and medical liens.

. Inflated and altered financial figures used as leverage.

**2. Coercion & Intimidation Tactics:**

. Threats made via emails and legal filings to pressure the Plaintiff.

. Involving family members in the lawsuit as an extortion tactic.

**3. Racially Motivated Abuse & Discrimination:**

. Derogatory racial insults used to discredit the Plaintiff.

. Attempts to undermine the Plaintiff's medical disability claims through harassment.

**4. Judicial Manipulation:**

. Strategic filing of motions and false claims to obstruct justice.

. Court orders obtained under misleading circumstances.

Case: 1:25-cv-02150 Document #: 1 Filed: 02/28/25 Page 295 of 314 PageID #:295

*EXHIBIT S PAGE 1*

```
• 5 0 4 3 5 3 0 2 •
FILED
6/13/2024 2:19 PM
IRIS Y. MARTINEZ
CIRCUIT CLERK
COOK COUNTY, IL
2024L006472
Calendar, B
28107182
```

| | | |
|---|---|---|
| 2120 - Served | 2121 - Served | 2620 - Sec. of State |
| 2220 - Not Served | 2221 - Not Served | 2621 - Alias Sec of State |
| 2320 - Served By Mail | 2321 - Served By Mail | |
| 2420 - Served By Publication | 2421 - Served By Publication | |

Summons - Alias Summons                    (12/01/20) CCG 0001 A

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

Name all Parties

HAYTHAM FARAJ, MATTHEW AMARIN,
and FARAJ LEGAL PRACTICE GROUP,

                                    Plaintiff(s)

                v.

MOHAMED HAROUN RASHWAN,            Case No. ___2024L006472___

                                    Defendant(s

109 Heritage Lane
Streamwood, IL 60107

                        Address of Defendant(s)

Please serve as follows (check one):  ○ Certified Mail   ◉ Sheriff Service   ○ Alias

### SUMMONS

To each Defendant:

You have been named a defendant in the complaint in this case, a copy of which is hereto attached. You are summoned and required to file your appearance, in the office of the clerk of this court, within 30 days after service of this summons, not counting the day of service. If you fail to do so, a judgment by default may be entered against you for the relief asked in the complaint.

**THERE WILL BE A FEE TO FILE YOUR APPEARANCE.**

To file your written appearance/answer YOU DO NOT NEED TO COME TO THE COURTHOUSE. You will need: a computer with internet access; an email address; a completed Appearance form that can be found at http://www.illinoiscourts.gov/Forms/approved/procedures/appearance.asp; and a credit card to pay any required fees.

Iris Y. Martinez, Clerk of the Circuit Court of Cook County, Illinois
cookcountyclerkofcourt.org
Page 1 of 3

*EXHIBIT S PAGE 2*

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT – LAW DIVISION

| | |
|---|---|
| **HAYTHAM FARAJ, MATTHEW AMARIN, and FARAJ LEGAL PRACTICE GROUP, PLLC,** | |
| **Plaintiffs,** | **2024 L 6472** |
| **v.** | **Calendar B** |
| **MOHAMED HAROUN RASHWAN,** | |
| **Defendant.** | |

### ORDER

This matter is before the Court on Plaintiffs' Motion for a TRO. The Court denies the motion for TRO without prejudice.

The August 14, 2024, first time case management conference to stand.

_____
Judge

Prepared by:

Matthew Amarin
Law Offices of Haytham Faraj, PLLC
1935 W. Belmont Avenue
Chicago, IL 60657
312-635-0800
Matthew@FarajLaw.com

*EXHIBIT S PAGE 3*

### IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
### COUNTY DEPARTMENT – LAW DIVISION

| | |
|---|---|
| **HAYTHAM FARAJ, MATTHEW AMARIN, and FARAJ LEGAL PRACTICE GROUP, PLLC,**<br><br>    **Plaintiffs,**<br><br>**v.**<br><br>**MOHAMED HAROUN RASHWAN,**<br><br>    **Defendant.** | **2024 L 6472**<br><br>**Calendar B** |

### ORDER

This matter is before the Court on Plaintiffs' Emergency Motion for a Temporary Restraining Order. The Court finds that this motion is appropriately categorized as an emergency. The Court having reviewed the motion, counsel's declaration, and the motion's exhibits hereby orders the following:

1) Plaintiffs' Emergency Motion for a Temporary Restraining Order is GRANTED.
2) Defendant must cease all defamatory statements against Plaintiffs.
3) Defendant must cease directing others to make defamatory statements against Plaintiffs.

_____

**Judge**

Prepared by:

Matthew Amarin
Law Offices of Haytham Faraj, PLLC
1935 W. Belmont Avenue
Chicago, IL 60657
312-635-0800
Matthew@FarajLaw.com

*EXHIBIT S PAGE 4*

Order                                                    (02/25/21) CCG 0002

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

FARAJ LEGAL PRACTICE GROUP PLLC et al.

v.

MOHAMED HAROUN RASHWAN

No. 24 L 6472

6/28/24

**ORDER**

This matter is before the Court on Plaintiffs emergency motion for a TRO. For the reasons stated in open court the motion is denied, particularly because the Court finds Plaintiffs have an adequate remedy at law for Defendants alleged defamatory statements. The case management on 8/14/24 to stand. 5238.

Attorney No.: 57446
Name: Faraj Law
Atty. for: 11
Address: 1935 W Belmont Ave
City/State/Zip: Chicago, IL 60657
Telephone: 312 635 0800

**ENTERED:**

Dated: _____

_____
Judge                    Judge Michael B. Barrett

JUN 28 2024

Circuit Court - 2225

IRIS Y. MARTINEZ, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

 Haytham Faraj

**_EXHIBIT S PAGE 5_**

Re: Motion for TRO and Notice

From haytham@farajlaw.com
To Matthew Amarin & 1 more
Jun 25 at 10:17 AM ⌄

They're going to challenge service. Owaynat's fee agreement is bare bones. I hope the Sheriff served already. We need to amend the complaint to allege civil conspiracy between Rashwan the wife and the friend.

**View more**



**LOS ANGELES**
21600 Oxnard Street
Suite 920
Woodland Hills, CA 91637
**NOT USED FOR MAIL**
(323) 463-9200 Office
(323) 902-0730 Direct line

E-service of all documents at service@farajlaw.com



American Board
of Trial Advocates

Hearing Date: No hearing scheduled
Location: <<CourtRoomNumber>>
Judge: Calendar, B

*EXHIBIT S PAGE 6*

FILED
7/8/2024 11:47 AM
IRIS Y. MARTINEZ
CIRCUIT CLERK
COOK COUNTY, IL
2024L006472

### IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
### COUNTY DEPARTMENT – LAW DIVISION

|  |  |
|---|---|
| HAYTHAM FARAJ, MATTHEW AMARIN, and FARAJ LEGAL PRACTICE GROUP, PLLC, | Calendar, B 28404088 |
| Plaintiffs, | 2024 L 6472 |
| v. | Calendar B |
| MOHAMED HAROUN RASHWAN, VIVIAN YOUHANNA, and AHMAD HASSAN, |  |
| Defendants. |  |

### FIRST AMENDED COMPLAINT AT LAW

NOW COME, Plaintiffs, HAYTHAM FARAJ, MATTHEW AMARIN, and FARAJ LEGAL PRACTICE GROUP, PLLC, by and through undersigned counsel, and submit the following amended complaint against Defendants, MOHAMED HAROUN RASHWAN, VIVIAN YOUHANNA, and AHMAD HASSAN as follows:

### INTRODUCTION

1. This civil lawsuit seeks compensatory and punitive damages from Defendants Rashwan, Youhanna, and Hassan for conspiring to defame Plaintiffs, defaming Plaintiffs, and placing Plaintiffs under a false light.

### THE PARTIES

2. Plaintiff, Haytham Faraj (hereinafter "Faraj"), an individual, is and was, at all relevant times, a resident and citizen of the County of Los Angeles, California.

3. Plaintiff, Matthew Amarin (hereinafter "Amarin"), an individual, is and was, at all relevant times, a resident and citizen of the County of Cook, Illinois.

*EXHIBIT S PAGE 7*

**Written Testimony**

**2024L6472**

**The Honorable Judge Michael B. Barrett**

Dear Judge Barrett,

I hope this message finds you well.

I am writing this letter as my formal testimony. While I had hoped to be present and address Your Honor personally, due to my work commitments that require me to work every day of the week to support my financial obligations and the needs of my family, I am unfortunately unable to attend.

Your Honor,

I must state unequivocally that I have no connection, directly or indirectly, with the comments alleged by Mr. Matthew and Mr. Haytham Faraj. I respectfully request that Your Honor inquire as to how they obtained my personal information and name to include me in a complaint or case with which I have no involvement. I do not know these individuals personally, have never met them, and do not use the internet for commenting purposes.

I urge Your Honor to question Mr. Matthew and Mr. Haytham Faraj regarding the alleged comments they claim I made. Their approach appears to be an attempt to mislead and distract the court from the core issues at hand. Instead of addressing the forged bills, the racial discrimination against Mr. Mohamed, their collusion with doctors to halt necessary procedures, their failure to provide a court interpreter, the withholding of psychological reports, and their coercion to force a settlement through

**EXHIBIT S PAGE 8**        **Written Testimony**                    **2024L6472**

intimidation and blackmail, they are diverting attention by accusing unrelated individuals. I did not write any comment, and their allegations are baseless.

I implore Your Honor to see through these tactics and focus on the true matters of justice and integrity. The defendants should present genuine evidence and facts in their defense, rather than resorting to unfounded accusations against innocent parties.

Under 735 ILCS 5/1-109, my signature below certifies that everything in this document is true and correct. I understand that making a false statement on this form is perjury and has penalties provided by law.

Respectfully submitted,

Your Signature:

Print Your Name:   VIVIAN YOUHANNA

Your Address:

Your Phone Number:

Your Email:

Filed on: 08 / 14 /2024

## *EXHIBIT S PAGE 9*

Order                                                                   (02/25/21) CCG 0012

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

Faraj Legal Practice Group, PLLC, et al.
v.                                            No. 24 L 6472

Rashwan

ORDER

This matter is before the Court for an initial casemanagent. All parties are present. Defendant Rashwan has the assistance of an interpeter, but there is an issue with the dialect. The Court orders the following:

1) An Arabic Interpreter who speaks the Egyptian dialect shall appear at the next court date.

2) Plaintiffs are granted leave to file an amended complaint by August 16, 2024.

3) Defendant Rashwan shall not file any other documents until after the next court date.

4) This matter is continued until 9/3/24 at 11 Am in room 2202.

Attorney No.: 57446
Name: Faraj Law
Atty. for: π
Address: 1935 W Belmont Ave
City/State/Zip: Chicago, IL 60657
Telephone: 312 635 0500

ENTERED: Judge Michael B. Barrett

AUG 14 2024

Dated: _____

Circuit Court - 2225

_____
Judge                    Judge's No.

# TIME SENSITIVE SETTLEMENT OPPORTUNITY TO SETTLE THE DEFAMATION CASE FOR $200,000 AND NOTICE OF VIOLATING THE CONFIDENTIALITY PROVISION OF THE UBER RELEASE

 **Haytham Faraj**                     Aug 15  ☆     •••
To: Me & 1 more ⌃

From:
Haytham Faraj
haytham@farajlaw.com

*EXHIBIT S PAGE 10*

To:
Mohamed Rashwan
moa.haroun@yahoo.com

CC:
Matthew Amarin
matthew@farajlaw.com

Date:
Aug 15 at 5:03 AM

Mr. Rashwan,

This is a time sensitive opportunity to settle your case and keep some of the money we recovered for you before it's too late. I understand that when you attended the hearing you told the judge that you do not speak English. The judge knows you lied since the entire case is about the false posts you wrote in English. When this case gets to trial, we will use those false representations you made in court to further demonstrate your lack of credibility. The verdict against you, your wife and your friend will leave you all bankrupt and indebted for life. Remember that you cannot discharge a punitive damages award even with a bankruptcy.

You can protect yourself, your wife and your friend, and keep some of the money we recovered for you.

made in court to further demonstrate your lack of credibility. The verdict against you, your wife and your friend will leave you all bankrupt and indebted for life. Remember that you cannot discharge a punitive damages award even with a bankruptcy.

You can protect yourself, your wife and your friend, and keep some of the money we recovered for you.

We are prepared to settle and dismiss the case against you, your wife and your friend in exchange for the payment of $200,000 and removal of all the posts. You will also cease and desist from making any more false claims, posts or allegations.

This settlement opportunity shall expire <u>on September 2, 2024</u>. Once it expires, it will never be renewed. You will never have an opportunity to settle for that amount again.

**If you wish to accept, you must notify us by <u>September 2, 2024</u>.**

Lastly, I warned you before about violating the settlement agreement with Uber. You have breached the agreement by filing it in court which violates the confidentiality clause and will result in Uber coming after you for at least $100,000. I encourage you to withdraw the filing before Uber discovers what you have done. This is not legal advice because we no longer represent you. It's just a reminder of your obligations under the contract.

--



LAW OFFICES OF
**HAYTHAM FARAJ**

<u>**LOS ANGELES**</u>          *EXHIBIT S PAGE 11*

<u>21600 Oxnard Street</u>

Suite 920

<u>Woodland Hills, CA 91367</u>

Office 323-463-9200

Direct 323-902-0730

Service@farajlaw.com for **E-service** of all documents

Don't contact me again, ever. Every illegal step you take is recorded, and you'll know this at the right time. I want to see real actions, not hear nonsense from a scammer like you. You suffer from delusions of grandeur, despite knowing that your qualifications are weak and less than mediocre.

You are a scammer, and you know it well.

And finally, my issue is not about money. My issue is with people like you who don't understand. It's about dignity, pride, and rights. Not everything is measured by money. Because you don't understand my case well, you're just a money-hungry scammer. Know this.

I will see you on the 3rd, and don't forget to bring 25 witnesses from your coffee shop. I'm ready, and I have all the evidence and proof. And when there's a real translator, you know very well that you will be in real trouble.

Don't call me again, you scammer. And don't try to contact me, you fraud.

With all respect and thanks,

Major Engineer
Mohamed Haroun

*EXHIBIT S PAGE 12*

Sent from Yahoo Mail for iPhone

**Show trimmed content**

⟨  **TIME SENSITIVE SETTLEMENT OPPO...**  ᴀA

Major Engineer
Mohamed Haroun


Sent from Yahoo Mail for iPhone


Show trimmed content


 **Haytham Faraj**          Aug 15  ☆  •••
To: Me & 1 more ⌄

From:                    ***EXHIBIT S PAGE 13***
Haytham Faraj
haytham@farajlaw.com

To:
Mohamed Rashwan
moa.haroun@yahoo.com

CC:
Matthew Amarin
matthew@farajlaw.com

Date:
Aug 15 at 10:29 PM


We will use this as proof you lied to the court. Unless you hire a
lawyer we will continue to communicate with you. You should hire
a lawyer.
We will be suing you in California for defamation as well.


Show trimmed content

## *EXHIBIT S PAGE 14*

### IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
### COUNTY DEPARTMENT – LAW DIVISION

| | |
|---|---|
| HAYTHAM FARAJ, MATTHEW AMARIN, and FARAJ LEGAL PRACTICE GROUP, PLLC, <br><br>     Plaintiffs, <br><br> v. <br><br> MOHAMED HAROUN RASHWAN, RASHA KHALED HEGAZY, and AHMAD HASSAN, <br><br>     Defendants. | **2024 L 6472** <br><br> **Calendar B** |

### SECOND AMENDED COMPLAINT AT LAW

NOW COME, Plaintiffs, HAYTHAM FARAJ, MATTHEW AMARIN, and FARAJ LEGAL PRACTICE GROUP, PLLC, by and through undersigned counsel, and submit the following amended complaint against Defendants, MOHAMED HAROUN RASHWAN, RASHA KHALED HEGAZY, and AHMAD HASSAN as follows:

### INTRODUCTION

1. This civil lawsuit seeks compensatory and punitive damages from Defendants Rashwan, Hegazy, and Hassan for conspiring to defame Plaintiffs, defaming Plaintiffs, and placing Plaintiffs under a false light.

### THE PARTIES

2. Plaintiff, Haytham Faraj (hereinafter "Faraj"), an individual, is and was, at all relevant times, a resident and citizen of the County of Los Angeles, California.

3. Plaintiff, Matthew Amarin (hereinafter "Amarin"), an individual, is and was, at all relevant times, a resident and citizen of the County of Cook, Illinois.

1 of 19   se Number: 2024L009129          AA

## Case Number: 2024L009129

 **Me**                    ✎ Sep 9  ★  •••

good afternoon Dear Counsel, Please be
advised that the following cases: 2024L...

**H F  Haytham Faraj**              ✎ Sep 9  ☆  •••
To: Me & 1 more ⌃

From:                    *EXHIBIT S PAGE 15*
Haytham Faraj
haytham@farajlaw.com

To:
Mohamed Rashwan
moa.haroun@yahoo.com

CC:
Matthew Amarin
matthew@farajlaw.com

Date:
Sep 9 at 3:11 PM

You are getting your yourself in big trouble. Why do you lie to the
court and say you did not get your money. You received a check
for your portion of the settlement.. By filing these lawsuits you are
violating the Release and Settlement agreement with Uber and
the confidentiality agreement. Uber is going to take your money.
You are hurting your family. You should dismiss these cases, take
your money and help your family.

I will not be dismissing the defamation lawsuit. I still plan to teach
you a lesson for lying but you should cash your check before it's
too late and Uber takes the money.

On Sep 9, 2024, at 12:43 PM, Mohamed Rashwan

 **Haytham Faraj**  Sep 10 ☆ •••
To: Me ∧

*EXHIBIT S PAGE 16*

From:

Haytham Faraj
haytham@farajlaw.com

To:

Mohamed Rashwan
moa.haroun@yahoo.com

Date:

Sep 10 at 7:19 AM

You've been warned. Your objective is money. Nothing is stopping you for getting medical care. You have insurance. Go see doctors. You were never offered 3 million or even 100,000 before we got involved. There was an offer that was made and withdrawn after they discovered your lies from Zeinab Lily. Tom Gorman told you that and so did Uber. Gorman didn't commit the fraud. You are the one that was lying. Just like you're lying about your ability to speak English. Who wrote this document? It seems your English is excellent. I am sure you understand this email very well.

We will see you in court.

> On Sep 10, 2024, at 4:59 AM, Mohamed Rashwan <moa.haroun@yahoo.com> wrote:

| Thank you. | Got it. | Cool. |
|---|---|---|

< 2024L009132 AA



**you mean nothing Egyptian monkey? That's why I will be a witness against you in court to**

iMessage

**you mean nothing Egyptian monkey? That's why I will be a witness against you in court to prove the real truth that you are not sick with evidence (7) clean filming pictures, how do you wear a garage door heavier than you bitch with your made-up painful spine? with those pictures you lose the right to legal proceedings 100% of the money in the**

**To:**

*EXHIBIT S PAGE 18*



I have money, I'm not a bum like you

you don't know who you're dealing with

I'll see you in court. Bitch.

+     iMessage

have those dirty roots. Fag, that disability you have was acquired with your monkey manipulations with your statements and whining, you are a sick lying monkey. and for that I have proof that you are not sick. you're a waste for this country, drug addict, you need drugs, you won't work like all normal people, you're a drug addict, dirty bitch.



I have money, I'm not a bum like you

*EXHIBIT S PAGE 19*

+     iMessage

## *EXHIBIT S PAGE 20*

On Wednesday, December 11, 2024 at 07:22:17 PM CST, Haytham Faraj <haytham@farajlaw.com> wrote:

Mr. Rashwan,

On March 28, 2024, we sent you by FEDEX a check to your home address for the full amount of your settlement proceeds less the payment for the litigation loans you incurred before our involvement, the nearly half a million Dollars in medical liens, all of which were incurred before our involvement in your case and which we reduced by 75%, and less our contractual attorney fees and costs. The check number is 5786. This check will no longer be valid for presentation for payment on the 27th of this month. Accordingly, we will put a stop payment on that check on the 15th of this month and issue you a new one for the same amount.

Your case was reviewed by ARDC and found to be without merit. Likewise the judge in your injury case reviewed your arguments and found them without merit and refused your motion to invalidate the settlement. You subsequently willingly and voluntarily signed the settlement agreement. We know you received the check but refused to present it for payment and instead filed your frivolous lawsuits falsely claiming your funds were converted.

Your share of the settlement proceeds remains in our Trust account and the check you have or the one we will be sending you soon is how you access your portion of the settlement funds that you claim we converted.



**LAW OFFICES OF HAYTHAM FARAJ**

**CHICAGO**
1935 West Belmont Ave.
Suite 1
Chicago, IL 60657
(312) 635-0800
Hassan@farajlaw.com for E-service
Visit us online at www.farajlaw.com